**No. 04-0034C**
**(Judge Christine Miller)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**DELMARVA POWER & LIGHT COMPANY,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S MOTION TO DISMISS

---

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**HAROLD D. LESTER, JR.**
**Assistant Director**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit**
**8th Floor**
**1100 L Street, N.W.**
**Washington, D.C. 20530**
**Tele: (202) 305-7562**
**Fax: (202) 307-2503**

**Attorneys for Defendant**

**OF COUNSEL:**

**JANE K. TAYLOR**
**Office of General Counsel**
**Department of Energy**
**1000 Independence Avenue, S.W.**
**Washington, D.C. 20582**

**JOHN C. EKMAN**
**JOSHUA E. GARDNER**
**Trial Attorneys**
**Department of Justice**
**Washington, D.C. 20530**

**Dated: May 12, 2004**

# TABLE OF CONTENTS

PAGE(S)


STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. TO RECOVER FOR A TAKING OF PROPERTY, PLAINTIFF MUST IDENTIFY A COGNIZABLE PROPERTY RIGHT AND MUST ESTABLISH THAT THE GOVERNMENT TOOK THAT RIGHT . . . . . . . . . . 6

A. Plaintiff Has Not Identified A Cognizable Claim For A Taking Of The Value Of Its Investment In The Utilities . . . . . . . . . . . . . . . . . . . . . . . 6

B. Plaintiff's Claim For Diminution Damages Fails For Reasons Unrelated To Any Takings Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

C. Plaintiff Has Not Identified A Cognizable Claim For A Taking Of Any Rights Created Pursuant To The Standard Contract . . . . . . . . . . . . 10

D. Plaintiff Has Not Identified A Cognizable Claim For A Taking Of Fees That The Utilities Paid Into The Nuclear Waste Fund Pursuant To The Requirements Of The Standard Contract . . . . . . . . . . . . . . . . . . 15

E. Plaintiff Is Not An Intended Beneficiary Of The Standard Contract . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

TABLE OF AUTHORITIES

CASES PAGE(S)

Allied Colloids Inc. v. America Cyanamid Co.,
64 F.3d 1570 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Anderson v. United States,
344 F.3d 1343 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Aronson v. Lewis,
473 A.2d 805 (Del. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Bailey v. United States,
53 Fed. Cl. 251 (2002), aff'd, 341 F.3d 1342 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . 14

Branch v. United States,
69 F.3d 1571 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 16

Castle v. United States,
301 F.3d 1328 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 18

Castle v. United States,
48 Fed. Cl. 187 (2000), aff'd in relevant part, 301 F.3d 1328 (Fed. Cir.
2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Coast Federal Bank, FSB v. United States,
48 Fed. Cl. 402 (2000), aff'd, 323 F.3d 1035 (Fed. Cir. 2003) (en banc) . . . . . . . . . . . . 15

Commonwealth Edison Co. v. United States,
56 Fed. Cl. 652 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Conn v. United States,
177 Ct. C 366 F.2d 1019 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Detroit Edison Co. v. United States,
56 Fed. Cl. 299 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

First Hartford Corp. Pension Plan & Trust v. United States,
194 F.3d 1279 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

TABLE OF AUTHORITIES (cont'd)

CASES PAGE(S)

Gaff v. Federal Deposit Insurance Corp.,
814 F.2d 311 (6th Cir. 1987) . . . . . . . . . 9

Glass v. United States,
258 F.3d 1349 (Fed. Cir. 2001) . . . . . . . . . 17

Gratz v. United States,
25 Cl. Ct. 411 aff'd, 985 F.2d 583 (Fed. Cir. 1992) . . . . . . . . . 14

Holland v. United States,
59 Fed. Cl. 735 (2004) . . . . . . . . . 9

Horowitz v. United States,
267 U.S. 458 (1925) . . . . . . . . . 15

Houck v. Little River Drainage District,
239 U.S. 254 (1915) . . . . . . . . . 16

Hughes Communications Galaxy, Inc. v. United States,
271 F.3d 1060 (Fed. Cir. 2001) . . . . . . . . . 11, 15

Integrated Logistics Support System International, Inc. v. United States,
42 Fed. Cl. 30 (1998) . . . . . . . . . 14

Johnson v. United States,
317 F.3d 1331 (2003) . . . . . . . . . 9

La Van v. United States,
56 Fed. Cl. 580 (2003) . . . . . . . . . 9, 11

Liddy v. Urbanek,
707 F.2d 1222 (11th Cir. 1983) . . . . . . . . . 10

M. Snower & Co. v. United States,
140 F.2d 367 (7th Cir. 1944) . . . . . . . . . 1

McNabb v. United States,
54 Fed. Cl. 759 (2002) . . . . . . . . . 7

TABLE OF AUTHORITIES (cont'd)

