(ACE-PEACH BOTTOM)
Conformed

# PURCHASE AGREEMENT

BY AND AMONG

ATLANTIC CITY ELECTRIC COMPANY,

PECO ENERGY COMPANY

and

PSEG POWER LLC

Dated as of September 27, 1999

178957.08-WilmingtonS1A

(h) Seller's Nonqualified Decommissioning Funds as of the Closing Date, including all income, interest and other earnings accrued thereon, together with all required accounting and other records;

(i) Seller's Qualified Decommissioning Funds as of the Closing Date, including all income, interest and other earnings accrued thereon, together with all required accounting and other records;

(j) All books, operating records, operating, safety and maintenance manuals, engineering design plans, blueprints and as-built plans, specifications, procedures and similar items of Seller relating specifically to the Peach Bottom Station (subject to the right of Seller to retain copies of same for its use) other than such items which are proprietary to third parties and accounting records;

(k) All unexpired, transferable warranties and guarantees from third parties arising out of, in respect of, or in connection with, (i) any item of Real Property or personal property, or interest therein, included in the Purchased Assets or (ii) the Assumed Liabilities;

(l) All claims of Seller relating to or pertaining to the Department of Energy's defaults under the Department of Energy Standard Contract (including all claims for failure by the Department of Energy to take Spent Nuclear Fuel) accrued prior to, on or after the Closing Date, whether relating to periods prior to, on or after the Closing Date, and all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased Assets, other than the claims described in Section 2.2(j); and

(m) The rights of Seller in, to and under all causes of action against third parties with respect to, arising out of or in connection with Seller's rights, title and interests in and to the Purchased Assets or the Assumed Liabilities, or any portion thereof, whether accruing prior to, on or after the Closing Date, other than any such causes of action as constitute Excluded Assets or Excluded Liabilities, whether received as payment or credit against future liabilities, in each case, relating to any period prior to, on or after the Closing Date.

2.2 Excluded Assets. Notwithstanding anything to the contrary in this Agreement, nothing in this Agreement shall constitute or be construed as requiring Seller to sell, assign, convey, transfer or deliver, and neither PECO nor PSEG shall be entitled to purchase or acquire, any right, title or interest in, to or under the following assets and properties which are associated with the Purchased Assets, but

Buyers in connection with obtaining the portion of such Tax refund or credit owed to Seller);

(g) The minute books, stock transfer books, corporate seal and other corporate records of Seller;

(h) The right, title and interest of Seller in, to and under all contracts, agreements, arrangements, licenses and leases of any nature, other than the Seller's Agreements;

(i) All other assets and properties owned or leased by Seller which are not used and necessary for the operation of the Peach Bottom Station or any portion thereof;

(j) All claims of Seller relating to or pertaining to any refund or credit received on or after the Closing Date by PECO, as operator of the Peach Bottom Station, or its successors or permitted assigns, of all or any part of Department of Energy Decommissioning and Decontamination Fees for which Seller is or was liable; provided that Seller shall not have any right to pursue such claims separately, but shall be entitled to pursue such claims solely by joint action with PECO and any other interested parties approved by Buyers, such action to be controlled by PECO in its sole discretion; provided, also that if PECO shall receive any such refund or credit on or after the Closing Date of all or any part of such Department of Energy Decommissioning and Decontamination Fees, Seller's claim to a portion of such refund shall be limited to the amount of such refund or credit multiplied by a fraction, (i) the numerator of which is the amount of Decommissioning and Decontamination Fees with respect to the Peach Bottom Station paid by Seller or on Seller's behalf, and (ii) the denominator of which is the amount of Decommissioning and Decontamination Fees with respect to the Peach Bottom Station paid by all of the parties to the Owners Agreement or on their behalf; and provided, further, that the aforesaid claims shall constitute Excluded Assets (rather than Purchased Assets) after the Closing only if Seller shall continue to pay after the Closing its proportionate share of the costs and expenses (including reasonable legal fees) of pursuing any such claims (but not Department of Energy Decommissioning and Decontamination Fees), such proportionate share to be determined as if Seller had not transferred its rights, title and interests in and to the Purchased Assets to Buyers; and

(k) The right, title and interest of Seller in, to and under this Agreement, the Collateral Agreement and the Additional Agreements.

