No. 04-0034C
into which has been consolidated No. 04-0036C
(Judge Christine Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DELMARVA POWER AND LIGHT COMPANY,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

# PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM PUBLIC SERVICE ENTERPRISE GROUP, INC., PUBLIC SERVICE ELECTRIC AND GAS COMPANY, AND PSEG POWER, LLC AND MEMORANDUM OF LAW IN SUPPORT THEREOF

---

Richard J. Conway
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037
Tel: (202) 785-9700
Fax: (202) 887-0689
*Counsel of Record for*
*Delmarva Power & Light Company &*
*Atlantic City Electric Company*

Of Counsel:
Nicholas W. Mattia, Jr.
Bradley D. Wine
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037

Todd Goodman, Esq.
Assistant General Counsel
Pepco Holdings, Inc.
P. O. Box 231
Wilmington, Delaware 19899

January 12, 2006

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

INDEX TO EXHIBITS ..... iii

INTRODUCTION ..... 2

FACTUAL BACKGROUND ..... 2

ARGUMENT ..... 9

I. PSEG'S OBJECTION BASED ON ITS INTERPRETATION OF THE ASSET PURCHASE AND SALE AGREEMENTS IS WITHOUT MERIT ..... 10

II. THE DOCUMENTS SOUGHT BY PLAINTIFFS ARE NOT PUBLICLY AVAILABLE NOR ARE THEY AVAILABLE FROM SOURCES OTHER THAN PSEG ..... 11

III. PSEG's ADDITIONAL OBJECTIONS LACK MERIT ..... 13

A. PSEG's Objections On Confidentiality Or Trade Secret Are Mooted By The Protective Order Issued In This Case And Other Factual Circumstances ..... 14

B. Plaintiffs Are Not Seeking Duplicative Production, But Rather Documents Responsive To Both Plaintiffs' And The Government's Requests ..... 15

C. Terminology Used In Plaintiffs' Subpoena Is Not Vague Or Ambiguous ..... 16

CONCLUSION ..... 17

EXHIBITS

## TABLE OF AUTHORITIES

Page

Cases:

*Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691 (D. Nev. 1994) ................................ 14

United States Court of Federal Claims Rules:

Rule 45 ........................................................................................................ 1, 6, 9

## INDEX TO EXHIBITS

| | Exhibit |
|---|---|
| Plaintiffs' Subpoena *duces tecum* dated September, 28, 2005 | A |
| Affidavit of Nicholas W. Mattia, Jr., Esq. | B |
| Letter from Plaintiffs to PSEG dated January 26, 2005 | C |
| Affidavit of Todd L. Goodman, Esq. | D |
| PSEG's written objections to Plaintiffs' Subpoena dated October 12, 2005 | E |
| Letter from Plaintiffs to PSEG dated October 18, 2005 | F |
| Letter from PSEG to Plaintiffs dated November 1, 2005 | G |
| Letter from Plaintiffs to PSEG dated November 11, 2005 | H |
| Letter from PSEG to Plaintiffs dated December 7, 2005 | I |
| E-mail communication from Plaintiffs' counsel to PSEG's outside counsel dated December 27, 2005 | J |
| Letter from PSEG to Plaintiffs dated January 4, 2006 | K |
| PSEG's assertion re burden of producing documents | L |
| Affidavit of Lisa M. Barbas, Esq. | M |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DELMARVA POWER AND LIGHT COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 04-0034C, into which has been consolidated No. 04-0036C (Judge Christine Miller) |

**PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM PUBLIC SERVICE ENTERPRISE GROUP, INC., PUBLIC SERVICE ELECTRIC AND GAS COMPANY, AND PSEG POWER, LLC**

Pursuant to Rule 45(c)(2)(B) of the Rules of the United States Court of Federal Claims ("RCFC"), plaintiffs Delmarva Power & Light Company ("Delmarva") and Atlantic City Electric Company ("Atlantic") (collectively, "Plaintiffs"), respectfully move to compel the production of documents requested pursuant to Plaintiffs' subpoena *duces tecum*, dated September 28, 2005 ("Subpoena") (attached hereto as Exhibit A), and which are being improperly withheld by Public Service Enterprise Group, Inc., Public Service Electric and Gas Company, and PSEG Power, LLC (collectively, "PSEG"). Plaintiffs also request the Court's expedited consideration of this matter as further articulated in the accompanying Motion for Expedited Consideration filed herewith. Pursuant to RCFC 45(c)(2)(B), Plaintiffs have provided PSEG notice of this Motion to Compel and Motion for Expedited Consideration. As required by paragraph 10 of the Court's case management rules and as described in greater detail below, Plaintiffs have in good faith conferred with PSEG in an effort to resolve the matters in dispute. Those efforts have proven unsuccessful.