CASES PAGE(S)

Northwest Airlines, Inc. v. United States Department of Transport,
15 F.3d 1112 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Papasan v. Allain,
478 U.S. 265 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Plaintiffs in Winstar-Related Cases v. United States,
37 Fed. Cl. 174 (1997), aff'd, 133 F.3d 874 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 11

Robo Wash, Inc. v. United States,
223 Ct. Cl. 693 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 18

Rochman v. United States,
27 Fed. Cl. 162 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Roedler v. Department of Energy,
255 F.3d 1347 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Shell Petroleum, N.V. v. Graves,
709 F.2d 593 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Smith v. United States,
58 Fed. Cl. 374 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Southern Nuclear Operating Co. v. United States,
No. 98-614C, slip op. (Fed. Cl. Apr. 7, 2004) (unpublished opinion) . . . . . . . . . . . . . . . 12

Stevens v. Lowder,
643 F.2d 1078 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Suess v. United States,
33 Fed. Cl. 89 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Sun Oil Co. v. United States,
215 Ct. Cl. 716, 572 F.2d 786 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tyler House Apartments, Ltd. v. United States,
38 Fed. Cl. 1 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TABLE OF AUTHORITIES (cont'd)

CASES PAGE(S)

United States v. Winstar Corp.,
518 U.S. 839 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 14

STATUTES AND REGULATIONS

42 U.S.C. §§ 10101-10270 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 10131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 10222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 7, 17

10 C.F.R. § 961.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18

MISCELLANEOUS

13 W. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations, § 5997 (1995) . . . . . 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DELMARVA POWER AND LIGHT COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | ) | No.04–0034C<br>(Judge C. Miller) |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims, defendant, the United States, respectfully requests that this Court dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. In support of this motion, we rely upon the plaintiff's complaint[1] and the following brief.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUE

Whether a former minority shareholder of several utility companies may bring a takings claim predicated upon a breach of the Standard Contract between the utility companies and the Government.

STATEMENT OF FACTS

Prior to 1983, the Department of Energy ("DOE") had no statutory, regulatory, or other legal obligation to accept or dispose of the spent nuclear fuel ("SNF") and high-level radioactive waste ("HLW") that nuclear utilities generated through their production of nuclear power. In

---

[1] For purposes of this motion only, we accept as true the factual allegations as set forth in plaintiff's complaint. However, in the event that this motion is denied, we reserve the right to contest each and every factual allegation in the complaint. E.g., M. Snower & Co. v. United States, 140 F.2d 367, 370 (7th Cir. 1944)

1983, however, Congress enacted the Nuclear Waste Policy Act of 1982 ("NWPA"), 42 U.S.C. §§ 10101-10270. See Compl. ¶ 18. One of the purposes of the NWPA was "to establish the Federal responsibility, and a definite Federal policy, for the disposal of such waste and spent fuel." 42 U.S.C. § 10131(b)(2). The passage of NWPA represented the Government's acceptance of responsibility for the disposal of SNF. See Compl. ¶ 18. In passing the NWPA, Congress included statutory findings that the public health and safety necessitated that the Government provide a solution for the permanent storage and disposal of SNF and HLW, although Congress also found that the costs of the interim and permanent storage and disposal of SNF and HLW were the responsibility of those entities that created the SNF and HLW:

> [W]hile the Federal Government has the responsibility to provide for the permanent disposal of high-level radioactive waste and such spent nuclear fuel as may be disposed of in order to protect the public health and safety and the environment, the costs of such disposal should be the responsibility of the generators and owners of such waste and spent fuel;
>
> * * *
>
> [T]he generators and owners of high-level radioactive waste and spent nuclear fuel have the primary responsibility to provide for, and the responsibility to pay the costs of, the interim storage of such waste and spent fuel until such waste and spent fuel is accepted by the Secretary of Energy in accordance with the provisions of this chapter . . . .

42 U.S.C. §§ 10131(a)(4) & (a)(5).

Pursuant to section 302(a) of the NWPA, the Secretary of Energy was "authorized to enter into contracts with any person who generates or holds title to [SNF] of domestic origin for the acceptance of title, subsequent transportation, and disposal of such [SNF]." 42 U.S.C. § 10222(a)(1). Further, the Secretary of Energy was barred from disposing of any SNF or HLW

under the NWPA "unless the generator or owner of such [SNF] has entered into a contract with the Secretary under this section by not later than . . . June 30, 1983; or . . . the date on which such generator or owner commences generation of, or takes title to, such [SNF]; whichever occurs later." 42 U.S.C. § 10222(b)(2). As a result, DOE's obligation to dispose of a generator's or owner's SNF was conditioned upon the existence of a contract between the generator (or owner) and DOE. DOE implemented the requirements of section 302(a) of the NWPA by promulgating, through notice-and-comment rulemaking in the Federal Register, the Standard Contract now published at 10 C.F.R. § 961.11. The Standard Contract required DOE to begin "[t]he services to be provided by DOE" under the Standard Contract "not later than January 31, 1998." 10 C.F.R. § 961.11, Art. II.