(ACE-SALEM)
Conformed

**PURCHASE AGREEMENT**

**BY AND BETWEEN**

**ATLANTIC CITY ELECTRIC COMPANY**

**and**

**PSEG POWER LLC**

**Dated as of September 27, 1999**

178025.10-WilmingtonS1A

(e) All machinery (mobile or otherwise), equipment (including computer hardware and software and communications equipment), vehicles, tools, spare parts, fixtures, furniture, furnishings and other personal property located at or in transit to the Salem Station or used and necessary for the operation of the Salem Station, in each case, on the Closing Date (collectively, the "Tangible Personal Property"), including the electrical transmission assets (as opposed to generation assets) set forth in Schedule 2.1(e);

(f) Subject to the receipt of necessary consents and approvals, the Seller's Agreements;

(g) Subject to the receipt of necessary consents and approvals, the Transferable Permits and all of Seller's rights, title and interests in and to any other permits, registrations, franchises, certificates, licenses and other authorizations, consents and approvals of Governmental Authorities relating to the ownership, lease, maintenance or operation of the Salem Station or any portion thereof;

(h) Seller's Nonqualified Decommissioning Funds as of the Closing Date, including all income, interest and other earnings accrued thereon, together with all required accounting and other records;

(i) Seller's Qualified Decommissioning Funds as of the Closing Date, including all income, interest and other earnings accrued thereon, together with all required accounting and other records;

(j) All books, operating records, operating, safety and maintenance manuals, engineering design plans, blueprints and as-built plans, specifications, procedures and similar items of Seller relating specifically to the Salem Station (subject to the right of Seller to retain copies of same for its use) other than such items which are proprietary to third parties and accounting records;

(k) All unexpired, transferable warranties and guarantees from third parties arising out of, in respect of, or in connection with, (i) any item of Real Property or personal property, or interest therein, included in the Purchased Assets or (ii) the Assumed Liabilities;

(l) All claims of Seller relating to or pertaining to the Department of Energy's defaults under the Department of Energy Standard Contract (including all claims for failure by the Department of Energy to take Spent Nuclear Fuel) accrued prior to, on or after the Closing Date, whether relating to periods prior to, on or after

the Closing Date, and all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased Assets, other than the claims described in Section 2.2(l); and

(m) The rights of Seller in, to and under all causes of action against third parties with respect to, arising out of or in connection with Seller's rights, title and interests in and to the Purchased Assets or the Assumed Liabilities, or any portion thereof, whether accruing prior to, on or after the Closing Date, other than any such causes of action as constitute Excluded Assets or Excluded Liabilities, whether received as payment or credit against future liabilities, in each case, relating to any period prior to, on or after the Closing Date, other than the claims described in Section 2.2(m).

2.2 Excluded Assets. Notwithstanding anything to the contrary in this Agreement, nothing in this Agreement shall constitute or be construed as requiring Seller to sell, assign, convey, transfer or deliver, and Buyer shall not be entitled to purchase or acquire, any right, title or interest in, to or under the following assets and properties which are associated with the Purchased Assets, but which are hereby specifically excluded from the definition of Purchased Assets (collectively, the "Excluded Assets"):

(a) The right, title and interest of Seller in, to and under all electrical transmission or distribution assets (as opposed to generation assets) located at or forming part of the Salem Station (whether or not regarded as a "transmission" or "generation" asset for regulatory or accounting purposes), including all switchyard facilities, substation facilities and support equipment, as well as all permits, contracts (including the LDV Agreement) and warranties, to the extent they relate to such transmission and distribution assets (other than the electrical transmission assets identified in Schedule 2.1(e) included as Purchased Assets) (collectively, the "Transmission Assets");