## INTRODUCTION

Plaintiffs are the sellers of partial interests in Salem Nuclear Generating Station Units 1 and 2 and Hope Creek Nuclear Generating Station (the "Nuclear Stations"), having sold their interests to the co-owner of the facilities, PSEG Power LLC in 1999. As a result of the sale, and as the Court acknowledged during the June 28, 2005 status conference, Plaintiffs have limited documents relating to the facilities. Thus, Plaintiffs have sought documents from PSEG including, but not limited to: 1) operational data related to spent fuel storage and decommissioning, along with associated costs at the Nuclear Stations; 2) economic valuations of the Nuclear Stations; and 3) publicly filed documents prepared in connection with regulatory proceedings at the New Jersey Board of Public Utilities ("NJBPU") (NJBPU Docket Nos. EO97070461, EO97070462, and EX9412058540). After numerous attempts to obtain these materials voluntarily from PSEG proved unsuccessful, Plaintiffs were required to issue the formal Subpoena. *See* Exhibit A.

Although PSEG has provided some documents to Plaintiffs in response to the Subpoena, PSEG has improperly refused to provide Plaintiffs with a significant number of documents within PSEG's possession, care, custody, and/or control. PSEG has not denied the existence of the documents requested, but has merely refused to produce the documents on the basis of an alleged undue burden and inconvenience. As discussed below, PSEG's refusal to produce essential documents in response to the Subpoena lacks a basis in the law and Plaintiffs' Motion to Compel should therefore be granted.

## FACTUAL BACKGROUND

This Motion to Compel is the culmination of more than a year-long effort by Plaintiffs to obtain documents from PSEG that are vital to the quantification of Plaintiffs' damages in this matter. In essence, Plaintiffs are seeking documents which

relate to PSEG's valuation of the identical nuclear assets that are the subject of Plaintiffs' Amended Complaint. Furthermore, PSEG valued the Nuclear Stations approximately two years prior to the Plaintiffs' sale, utilizing the same valuation methodology employed by arms-length purchasers of nuclear assets. The results of PSEG's internal valuation of the Nuclear Stations for the above referenced regulatory proceeding resulted in a dollar per kilowatt value very similar to that which PSEG paid to Plaintiffs. As such, PSEG's valuation studies are uniquely relevant and necessary to the determination of Plaintiffs' damages claims.

Plaintiffs' efforts to obtain relevant documents did not start with PSEG. In 2004, prior to seeking production from PSEG, Plaintiffs made significant efforts to obtain publicly available information from the NJBPU. As identified in the accompanying Affidavit of Nicholas W. Mattia, Jr. ("Mattia Affidavit") (attached hereto as Exhibit B), Counsel for Plaintiffs has spent significant time and effort combing through files at the NJBPU, trying to obtain relevant documents without the need for issuance of third-party requests. *See* Exhibit B at 2. In addition, Mr. Mattia had numerous phone calls with staff members of the NJBPU and also spoke and met with counsel for the New Jersey Ratepayer Advocate's office and the New Jersey Attorney General's office in an effort to locate necessary documents. *See id*. at 3. Regrettably, as noted in Mr. Mattia's affidavit, these efforts, as well as numerous other efforts he undertook as outlined in Exhibit B, proved to be unsuccessful. *Id.*

While Plaintiffs' efforts to obtain publicly available documents continued, because of a general lack of success obtaining documents through public resources, on January 26, 2005, Plaintiffs sent a letter request to PSEG, as the buyer of their nuclear interests, seeking the voluntary production of relevant documents (attached hereto as

Exhibit C). PSEG failed to provide either a written or oral response to this letter request. After this Court entered its scheduling order in this matter, Plaintiffs again sought cooperation from PSEG.

On July 28, 2005, Defendant, the United States (the "Government") served its own subpoena *duces tecum* on PSEG. PSEG served objections to the Government's subpoena on August 16, 2005, to which the Government did not respond. Based on teleconferences with PSEG, Plaintiffs expected PSEG to produce a substantial quantity of documents in response to the Government's subpoena. To the contrary, PSEG produced only the Purchase and Sale Agreements for the nuclear interests and the equivalent of seven boxes of documents.