The then-owners of Salem Nuclear Generation Station Units 1 and 2 ("Salem") and Peach Bottom Atomic Power Station Units 1 and 2 ("Peach Bottom") (collectively, the "Utilities") – entities in which plaintiff allegedly held a minority ownership interest (Compl. ¶ 2) – entered into Standard Contracts with DOE for the disposal of SNF and HLW produced by their nuclear facilities. See Compl. ¶ 22. Plaintiff was not a signatory to the Standard Contracts. Id. Plaintiff also currently is not an owner, operator, or interest holder of the Utilities. Compl. ¶ 49. Rather, on September 27, 1999, plaintiff entered into a Purchase and Sale Agreement with PSEG Power LLC ("PSEG") and PECO Energy Company ("PECO") for the sale of its interests in the Utilities and, subsequently, received all requisite state and Federal approvals to effectuate the sale. Compl. ¶ 49.

On January 31, 1998, DOE failed to begin accepting SNF as required by the NWPA and the Standard Contract. Compl. ¶ 40. Thereafter, the United States Court of Appeals for the

Federal Circuit ruled that DOE's failure to begin acceptance of SNF by January 31, 1998 constituted a breach of the Standard Contract. Compl. ¶ 41 (citing Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000); Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000)).

To date, 66 cases have been filed against the Government in this Court, based upon DOE's failure to begin SNF acceptance on January 31, 1998, 64 of which remain pending.[2] The majority of these cases have been filed by existing owners/operators of nuclear facilities seeking damages related to past and future SNF storage costs. See Compl. ¶ 42. Indeed, PSEG and PECO – the entities that currently owns the Utilities – have both filed suit against the Government, alleging entitlement to damages resulting from the breach of the Standard Contract. Exelon Generation Company, LLC, No. 04-102C (Hewitt, J.); PSEG Nuclear LLC, No. 01-551C (Sypolt, J.).[3] The Court can take judicial notice of that complaint and its contents. Allied Colloids, 64 F.3d at 1578.

---

[2] The plaintiff alleges that 29 cases have been filed in this Court concerning DOE's breach of the Standard Contract. See Compl. ¶ 42. This Court may take judicial notice of the fact that 66 such cases have been filed. See, e.g., Allied Colloids Inc. v. Am. Cyanamid Co., 64 F.3d 1570, 1578 (Fed. Cir. 1995). Two of those 66 cases, GPU Nuclear, Inc. v. United States, No. 00-440C, and The United Illuminating Company v. United States, No. 04-0129C, were voluntarily withdrawn by the plaintiffs in those cases.

[3] Exelon is a 50-percent interest holder in the Peach Bottom facility, with PSEG holding the remaining 50-percent interest in Peach Bottom. Exelon has represented that it is authorized to bring suit on behalf of PSEG. Exelon Compl. ¶ 3. Among other remedies, Exelon seeks past damages from the Government based upon the breach of the Standard Contract. Exelon Compl. ¶ 30. Similarly, PSEG, which purports to own and operate the Salem and Hope Creek facilities, claims that it has incurred (and will incur in the future) costs related to on-site storage based upon a breach of the Standard Contract. PSEG Compl. ¶ 21.

On January 13, 2004, plaintiff filed its complaint in this Court alleging a single takings claim based upon the Government's breach of the Standard Contract. Compl., Count I. In its complaint, plaintiff made the following allegations:

> 57. DOE was unconditionally obligated under NWPA to begin acceptance of Delmarva's SNF by January 31, 1998. NWPA conferred upon Delmarva a right to have DOE dispose of Delmarva's SNF in a manner and at a cost consistent with the intent of Congress.
>
> 58. DOE's failure to dispose of Delmarva's SNF by January 31, 1998 as required by the [NWPA] deprived Delmarva of the full use and value of its nuclear faclities, caused it to incur sustantial unecessary capital and other expenses, and severely diminished the value of these facilities. This failure constitues a taking of Delmarva's vested property rights without just compensation.

Compl. ¶¶ 57-58. Finally, Delmarva alleges that it "possessed a protected property interest in the benefits of the NWPA." Compl. ¶ 59.