(b) The right, title and interest of Seller in, to and under certain switches and meters, gas facilities, revenue meters and remote testing units, drainage pipes and systems, pumping equipment and associated piping, in each case, located at or forming part of the Salem Station as identified in Schedule 2.2(b) attached hereto;

(c) All certificates of deposit, shares of stock, securities, bonds, debentures, evidences of indebtedness, and interests in joint ventures, partnerships, limited liability companies and other entities, including account balances under

(j) The right, title and interest of Seller in, to and under all contracts, agreements, arrangements, licenses and leases of any nature, other than the Seller's Agreements;

(k) All other assets and properties owned or leased by Seller which are not used and necessary for the operation of the Salem Station or any portion thereof;

(l) All claims of Seller relating to or pertaining to any refund or credit received on or after the Closing Date by Buyer or its successors or permitted assigns of all or any part of Department of Energy Decommissioning and Decontamination Fees for which Seller is or was liable; provided that Seller shall not have any right to pursue such claims separately, but shall be entitled to pursue such claims solely by joint action with Buyer and any other interested parties approved by Buyer, such action to be controlled by Buyer in its sole discretion; provided, also, that if Buyer shall receive any such refund or credit on or after the Closing Date of all or any part of such Department of Energy Decommissioning and Decontamination Fees, Seller's claim to a portion of such refund shall be limited to the amount of such refund or credit multiplied by a fraction, (i) the numerator of which is the amount of Decommissioning and Decontamination Fees with respect to the Salem Station paid by Seller or on Seller's behalf, and (ii) the denominator of which is the amount of Decommissioning and Decontamination Fees with respect to the Salem Station paid by all of the parties to the Owners Agreement or on their behalf; and provided, further, that the aforesaid claims shall constitute Excluded Assets (rather than Purchased Assets) after the Closing only if Seller shall continue to pay after the Closing its proportionate share of the costs and expenses (including reasonable legal fees) of pursuing any such claims (but not Department of Energy Decommissioning and Decontamination Fees), such proportionate share to be determined as if Seller had not transferred its rights, title and interests in and to the Purchased Assets to Buyer;

(m) All rights of Seller in, to and under the action against Westinghouse Electric Corporation or its Affiliates, or their respective successors or assigns, captioned Public Service Electric & Gas Company, et al. v. Westinghouse Electric Corporation, C.A. No. 96-925 (MTB) in the United States District Court for the District of New Jersey, and all related actions currently pending in state courts; provided that the aforesaid claims shall constitute Excluded Assets (rather than Purchased Assets) after the Closing only if Seller shall continue to pay after the Closing its proportionate share of the costs and expenses (including reasonable legal fees) of pursuing any such claims, such proportionate share to be determined as if

(HOPE CREEK)
Conformed

# PURCHASE AGREEMENT

BY AND BETWEEN

ATLANTIC CITY ELECTRIC COMPANY

and

PSEG POWER LLC

Dated as of September 27, 1999

179450.03-WilmingtonS1A

in transit to the Hope Creek Station or used and necessary for the operation of the Hope Creek Station, in each case, on the Closing Date (collectively, the "Tangible Personal Property"), including the electrical transmission assets (as opposed to generation assets) set forth in Schedule 2.1(e);

(f) Subject to the receipt of necessary consents and approvals, the Seller's Agreements;

(g) Subject to the receipt of necessary consents and approvals, the Transferable Permits and all of Seller's rights, title and interests in and to any other permits, registrations, franchises, certificates, licenses and other authorizations, consents and approvals of Governmental Authorities relating to the ownership, lease, maintenance or operation of the Hope Creek Station or any portion thereof;

(h) Seller's Nonqualified Decommissioning Funds as of the Closing Date, including all income, interest and other earnings accrued thereon, together with all required accounting and other records;

(i) Seller's Qualified Decommissioning Funds as of the Closing Date, including all income, interest and other earnings accrued thereon, together with all required accounting and other records;