Upon review of the documents produced in response to the Government's subpoena, and after numerous teleconferences and a meeting with PSEG's counsel on August 26, 2005 regarding its voluntary production of documents, it was clear that PSEG would not produce documents absent the issuance of a subpoena by Plaintiffs. Among the efforts made to acquire the documents through voluntary productions were: (1) an in-person meeting between counsel for Plaintiffs and PSEG on August 26, 2005; (2) numerous calls from in-house counsel for Plaintiffs to in-house counsel for PSEG seeking cooperation regarding the scope of production; and (3) multiple calls and electronic mail messages between outside counsel between August 31, 2005 and September 16, 2005 regarding production of documents.

In addition to counsel's efforts to obtain PSEG's cooperation, as is described in greater detail in the Affidavit of Todd L. Goodman, Esq., Assistant General Counsel to Pepco Holdings, Inc. ("PHI") the corporate parent of Atlantic and Delmarva ("Goodman Affidavit") (attached hereto as Exhibit D), Plaintiffs' management

attempted to obtain the requested documents from their peers within PSEG. *See* Exhibit D at 6, 8-11. As mentioned above, Plaintiffs initial request to PSEG on January 26, 2005 went unanswered. *See id.* at 6. Subsequently, Mr. Goodman coordinated efforts with Thomas S. Shaw, Executive Vice President and Chief Operating Officer of PHI. Mr. Shaw corresponded with Frank Cassidy, President and Chief Operating Officer of PSEG Power, LLC, on numerous occasions, to no avail. *See id.* at 8-11. Mr. Goodman also pursued the requested information via other means, including meetings, along with Mr. Mattia, with the NJBPU, the Ratepayer Advocate, and Atlantic's former counsel, all of which proved futile. *See id.* at 7, 12.

After considering the small universe of documents PSEG produced in response to the Government's subpoena *duces tecum*, on September 28, 2005, Plaintiffs served their own subpoena on PSEG. On October 12, 2005, PSEG served written objections to the subpoena and referred Plaintiffs to documents already produced in response to the Government's subpoena (attached hereto as Exhibit E). PSEG's objections included twelve "General" objections and individual request-specific objections. Among PSEG's objections were assertions that: 1) the Subpoena is unlawful because Plaintiffs' claims are barred by the respective Purchase and Sale Agreements; and 2) the Subpoena is unduly burdensome in that it seeks information which is confidential, duplicative, publicly available, vague, or subject to a privilege.[1]

[1] PSEG has objected to the production of documents on the basis of the attorney-client privilege, the work product doctrine, and other privileges, immunities or protections. *See* General Objection 2. While PSEG has produced a privilege log in response to the Government's subpoena *duces tecum*, PSEG has not produced a privilege log in response to Plaintiffs' subpoenas, nor confirmed that the previous privilege log produced to the Government lists the only privileged documents responsive to Plaintiffs' subpoena *duces tecum*. Therefore, Plaintiffs reserve their right to challenge PSEG's privilege objections at such time when a privilege log is produced.

On October 18, 2005, in accordance with RCFC 45(c)(2)(B)'s notice provision, Plaintiffs provided letter notification to PSEG's counsel that Plaintiffs would seek the Court's assistance if the parties could not resolve their disagreements amicably (attached hereto as Exhibit F). The letter requested a response by October 20, 2005. On October 21, 2005, Plaintiffs' counsel received a voicemail message indicating that a formal response to the letter notification was forthcoming. Having heard no response, on November 1, 2005, Plaintiffs made a further inquiry of PSEG's counsel and received a written response that afternoon (attached hereto as Exhibit G). PSEG's November 1, 2005, response reiterated PSEG's basic position that PSEG believes Plaintiffs "have no right to bring the current claims." In addition, PSEG asserted that it "has searched for and believes it has provided all cost or valuation documents relating to the acquisition of Delmarva's and AE's interests in the plants . . . in response to the [Government's] subpoena *duces tecum*." As to Plaintiffs' request for materials submitted to the NJBPU, PSEG asserted that, because it believed the documents to be available from other sources, PSEG was not obligated to produce the requested information.[2] Finally, PSEG asserted that it was searching for additional responsive documents related to capital budgets, decommissioning costs, and additional financial information that Plaintiffs had requested and expected to produce the documents within ten days.