Plaintiff alleges three categories of damages resulting from the taking of its alleged contractual rights: (i) a "significant diminution in market values" upon the sale of its minority interest in the Utilities (Compl. ¶¶ 50, 51, 52); (ii) increased costs and expenditures to store and maintain SNF (among other "related costs") up to the closing date of Delmarva's sale of its minority interest in the Utilities (Compl. ¶¶ 51, 58); and (iii) payments to the Government pursuant to the Standard Contract in excess of the requirements of the NWPA. Compl. ¶ 59.

## ARGUMENT

### I. STANDARD OF REVIEW

In considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, this Court should grant dismissal if "it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (quoted in B & F Trawlers, Inc. v. United States, 27 Fed. Cl. 299, 302 (1992)). In making this decision, the Court will accept the factual allegations alleged in the complaint as true. Papasan v. Allain, 478 U.S. 265, 268 (1968); B & F Trawlers, 27 Fed. Cl. at 302. However, the Court should not place any weight upon any assertions in the complaint other than allegations of fact, because "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." Rochman v. United States, 27 Fed. Cl. 162 (1992).

## II. TO RECOVER FOR A TAKING OF PROPERTY, PLAINTIFF MUST IDENTIFY A COGNIZABLE PROPERTY RIGHT AND MUST ESTABLISH THAT THE GOVERNMENT TOOK THAT RIGHT

### A. Plaintiff Has Not Identified A Cognizable Claim For A Taking Of The Value Of Its Investment In The Utilities

In analyzing a takings claim, "a court must first determine what was taken." Branch v. United States, 69 F.3d 1571, 1575 (Fed. Cir. 1995). The plaintiff alleges that, because DOE failed to begin to dispose of the Utilities' SNF by January 31, 1998, the Government has taken plaintiff's "vested property rights." Compl. ¶ 58. However, the plaintiff cannot assert a takings claim predicated upon a taking of the plaintiff's alleged contractual rights which resulted from DOE's breach of the Standard Contract.

The plaintiff's takings claim is based upon an alleged property interest created by DOE's Standard Contract with the Utilities, entities in which plaintiff once held minority interests. Specifically, plaintiff alleges that it possessed a property right in DOE's obligation to dispose of the SNF generated by the Utilities pursuant to the Standard Contract. Plaintiff's assertion of a

cognizable property interest in the terms of and performance obligations in the Standard Contract should be rejected by this Court.

First, plaintiff admits that it was not a party to the Standard Contract or otherwise was in privity with the Government.[4] Absent a showing of privity, a plaintiff may not bring a direct claim against the Government. First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1289 (Fed. Cir. 2000). In McNabb v. United States, 54 Fed. Cl. 759 (2002), the Court rejected a takings claim predicated upon a breach of contract based upon, among other reasons, the lack of privity between the plaintiff and defendant:

> Even if a breach of contract rights could be vindicated under a takings theory, in reviewing what allegedly has been taken (contract rights) the absence of privity of contract is fatal to a takings theory. Because the court has found no privity of contract between the parties in this case, there are no contract rights to be taken by the government. As a result, a takings theory must fail

Id. at 779. Here, plaintiff lacks privity with the Government because it was not a party to the Standard Contract. As a result, plaintiff lacks any property rights – to the extent that the Standard Contract created such rights at all – in the duties and obligations under that Standard Contract.[5]

---

4 Plaintiff alleges that it was an intended beneficiary of the Standard Contract. The Government addresses this legally unsupported contention below.

5 Plaintiff's attempt to claim a property interest arising from the Standard Contract is predicated upon liberal pleading founded upon a fundamental misstatement of fact. Plaintiff repeatedly alleges that DOE was obligated to dispose of plaintiff's SNF. See Compl. ¶¶ 57, 58. Plaintiff, as a minority interest holder of the Utilities, was not a generator of SNF outside of its minority interest. Indeed, plaintiff does not allege that it has any future obligations for any SNF generated during the time period in which it held a minority ownership interest. Further, absent a Standard Contract with an entity, the Government has no obligation to accept that entity's SNF. See 42 U.S.C. § 10222. Even if plaintiff owned SNF itself, rather than through a corporation in which it owns (or owned) stock, it would have no right to have DOE accept that SNF unless and

Second, as a matter of law, shareholders generally lack privity of contract with the Government. First Hartford Corp., 194 F.3d at 1289. In First Hartford, the Federal Circuit affirmed the dismissal of a breach of contract claim brought by shareholders of a savings bank, concluding that the shareholders lacked privity of contract with the Government:

> A shareholder lacks any such contractual obligation. Indeed, one of the practical motivations behind utilizing the corporate form is often the desire to limit the risk of ownership to the amount of capital invested and thus avoid the obligations, contractual or otherwise, of the corporation. Consequently, [the shareholders] may not bring breach of contract claims on their own behalf in the Court of Federal Claims.

Id. As a former minority interest holder in the Utilities, plaintiff lacks privity of contract with the Government, and its takings claim fails as a result.