(j) All books, operating records, operating, safety and maintenance manuals, engineering design plans, blueprints and as-built plans, specifications, procedures and similar items of Seller relating specifically to the Hope Creek Station (subject to the right of Seller to retain copies of same for its use) other than such items which are proprietary to third parties and accounting records;

(k) All unexpired, transferable warranties and guarantees from third parties arising out of, in respect of, or in connection with, (i) any item of Real Property or personal property, or interest therein, included in the Purchased Assets or (ii) the Assumed Liabilities;

(l) All claims of Seller relating to or pertaining to the Department of Energy's defaults under the Department of Energy Standard Contract (including all claims for failure by the Department of Energy to take Spent Nuclear Fuel) accrued prior to, on or after the Closing Date, whether relating to periods prior to, on or after the Closing Date, and all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased Assets, other than the claims described in Section 2.2(l); and

(k) All other assets and properties owned or leased by Seller which are not used and necessary for the operation of the Hope Creek Station or any portion thereof;

(l) All claims of Seller relating to or pertaining to any refund or credit received on or after the Closing Date by Buyer or its successors or permitted assigns of all or any part of Department of Energy Decommissioning and Decontamination Fees for which Seller is or was liable; provided that Seller shall not have any right to pursue such claims separately, but shall be entitled to pursue such claims solely by joint action with Buyer and any other interested parties approved by Buyer, such action to be controlled by Buyer in its sole discretion; provided, also, that if Buyer shall receive any such refund or credit on or after the Closing Date of all or any part of such Department of Energy Decommissioning and Decontamination Fees, Seller's claim to a portion of such refund shall be limited to the amount of such refund or credit multiplied by a fraction, (i) the numerator of which is the amount of Decommissioning and Decontamination Fees with respect to the Hope Creek Station paid by Seller or on Seller's behalf, and (ii) the denominator of which is the amount of Decommissioning and Decontamination Fees with respect to the Hope Creek Station paid by all of the parties to the Owners Agreement or on their behalf; and provided, further, that the aforesaid claims shall constitute Excluded Assets (rather than Purchased Assets) after the Closing only if Seller shall continue to pay after the Closing its proportionate share of the costs and expenses (including reasonable legal fees) of pursuing any such claims (but not Department of Energy Decommissioning and Decontamination Fees), such proportionate share to be determined as if Seller had not transferred its rights, title and interests in and to the Purchased Assets to Buyer; and

(m) The right, title and interest of Seller in, to and under this Agreement and the Additional Agreements.

2.3 Assumed Liabilities. At the Closing, Buyer shall assume and agree to pay, perform and otherwise discharge, without recourse to Seller (other than as set forth herein or in the Owners Agreement, as amended by the Amendment to Owners Agreement), in accordance with the terms and subject to the conditions set forth herein, all of the liabilities and obligations of Seller, direct or indirect, known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, which relate to the Purchased Assets (other than Excluded Liabilities) (the "Assumed Liabilities"), including those set forth below; provided that nothing set forth in this Section 2.3 shall require Buyer to assume any liabilities or obligations that are expressly excluded pursuant to Section 2.4:

```
US178INR                U.S. CA$H-LINK SYSTEM                 DATE: 04/28/95
                       DISPLAY MESSAGE DETAIL                 TIME: 12:50:01
                        MESSAGE # 0428001076                  PAGE:    20

  ALC              CONF-DATE    AS-OF-DATE/RSN        REF-INPUT-KEY
89000003           04/28/1995      /  /               0428B1Q8703C004978
TO    021030004    TYPE 1000    SPEC HAND
FROM 021000021     REF  511802008201000O       AMOUNT $       1,900,892.00
SENDER
CHASE NYC          /ORG=PUBLIC SERVICE ELEC & GAS CO
RECEIVER
TREAS NYC          /BTR/BNF=/AC-89000003 OBI=U S DEPARTMENT OF ENERGY RE HOPE
RELATED
CREEK NUCLEAR WASTE FUND DISPOSAL SER VICE FEE CHASE NY REF 5118020082010000
                                                                       000000

IMAD                                     URC       OMAD
0428 B1Q8703C 004978 04281243 FT1B       010122 0428 B1QFD01A 000924 04281243 FT1B

 PF2  RETURN TO SELECTION SCREEN   PF3  RETURN TO MENU   PF7  PgUp   PF8  PgDn
 U005 'ENTER' FOR NEXT PAGE

  SO   IN SESSION   READY       COMM OK                     AO DCD RAP
```