On November 11, 2005, Plaintiffs' counsel wrote to counsel for PSEG to specifically address PSEG's continued objection to producing cost and valuation documents (attached hereto as Exhibit H). Counsel for Plaintiffs pointed out that

---

[2] PSEG asserted that it was not obligated to comply with the Subpoena "[d]ue to the burdensomeness of locating, securing, and copying these documents." Exhibit G at 2, ¶ 2. PSEG did not identify how the burden to it would be any more significant than the burden to any other third party from whom it believed Plaintiffs should obtain the documents at issue.

PSEG's assertion that it had produced all valuation documents was not correct. In particular, counsel identified that PSEG, through its regulated utility affiliate, had performed and submitted in the aforementioned NJBPU regulatory proceedings, very detailed analysis of its valuation of the Nuclear Stations. Counsel for Plaintiffs informed counsel for PSEG that PSEG's assertion that the documents being sought must be obtained from sources other than PSEG was without merit. Finally, counsel noted that PSEG had not addressed Plaintiffs' request for production of documents relating to communications between PSEG and Philadelphia Electric Company ("PECO"), the other purchaser of Plaintiffs interests in the Nuclear Stations.

On December 7, 2005, counsel for PSEG responded to the November 11, 2005 letter and reiterated its position that it would not produce documents that it believed could be secured elsewhere, Plaintiffs' assertions to the contrary notwithstanding (attached hereto as Exhibit I). PSEG's letter indicated that, in addition to the seven boxes of documents produced to the Government, PSEG would produce four additional boxes of documents. *Id.*

On December 20, 2005, counsel for PSEG and counsel for Plaintiffs discussed their ongoing discovery dispute outside Judge Lettow's courtroom following a hearing in the *Boston Edison* matter. On December 27, 2005, counsel for Plaintiffs sent an electronic mail message to counsel for PSEG again seeking production of the relevant documents in light of their unavailability from other sources (attached hereto as Exhibit J). On January 4, 2006, counsel for PSEG wrote a letter to counsel for Plaintiffs (attached hereto as Exhibit K), responding to the in-person meeting of December 20 and the electronic mail message of December 27, 2005. PSEG's January 4, 2006 letter, for the first time, identifies PSEG's position that Plaintiffs are required to articulate through

affidavit or declaration the efforts engaged in to date to secure the production of documents being sought from PSEG through other means, even though counsel for Plaintiffs had previously identified those efforts and proffered that they have heretofore been unsuccessful.[3] PSEG asserts:

> Second, as we stated in our December 7, 2005 letter to you, it remains PSEG's position that you have not conclusively established that the requested NJBPU proceedings are unavailable to your clients from its counsel or other sources. PSEG maintains that searching for and supplying these documents should in the first instance fall on Delmarva and ACE, as the plaintiffs in their case against the U.S. Government. In particular, before shifting that burden to PSEG (a third-party), Delmarva and ACE need to establish by declaration or affidavit (1) the efforts made to locate the relevant NJBPU documents, (2) why the documents are not available in their own files or the files of their counsel, LeBoeuf Lamb, and (3) the particular NJBPU documents (testimony, exhibits, etc.) that Delmarva and ACE want PSEG to locate. Absent such a showing and a particularized list of NJBPU information requested from PSEG, PSEG is unwilling to expend the substantial time and effort associated with a further search of its files. Such an effort simply constitutes an undue burden on PSEG (among other objections outlined in its RCFC 45 objections and responses), particularly given that PSEG's staff has been preoccupied finalizing the merger with Exelon.

Exhibit K at 1-2. While Plaintiffs have undertaken substantial effort to address concerns raised by PSEG and work out an amicable resolution of its dispute surrounding the Subpoena, those efforts have proven unsuccessful. The limited scope of documents requested by Plaintiffs are not merely relevant to their claims; *they are essential*. As noted repeatedly above, for the vast majority of documents at issue, PSEG does not dispute that PSEG possesses the documents. PSEG simply refuses to produce them.

---

[3] To the extent that an affidavit or declaration is the necessary prerequisite for PSEG's compliance with the Subpoena, PSEG should not oppose Plaintiffs' Motion to Compel, and should produce the relevant documents forthwith, as Plaintiffs have attached such affidavits in support of their motion.

PSEG's stonewalling is without merit and Plaintiffs therefore respectfully request that the Court grant the present Motion to Compel.