B. Plaintiff's Claim For Diminution Damages Fails For Reasons Unrelated To Any Takings Analysis

In addition to the lack of privity that bars plaintiff's takings claim outright, plaintiff's contention that it is entitled to damages associated with the alleged "significant diminution in the market value" of its minority interest in the Utilities lacks merit for several additional reasons. First, plaintiff lacks standing as a former minority interest holder to bring a claim for diminution of value in its interests in the Utilities. It is well-settled that where, as here, the damage allegedly suffered by the plaintiff interest holder is the loss of value to the plaintiff's investment as a result of wrongs allegedly committed by the defendant against a company, the interest holder has no standing to sue individually for redress of those alleged injuries. Indeed, this Court recently held

---

until it became a party to a Standard Contract.

that any action relating to the effect of a breach of contract belongs to the corporate contract holder, not to individual shareholders:

> Ordinarily a cause of action arising from an injury to a corporation belongs solely to the corporation, even though the injury may have also caused the shareholder to have suffered a diminution in the value of their stock. "A suit for damages arising from an injury to the corporation can only be brought by the corporation itself or by a shareholder derivatively if the corporation fails to act . . . since only the corporation has an action for wrongs committed against it." In this connection, the courts have held that "the diminution in value of a stockholder's investment is a concomitant of the corporate injuries resulting in lost profits. A fortiori, any redress obtained by the corporations would run to the benefit of their stockholders, and to permit the latter to proceed with those claims would permit a double recovery.

Holland v. United States, 59 Fed. Cl. 735, 739 (2004) (citations omitted); see La Van v. United States, 56 Fed. Cl. 580, 585 (2003) (shareholder's claim of lost value in stock was a claim belonging to the company, rather than its shareholders); Gaff v. Federal Deposit Ins. Corp., 814 F.2d 311, 317 (6th Cir. 1987); Robo Wash, Inc. v. United States, 223 Ct. Cl. 693, 696-97 (1980); Shell Petroleum, N.V. v. Graves, 709 F.2d 593, 595 (9th Cir. 1983); Stevens v. Lowder, 643 F.2d 1078 (5th Cir. 1981) (bank's shareholders could not recover for fraud, breach of confidential relationship, and conspiracy against purchasers of bank's assets because diminution in value of bank's stock was insufficient direct harm to shareholders). As a minority interest holder in the Utilities, plaintiff simply lacks standing to sue for the alleged diminution in value of its interest.

Second, because a claim of diminution in value may only be brought as a derivative action upon behalf of the corporation, an interest holder lacks standing to bring such a claim where it has sold its interest in the company before filing suit. Johnson v. United States, 317 F.3d 1331, 1334 (2003) (citing Schilling v. Belcher, 582 F.2d 995, 996 (5th Cir. 1978); and

Lewis v. Chiles, 719 F.2d 1044, 1047 (9th Cir. 1983)). Here, plaintiff admits that it sold its interest in the Utilities on September 27, 1999. Compl. ¶ 49. Therefore, because plaintiff's takings claim is derivative in nature, and it no longer holds any interest in the Utilities, it lacks standing to assert a takings claim predicated upon a diminution in value. In any event, as a derivative claim, plaintiff was required to comply with the procedural requirements inherent in maintaining derivative actions, including joining the Utilities as a necessary party to the litigation. See 13 W. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations, § 5997, at 240 (1995); Liddy v. Urbanek, 707 F.2d 1222, 1224 (11th Cir. 1983) ("[t]here is no question that a corporation is an indispensable party in a derivative action brought by one of its shareholders"). Not only has plaintiff failed to join the Utilities in this case, the current owners of the Utilities have filed separate lawsuits against the Government founded upon breach of contract.

Finally, as a derivative claim, plaintiff had an obligation to exhaust its intercorporate remedies before filing the instant lawsuit. 13 W. Fletcher, supra, § 5963, at 126 (noting that before a shareholder is entitled to "impinge upon the managerial freedom" of the corporation's board by divesting it of authority for the corporation's decisions regarding maintenance of a corporate lawsuit, the shareholder seeking to maintain a derivative action upon behalf of the corporation must first "exhaust intercorporate remedies by making a demand on the directors . . . to obtain the action desired."). Plaintiff has failed to plead that it has attempted to exhaust its intercorporate remedies, or why such exhaustion would be futile. Aronson v. Lewis, 473 A.2d 805, 817 (Del. 1984) (holding that plaintiff filing derivative action had obligation to pled with sufficient particularity demand futility to avoid dismissal).