Public Service, Elec.
NE4441l = 1,900,892.

```
US1781HD                U.S. CASH-LINK SYSTEM              DATE: 07/31/95
                       DISPLAY MESSAGE DETAIL              TIME: 15:30:39
                        MESSAGE # 0731000838               PAGE:    21

  ALC             CONF-DATE    AS-OF-DATE/RSN        REF-INPUT-KEY
89000003          07/31/1995      /  /               0731B1B8704C004509
TO   021030004    TYPE 1000    SPEC HAND
FROM 021000021    REF  5212020065590000     AMOUNT $      2,095,149.00
SENDER
CHASE NYC         /ORG=PUBLIC SERVICE ELEC & GAS CO
RECEIVER
TREAS NYC         /BTR/BNF=/AC-89000003 OBI=U S DEPARTMENT OF ENERGY RE HOPE
RELATED
CREEK NUCLEAR WASTE FUND DISPOSAL SER VICE FEE CHB#5212020065590000

                                                                   000000

IMAD                               URC      OMAD
0731 B1Q8704C 004509 07311240 FT1B    E08549 0731 B1QFD01R 000743 07311240 FT1B

 PF2  RETURN TO SELECTION SCREEN   PF3  RETURN TO MENU   PF7  PgUp   PF8  PgDn
 U005 'ENTER' FOR NEXT PAGE

 SO  IN SESSION  READY      COMM OK                          AO OCD RAP
```

Public Service Elec + GAs
NE 44411

```
US178INQ                      U.S. CASH-LINK SYSTEM                 DATE: 04/28/95
                             DISPLAY MESSAGE DETAIL                 TIME: 12:50:20
                              MESSAGE # 0428001077                  PAGE:     21

   ALC                 CONF-DATE    AS-OF-DATE/RSN          REF-INPUT-KEY
89000003               04/28/1995      /  /                 0428B1087040005192
TO     021030004       TYPE 1000    SPEC HAND
FROM 021000021         REF   5118020082020000        AMOUNT $        1,788,306.00
SENDER
CHASE NYC              /ORG=PUBLIC SERVICE ELEC & GAS CO
RECEIVER
TREAS NYC              /BTR/BNF=/AC-89000003 OBI=U S DEPARTMENT OF ENERGY RE SALEM 1
RELATED
& 2 NUCLEAR WASTE FUND DISPOSAL SE RVICE FEE CHASE NY REF 5118020082020000
                                                                          000000

IMAD                                      URC       OMAD
0429 B1Q8704C 005192 04281243 FT1B      G10124  0428 B1QFDO1A 000925 04281243 FT1B

 PF2  RETURN TO SELECTION SCREEN    PF3  RETURN TO MENU    PF7  PgUp    PF8  PgDn
 U005 'ENTER' FOR NEXT PAGE

  SO   IN SESSION  READY        COMM OK                             AO DCD RAP
```