## ARGUMENT

RCFC 45, like its Federal Rule of Civil Procedure ("FRCP") counterpart, provides very limited bases upon which a party can move to modify or quash a subpoena. RCFC 45(c)(3) provides that a subpoena may be quashed or modified only if it:

> (A)(i) fails to allow reasonable time for compliance;
>
> (ii) requires a person not a party or an officer of a party to travel to a place more than 100 miles from the place where the person resides . . . ;
>
> (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
>
> (iv) subjects a person to undue burden.[4]

Plaintiffs assert that the history set forth above makes it abundantly clear that PSEG does not meet any of the bases for relief from its obligation to respond to the Subpoena.

Although PSEG asserts numerous general objections to its obligation to respond to the Subpoena, its letter and other responses focus on two primary objections. First, that Plaintiffs have no right to bring the claims asserted in this proceeding. Second, that production of the requested documents would be an undue burden on PSEG. As to the former objection, as discussed below, this Court has ruled numerous times that Plaintiffs have the right to bring the claims asserted in this proceeding. As to the latter objection, Plaintiffs' need for the documents in question and their inability to secure the defined universe of documents from other sources outweighs any undefined

[4] RCFC 45(c)(3)(B) provides that the Court may *sua sponte* quash, modify, or condition a subpoena on similar grounds.

"burden" invoked by PSEG. Although counsel's representations to this effect should have been sufficient to secure PSEG's cooperation, the declarations attached to this Motion establish that Plaintiffs have satisfied their burden pursuant to the Rules of this Court.

It is important to recognize the scope of PSEG's refusal to produce documents, not only in response to the Subpoena issued by Plaintiffs, but also in response to the subpoena issued by the Government. In General Objection 7, PSEG asserts that "[s]ome requests would require the compilation and production of hundreds of thousands of pages of material at substantial expense and person-hours of efforts." *See* Exhibit E at 4. Despite the fact that PSEG acknowledges that there are hundreds of thousands of pages of material responsive to Plaintiffs' narrowly tailored requests, PSEG initially produced only the seven boxes produced to the Government, and since has produced only four additional boxes. PSEG simply cannot have it both ways, claiming in one breath that Plaintiffs' requests are unduly burdensome because hundreds of thousands of pages of material are responsive, and claiming in the next that it has produced all responsive documents.

## I. PSEG'S OBJECTION BASED ON ITS INTERPRETATION OF THE ASSET PURCHASE AND SALE AGREEMENTS IS WITHOUT MERIT

In its general objections, and each piece of correspondence subsequent thereto, PSEG objects to Plaintiffs' requests because PSEG believes Plaintiffs have no right to bring the claims they assert. PSEG takes this position on the faulty premise that Plaintiffs' maintenance of the instant action is in violation of the Purchase and Sale Agreements between the parties. There is no legal basis to support PSEG's position as, on multiple occasions, the Court of Federal Claims has upheld Plaintiffs' rights to bring the instant actions. *See* Order and Opinion, *Delmarva Power & Light Co. v. United States,*

No. 04-0034C (Dec. 3, 2004); Order and Opinion, *Delmarva Power & Light Co. v. United States*, No. 04-0034C (July 1, 2005). Where this Court has granted Plaintiffs the opportunity to prove its claims at trial, PSEG cannot disregard the Court's determination and withhold the production of relevant documents based on its own contrary assessment of Plaintiffs' claims.

Furthermore, PSEG has previously recognized Plaintiffs' rights to bring the instant action. In an April 20, 2005 letter to Plaintiffs and the Government (attached hereto as Exhibit L), PSEG asked that the parties inform the Court of PSEG's view that Plaintiffs' and PSEG's cases were sufficiently distinct legally and procedurally such that consolidation was not warranted and that the two cases should proceed independent of each other. PSEG's apparent change of heart, nearly two years after this case was filed, is little more than an attempt to avoid producing documents in the eleventh hour. Accordingly, PSEG's objection on the basis of the propriety of the underlying litigation must be rejected by the Court.

## II. THE DOCUMENTS SOUGHT BY PLAINTIFFS ARE NOT PUBLICLY AVAILABLE NOR ARE THEY AVAILABLE FROM SOURCES OTHER THAN PSEG

PSEG argues that numerous documents Plaintiffs have requested are publicly available, already possessed by Plaintiffs, or are in the possession of Plaintiffs' former counsel. *See* Exhibit E, General Objection 6, and Specific Objections 18-21. Based upon these objections, PSEG has refused to produce any documents responsive to Requests 18 through 21 which seek regulatory filings made before the NJBPU or other regulatory bodies. PSEG's objection, which is in essence an "undue burden" objection, is incorrect and without merit.