C. Plaintiff Has Not Identified A Cognizable Claim For A Taking Of Any Rights Created Pursuant To The Standard Contract

Notwithstanding plaintiff's lack of privity with the Government, and the resulting bar to any claim arising from a breach of the Standard Contract, DOE's breach of the Standard Contract does not constitute a compensable taking of plaintiff's property rights. It is well-established that, where a party's rights are created by contract, a party cannot state a takings claim founded upon a breach of that contract. Tyler House Apartments, Ltd. v. United States, 38 Fed. Cl. 1, 10 (1997) (citing J.J. Henry Co. v. United States, 188 Ct. Cl. 39, 46, 411 F.2d 1246, 1249 (1969)); Castle v. United States, 301 F.3d 1328, 1342 (Fed. Cir. 2002); Smith v. United States, 58 Fed. Cl. 374, 389 (2003); La Van v. United States, 56 Fed. Cl. 580 (2003). As Justice Scalia has recognized, "[v]irtually every contract operates, not as a guarantee of particular future conduct, but as an assumption of liability in the event of nonperformance. The duty to keep a contract at common law means a predication that you must pay damages if you do not keep it – and nothing else." United States v. Winstar Corp., 518 U.S. 839, 919 (1996) (Scalia, J., concurring) (citations omitted). Likewise, this Court has held that, when a party enters into a contract, that party has either the right to receive performance or, if a breach occurs, the right to receive damages pursuant to contract law. Plaintiffs in Winstar-Related Cases v. United States, 37 Fed. Cl. 174, 187 n.9 (1997), aff'd, 133 F.3d 874 (Fed. Cir. 1998); see also Northwest Airlines, Inc. v. United States Dep't of Transp., 15 F.3d 1112, 1121 n.5 (D.C. Cir. 1994). That is why "the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract." Hughes Communications

Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001) (quoting Sun Oil Co. v. United States, 215 Ct. Cl. 716, 769-70, 572 F.2d 786, 818 (1978)).

This Court has rejected takings claims that are, in reality, disguised contract claims. In Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652 (2003), one of the 64 currently pending cases concerning the Standard Contract, the Court was presented with a takings claims based upon the Government's breach of the Standard Contract. Id. at 656. In its complaint, Commonwealth Edison alleged that the Government's breach prevented it from the full commercial use of its property because it was forced to store SNF that otherwise would have been removed. Id. at 655. The Court rejected this claim, holding that Commonwealth Edison did "not have a takings claim absent the rights and obligations granted to the parties by the Standard Contract." Id. at 656. In so holding, the Court explained that, because the Government had no obligation to accept the plaintiff's SNF absent the contract, the contractor had no basis for seeking takings damages outside the context of the contract:

> [A]bsent the contract, plaintiff would have been obligated to conduct the same or similar storage activities that it now asserts create a takings claim. The court finds that plaintiff's claim for a taking is dependent upon the existence of the Standard Contract and therefore plaintiff's rights are enforceable through contract remedy.

Id.; see Southern Nuclear Operating Co. v. United States, No. 98-614C, slip op. at 5 (Fed. Cl. Apr. 7, 2004) (unpublished opinion) (dismissing Standard Contract holders' takings claim because it "is grounded on the SNF contracts that [two of the plaintiffs] executed with the United States").[6]

---

[6] In Detroit Edison Co. v. United States, 56 Fed. Cl. 299 (2003), this Court elected not to dismiss a Standard Contract holder's takings claim at that point in the litigation, given that there

Similarly, in Castle v. United States, 48 Fed. Cl. 187 (2000), aff'd in relevant part, 301 F.3d 1328 (Fed. Cir. 2002), this Court rejected a takings claim based upon rights created by contract. In Castle, the plaintiffs alleged that the Government had effected a taking of "their contractual agreement with the government" because the Government had not performed in strict accordance with the terms of the contract. Id. at 217. This Court recognized that "the formation of a contract does not entitle its signatories to absolute performance, but rather gives rise to the expectation either that the contract will be performed or that the non-breaching party will have available to it a contract-based remedy." Id. at 218 (citing Winstar v. United States, 518 U.S. 839, 919 (1996) (Scalia, J., concurring)). "The duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it, and nothing else." Id. (quoting Winstar, 518 U.S. at 919 (Scalia, J., concurring)). Thus, a contract provides a party the right to performance or to damages. In its review of this Court's decision in Castle, the Federal Circuit reiterated that, because the Government did not deprive the plaintiff of its previously existing contract remedies, the Government had not effected a taking of the plaintiff's contract:

> The plaintiffs received no contractual guarantee that the government would refrain from regulating Western Empire. At most, the contract promised either to regulate Western Empire consistently with the contract's terms, or to pay damages for breach. *Cf. Winstar*, 518 U.S. at 919, 116 S. Ct. at 2432 (Scalia, J., concurring in judgment) ("Virtually *every* contract operates, not as a guarantee of particular future conduct, but as an assumption of

---

had not yet been any ruling regarding the Government's liability for breach of contract, and opined that, if the Government was not liable for a breach of contract to the contract holder in that case, the Court might be able to identify some taking of the contract holder's contract rights. However, in this case, it is clear that the plaintiff here is not a party to a Standard Contract. Accordingly, there can be no "taking" of a contract to which it is not a party or of contract rights that it did not otherwise have. Accordingly, the Detroit Edison decision has no effect upon the result in this case.