Public Service Elec
NE44480

```
US179IN9                U.S. CASH-LINK SYSTEM              DATE: 07/31/95
                      DISPLAY MESSAGE DETAIL               TIME: 13:30:18
                       MESSAGE # 0731000357                PAGE:    80

  ALC            CONF-DATE    AS-OF-DATE/RSN        REF-INPUT-KEY
89000003         07/31/1995     /  /                0731B1GB703C004174
TO   021030004   TYPE 1000    SPEC HAND
FROM 021000021   REF  SE12020065500000      AMOUNT $       2,521,667.00
SENDER
CHASE NYC        /ORG=PUBLIC SERVICE ELEC & GAS CO
RECEIVER
TREAS NYC        /BTR/BNF=/AC-89000003 OBI=U S DEPARTMENT OF ENERGY RE SALEM 1
RELATED
& 2 NUCLEAR WASTE FUND DISPOSAL SE RVICE FEE CHB#SE12020065500000
                                                                      000000

IMAD                                 URC      OMAD
0731 B1GB703C 004174 07311240 FT1B    008646 0731 B1QFD01A 000742 07311240 FT1B

PF2  RETURN TO SELECTION SCREEN   PF3  RETURN TO MENU   PF7  PgUp   PF8  PgDn
U005 'ENTER' FOR NEXT PAGE

 S0  IN SESSION  READY       COMM OK                     AO DCD RAP
```

Public Service Elec
NE444 80

```
US178INQ                   U.S. CA$H-LINK SYSTEM                DATE: 08/31/95
                          DISPLAY MESSAGE DETAIL                TIME: 14:10:29
                          MESSAGE # 0831001131                  PAGE:      7

  ALC               CONF-DATE    AS-OF-DATE/RSN         REF-INPUT-KEY
89000003            08/31/1995     /  /                 0831B1Q8024C003716
TO    021030004     TYPE 1000     SPEC HAND
FROM 021000089      REF   14           6836      AMOUNT $        |3,879,092.00
SENDER
CITIBANK NYC        /ORG=00074253PHILADELPHIA ELECTRIC COMPANY/REF-0000001073
RECEIVER
TREAS NYC           /CTR/BNF=DEPARTMENT OFENERGY/AC-89000003OBI=TREAS NYC/CTR/BNF
RELATED
/AC-89000003 OBI PECO ENERGY SPT/FL PEACH BOTTOM 5/1/95-7/31/95 CONTRACT NO DECR
01-83NE-44405
                                                                          000000

IMAD                                     URC      OMAD
0831 B1Q8024C 003716 08311352 FT1B                0831 B1QFD01A 001000 08311352 FT1B

 PF2  RETURN TO SELECTION SCREEN   PF3  RETURN TO MENU   PF7  PgUp   PF8  PgDn
 U002 INQUIRY COMPLETED

  S0  IN SESSION  READY       COMM OK                             AO DCD RAP
```

Philadelphia Electric
NE44405

```
US17BINQ                 U.S. CASH-LINK SYSTEM             DATE: 05/31/95
                         DISPLAY MESSAGE DETAIL            TIME: 13:09:15
                         MESSAGE # 0531000958              PAGE:     3

   ALC            CONF-DATE    AS-OF-DATE/RSN       REF-INPUT-KEY
89000003          05/31/1995     /  /               05318108024C003150
TO   021030004    TYPE 1000    SPEC HAND
FROM 021000089    REF  14         5932      AMOUNT $       3,612,079.00
SENDER
CITIBANK NYC      /ORG=00074253PHILADELPHIA ELECTRIC COMPANY/REF-000001073
RECEIVER
TREAS NYC         /CTR/BNF=DEPT OF ENERGY/AC-89000003OBI=TREAS NYC/CTR/BNF /AC-
RELATED
9000003 OBI PECO ENERGY CO. SPENT FUEL PEACH BOTTOM CONTRACT NO DECR01-83NE-4440
5 2/01/95 TO 4/30/95
                                                                          000000

IMAD                              URC      OMAD
0531 B1QB024C 003150 05311305 FT1B         0531 B1QFDQ1A 000811 05311305 FT1B

 PF2  RETURN TO SELECTION SCREEN   PF3  RETURN TO MENU   PF7  PgUp   PF8  PgDn
U002 INQUIRY COMPLETED

 30  IN SESSION  READY       CONN OK                          A0 DCD SAP
```

Philadelphia Elec.
NE44405