PSEG has failed to identify exactly what burden it faces in producing documents that it has previously filed with the NJBPU. The closest PSEG comes is asserting that production will take its staff's focus away from its multi-billion dollar merger activities. *See* Exhibit K at 2. Such "burden" clearly does not excuse PSEG from producing documents responsive to a valid subpoena of this Court. PSEG has had more than three months to locate the documents (which Plaintiffs have reason to believe are readily available in PSEG's regulatory files), yet PSEG asserts that it "is unwilling to expend the substantial time and effort associated with a further search of its files." *Id.* PSEG's position is legally untenable.

While Plaintiffs do not think there is any merit to PSEG's refusal to produce documents responsive to requests 18 through 21, and no legal basis for PSEG's "demand" as to what Plaintiffs must "establish by declaration or affidavit," so as to further substantiate Plaintiffs' assertions contained herein, Plaintiffs have attached three Affidavits that identify fully the efforts undertaken by Plaintiffs to obtain the relevant documents from sources other than PSEG. As set forth in those affidavits, Plaintiffs have met with officials and counsel from, and reviewed the files of, the NJBPU, the New Jersey Ratepayer Advocate and the New Jersey Attorney General's Office on numerous occasions to no avail. *See* Exhibit B at 5; Exhibit D at 7. Unfortunately, because more than six (6) years have transpired since the relevant regulatory proceedings took place, the documents in question can no longer be located through these public sources. *See* Exhibit B ¶ 5. Accordingly, the documents Plaintiffs seek are not publicly available.

In addition to asserting that Plaintiffs obtain the documents from the NJBPU, PSEG asserts that the documents should be available from Plaintiffs' former regulatory

counsel, LeBoeuf, Lamb, Greene & McRae LLP ("LeBoeuf Lamb"). As set forth in the Affidavit of Lisa M. Barbas, Esq. (attached hereto as Exhibit M), Ms. Barbas reviewed eighteen boxes of documents at the Newark, New Jersey offices of Saul Ewing, where the former LeBoeuf Lamb partners now practice. *See* Exhibit N ¶ 4. Although the boxes contained certain information from the NJBPU proceedings referenced in requests 18 through 21, they did not contain any of the supporting documentation for the testimony or the data requests responses submitted in the proceeding. *Id.* ¶ 5.

Finally, PSEG asserts that Plaintiffs, as parties to the NJBPU proceeding, would have been served with copies of the filings Plaintiffs are now seeking. As set forth in the Goodman Affidavit, Plaintiff's have searched their files and they do not have possession of any of the requested documents. *See* Exhibit D ¶ 12. The fact that Plaintiffs may have had the documents at some point, which Plaintiffs do not concede, does not relieve PSEG of its obligation to produce the documents now when such documents are no longer available from any other source, including Plaintiffs' own files. Accordingly, to the extent PSEG has possession, custody, or control of documents responsive to requests 18 through 21, PSEG must produce them. Otherwise, PSEG must confirm that they do not exist and provide the date upon which they were destroyed.

## III. <u>PSEG'S ADDITIONAL OBJECTIONS LACK MERIT</u>

As noted above, PSEG asserted numerous objections to the Subpoena. Its subsequent letters focused on the two objections discussed above; nevertheless, PSEG continually noted that it was not waiving its other objections. Therefore, in an abundance of caution, Plaintiffs hereby address those objections as well.

### A. PSEG's Objections On Confidentiality Or Trade Secret Are Mooted By The Protective Order Issued In This Case And Other Factual Circumstances

PSEG has raised both general and specific objections on the grounds that Plaintiffs' requests call for the disclosure of a trade secret or other confidential commercial information and/or proprietary information. *See* Exhibit E, General Objection 3; Specific Objections and Responses to Document Requests (hereinafter "Specific Objections") 1, 2, 5-10, 12-16. Confidential commercial information is that which "if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 697 (D. Nev. 1994). Further, "[t]he person asserting confidentiality has the burden of showing that the privilege applies." *Id.*

First, PSEG's claim of confidentiality and/or trade secret, is, at best, dubious. Most of the documents Plaintiffs presently seek were filed publicly. Indeed, PSEG's primary objection (as discussed above) is that Plaintiffs should obtain the documents they seek through such public sources. Second, as PSEG is aware, this Court issued a Protective Order in these matters on August 30, 2005 extending the Protective Order issued on May 17, 2004 by Judge Futey in *Atlantic City Electric v. United States*, No. 04-0036C. To the extent that PSEG is able to demonstrate that the documents in question contain confidential and/or trade secret materials, Plaintiffs will be more than happy to extend the protections offered by the Court's August 30, 2005 Order to third-party documents as well.