> liability in the event of nonperformance . . . ."). Thus, by enacting FIRREA, the government did not deprive the plaintiffs from a contractual remedy – injunctive relief – to which they otherwise might have been entitled against a private defendant. Nor did FIRREA remove the plaintiffs' cause of action for damages. We agree with the Court of Federal Claims that the plaintiffs retained the full range of remedies associated with any contractual property right they possessed. Consequently, we hold that even assuming the enactment and enforcement of FIRREA breached a contract the government had with Castle and Harlan, it did not constitute a taking of the contract.

Castle v. United States, 301 F.3d 1328, 1342 (Fed. Cir. 2002); see Bailey v. United States, 53 Fed. Cl. 251, 256-57 (2002) (no taking of contract rights exist unless Government "takes" range of remedies associated with vindication of contract), aff'd, 341 F.3d 1342 (Fed. Cir. 2003); Integrated Logistics Support Sys. Int'l, Inc. v. United States, 42 Fed. Cl. 30, 34 (1998) (plaintiff "cannot exploit the Fifth Amendment to amend unilaterally a contract in an effort to rectify what hindsight reveals as an unappealing bargain").

The decisions barring takings claims founded upon breaches of contract are consistent with the important distinction that courts draw between the Government acting in its sovereign capacity and the Government acting in its proprietary capacity. "A taking can occur only when the Government acts in a sovereign capacity." Gratz v. United States, 25 Cl. Ct. 411, 420, aff'd, 985 F.2d 583 (Fed. Cir. 1992). By contrast, when the Government negotiates and enters into a contract with a private party, "this represents activity by [the Government] in a proprietary capacity." Id. (citing Sun Oil, 215 Ct. Cl. at 770, 572 F.2d at 818). The holding in Gratz is instructive concerning the restrictions placed upon takings claims founded upon a breach of contract:

> This transaction is a classic illustration of the Government's acting in a proprietary capacity. Each side incurred rights and responsibilities. Plaintiffs' sole remedy is a breach of contract action.

Id. at 420; see Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001) (takings claims "rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity"); Horowitz v. United States, 267 U.S. 458, 461 (1925) ("nor can the United States while sued [as a contractor] be made liable in damages for their acts done [as a sovereign]"); Coast Fed. Bank, FSB v. United States, 48 Fed. Cl. 402, 443 (2000) ("[w]hen the government acts as a contractor, its breaches of contract are governed by contract law"), aff'd, 323 F.3d 1035 (Fed. Cir. 2003) (en banc); see Conn v. United States, 177 Ct. Cl. 319, 324, 366 F.2d 1019, 1021 (1966) ("the descriptive label affixed to a claim for pleading purposes is not determinative of its real nature").

The Government action that forms the basis for plaintiff's takings claim is the breach of DOE's Standard Contract with the Utilities, and the alleged incurred costs sought by plaintiff, are traditional breach damages. Consequently, a takings claim will not lie based upon a breach of contract by the Government.[7] When a party enters into a contract with the Government, it acquires the right, upon breach, to sue for contract damages, but it acquires no additional

---

[7] Here, plaintiff seeks paradigmatic contract remedies. For example, plaintiff attempts to recover alleged increased costs associated with the storage of the Utilities' SNF. Yet these alleged increased costs unquestionably arise from the breach of the Standard Contract. However, as explained above, plaintiff cannot bring a direct contract action here because it lacks privity with the Government and cannot assert a derivative claim as a former minority interest holder.

property rights and cannot allege a taking under the Fifth Amendment. Plaintiff's takings claim therefore fails as a matter of law.

D. Plaintiff Has Not Identified A Cognizable Claim For A Taking Of Fees That The Utilities Paid Into The Nuclear Waste Fund Pursuant To The Requirements Of The Standard Contract

Plaintiff's claims for takings damages associated with alleged payments to the Government in excess of the requirements of the NWPA must be dismissed because the identical claim has been rejected by the Federal Circuit. In Roedler v. Dep't of Energy, 255 F.3d 1347 (Fed. Cir. 2001), the Federal Circuit held that the payment of rates in excess of the requirements of the NWPA did not constitute a compensable taking:

> The plaintiffs also argue that since the promised nuclear waste disposal was not provided, the assessment of fees was a confiscation in terms of Branch v. United States, 69 F.3d 1571, 1576 (Fed. Cir. 1995), wherein the court observed that municipal special assessments may constitute an unlawful taking if there is a flagrant abuse tantamount to a "confiscation of particular property." See Houck v. Little River Drainage Dist., 239 U.S. 254, 264-65, 36 S. Ct. 58, 60 L. Ed. 266 (1915). The government responds that no such abuse here exists, that the nuclear waste still requires disposal to which these fees are committed, and that there has been no confiscation because the fees have not been diverted from their statutory purpose. We agree that this aspect does not establish a confiscation, in the present unresolved posture of nuclear waste disposal.