The Court's Protective Order imposes a burden on PSEG to show that it would suffer substantial economic harm if it were required to disclose the documents to Plaintiffs, the Government, and the Court. PSEG cannot meet this burden because neither Plaintiffs nor the Government competes with PSEG in the operation of nuclear

facilities and neither party would gain any competitive advantage from review of these documents. Accordingly, PSEG's confidentiality and trade secret objections are baseless. PSEG's only interest in keeping this information confidential from the parties in this case is to deny Plaintiffs the opportunity to use the information in this lawsuit. Therefore, PSEG should be compelled to produce all responsive documents, subject to the Protective Order issued in this case.

### B. Plaintiffs Are Not Seeking Duplicative Production, But Rather Documents Responsive To Both Plaintiffs' And The Government's Requests

PSEG further argues that Plaintiffs' requests are duplicative of those contained in the Government's third-party subpoena. *See* Exhibit E, General Objection 5; Specific Objections 1-10, 12-15, 17. They are not. A review of the documents produced by PSEG in response to the third-party subpoena *duces tecum* issued by the Government demonstrates that PSEG has failed to produce relevant documents responsive to Plaintiffs' subpoenas.[5] With respect to Requests Nos. 1-10, 12-15, and 17, PSEG has argued that it "produced *certain* responsive, non-privileged documents" (emphasis added) in response to the Government's subpoena. Plaintiffs, in their October 18, 2005 letter, sought PSEG's identification of those documents responsive to these requests by Bates range. Alternatively, Plaintiffs requested that PSEG confirm that it does not possess any other responsive documents. PSEG provided Bates ranges in its November 1, 2005 letter for some categories of documents. However, as Plaintiffs'

---

[5] We note that it appears that PSEG has not produced all responsive documents pursuant to the Government's third-party subpoena. Indeed, PSEG repeatedly states in its Specific Objections that it has "produced *certain* responsive, non-privileged documents." to the Government in this case. *See* Exhibit E, Specific Objection Nos. 1-10, 12-15, 17 (emphasis added). PSEG's incomplete production to the Government can be of little consolation to Plaintiffs and cannot be deemed fully responsive by any stretch of the imagination.

counsel's November 11, 2005 letter indicates, PSEG has not fully identified all responsive documents. Accordingly, Plaintiffs' requests are not duplicative of the Government's subpoena, and PSEG must produce all responsive documents in its possession not previously produced.

### C. Terminology Used In Plaintiffs' Subpoena Is Not Vague Or Ambiguous

PSEG has claimed that certain terminology used in the Subpoena is vague. *See* Exhibit E, Specific Objections 4-10, 12-14, 19. In particular, PSEG objects to the terms "number and type of dry storage modules" (Response to Request No. 4), "annual capacity" (Response to Request No. 5), "total number of spent fuel assemblies in the reactor vessels" and "initial construction completion date" (Response to Request No. 6), "average number" (Response to Request No. 7), "type and cost" and "dry storage modules" (Response to Request Nos. 8-9), "staffing, security, insurance, equipment, materials, and property taxes" (Request No. 10), "projected or future costs" (Request No. 12), "budget information" and "Forecasted Five Year Capital budgets" (Request No. 13), "economic engineering studies" (Request No. 14), and "data requests" (Request No. 19). Several of these terms were used and/or contained in the documents PSEG produced to the Government or in testimony PSEG offered in public proceedings. On October 18, 2005, counsel for Plaintiffs advised PSEG that, to the extent that PSEG required clarification regarding Plaintiffs' use of these terms, Plaintiffs would clarify such terms. *See* Exhibit F at 3. As of the date of this filing, PSEG has not responded to Plaintiffs' offer of further clarification. Therefore, PSEG should be compelled to confirm that it has not withheld responsive documents based on this objection.

## CONCLUSION

As set forth fully above, Plaintiffs' need for production of the requested documents and the efficient administration of justice clearly outweighs any burden on PSEG to produce the requested documents. Plaintiffs have made clear in numerous previous submissions before this Court that the books and records of Plaintiffs' buyers are one critical component of showing the quantum of asset value diminished by the Government's actions. PSEG established the market value for Plaintiffs' nuclear assets, not only through setting the purchase price for Plaintiffs' assets, but also through the sale of the same assets one year earlier by Public Service Electric & Gas Company, its regulated affiliate, to PSEG Power LLC, its unregulated subsidiary. Therefore, PSEG's records, including its regulatory submissions, are plainly relevant to Plaintiffs' claims. Furthermore, Plaintiffs fully expect that PSEG has ready access to the requested documents and will in fact rely upon these documents with respect to its own case if and when the United States Court of Appeals grants PSEG's appeal seeking to reverse Senior Judge Futey's dismissal of PSEG's case last year. PSEG should not be permitted to "hide the ball" to the detriment of Plaintiffs' claims, then use the same documents in support of its own claims.

For the foregoing reasons, Delmarva and Atlantic respectfully request that the Court grant the Plaintiffs' Motion to Compel.

Date: January 12, 2006

Respectfully submitted,

s/ Richard J. Conway
Richard J. Conway
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037
(202) 785-9700

*Counsel of Record for*
*Delmarva Power & Light Company &*
*Atlantic City Electric Company*

Of Counsel:
Nicholas W. Mattia, Jr.
Bradley D. Wine
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037
(202) 785-9700

Todd Goodman, Esq.
Assistant General Counsel
Pepco Holdings, Inc.
P. O. Box 231
Wilmington, Delaware 19899
(302) 429-3786

## CERTIFICATE OF FILING

I hereby certify that on January 12, 2006, a copy of the foregoing "Plaintiffs Motion to Compel the Production of Documents from Public Service Enterprise Group, Inc., Public Service Electric and Gas Company, and PSEG Power, LLC" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Additionally, the foregoing "Plaintiffs Motion to Compel the Production of Documents from Public Service Enterprise Group, Inc., Public Service Electric and Gas Company, and PSEG Power, LLC" was served by facsimile and U.S. Mail (postage pre-paid, first class) this 12th day of January, 2006, upon:

Public Service Enterprise Group Incorporated
80 Park Plaza
Newark, New Jersey 07101-0000
SERVE ON: Edward J. Biggins, Jr.

Public Service Electric and Gas Company
80 Park Plaza
Newark, New Jersey 07101-0000
SERVE ON: Robert S. Smith

PSEG Power LLC
80 Park Plaza
Newark, New Jersey 07101-0000
SERVE ON: Edward J. Biggins, Jr.

And by electronic mail this 12th day of January, 2006 upon:

Alex D. Tomaszczuk
Pillsbury Winthrop Shaw Pittman LLP
725 South Figueroa Street
Suite 2800
Los Angeles, CA 90017
Alex.tomaszczuk@pillsburylaw.com

Counsel for Public Service Enterprise Group Incorporated
Public Service Electric and Gas Company, and
PSEG Power LLC

s/ Bradley D. Wine
Bradley D. Wine
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037
(202) 785-9700
*Counsel of Record for*
*Delmarva Power & Light Company &*
*Atlantic City Electric Company*

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **DELMARVA POWER AND LIGHT COMPANY,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | **No. 04-0034C, into which has been consolidated No. 04-0036C (Judge Christine Miller)** |

**ORDER**

This matter is before the Court on Plaintiffs' Motion to Compel the Production of Documents by Public Service Enterprise Group, Inc., Public Service Electric and Gas Company, and PSEG Power, LLC (collectively, "PSEG") pursuant to a subpoena issued in accordance with Rule 45 of this Court's Rules and served upon PSEG on September 28, 2005. The Court, having reviewed the Motion, its accompanying exhibits, and the response of PSEG, and having heard argument of counsel, finds and Orders as follows:

1. PSEG was served with notice of the motion to compel as required by Rule 45(c)(2)(B) of this Court.

2. PSEG's objections to compliance with the subpoena are without merit, the Court finding specifically that the documents requested are necessary to Plaintiffs' case, Plaintiffs have made a substantial good faith effort to obtain the documents from public sources, and no undue burden will be placed on PSEG in complying with the subpoena.

Based upon these findings, the Court hereby **ORDERS** that PSEG fully respond to requests numbers 18 through 21 of the subpoena within ten (10) days of the issuance of this Order. If PSEG finds that it will be unable to produce the responsive

documents within the time set by the Court, PSEG shall immediately notify the court of the reason for its inability to comply and the date on which it can make full compliance.

Christine Odell Cook Miller
Judge