Id. at 1356. As a result, plaintiff's contention that payments to the Government in excess of the NWPA constitutes a compensable taking should be rejected.

Moreover, plaintiff's claim for return of alleged excess payments under the NWPA also fails because plaintiff has no standing to raise excess payments claims. Fees are paid into the Nuclear Waste Fund only if required to be paid by contract. See 42 U.S.C. § 10222(a)

(authorizing Secretary of Energy to enter into contracts for acceptance of SNF, and "[s]uch contracts shall provide for the payment to the Secretary of fees pursuant to paragraphs (2) and (3) sufficient to offset expenditures described in subsection (d)"); id. § 10222(c) (obligating Secretary to deposit fees collected under contract into Nuclear Waste Fund). The owner of the Utilities, as the signatory to the Standard Contract, was responsible for paying the fees associated with the SNF generation at their facilities, pursuant to the terms of their contracts. Plaintiff, as a non-signatory minority interest holder in the Utilities, was not. As a result, plaintiff has no basis upon which to claim a taking of property based upon fee payment disputes.

E. Plaintiff Is Not An Intended Beneficiary Of The Standard Contract

In an effort to salvage its claim, plaintiff alleges that it is entitled to bring suit as an intended beneficiary of the Standard Contract because the Standard Contract was "entered into with DOE by the respective operators of [the Utilities] on Delmarva's behalf." Compl. ¶ 22. As an initial matter, even if plaintiff was a third-party beneficiary of the Standard Contract at issue, it would not provide the plaintiff with a viable takings claim, given that, as previously discussed, any remedy would have to be pursued through a breach of contract claim. Nevertheless, the Court's holdings in Glass v. United States, 258 F.3d 1349 (Fed. Cir. 2001), and Suess v. United States, 33 Fed. Cl. 89 (1995), are dispositive of plaintiff's claim that it constitutes a third-pary beneficiary. In Glass, the Federal Circuit recognized that "[t]hird party beneficiary status is an 'exceptional privilege' and, to avail oneself of this exceptional privilege, a party must 'at least show that [the contract] was intended for his direct benefit.'" Glass, 258 F.3d at 1354 (citations omitted). The Court held that, "[i]n order to prove third party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the

party, but that it reflects an intention to benefit the party directly." Id.; see Anderson v. United States, 344 F.3d 1343, 1352 (Fed. Cir. 2003).

Likewise, the Court in Suess dismissed the direct claims brought by shareholders based upon the theory that they were "third party beneficiaries" of their corporation's contract with the Government:

> In order to have standing to sue in their individual capacities, the plaintiff must have been parties to the contract. They must show that the government breached duties which the shareholders held personally and independently of their status as shareholders. In the instant case, the plaintiffs have failed to meet these criteria. Thus, while in certain unusual circumstances a third-party beneficiary status be accorded a shareholder, generally this has not been the case. While every action of a corporation is supposed to benefit its shareholders, our law has not viewed this general benefit as making every shareholder a third-party beneficiary. If this were the case, the shareholder derivative action would serve no purpose.

Suess, 33 Fed. Cl. at 94; see Castle, 301 F.3d at 1337 (shareholders lacked standing to sue as third-party beneficiaries because "their sole benefit under the alleged contract was in their capacity as shareholders"); Robo Wash, 223 Ct. Cl. at 696-97 ("before an individual who is not party to an agreement may sue for breach of such agreement, 'he must at least show that it was intended for his direct benefit'").

Here, plaintiff has failed to plead that DOE breached duties that plaintiff – as a minority interest holder in the Utilities – held personally and independently of its status as an interest holder. Plaintiff also has failed to plead that the Standard Contract reflects an intention to benefit plaintiff directly. In fact, the Standard Contracts between the utility companies and the Government express no such intention. See 10 C.F.R. § 961.11 (1983). Consequently, any claim

founded upon allegations that plaintiff is an intended beneficiary of the Standard Contract necessarily fails.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

JOHN C. EKMAN
JOSHUA E. GARDNER
Trial Attorneys
Department of Justice
Washington, D.C. 20530

May 12, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 12th day of May 2004, a copy of foregoing "DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr.