# INDEX TO EXHIBITS


| | Exhibit |
|---|---|
| Plaintiffs' Subpoena *duces tecum* dated September, 28, 2005 | A |
| Affidavit of Nicholas W. Mattia, Jr., Esq. | B |
| Letter from Plaintiffs to PSEG dated January 26, 2005 | C |
| Affidavit of Todd L. Goodman, Esq. | D |
| PSEG's written objections to Plaintiffs' Subpoena dated October 12, 2005 | E |
| Letter from Plaintiffs to PSEG dated October 18, 2005 | F |
| Letter from PSEG to Plaintiffs dated November 1, 2005 | G |
| Letter from Plaintiffs to PSEG dated November 11, 2005 | H |
| Letter from PSEG to Plaintiffs dated December 7, 2005 | I |
| E-mail communication from Plaintiffs' counsel to PSEG's outside counsel dated December 27, 2005 | J |
| Letter from PSEG to Plaintiffs dated January 4, 2006 | K |
| PSEG's assertion re burden of producing documents | L |
| Affidavit of Lisa M. Barbas, Esq. | M |

# EXHIBIT A

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*

*Writer's Direct Dial: (202) 828-2235*
*ConwayR@dsmo.com*

September 29, 2005

**VIA TELECOPY AND OVERNIGHT COURIER**

Joshua E. Gardner
Department of Justice
Civil Division
Commercial Litigation Branch
National Courts Section
1100 L Street, N.W.
Washington, D.C. 20530

Re: *Delmarva Power and Light Company v. United States*, No. 04-34C, 04-36C (Miller, J.)

Dear Mr. Gardner:

Attached please find three subpoenas served today upon PSEG Power LLC, PSE&G, Inc., and Public Service Enterprise Group Incorporated in the above-referenced matter.

Very truly yours,

Richard J. Conway

Enclosures

cc: Alex D. Tomaszczuk, Esq. (with enclosures)



*1177 Avenue of the Americas • 41st Floor • New York, New York 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*www.legalinnovators.com*

United States Court of Federal Claims

| | | |
|---|---|---|
| DELMARVA POWER AND LIGHT COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-0034C, into which has |
| v. | ) | been consolidated No. 04-0036C |
| | ) | (Judge Christine Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**SUBPOENA**

To:
Public Service Enterprise Group Incorporated.
80 Park Plaza
Newark, New Jersey 07101-0000
SERVE ON: Edward J. Biggins, Jr.

1. YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the abo ve-captioned case.
   *Place of Testimony* *N/A*
   *Date and Time* *N/A*

2. YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above-captioned case.
   *Place of Deposition* *N/A*
   *Date and Time* *N/A*

3. YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (see attached Exhibit 1):
   *Place* Dickstein Shapiro Morin & Oshinsky, LLP
   1177 Avenue of the Americas
   New York, NY 10036

   Dickstein Shapiro Morin & Oshinsky, LLP
   2101 L Street, N.W.
   Washington, D.C. 20037

   *Date and Time*: October 28, 2005

4. YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.
   *Premises*: *N/A*
   *Date and Time* *N/A*

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.

ISSUING OFFICER SIGNATURE AND TITLE DATE 9/28/05

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
Richard J. Conway
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, D.C. 20037
(202) 828-2235
ATTORNEY FOR PLAINTIFF

NOTE - If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of the deposition is more than 100 miles from the place where the deponent resides, is employed, or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the court requiring his/her appearance notwithstanding the distance of travel. In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law. (28 U.S.C. §1821)

PROOF OF SERVICE

DATE PLACE

SERVED

SERVED ON (PRINT NAME) MANNER OF SERVICE

□ Fees tendered for one day's attendance and mileage allowed by law. (Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct

Executed on:

Date: SIGNATURE OF SERVER

ADDRESS OF SERVER

RCFC 45.

(c) Protection of Persons Subject to Subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded. (3)(A) On timely motion, the court shall quash or modify the subpoena if it (i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or (iv) subjects a person to undue burden. (B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) Duties in Responding to Subpoena.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

**EXHIBIT 1**

## INSTRUCTIONS

1. Responses to the requests contained herein should be made to the full extent of the documents in your possession, custody, or control as well as those in the possession, custody, or control of your officers, executives, partners, directors, trustees, employees, agents, attorneys, representatives, and any other persons acting on your behalf or subject to your control.

2. If any documents which are or which may be responsive to those requests are withheld on grounds of privilege or for any other reason, provide for each such withheld document the date and title of the document, its author, a brief description of its subject matter, the names and addresses of all persons to whom the document has been shown or disseminated, and the basis for withholding the document.

3. Unless otherwise specified, the requests contained herein apply to all responsive documents relating in any way to the time period of January 1, 1983 through the present.

4. To the extent that the documents responsive to any of the requests contained herein relate to costs, estimates, budget information or other accounting entries, the response documentation should be provided to account level detail.

5. The terms "all" and "each" shall be construed as both all and each.

6. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

7. The use of the singular form of any word includes the plural and vice versa.

## DEFINITIONS

The terms listed below shall have the meanings thereinafter set forth bellow:

1. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Rules of the United States Court of Federal Claims, including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

3. The term "person" means any natural person or any business, legal or governmental entity or association.

4. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

5. The term "SNF" shall mean Spent Nuclear Fuel and high-level nuclear waste.

6. The term "PSEG" shall mean "PSEG Power LLC" (including PSEG Nuclear LLC), "Public Service Enterprise Group Incorporated", and "Public Service Electric and Gas Company", a regulated public utility company subject to the jurisdiction of the New Jersey Board of Public Utilities.

7. The term "Nuclear Stations" shall mean Salem Nuclear Generating Station Units 1 and 2, and Hope Creek Nuclear Generating Station.

8. "You" and "your" refer to PSEG, as defined above.

## DOCUMENTS TO BE PRODUCED FOR INSPECTION AND COPYING

1. All documents relating to decommissioning cost estimates for the Nuclear Stations, including all calculations supporting all such estimates.

2. All documents relating to the number of spent fuel assemblies in the spent fuel pools from January of 1998 through 2000 at each of the Nuclear Stations.

3. All documents relating to all payments made pursuant to the Standard Contract and/or the Nuclear Waste Policy Act on behalf of the joint owners of the Nuclear Stations.

4. All documents relating to the number and type of dry storage modules on-site from January of 1998, through 2000, at each of the Nuclear Stations.

5. All documents relating to the annual capacity of the spent fuel pools for the Nuclear Stations.

6. All documents relating to the total number of spent fuel assemblies in the reactor vessels at the Nuclear Stations, and any changes thereto since its initial construction completion date.

7. All documents relating to the average number of spent fuel assemblies replaced during each outage at the Nuclear Stations.

8. All documents relating to the type and cost of dry storage modules used, or to be utilized, at the Nuclear Stations.

9. All documents relating to the type and cost of dry cask storage modules considered for use at each of the Nuclear Stations.

10. All documents relating to the annual operating cost for the spent fuel pool at each of the Nuclear Stations, including but not limited to, staffing, security, insurance, equipment, materials, and property taxes allocated to the spent fuel pool.

11. All documents relating to the SNF Delivery Commitment Schedules for each of the Nuclear Stations.

12. All documents relating to the costs, including projected or future costs, associated with independent spent fuel storage installations, for each of the Nuclear Stations.

13. All documents relating to budget information regarding SNF storage (both off and on-site), including but not limited to, dry cask storage, the re-racking of spent fuel pools, and private fuel storage projects, for each of the Nuclear Stations. This information should include, but not be limited to, all documents relating to Forecasted Five Year Capital budgets for the Nuclear Stations.

14. All documents relating to economic and engineering studies regarding SNF storage for the Nuclear Stations.

15. All documents regarding analyses of the fair market value of the Nuclear Stations.

16. Any and all presentations prepared for or presented to rating agencies, nuclear or other energy industry groups or publications, or financial analysts referencing nuclear fuel costs, nuclear risks, or SNF storage related issues for the Nuclear Stations or nuclear facilities in general.

17. All documents relating to the Department of Energy's decision not to begin accepting SNF by January 31, 1998.

18. All direct, rebuttal and/or supplemental testimony, and exhibits, together with discovery responses related thereto, submitted by or on behalf of PSE&G in New Jersey

Board of Public Utilities Docket Nos. EO97070462 and EO97070461, relating to the issues of nuclear asset valuation and/or stranded cost determinations.

19. All regulatory (both State and Federal) data requests, and responses thereto, including information or data requests made on the record during the conduct of a regulatory proceeding or submitted in the context of rate or stranded cost proceedings. Such proceedings include, but are not limited to, New Jersey Board of Public Utilities Docket Nos. EO97070462 and EO97070461, whether submitted by you or any party to such proceedings, that related to or referenced direct and indirect costs associated with SNF storage, both off-site and on-site, or that related to the market valuation of the Nuclear Stations.

20. All documents, including, but not limited to, filings, testimony, or data requests related to the funding of decommissioning costs arising out of the Board's Order in New Jersey Board of Public Utilities Docket Nos. EO97070462 and EO97070461.

21. All documents related to the testimony of Dr. Colin J. Loxley filed on behalf of Public Service Electric and Gas Company in New Jersey Board of Public Utilities Docket Nos. EX941205854 and EO97070462, including all work papers, notes, studies, or analyses whether submitted as part of the referenced proceedings or not, data requests and responses thereto, as well as updates, supplements, or modifications to this testimony in these or other docketed proceedings. Such documents should include, but not be limited to, all cash flow and/or discounted cash flow studies, documents related to the derivation of the discount rate, and power market price forecasts.

United States Court of Federal Claims

| | | |
|---|---|---|
| DELMARVA POWER AND LIGHT COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-0034C, into which has |
| v. | ) | been consolidated No. 04-0036C |
| | ) | (Judge Christine Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**SUBPOENA**

To:
PSE&G, Inc.
80 Park Plaza
Newark, New Jersey 07101-0000
SERVE ON: Robert S. Smith

1. YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the abo ve-captioned case.
   *Place of Testimony* N/A
   *Date and Time* N/A

2. YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above-captioned case.
   *Place of Deposition* N/A
   *Date and Time* N/A

3. YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (see attached Exhibit 1):
   *Place* Dickstein Shapiro Morin & Oshinsky, LLP
   1177 Avenue of the Americas
   New York, NY 10036

   Dickstein Shapiro Morin & Oshinsky, LLP
   2101 L Street, N.W.
   Washington, D.C. 20037

   *Date and Time*: October 28, 2005

4. YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.
   *Premises*: N/A
   *Date and Time* N/A

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.

[signature] 9/28/05

ISSUING OFFICER SIGNATURE AND TITLE DATE

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Richard J. Conway
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, D.C. 20037
(202) 828-2235
ATTORNEY FOR PLAINTIFF

NOTE - If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of the deposition is more than 100 miles from the place where the deponent resides, is employed, or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the court requiring his/her appearance notwithstanding the distance of travel. In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law. (28 U.S.C. §1821)

PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

SERVED ON (PRINT NAME) MANNER OF SERVICE

□ Fees tendered for one day's attendance and mileage allowed by law. (Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct

Executed on:

Date: SIGNATURE OF SERVER

ADDRESS OF SERVER

RCFC 45.

(c) Protection of Persons Subject to Subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded. (3)(A) On timely motion, the court shall quash or modify the subpoena if it (i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or (iv) subjects a person to undue burden. (B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) Duties in Responding to Subpoena.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

## EXHIBIT 1

## INSTRUCTIONS

1. Responses to the requests contained herein should be made to the full extent of the documents in your possession, custody, or control as well as those in the possession, custody, or control of your officers, executives, partners, directors, trustees, employees, agents, attorneys, representatives, and any other persons acting on your behalf or subject to your control.

2. If any documents which are or which may be responsive to those requests are withheld on grounds of privilege or for any other reason, provide for each such withheld document the date and title of the document, its author, a brief description of its subject matter, the names and addresses of all persons to whom the document has been shown or disseminated, and the basis for withholding the document.

3. Unless otherwise specified, the requests contained herein apply to all responsive documents relating in any way to the time period of January 1, 1983 through the present.

4. To the extent that the documents responsive to any of the requests contained herein relate to costs, estimates, budget information or other accounting entries, the response documentation should be provided to account level detail.

5. The terms "all" and "each" shall be construed as both all and each.

6. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

7. The use of the singular form of any word includes the plural and vice versa.

## DEFINITIONS

The terms listed below shall have the meanings thereinafter set forth bellow:

1. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Rules of the United States Court of Federal Claims, including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

3. The term "person" means any natural person or any business, legal or governmental entity or association.

4. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

5. The term "SNF" shall mean Spent Nuclear Fuel and high-level nuclear waste.

6. The term "PSEG" shall mean "PSEG Power LLC" (including PSEG Nuclear LLC), "Public Service Enterprise Group Incorporated", and "Public Service Electric and Gas Company", a regulated public utility company subject to the jurisdiction of the New Jersey Board of Public Utilities.

7. The term "Nuclear Stations" shall mean Salem Nuclear Generating Station Units 1 and 2, and Hope Creek Nuclear Generating Station.

8. "You" and "your" refer to PSEG, as defined above.

**DOCUMENTS TO BE PRODUCED FOR INSPECTION AND COPYING**

1. All documents relating to decommissioning cost estimates for the Nuclear Stations, including all calculations supporting all such estimates.

2. All documents relating to the number of spent fuel assemblies in the spent fuel pools from January of 1998 through 2000 at each of the Nuclear Stations.

3. All documents relating to all payments made pursuant to the Standard Contract and/or the Nuclear Waste Policy Act on behalf of the joint owners of the Nuclear Stations.

4. All documents relating to the number and type of dry storage modules on-site from January of 1998, through 2000, at each of the Nuclear Stations.

5. All documents relating to the annual capacity of the spent fuel pools for the Nuclear Stations.

6. All documents relating to the total number of spent fuel assemblies in the reactor vessels at the Nuclear Stations, and any changes thereto since its initial construction completion date.

7. All documents relating to the average number of spent fuel assemblies replaced during each outage at the Nuclear Stations.

8. All documents relating to the type and cost of dry storage modules used, or to be utilized, at the Nuclear Stations.

9. All documents relating to the type and cost of dry cask storage modules considered for use at each of the Nuclear Stations.

10. All documents relating to the annual operating cost for the spent fuel pool at each of the Nuclear Stations, including but not limited to, staffing, security, insurance, equipment, materials, and property taxes allocated to the spent fuel pool.

11. All documents relating to the SNF Delivery Commitment Schedules for each of the Nuclear Stations.

12. All documents relating to the costs, including projected or future costs, associated with independent spent fuel storage installations, for each of the Nuclear Stations.

13. All documents relating to budget information regarding SNF storage (both off and on-site), including but not limited to, dry cask storage, the re-racking of spent fuel pools, and private fuel storage projects, for each of the Nuclear Stations. This information should include, but not be limited to, all documents relating to Forecasted Five Year Capital budgets for the Nuclear Stations.

14. All documents relating to economic and engineering studies regarding SNF storage for the Nuclear Stations.

15. All documents regarding analyses of the fair market value of the Nuclear Stations.

16. Any and all presentations prepared for or presented to rating agencies, nuclear or other energy industry groups or publications, or financial analysts referencing nuclear fuel costs, nuclear risks, or SNF storage related issues for the Nuclear Stations or nuclear facilities in general.

17. All documents relating to the Department of Energy's decision not to begin accepting SNF by January 31, 1998.

18. All direct, rebuttal and/or supplemental testimony, and exhibits, together with discovery responses related thereto, submitted by or on behalf of PSE&G in New Jersey

Board of Public Utilities Docket Nos. EO97070462 and EO97070461, relating to the issues of nuclear asset valuation and/or stranded cost determinations.

19. All regulatory (both State and Federal) data requests, and responses thereto, including information or data requests made on the record during the conduct of a regulatory proceeding or submitted in the context of rate or stranded cost proceedings. Such proceedings include, but are not limited to, New Jersey Board of Public Utilities Docket Nos. EO97070462 and EO97070461, whether submitted by you or any party to such proceedings, that related to or referenced direct and indirect costs associated with SNF storage, both off-site and on-site, or that related to the market valuation of the Nuclear Stations.

20. All documents, including, but not limited to, filings, testimony, or data requests related to the funding of decommissioning costs arising out of the Board's Order in New Jersey Board of Public Utilities Docket Nos. EO97070462 and EO97070461.

21. All documents related to the testimony of Dr. Colin J. Loxley filed on behalf of Public Service Electric and Gas Company in New Jersey Board of Public Utilities Docket Nos. EX941205854 and EO97070462, including all work papers, notes, studies, or analyses whether submitted as part of the referenced proceedings or not, data requests and responses thereto, as well as updates, supplements, or modifications to this testimony in these or other docketed proceedings. Such documents should include, but not be limited to, all cash flow and/or discounted cash flow studies, documents related to the derivation of the discount rate, and power market price forecasts.

United States Court of Federal Claims

| | | |
|---|---|---|
| DELMARVA POWER AND LIGHT COMPANY<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 04-0034C, into which has been consolidated No. 04-0036C (Judge Christine Miller) |

**SUBPOENA**

To: PSE&G Power LLC
80 Park Plaza
Newark, New Jersey 07101-0000
SERVE ON: Edward J. Biggins, Jr.

1. YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the above captioned case.
*Place of Testimony* *N/A*
*Date and Time:* *N/A*

2. YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above-captioned case.
*Place of Deposition*: *N/A*
*Date and Time*: *N/A*

3. YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (see attached Exhibit 1):
*Place* Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas,
New York, NY 10036

Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, D.C. 20037

*Date and Time*: October 28, 2005

4. YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.
*Premises* *N/A*
*Date and Time* *N/A*

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.

[signature] 9/30/05
ISSUING OFFICER SIGNATURE AND TITLE DATE

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Richard J. Conway
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, D.C. 20037
(202) 828-2235
ATTORNEY FOR PLAINTIFF

NOTE - If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of the deposition is more than 100 miles from the place where the deponent resides, is employed, or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the court requiring his/her appearance notwithstanding the distance of travel. In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law. (28 U.S.C. §1821)

PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |

□ Fees tendered for one day's attendance and mileage allowed by law. (Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct

Executed on:

SIGNATURE OF SERVER

Date:

ADDRESS OF SERVER

RCFC 45.

(c) Protection of Persons Subject to Subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded. (3)(A) On timely motion, the court shall quash or modify the subpoena if it (i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or (iv) subjects a person to undue burden. (B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) Duties in Responding to Subpoena.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

**EXHIBIT 1**

## INSTRUCTIONS

1. Responses to the requests contained herein should be made to the full extent of the documents in your possession, custody, or control as well as those in the possession, custody, or control of your officers, executives, partners, directors, trustees, employees, agents, attorneys, representatives, and any other persons acting on your behalf or subject to your control.

2. If any documents which are or which may be responsive to those requests are withheld on grounds of privilege or for any other reason, provide for each such withheld document the date and title of the document, its author, a brief description of its subject matter, the names and addresses of all persons to whom the document has been shown or disseminated, and the basis for withholding the document.

3. Unless otherwise specified, the requests contained herein apply to all responsive documents relating in any way to the time period of January 1, 1983 through the present.

4. To the extent that the documents responsive to any of the requests contained herein relate to costs, estimates, budget information or other accounting entries, the response documentation should be provided to account level detail.

5. The terms "all" and "each" shall be construed as both all and each.

6. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

7. The use of the singular form of any word includes the plural and vice versa.

**DEFINITIONS**

The terms listed below shall have the meanings thereinafter set forth bellow:

1. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Rules of the United States Court of Federal Claims, including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

3. The term "person" means any natural person or any business, legal or governmental entity or association.

4. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

5. The term "SNF" shall mean Spent Nuclear Fuel and high-level nuclear waste.

6. The term "PSEG" shall mean "PSEG Power LLC" (including PSEG Nuclear LLC), "Public Service Enterprise Group Incorporated", and "Public Service Electric and Gas Company", a regulated public utility company subject to the jurisdiction of the New Jersey Board of Public Utilities.

7. The term "Nuclear Stations" shall mean Salem Nuclear Generating Station Units 1 and 2, and Hope Creek Nuclear Generating Station.

8. "You" and "your" refer to PSEG, as defined above.

**DOCUMENTS TO BE PRODUCED FOR INSPECTION AND COPYING**

1. All documents relating to decommissioning cost estimates for the Nuclear Stations, including all calculations supporting all such estimates.

2. All documents relating to the number of spent fuel assemblies in the spent fuel pools from January of 1998 through 2000 at each of the Nuclear Stations.

3. All documents relating to all payments made pursuant to the Standard Contract and/or the Nuclear Waste Policy Act on behalf of the joint owners of the Nuclear Stations.

4. All documents relating to the number and type of dry storage modules on-site from January of 1998, through 2000, at each of the Nuclear Stations.

5. All documents relating to the annual capacity of the spent fuel pools for the Nuclear Stations.

6. All documents relating to the total number of spent fuel assemblies in the reactor vessels at the Nuclear Stations, and any changes thereto since its initial construction completion date.

7. All documents relating to the average number of spent fuel assemblies replaced during each outage at the Nuclear Stations.

8. All documents relating to the type and cost of dry storage modules used, or to be utilized, at the Nuclear Stations.

9. All documents relating to the type and cost of dry cask storage modules considered for use at each of the Nuclear Stations.

10. All documents relating to the annual operating cost for the spent fuel pool at each of the Nuclear Stations, including but not limited to, staffing, security, insurance, equipment, materials, and property taxes allocated to the spent fuel pool.

11. All documents relating to the SNF Delivery Commitment Schedules for each of the Nuclear Stations.

12. All documents relating to the costs, including projected or future costs, associated with independent spent fuel storage installations, for each of the Nuclear Stations.

13. All documents relating to budget information regarding SNF storage (both off and on-site), including but not limited to, dry cask storage, the re-racking of spent fuel pools, and private fuel storage projects, for each of the Nuclear Stations. This information should include, but not be limited to, all documents relating to Forecasted Five Year Capital budgets for the Nuclear Stations.

14. All documents relating to economic and engineering studies regarding SNF storage for the Nuclear Stations.

15. All documents regarding analyses of the fair market value of the Nuclear Stations.

16. Any and all presentations prepared for or presented to rating agencies, nuclear or other energy industry groups or publications, or financial analysts referencing nuclear fuel costs, nuclear risks, or SNF storage related issues for the Nuclear Stations or nuclear facilities in general.

17. All documents relating to the Department of Energy's decision not to begin accepting SNF by January 31, 1998.

18. All direct, rebuttal and/or supplemental testimony, and exhibits, together with discovery responses related thereto, submitted by or on behalf of PSE&G in New Jersey

# EXHIBIT B

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **DELMARVA POWER AND LIGHT COMPANY,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **No. 04-0034C, into which has been consolidated No. 04-0036C (Judge Christine Miller)** |

**AFFIDAVIT OF NICHOLAS W. MATTIA, JR., ESQ.**

I, Nicholas W. Mattia, Jr., Esq., after being first duly sworn, make this declaration of my own personal knowledge and, if called as a witness, could and would testify competently as follows:

1. I am Counsel with Dickstein Shapiro Morin & Oshinsky LLP ("Dickstein Shapiro"). My principal office is located at 2101 L Street, N.W., Washington, D.C. 20037. I offer this Affidavit on behalf of the firm's clients, Delmarva Power and Light Company ("Delmarva") and Atlantic City Electric Company ("Atlantic").

2. I have been Counsel with Dickstein Shapiro for two and a half years. Prior to joining Dickstein Shapiro, I served in a number of capacities, including as a member of the legal staff of the New Jersey Board of Public Utilities ("NJBPU"), and subsequently as a private practicing attorney appearing before the NJBPU over a span of more than 20 years and hundreds of proceedings. I also served for nearly five years as a consultant to both buyers and sellers of nuclear generating assets, and am very familiar with the processes and valuation methodologies employed by buyers of nuclear assets. Finally, I am familiar with the specific "stranded cost proceedings" conducted by the NJBPU (NJBPU Docket Nos. EO97070461, EO97070462, EO97070463 and EX9412058540) in the late 1990s which resulted in the restructuring of the business elements of PSEG Enterprises, including the transfer of Public Service Electric & Gas Company's ("PSE&G") interests in the nuclear generation assets, which are also the same nuclear assets which Atlantic and Delmarva each had minority ownership interest in, which interests were sold in part to PSEG Power.

3. The aforementioned NJBPU proceeding was an extensive and multi-issued investigation into the restructuring of the regulated business of PSE&G, a public utility company subject to the jurisdiction of the NJBPU. The proceeding involved approximately 20 formal hearing days, with numerous informal conferences and settlement discussions, which resulted in an Initial Decision by Administrative Law Judge Louis McAfoos, dated August 14, 1998, and a Final Decision and Order dated April 21, 1999 by the NJBPU. It involved a significant number of interested parties and intervenors and dealt with the restructuring of virtually every aspect of the PSE&G's regulated business operations. Not all parties had a direct interest in every issue involved in these proceedings. One of those issues addressed and decided in the restructuring proceeding involved the transfer of PSE&G's regulated generation assets, including its nuclear assets, to its unregulated affiliate ("PSEG Power"), the market value of those assets, and the appropriate transfer price that PSE&G's unregulated affiliate, PSEG Power, should pay for those assets.

4. As referenced in both the Initial Decision and the NJBPU's Order, PSE&G performed a number of economic analysis to develop an appropriate transfer price for the nuclear assets. The Order of the NJBPU states that PSE&G represented that the transfer price was determined in a manner consistent with the methodology that an arms-length buyer would employ for the acquisition of a generation asset. Specifically, the NJBPU's Final Decision and Order states that "the Company asserts that it used a modeling technique that was followed by all parties, as recognized by the ALJ, and that this methodology is fundamentally no different than the process a prospective buyer of the generating assets would go through." Final Decision at 58. The Final Decision makes an additional reference to the specific study, stating "the Company performed a discounted net cash flow analysis to quantify the magnitude of its owned generation stranded cost." *Id.* at 103. It is the procurement from PSE&G of those analyses, studies and supporting workpapers, among other matters, that are the subject of the subpoena issued to PSE&G (and its affiliated companies) in this matter.

5. In furtherance of obtaining the subpoenaed documentation from sources other than PSE&G, I undertook the following steps:

   a. Beginning in October, 2004 I spent three (3) days in Newark, New Jersey at the NJBPU's offices (October 26, October 27 and November 5, 2004) conducting a thorough review of the agency's available case files for the information and documents in question. I could not find the documents in those case files, and was told that given the length of time that had passed since the conclusion of the case that the material being sought may no longer be available.

b. On October 26, 2004 I met with representatives (Colin Loxley, Mark Sperduto and Roger Camacho, Esq.) of PSE&G at its office in Newark, New Jersey to determine if they would voluntarily provide the requested documentation. At the conclusion of the meeting, I was unable to obtain those documents referenced in the NJBPU Order.

c. Subsequently, I had no less than seven (7) telephone calls with staff members of the NJBPU in an attempt to locate other sources for obtaining the requested material. In addition, I, along with in-house counsel for Atlantic and Delmarva, have met at least twice more with the NJBPU to try to obtain the requested material from PSE&G on a voluntary basis. These efforts have not been successful.

d. I have spoken and met with counsel for the New Jersey Ratepayer Advocate's office and the New Jersey Attorney General's office, both of whom were active parties to the above referenced proceedings. Both advised that their respective files had been destroyed or discarded. I called the Office of Administrative Law, the state agency that conducted the aforementioned hearings on behalf of the NJBPU, and was advised that it does not retain files for more than six months, after which the files are returned to the originating agency (here the NJBPU).

e. Finally, Atlantic, as a regulated public utility in New Jersey, was a party to the referenced PSE&G proceeding. In an effort to determine whether it had the subpoenaed documents, I undertook two additional efforts. First, through in-house counsel for Atlantic the company's internal files were reviewed to determine if the requested material was in its possession. As indicated in the affidavit of Todd Goodman, Esq., Assistant General Counsel for Pepco Holdings, Inc., the documents that are the subject matter of this subpoena are not in its possession. Second, at my direction, Lisa M. Barbas, Esq. of Dickstein Shapiro reviewed the files of Atlantic's outside counsel for the aforementioned PSE&G proceeding. As indicated in Ms. Barbas' affidavit, her review of those files did not disclose the subpoenaed documents.

6. Under penalty of perjury, I hereby affirm that the above statements are true and accurate to the best of my knowledge.

Nicholas W. Mattia, Jr., Esq.

NOTARY:
Subscribed to and sworn to before me this
12 day of January, 2006.

[Seal]

My Commission expires:

LYNDA JENKINS
Notary Public District of Columbia
My Commission Expires 2-14-07

# EXHIBIT C

January 26, 2005

**Via Facsimile and U.S. Mail**

PECO Energy Company
965 Chesterbrook Blvd. 61A-3
Wayne, PA 19087-5691
Attention: Charles P. Lewis, VP
Fax 610-640-6611

Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Attention: Howard L. Meyers, Esq.
Fax 215-963-5299

PSEG Power, LLC
80 Park Plaza
T-5A
P.O. Box 570
Newark, NJ 07101
Attention: Harold W. Borden, VP and General Counsel
Fax: 973-639-0741

Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
Attention: Filiberto Agusti, Esquire
Fax 202-429-3902

Re: Request for Access to Documents

Gentlemen:

Pursuant to Article VII, Section 7.8, (with respect to Peach Bottom Power Stations Units 2 and 3), and Article IX, Section 6.9, (with respect to Salem Nuclear Generation Station Units 1 and 2 and Hope Creek Nuclear Generation Station), respectively, of the Purchase Agreements, each being dated September 27, 1999 as between Atlantic City Electric Company and Delmarva Power and Light Company (hereinafter "Sellers") and PSEG Power LLC and Philadelphia Electric Company (except for Hope Creek) (hereinafter "Buyers"), request is hereby made on behalf of Sellers for access to certain information in the possession of Buyers relevant to the aforedescribed nuclear facilities. The information for which access is requested relates to each of these nuclear facilities.

Information Requested:

(1) All historical budget information relating to both off and on-site storage of Spent Nuclear Fuel ("SNF"), including dry cask storage, the re-racking of spent fuel pool storage and private fuel storage projects, if applicable. This information should include, but not be limited to:

(a) Forecasted Five Year Capital budgets, in project level detail, prepared between 1989 and 2001.

(b) Actual capital expenditures in project level detail for all years covered by the budgets described in (a) above.

(c) O & M expense budgets, as well as variance reports, for each year covered by the budgets described in (a) above.

(2) All accounting data at account level detail for capital additions, retirements or replacements relating to off or on-site SNF storage facilities as defined above for the period 1990 to 2001. To the extent available, please provide journal entries or general ledger level details relating thereto.

(3) All O & M expenses, at account level detail, relating to off and on-site SNF storage as defined above for the period 1990 to 2001. To the extent available, please provide journal entries or general ledger level details relating thereto.

(4) All economic and engineering studies, analyses and documentation, whether performed internally or by outside experts/consultants, relating to off or on-site SNF storage.

(5) All valuation studies whether prepared internally or by outside experts/consultants for any purpose for each of the above listed nuclear facilities during the period 1995 thru 2001.

(6) All presentations prepared for or presented to rating agencies or financial analysts regarding nuclear fuel costs, nuclear risks or SNF storage related issues.

(7) All regulatory (either State or Federal) requests, and responses thereto, including those submitted in the context of rate or stranded cost proceedings, for information related to direct and indirect costs associated with SNF storage, both off and on-site, that impacted the valuation of the nuclear facilities referenced herein. Such requests include information or data requests made on the record during the conduct of a regulatory proceeding.

The aforementioned provisions of our Purchase Agreements with you provide that you will make available to us the information being requested. Please let me know within five business days of receipt of this letter where this information can be reviewed and copied. As provided in the Purchase Agreements we will reimburse you for all reasonable costs associated with providing us access to this information.

Sincerely,

Todd L. Goodman

Bcc: Nick Mattia
Nina Clements

# EXHIBIT D

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DELMARVA POWER AND LIGHT COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 04-0034C, into which has been consolidated No. 04-0036C (Judge Christine Miller) |

**AFFIDAVIT OF TODD L. GOODMAN, ESQ.**

I, Todd L. Goodman, after being first duly sworn, make this declaration of my own personal knowledge and, if called as a witness, could and would testify competently as follows:

1. I am Assistant General Counsel for Pepco Holdings, Inc. ("PHI"). PHI is a Public Utility Holding Company and is the owner of Delmarva Power & Light Company ("Delmarva") and Atlantic City Electric Company ("Atlantic") (collectively, "Plaintiffs").

2. I have been employed by PHI for approximately three years. Prior to that, I practiced law at a private firm in Wilmington, Delaware for ten years. A significant portion of my private practice involved regulatory matters and general litigation for Delmarva and Atlantic.

3. I am the PHI attorney assigned to the above-captioned matter. I am responsible for, among other things, managing the discovery process for Atlantic and Delmarva.

4. The purpose of my affidavit is to set forth the steps taken by PHI employees in an effort to obtain documents recently subpoenaed from Public Service Enterprise Group, Inc., Public Service Electric & Gas Company, and PSEG Power, LLC (collectively, "PSEG") from a source other than PSEG.

5. Atlantic and Delmarva sold their respective nuclear generation assets to PSEG Power LLC and Philadelphia Electric Company ("PECO") by Asset Purchase and Sale Agreements (the "Agreements of Sale") dated September 27, 1999. The Agreements of Sale contained provisions that entitle Atlantic and Delmarva to obtain from PSEG and PECO, post-sale, information and documents relevant to Atlantic and Delmarva's ownership interests in the nuclear plants.

6. By letter dated January 26, 2005, I made a request to both PSEG and PECO for certain information related to the nuclear facilities (A copy of the January 26, 2005 letter is attached as "Exhibit C" to Plaintiffs' Motion to Compel). The letter sought, *inter alia*, much of the same information sought through the documents more recently subpoenaed from PSEG. Although Exelon (on behalf of PECO), responded to the January 26, 2005 letter, no response and no documents were received from PSEG.

7. For several months subsequent to January 2005, I participated in various meetings with representatives of PSEG, Staff of the New Jersey Board of Public Utilities and the New Jersey Office of the Rate Payer Advocate in an effort to obtain the requested documents from other sources. I have reviewed the affidavit submitted by Nicholas W. Mattia, Jr., Esq., which addresses those meetings in some detail. Accordingly, I will not address those meetings herein, other than to say that the BPU Staff and RPA were not in possession of the subpoenaed documents that PSEG continues to withhold.

8. In September of 2005, I asked Thomas S. Shaw (Executive Vice President and Chief Operating Officer of PHI) if he would make a personal request to a colleague at PSEG for the requested information. In September 2005, Mr. Shaw placed a telephone call to Frank Cassidy (President and Chief Operating Officer of PSEG Power, LLC) requesting PSEG's cooperation in producing the requested materials. Messrs Shaw and Cassidy exchanged voice mail messages on the subject, but never spoke directly.

9. By letter dated October 6, 2005, Mr. Cassidy informed Mr. Shaw that PSEG would not produce the requested material (see letter attached as "Exhibit 2").

10. Mr. Shaw responded to Mr. Cassidy by letter dated October 14, 2005, in which Mr. Shaw requested, once again, that PSEG produce the documents sought in the subpoena (copy attached as "Exhibit 3").

11. Mr. Cassidy responded to Mr. Shaw's letter with a letter dated November 4, 2005, in which Mr. Cassidy again conveyed to Mr. Shaw that PSEG would not produce the requested material (copy attached as "Exhibit 4"). To the best of my personal knowledge, and after personal investigation, no further contacts have taken place on the issue of subpoenaed information between employees of PHI and PSEG.

12. In addition to our efforts to obtain the requested documents from PSEG and other outside sources, I conducted a thorough review of all materials related to the sale of the nuclear assets within the possession or control of Atlantic and Delmarva. An internal review of Delmarva's and Atlantic's files was conducted to determine if the requested material was in our possession. In addition, I contacted all of the outside law firms and consultants that represented Atlantic and Delmarva in the transfer of the nuclear assets and requested that all of the files related to the matter be provided for review. Over 40 boxes were produced for review by outside law firms and consultants. A thorough review of those materials uncovered none of the relevant documents.

13. Upon learning that certain materials requested in the subpoena were exhibits in "stranded cost" proceedings conducted by the New Jersey Board of Public Utilities (NJBPU Docket Nos. EO97070461, EO97070462, and EX9412058540) in the late 1990s, which resulted in the transfer of PSEG's interests in the same nuclear

generation assets previously owned by Atlantic and Delmarva, I contacted Atlantic's outside New Jersey regulatory counsel, Mark Mucci, Esquire, formerly of LeBoeuf Lamb Greene & McRae LLP ("LeBoeuf"), now with Saul Ewing LLP ("Saul Ewing"). While with LeBoeuf, Mr. Mucci represented Atlantic as an intervenor in PSEG's Stranded Cost proceedings at the New Jersey Board of Public Utilities. I arranged to have LeBoeuf's files from that proceeding transferred from LeBoeuf's archives to the offices of Saul Ewing and asked Lisa M. Barbas, Esquire of Dickstein Shapiro to travel to Saul Ewing's offices in Newark, New Jersey to review the documents. I have been informed that the vast majority of materials which are the subject of the subpoena served by Dickstein Shapiro on PSEG in these consolidated proceedings were not present in the files of LeBoeuf that Ms. Barbas reviewed.

14. Under penalty of perjury, I hereby affirm that the above statements are true and accurate to the best of my knowledge.

[signature]
Todd L. Goodman

NOTARY:
Subscribed to and sworn to before me this
6th day of January, 2006.

[signature]
[Seal]

My Commission expires:

CLAUDINE B. VAZQUEZ
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Dec. 6, 2006

# EXHIBIT 1

**(intentionally left blank)**

# EXHIBIT 2
## to Affidavit of Todd L. Goodman, Esq.

cc'd: Todd Goodman

# PSEG POWER LLC

**80 Park Plaza, T4B**
**Newark, New Jersey 07102**

**FAX TRANSMITTAL SHEET**

**OFFICE OF THE PRESIDENT AND COO**

**TO:** Mr. Thomas S. Shaw
President and Chief Operating Officer
Conectiv

**Fax #** 302-429-3367

**FROM:** Frank Cassidy

**Fax #** 973-242-5162

**MESSAGE:**

Please see the attached letter which was sent to you by U. S. Mail. Thank you.

No. of Pages (including Transmittal Sheet) 4

If there are any problems with this transmission, please call Lori McElroy at (973) 430-5529.

Frank Cassidy
President and COO

PSEG Power LLC
80 Park Plaza, 4th Floor, Newark, NJ 07102-4194
tel: 973-430-5687 fax: 973-242-5162

PSEG
Power LLC

October 6, 2005

By U.S. Mail

Mr. Thomas S. Shaw
President and Chief Operating Officer
Conectiv
800 King Street
Post Office Box 231
Wilmington, Delaware 19899

**Re: PSEG Nuclear, LLC's Response To Request for Access to Documents And Their Relation To *Delmarva Power & Light Co. v. United States*, Nos. 04-34C & 04-36C (Fed. Cl.)**

Dear Tom:

As you are aware, Atlantic City Electric Company ("ACE") and Delmarva Power and Light Company ("Delmarva") commenced litigation (*Delmarva Power & Light Co., Atlantic City Elec. Co. v. United States*, Nos. 04-34C & 04-36C (Fed. Cl.), under which they are making certain claims for damages allegedly suffered as a result of the failure of the U.S. government to meet its statutory and contractual obligations to pick-up and dispose of spent nuclear fuel and the effect of that failed performance on the value of your company's former interests in Salem and Hope Creek prior to the sale to PSEG Nuclear. We respectfully assert that this lawsuit constitutes a material breach of the purchase agreements between PSEG and ACE and Delmarva. PSEG immediately requests that your company cease pursuit of the *Delmarva* case and dismiss that case.

It is our understanding that the complaints in *Delmarva* and *ACE* assert causes of action that seek damages based on the Department of Energy's ("DOE") failure to begin acceptance, transportation, and disposal of spent nuclear fuel. PSEG believes that the 1999 Purchase and Sale Agreements ("PSAs") between the affected companies transferred all claims of Delmarva and ACE against DOE to PSEG (and to PECO Energy Company ("PECO"), in the case of the Peach Bottom plant).

In particular, the PSAs state that, among the purchased assets listed in Article II of the PSAs, ACE or Delmarva (each being the "Seller" in the respective agreements) transfers:

Mr. Thomas S. Shaw
September 13, 2005
Page 2

> All claims of Seller relating to or pertaining to the Department of Energy's defaults under the Department of Energy Standard Contract (including all claims for failure by the Department of Energy to take Spent Nuclear Fuel) accrued prior to, on or after the Closing Date, whether relating to periods prior to, on or after the Closing Date, and all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased Assets, other than the claims described in Section 2.2(l) . . . .

Purchase Agreement By and Between Delmarva Power & Light Company and PSEG Power LLC § 2.1(*l*)(Sept. 27, 1999); *see also* Purchase Agreement By and Among Atlantic City Electric Company, PECO Energy Company and PSEG Power LLC § 2.1(*l*) (Sept. 27, 1999); Purchase Agreement By and Between Atlantic City Electric Company and PSEG Power LLC § 2.1(*l*)(Sept. 27, 1999); Purchase Agreement By and Between Atlantic City Electric Company and PSEG Power LLC § 2.1(*l*) (Sept. 27, 1999); Purchase Agreement By and Among Delmarva Power & Light Company, PECO Energy Company and PSEG Power LLC § 2.1(*l*) (Sept. 27, 1999).[1]

PSEG believes the language in the PSAs unambiguously transferred to PSEG (and PECO, in the case of the Peach Bottom plant) the claims now pressed by ACE and Delmarva in the *Delmarva* case. ACE and Delmarva have materially breached the purchase agreements by filing and pursuing the *Delmarva* case. Therefore, consistent with their obligations under the purchase agreements, PSEG requests that ACE and Delmarva immediately dismiss the *Delmarva* case.

The language in our agreements is both broad and unambiguous. It is very clear, both from my recollection and the language of the PSAs, that it was our mutual intent to have PSEG succeed ACE and Delmarva with regard to <u>any and all claims</u> it had or might have in the future.

In addition, Tom, I am sure you recall there are certain indemnification obligations your companies agreed to which require ACE and Delmarva to compensate us as a result of these companies breaching certain obligations under the contract. We consider your pursuit of this litigation to be a breach of our agreements. Such breach enables us to seek recovery of our expenses from your companies. Given the fact that we have now been served with a second set of subpoenas (this latter set from your attorneys), which in most respects is duplicative of the first one, we are starting to incur significant expenses of both outside counsel and internal

---

[1] The excepted claims against DOE in the various PSAs involved decontamination and decommissioning fees, not spent nuclear fuel.

Mr. Thomas S. Shaw
September 13, 2005
Page 3

personnel, including myself, in our efforts to respond. I will add that we have previously provided everything that we have in our files which is responsive to the first set of requests (issued by the government). You have it all.

This letter is intended to provide official notice to you that ACE and Delmarva have breached their obligations under the 1999 PSAs, and that we will be submitting our costs and expenses to you for payment.

The PSAs also contained a provision under which, in the event of disputes after closing, an arbitration process could be commenced. I would ask you to go back and refresh your recollection on the exact nature and requirements of this process. If we are unable to reach any "informal" understanding on our issue here, we will give serious consideration to initiating this process. An unfavorable outcome in arbitration would have a very negative effect on your litigation against the federal government.

Our view is that our agreement in the PSAs clearly and unambiguously conveyed all these rights to PSEG. Perhaps the litigation is being conducted at no expense to you right now, but with the discovery requests now approaching a level of what I would call harassment, we may be forced to take other steps to deal with this matter.

We look forward to receiving notice of dismissal of the *Delmarva* case. By this letter, PSEG reserves all rights and remedies in law and equity and under the purchase agreements, should ACE and Delmarva fail to meet their obligations under the purchase agreements.

Sincerely,

Fred Cassidy

BC H. W. Borden

# EXHIBIT 3
## to Affidavit of Todd L. Goodman, Esq.

Pepco Holdings, Inc

701 Ninth Street NW
Washington, DC 20068

Thomas S. Shaw
Executive Vice President
Chief Operating Officer

202 872-2187
302 429-3221

October 14, 2005

Mr. Frank Cassidy
President and COO
PSEG Power LLC
80 Park Plaza - 4th Floor
Newark, NJ 07102-4194

Dear Frank:

I am surprised and disappointed at the content of your correspondence dated October 6, 2005 regarding your challenge to the spent nuclear fuel litigation we have filed against the U.S. Department of Energy. For nearly two years we have been engaged with PSEG and its counsel in discussions and meetings with regard to how our respective companies could work cooperatively with respect to these matters. I must say that against that history, and given that both our corporate parents have a deep responsibility to their respective ratepayers, your letter and the positions asserted by PSEG are inappropriate to say the least. As you and I discussed during our telephone conversation on September 19, 2005, any recovery that Atlantic City Electric Company achieves in its action will be for the direct benefit of its New Jersey ratepayers. At a time when consumer energy costs are escalating, it is inexplicable to me how PSEG can so erroneously assert that we do not have the standing to bring this litigation for the benefit of our New Jersey ratepayers in order to help reduce their cost of vital energy services.

Accordingly, for the reasons outlined herein, I must respond that Atlantic City Electric Company ("Atlantic") and Delmarva Power and Light Company ("Delmarva") will not voluntarily dismiss their respective Complaints, as demanded by your letter dated October 6, 2005. These suits were brought with the knowledge and support of the New Jersey Board of Public Utilities, which we brief regularly on the status of the Atlantic case. We will continue to assert all valid claims we have in these cases.

As we have discussed with your representatives, as well as with the Court, we do not believe that our respective lawsuits and claims overlap, and therefore are not competitive with one another. Atlantic and Delmarva are seeking the lost value to our nuclear assets, among other things, as a result of the government's "taking" of their property. PSEG, on the other hand, is seeking the costs which it has incurred and is continuing to incur as a result of the government's breach of the Standard Contract. Further, I understand that your company's Complaint has been dismissed by a Judge of the Court of Federal Claims, and is now on appeal.

Indeed, nearly two years ago, our representatives met with counsel for PSEG Power, as well as counsel for Public Service Electric and Gas Company ("PSE&G") to discuss these suits, including the legal basis upon which they have been filed. In point of fact, shortly after that meeting our counsel provided to your in-house attorneys copies of legal opinions supporting the basis of our "takings" theory. You subsequently amended your complaint to include PSE&G as a named party consistent with the approach we recommended to you. Since then we have had numerous discussions and meetings with PSEG, its staff, and counsel seeking PSEG's cooperation in providing us with certain information and data, much if not all of which is otherwise in the public domain. Not only has PSEG refused to provide that cooperation, but now, almost two years later, for reasons which are not clear to me, you threaten to bring what I can only describe as a baseless lawsuit against a public utility company acting to recover funds for its New Jersey ratepayers.

I use the word "baseless" in that it is evident from your correspondence that your counsel has not fully or adequately advised you as to the basis of the Atlantic and Delmarva Complaints. With the exception noted below, the original Atlantic and Delmarva Complaints, which have been consolidated by Judge Christine Miller for trial, arise out of the federal government's "taking" of our property in violation of the Fifth Amendment to the U.S. Constitution. The government, alleging similar arguments to those contained in your October 6th letter regarding the assignment of claims provision contained in our Purchase and Sale Agreement ("PSA"), challenged Atlantic and

Delmarva's standing to bring these suits. Judge Miller denied the government's motion to dismiss our Complaints and noted simply that she was not impressed with the government's argument. Judge Miller upheld the right of Atlantic and Delmarva to develop the factual support for their cases and in her Opinion, specifically noted that a "takings" claim in the SNF context need not be premised upon the government's breach of the Standard Contract, but rather arises out of constitutionally protected Fifth Amendment rights.

In addition, it is well established law that the right to bring a constitutionally based "takings" claim is uniquely and exclusively the prerogative of the owner of the property at the time of the taking, and that such claim cannot be assigned to another without the express written consent of the government, which consent was neither sought nor obtained in this instance. In other words, even if Atlantic and Delmarva had intended to assign their takings claims to PSEG, which they did not, any such assignment would have been invalid as a matter of law. We have alleged, and there is little or no dispute in this regard, that the government took the value of our nuclear assets as of January 31, 1998, a point in time when Atlantic and Delmarva were the legal owners of those assets. Accordingly, Judge Miller has upheld Atlantic's and Delmarva's standing to bring their respective suits against the federal government.

Further, contrary to your October 6 assertion, our suits do not arise out of, nor are they premised upon, the government's default under the Standard Contract as referenced in Section 2.2(l) of the PSA. As addressed above, it is a matter of well established law that even if we had intended to assign our Fifth Amendment "takings" claim to you, which we clearly did not intend, as a matter of law we could not have done so.

I do want to clarify one point with regard to the above. While it is correct that Atlantic and Delmarva have each subsequently filed Amended Complaints asserting a breach of contract claim, our counsel has formally advised the Court and your attorney, that we will voluntarily seek a dismissal of that claim once the government rescinds its argument that our PSA assignment to you of our breach of contract claim was invalid. Those Amended Complaints, as discussed with your attorney in advance of their being filed, and as noted by Judge Miller, were filed purely to preserve the breach claim should you be unable to assert them as a legal matter.

Finally, in your October 6 letter you assert that we "have it all" with regard to our request for certain documents. What the government has requested through its subpoenas and what you have provided in response is not responsive to the document requests we have made of PSEG. We have requested certain decommissioning studies, which as co-owners, we paid for, as well as specifically identified documents that PSE&G filed in the public record as part of its stranded cost proceeding before the New Jersey Board of Public Utilities. PSEG has refused to produce those documents. We do not have it all.

As I noted earlier, we continue to brief the New Jersey Board on the status of our litigation for the benefit of our New Jersey ratepayers. We will continue to advise them that we have no intention of abandoning that effort now or at any time in the future. We ask, yet again, that PSEG provide us with the material requested in our recent subpoena. We further request that PSEG discontinue efforts to prevent Atlantic from pursuing its litigation on behalf of Atlantic's New Jersey ratepayers. We look forward to your cooperation in this regard.

Very Truly Yours,

T. S. Shaw

Thomas S. Shaw

# EXHIBIT 4
## to Affidavit of Todd L. Goodman, Esq.

**Frank Cassidy**
President and COO

**PSEG Power LLC**
80 Park Plaza, 4th Floor, Newark, NJ 07102-4194
tel: 973-430-5687 fax: 973-242-5162

**PSEG**
*Power LLC*

RECEIVED
NOV 14 2005
TODD L. GOODMAN

November 4, 2005

**By U.S. Mail**

Mr. Thomas Shaw
Executive Vice President and Chief Operating Officer
Pepco Holdings, Inc.
701 Ninth Street, NW
Washington, DC 20068

Dear Tom:

**PSEG NUCLEAR LLC'S RESPOSE**
**TO OCTOBER 14, 2005 LETTER**

I write to respond to your October 14, 2005 letter in which you continue to assert that Atlantic City Electric Company ("ACE") and Delmarva Power & Light Company ("Delmarva") may properly maintain a lawsuit against the Department of Energy. Notwithstanding the contentions in your letter, for the reasons detailed below, we continue to feel strongly that ACE and Delmarva have no right to bring these actions.

First, the purchase and sale agreements between PSEG and ACE or Delmarva include broad and unambiguous language transferring all claims against the Department of Energy to PSEG. In this regard, the various purchase and sale agreements not only transferred any breach claims from Delmarva and ACE to PSEG, but also transferred "all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased Assets" with only an exception not pertinent to the cases brought by Delmarva and ACE. *See, e.g.*, Purchase Agreement By and Between Delmarva Power & Light Company and PSEG Power LLC § 2.1(*l*)(Sept. 27, 1999). This "all other claims" language means exactly what it says and, therefore, precludes Delmarva and ACE's takings claims against the Department of Energy. Your assertion that ACE and Delmarva never intended to assign these takings claims to PSEG contradicts not only this specific language but also the spirit of our bargain.

Second, it appears you want to deny PSEG the benefit of the bargain by relying on a legal rule – intended solely for the benefit and protection of the U.S. Government, not ACE or Delmarva --

allegedly prohibiting the assignment of claims against the federal government. However, even assuming this rule is applicable, it has no effect regarding claims between PSEG and ACE or Delmarva. PSEG has, and expressly reserves its right to bring, an equitable claim against the proceeds of any damages awarded to ACE or Delmarva arising from their pending action against the U.S. Government.

Third, we bring to your attention the requirement that ACE and Delmarva had an obligation to notify PSEG *before* closing if they believed that any assets might be taken by eminent domain. In particular, the purchase and sale agreements state that "if, before the Closing Date, all or any portion of the Purchased Assets is (i) condemned or taken by eminent domain or is the subject of a pending or threatened condemnation or taking which has not been consummated . . . Seller shall notify Buyer promptly in writing of such fact and (x) in the case of a condemnation or taking, Seller shall assign or pay, as the case may be, any proceeds thereof to Buyer at the Closing . . . ." *See, e.g.*, Purchase Agreement By and Between Delmarva Power & Light Company and PSEG Power LLC § 6.8 (Sept. 27, 1999). No such notice has ever been provided.

Ultimately, we again reiterate that ACE and Delmarva should abandon their lawsuits. This best comports with the spirit and language of the purchase and sale agreements and assures that PSEG will be made whole based on the Department of Energy's breach and takings.

By this letter, PSEG continues to reserve all rights and remedies in law and equity and under the purchase and sale agreements, should ACE and Delmarva fail to meet their obligations under the purchase and sale agreements.

Sincerely,

Fred Carrolly

# EXHIBIT E

Pillsbury Winthrop Shaw Pittman LLP

1650 Tysons Boulevard
McLean, VA 22102-4859
Tel 703.770.7900 | Fax 703 770 7901
www.pillsburylaw.com

**FACSIMILE**

Total Pages (including cover):

CENTURY CITY
HOUSTON
LONDON
LOS ANGELES
NEW YORK
NORTHERN VIRGINIA
ORANGE COUNTY
SACRAMENTO
SAN DIEGO
SAN DIEGO-NORTH COUNTY
SAN FRANCISCO
SILICON VALLEY
SYDNEY
TAIPEI
TOKYO
WASHINGTON DC

| | | | |
|---|---|---|---|
| Date: | October 12, 2005 | Must Be Sent By: | |
| To: | Joshua E. Gardner | Fax No: | 202.307.2503 |
| Company: | U.S. Department of Justice | Phone No. | 202.305.7583 |
| To: | Richard Conway | Fax No: | 202.887.0689 |
| Company: | Dickstein, Shapiro, Morin & Oshinsky | Phone No: | 202.785.9700 |
| From: | Daniel S. Herzfeld | Phone No: | 703.770.7612 |
| User No: | 53929 | C/M No: | 515134 |

Comments:

2005 OCT 12 PM

Confidentiality Note
The documents accompanying this facsimile transmission may contain confidential information which is legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in this transmission is strictly PROHIBITED. If you have received this transmission in error, please immediately notify us by telephone and mail the original transmission to us. Thank you.

If you have not properly received this fax, please call (703) 770-7900. Thank you.

Operator: ______________________ Time Sent: ____________ Batch ID: ____________

400068130v1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DELMARVA POWER & LIGHT COMPANY,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 04-34C into which has been consolidated No. 04-36C (Judge Christine Miller) |

**OBJECTIONS OF PUBLIC SERVICE ENTERPRISE GROUP, INC., PUBLIC SERVICE ELECTRIC AND GAS COMPANY, AND PSEG POWER, LLC TO THE PLAINTIFFS' NON-PARTY SUBPOENA DUCES TECUM**

Pursuant to Rule 45(c)(2)(B) of the Rules of the Court of Federal Claims ("RCFC"), Public Service Enterprise Group, Inc., Public Service Electric and Gas Company,[1] PSEG Power, LLC[2] (together "PSEG"), acting by and through the undersigned counsel, hereby make the following written objections to inspection and copying of all of the documents described by the Plaintiffs Delmarva Power & Light Company and Atlantic City Electric Company in the subpoenas dated September 28, 2005:

## GENERAL OBJECTIONS

PSEG asserts the following general objections in addition to the specific objections stated in response to the particular document requests. The objections are applicable to each and every portion of the document requests submitted with Plaintiffs' subpoenas and the failure to repeat

---

[1] Plaintiffs issued subpoenas to "PSE&G, Inc.," which PSEG interprets to be "Public Service Electric and Gas Company."

[2] Plaintiffs issued a subpoena to an entity identified as "PSE&G Power LLC," which PSEG interprets to be "PSEG Power LLC."

these objections in any portion of the following specific responses shall not be deemed to waive these objections.

1. PSEG objects to each and every production request on the grounds that Plaintiffs, in bringing this action, are in material breach of the purchase and sale agreements ("PSAs") pursuant to which Plaintiffs sold their minority interest in the Hope Creek and Salem nuclear power stations to PSEG. Accordingly, Plaintiffs are neither proper parties to serve the instant subpoenas on PSEG, nor is Plaintiffs' use of RCFC 45 in these circumstances proper under the law. In particular, the PSAs state that, among the purchased assets listed in Article II of the PSAs, Atlantic City Electric Company or Delmarva Power & Light Company (each being the "Seller" in the respective agreements) transfers:

> All claims of Seller relating to or pertaining to the Department of Energy's defaults under the Department of Energy Standard Contract (including all claims for failure by the Department of Energy to take Spent Nuclear Fuel) accrued prior to, on or after the Closing Date, whether relating to periods prior to, on or after the Closing Date, and all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased Assets, other than the claims described in Section 2.2(l) . . . .

Purchase Agreement By and Between Delmarva Power & Light Company and PSEG Power LLC § 2.1(*l*)(Sept. 27, 1999); *see also* Purchase Agreement By and Among Atlantic City Electric Company, PECO Energy Company and PSEG Power LLC § 2.1(*l*) (Sept. 27, 1999); Purchase Agreement By and Between Atlantic City Electric Company and PSEG Power LLC § 2.1(*l*)(Sept. 27, 1999); Purchase Agreement By and Between Atlantic City Electric Company and PSEG Power LLC § 2.1(*l*) (Sept. 27, 1999); Purchase Agreement By and Among Delmarva Power & Light Company, PECO Energy Company and PSEG Power LLC § 2.1(*l*) (Sept. 27, 1999). As explained in the October 6, 2005 letter from Frank Cassidy, President and Chief

Operating Officer, PSEG Power LLC, to Thomas Shaw, President and Chief Operating Officer, Conectiv, PSEG reiterates its request that Plaintiffs immediately dismiss the instant lawsuit.

2. PSEG objects to each and every production request to the extent that the request calls for the disclosure of material or information that is subject to any claim of privilege or protection, including without limitation, the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, or protection. All document requests will be read to exclude discovery of information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege, immunity, or protection. Provision of any such information by PSEG in response to the subpoenas is inadvertent and should not be construed as a waiver of any privilege, immunity, protection, or any other ground for objection to discovery with respect to such information.

3. PSEG objects to each and every production request to the extent that the request calls for the disclosure of a trade secret or other confidential commercial information.

4. PSEG objects to the instructions and definitions accompanying the document requests to the extent that such instructions and definitions attempt to impose obligations on PSEG other or in excess of those imposed by the RCFC and the Court's previous orders in this matter. For example, PSEG objects to document requests to the extent they seek the identification or production of all documents "concerning" any particular area of inquiry on the ground that such document requests, when construed as written, are unduly burdensome and are not reasonably calculated to lead to the discovery of admissible evidence. PSEG made a good faith search of its files within PSEG's possession, custody, or control that are most likely to contain information responsive to Plaintiffs' requests and that is properly discoverable.

5. PSEG objects to each and every document request to the extent these requests seek documents that are already in Plaintiffs' possession, custody, or control as a result of previous documents produced by PSEG (through PSEG Nuclear, LLC) in response to Defendant, the United States' (the "Government"), subpoena duces tecum in this case. In that regard, PSEG on September 1, 2005 and September 14, 2005 produced CD-ROMs to counsel for the Government and counsel for the Plaintiffs that contained electronic images of approximately seven boxes of documents responsive to the Government's subpoena. Many of those documents appear responsive to some or all of Plaintiffs' requests herein. PSEG objects to any production of these materials a second time.

6. PSEG objects to each and every document request to the extent Plaintiffs seek documents that may be obtained from the Government or are publicly available.

7. PSEG objects to each and every document request to the extent that the request is unduly burdensome, particularly for a non-party which has no interest in the captioned matter. Some requests would require the compilation and production of hundreds of thousands of pages of material at substantial expense and person-hours of effort.

8. PSEG objects to each and every document request to the extent that the request is overly broad, burdensome, seeks material that is not relevant to any claim or defense of the subject matter involved in the action, and is not reasonably calculated to lead to the discovery of admissible evidence.

9. PSEG objects to each and every document request to the extent that the request fails to allow reasonable time for compliance in that some of the requests seek hundreds of

thousands of pages of material that may be stored or archived in multiple, physically separate locations.

10. PSEG's answers to the document requests are not intended to waive, and should not be construed as waiving, PSEG's right to object to the relevance, materiality, burdensomeness, or admissibility as evidence of any information provided (or the subject-matter thereof), as may be directed or permitted by the Court.

11. PSEG's objections and response to these requests are based on information now known to it. For example, PSEG reserves its right to amend, modify, or supplement its objections to individual document requests based on relevance, materiality, burdensomeness, or other grounds as may be directed or permitted by the Court.

12. In accordance with the protective orders entered in this case, all documents produced in response to Plaintiffs' requests are designated Confidential Material.

**SPECIFIC OBJECTIONS AND RESPONSES TO DOCUMENT REQUESTS**

**REQUEST NO. 1:**

All documents relating to decommissioning cost estimates for the Nuclear Stations, including all calculations supporting all such estimates.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks confidential and proprietary information. Subject to, and without waiving, its Specific and

General Objections, PSEG produced certain responsive, non-privileged documents, if any such documents were in its possession, custody, or control in its response to the Government's subpoena duces tecum in this case. Any documents produced were and continue to be subject to the Protective Order entered in this case.

**REQUEST NO. 2:**

All documents relating to the number of spent fuel assemblies in the spent fuel pools from January of 1998 through 2000 at each of the Nuclear Stations.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks information that is confidential and proprietary. Subject to, and without waiving, its Specific and General Objections, PSEG produced certain responsive, non-privileged documents, if any such documents were in its possession, custody, or control in its response to the Government's subpoena duces tecum in this case. Any documents produced were and continue to be subject to the Protective Order entered in this case.

**REQUEST NO. 3:**

All documents relating to all payments made pursuant to the Standard Contract and/or the Nuclear Waste Policy Act on behalf of the joint owners of the Nuclear Stations.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving, its Specific and General Objections, PSEG produced certain responsive, non-privileged documents, if any such documents were in its possession, custody, or control in its response to the Government's subpoena duces tecum in this case. Any documents produced were and continue to be subject to the Protective Order entered in this case.

**REQUEST NO. 4:**

All documents relating to the number and type of dry storage modules on-site from January of 1998, through 2000, at each of the Nuclear Stations.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The request is vague as to the term "number and type of dry storage modules." Subject to, and without waiving, its Specific and General Objections, PSEG produced certain responsive, non-privileged documents, if any such documents were in its possession, custody, or control in its response to the Government's subpoena duces tecum in this case. Any documents produced were and continue to be subject to the Protective Order entered in this case.

**REQUEST NO. 5:**

All documents relating to the annual capacity of the spent fuel pools for the Nuclear Stations.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks information that is confidential and proprietary. The request is vague as to the terms "annual capacity." Subject to, and without waiving, its Specific and General Objections, PSEG produced certain responsive, non-privileged documents, if any such documents were in its possession, custody, or control in its response to the Government's subpoena duces tecum in this case. Any documents produced were and continue to be subject to the Protective Order entered in this case.

**REQUEST NO. 6:**

All documents relating to the total number of spent fuel assemblies in the reactor vessels at the Nuclear Stations, and any changes thereto since its initial construction completion date.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks information that is confidential and proprietary. The request is vague as to the terms "total number of spent fuel assemblies in the reactor vessels" and "initial construction completion date." Subject to, and without waiving, its Specific and General Objections, PSEG produced

certain responsive, non-privileged documents, if any such documents were in its possession, custody, or control in its response to the Government's subpoena duces tecum in this case. Any documents produced were and continue to be subject to the Protective Order entered in this case.

**REQUEST NO. 7:**

All documents relating to the average number of spent fuel assemblies replaced during each outage at the Nuclear Stations.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks information that is confidential and proprietary. The request is vague as to the term "average number." Subject to, and without waiving, its Specific and General Objections, PSEG produced certain responsive, non-privileged documents, if any such documents were in its possession, custody, or control in its response to the Government's subpoena duces tecum in this case. Any documents produced were and continue to be subject to the Protective Order entered in this case.

**REQUEST NO. 8:**

All documents relating to the type and cost of dry storage modules used, or to be utilized, at the Nuclear Stations.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks

information that is confidential and proprietary. The request is vague as to the terms "type and cost" and "dry storage modules." Subject to, and without waiving, its Specific and General Objections, PSEG produced certain responsive, non-privileged documents, if any such documents were in its possession, custody, or control in its response to the Government's subpoena duces tecum in this case. Any documents produced were and continue to be subject to the Protective Order entered in this case.

**REQUEST NO. 9:**

All documents relating to the type and cost of dry cask storage modules considered for use at each of the Nuclear Stations.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks information that is confidential and proprietary. The request is vague as to the terms "type and cost" and "dry storage modules." Subject to, and without waiving, its Specific and General Objections, PSEG produced certain responsive, non-privileged documents, if any such documents were in its possession, custody, or control in its response to the Government's subpoena duces tecum in this case. Any documents produced were and continue to be subject to the Protective Order entered in this case.

**REQUEST NO. 10:**

All documents relating to the annual operating cost for the spent fuel pool at each of the Nuclear Stations, including but not limited to, staffing, security, insurance, equipment, materials, and property taxes allocated to the spent fuel pool.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks information that is confidential and proprietary. The request is vague as to the terms "staffing, security, insurance, equipment, materials, and property taxes." Subject to, and without waiving, its Specific and General Objections, PSEG produced certain responsive, non-privileged documents, if any such documents were in its possession, custody, or control in its response to the Government's subpoena duces tecum in this case. Any documents produced were and continue to be subject to the Protective Order entered in this case.

**REQUEST NO. 11**

All documents relating to the SNF Delivery Commitment Schedules for each of the Nuclear Stations.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 12:**

All documents relating to the costs, including projected or future costs, associated with independent spent fuel storage installations, for each of the Nuclear Stations.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks information that is confidential and proprietary. The request is vague as to the terms "projected or future costs." Subject to, and without waiving, its Specific and General Objections, PSEG produced certain responsive, non-privileged documents, if any such documents were in its possession, custody, or control in its response to the Government's subpoena duces tecum in this case. Any documents produced were and continue to be subject to the Protective Order entered in this case.

**REQUEST NO. 13:**

All documents relating to budget information regarding SNF storage (both off and on-site), including but not limited to, dry cask storage, the re-racking of spent fuel pools, and private fuel storage projects, for each of the Nuclear Stations. This information should include, but not be limited to, all documents relating to Forecasted Five Year Capital budgets for the Nuclear Stations.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks information that is confidential and proprietary. The request is vague as to the terms "budget information" and "Forecasted Five Year Capital budgets." Subject to, and without waiving, its Specific and General Objections, PSEG produced certain responsive, non-privileged documents, if any such documents were in its possession, custody, or control in its response to the Government's subpoena duces tecum in this case. Any documents produced were and continue to be subject to the Protective Order entered in this case.

**REQUEST NO. 14:**

All documents relating to economic and engineering studies regarding SNF storage for the Nuclear Stations.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks confidential and proprietary information. The request is vague as to the term "economic and engineering studies." Subject to, and without waiving, its Specific and General Objections, PSEG produced certain responsive, non-privileged documents, if any such documents were in its possession, custody, or control in its response to the Government's subpoena duces tecum in this case. Any documents produced were and continue to be subject to the Protective Order entered in this case.

**REQUEST NO. 15:**

All documents regarding analyses of the fair market value of the Nuclear Stations.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks confidential and proprietary information. Subject to, and without waiving, its Specific and General Objections, PSEG produced certain responsive, non-privileged documents, if any such documents were in its possession, custody, or control in its response to the Government's subpoena duces tecum in this case. Any documents produced were and continue to be subject to the Protective Order entered in this case.

**REQUEST NO. 16:**

Any and all presentations prepared for or presented to rating agencies, nuclear or other energy industry groups or publications, or financial analysts referencing nuclear fuel costs, nuclear risks, or SNF storage related issues for the Nuclear Stations or nuclear facilities in general.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks confidential and proprietary information.

**REQUEST NO. 17:**

All documents relating to the Department of Energy's decision not to begin accepting SNF by January 31, 1998.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving, its Specific and General Objections, PSEG produced certain responsive, non-privileged documents, if any such documents were in its possession, custody, or control in its response to the Government's subpoena duces tecum in this case. Any documents produced were and continue to be subject to the Protective Order entered in this case.

**REQUEST NO. 18:**

All direct, rebuttal and/or supplemental testimony, and exhibits, together with discovery responses related thereto, submitted by or on behalf of PSE&G in New Jersey Board of Public Utilities Docket Nos. E097070462 and E097070461, relating to the issues of nuclear asset valuation and/or stranded cost determinations.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. To the extent that this information is publicly available, plaintiffs may obtain this information as easily and readily as PSEG.

**REQUEST NO. 19:**

All regulatory (both State and Federal) data requests, and responses thereto, including information or data requests made on the record during the conduct of a regulatory proceeding or submitted in the context of rate or stranded cost proceedings. Such proceedings include, but are not limited to, New Jersey Board of Public Utilities Docket Nos. E097070462 and E097070461, whether submitted by you or any party to such proceedings, that related to or referenced direct and indirect costs associated with SNF storage, both off-site and on-site, or that related to the market valuation of the Nuclear Stations.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. This request is vague as to the term "data requests." To the extent that this information is publicly available, plaintiffs may obtain this information as easily and readily as PSEG.

**REQUEST NO. 20:**

All documents, including, but not limited to, filings, testimony, or data requests related to the funding of decommissioning costs arising out of the Board's Order in New Jersey Board of Public Utilities Docket Nos. E097070462 and E097070461.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. To the extent that this

information is publicly available, plaintiffs may obtain this information as easily and readily as PSEG

**REQUEST NO. 21:**

All documents related to the testimony of Dr. Colin J. Loxley filed on behalf of Public Service Electric and Gas Company in New Jersey Board of Public Utilities Docket Nos. EX941205854 and E097070462, including all work papers, notes, studies, or analyses whether submitted as part of the referenced proceedings or not, data requests and responses thereto, as well as updates, supplements, or modifications to this testimony in these or other docketed proceedings. Such documents should include, but not be limited to, all cash flow and/or discounted cash flow studies, documents related to the derivation of the discount rate, and power market price forecasts.

**RESPONSE:**

PSEG specifically objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. To the extent that this information is publicly available, plaintiffs may obtain this information as easily and readily as PSEG

Dated: October 12, 2005

Respectfully Submitted,

Alex D. Tomaszczuk

Pillsbury Winthrop Shaw Pittman LLP
1650 Tysons Blvd.
McLean, VA 22102-4859
Telephone: (703)770-7940
Fax: (703)770-7901
Counsel for
PSEG Nuclear, LLC
Public Service Electric and Gas Company
PSEG Power LLC
Public Service Enterprise Group, Inc.

**OF COUNSEL**

Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street NW
Washington, DC 20037-1128
Telephone: (202)663-8000
Fax: (202)663-8007

**CERTIFICATE OF SERVICE**

I hereby certify that I have served the foregoing Objections of Public Service Enterprise Group, Inc., Public Service Electric and Gas Company, PSEG Power, LLC to Plaintiffs' Non-Party Subpoena Duces Tecum by facsimile and U.S. Mail (postage pre-paid, first class) this 12th day of October, 2005, upon:

Joshua E. Gardner, Esq.
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, N.W.
8th Floor Mailroom
Washington, DC 20530

Richard Conway, Esq.
Dickstein, Shapiro, Morin & Oshinsky
2101 L Street NW
Washington, DC 20037-1526

# EXHIBIT F

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*

*Writer's Direct Dial: (202) 828-2235*
*ConwayR@dsmo.com*

October 18, 2005

**VIA FACSIMILE AND U.S. MAIL**

Alexander Tomaszczuk, Esquire
Pillsbury Winthrop Shaw Pittman LLP
725 South Figueroa Street
Suite 2800
Los Angeles, California 90017

Re: *Delmarva Power and Light Company v. United States*, No. 04-34C, 04-36C (Miller, J.)

Dear Alex:

I am writing in response to the "Objection of Public Services Enterprise Group, Inc., Public Service Electric and Gas Company, and PSEG Power, LLC to the Plaintiff's Non-Party Subpoena Duces Tecum" ("Objections") served upon the parties on October 12, 2005 in the above-referenced matter. Upon review of your Objections it appears that Public Services Enterprise Group, Inc., Public Service Electric and Gas Company, and PSEG Power, LLC (hereinafter, "PSEG") are withholding production of numerous documents PSEG is required by law and contract to produce to Delmarva Power & Light Company and Atlantic City Electric Company (hereinafter "Plaintiffs"). This letter addresses the general and specific objections raised by PSEG in an effort to resolve this dispute without requiring the intervention of the Court.

First, PSEG's general objection regarding the propriety of the underlying litigation is *not* a valid basis upon which PSEG can refuse to produce documents in response to Plaintiffs' valid and enforceable subpoenas. PSEG has generally objected to the subpoenas duces tecum on the grounds that "Plaintiffs are neither proper parties to serve the instant subpoenas on PSEG, nor is Plaintiffs' use of RCFC 45 in these circumstances proper under the law." *See* General Objection No. 1. There is no legal basis to support PSEG's contention. To the contrary, on multiple occasions, the Court of Federal Claims has upheld Plaintiffs' rights to bring the instant action. *See* Order and Opinion, *Delmarva Power & Light Co, v. United States*, No 04-0034C (December 3, 2004 and July 1, 2005).[1] PSEG has previously recognized as much. In an April 20, 2005 letter to Plaintiffs and the Government, you asked that we inform the Court of PSEG's view

[1] These Orders are attached for your convenience.

that Plaintiffs' and PSEG's cases were sufficiently distinct legally and procedurally such that consolidation was not warranted. PSEG's apparent change of heart, nearly two years after this case was filed, is little more than an attempt to avoid producing documents in the eleventh hour. Please let us know if PSEG intends to withhold documents on the basis of its first General Objection.

Secondly, PSEG has raised both general and specific objections on the grounds that Plaintiffs' requests seek confidential and/or proprietary information. *See* General Objections 2-3 and Responses to Request Nos. 1, 2, 5-10, 12-16. As PSEG is aware, the Court issued a Protective Order in the above referenced cases on August 30, 2005 extending the Protective Order issued on May 17, 2004 by Judge Futey in Case No. 04-0036C. These Orders are attached for your convenience. Therefore, all documents marked "Confidential" will be subject to the Protective Order and will not be disclosed outside of the above referenced proceedings. Moreover, neither Plaintiffs nor the Government compete with PSEG in the operation of nuclear facilities and neither party would gain any competitive advantage from review of these documents. Accordingly, PSEG's confidentiality and trade secrets objections are baseless. Please let us know if PSEG intends to withhold documents on these bases.

Third, PSEG argues that Plaintiffs' requests are duplicative of those contained in the Government's third-party subpoena. They are not. A review of the documents produced by PSEG in response to the third party subpoena duces tecum issued by the Government demonstrates that PSEG has failed to produce relevant documents responsive to Plaintiffs' subpoenas.[2] With respect to Requests Nos. 1-10, 12-15, and 17, to the extent that "PSEG produced certain responsive, non-privileged documents" in response to the Government's subpoena, please identify these documents by Bates range. In so far as additional responsive documents exist, you are required to produce them no later than October 28, 2005. To the extent these document no longer exist, please confirm that they do not exist and the dates upon which they were destroyed. Please provide this information no later than October 28, 2005.

Fourth, PSEG has argued that Plaintiffs' subpoenas seek documents that are irrelevant and/or unduly burdensome. This is also incorrect. Plaintiffs' requests are narrowly and specifically tailored to address the issues relevant to the pending litigation. Moreover, PSEG's relevancy and burdensomeness objections are particularly non-availing in light of the fact that PSEG is *contractually obligated* to produce to Plaintiffs the vast majority of the documents in question. Section 6.9 of the Purchase and Sale Agreement specifically states that

---

[2] We note that it appears that PSEG has not produced all responsive documents pursuant to the Government's third-party subpoena. Indeed, PSEG repeatedly states in its Objections to Plaintiffs' requests that it has "produced *certain* responsive, non-privileged documents . . ." to the Government in this case. (Emphasis added). PSEG's incomplete production to the Government can be of little consolation to Plaintiffs and cannot be deemed fully responsive by any stretch of the imagination.

> From and after the Closing Date, Seller shall have access to and right to copy all books and records, and other documents, relating to the Purchased Assets to the extent that such access may reasonably be required by Seller in connection with matters relating to or affected by ownership, lease, maintenance of operation of the Purchased Assets prior to the Closing Date. . . .

Accordingly, the burden of producing these documents falls squarely on PSEG's shoulders. Moreover, as a practical matter, the vast majority of the documents requested by Plaintiffs are likely readily available given PSEG's own litigation involving similar subject matter. *See PSEG Nuclear, L.L.C. v. United States*, No. 01-551C, currently on appeal to the United States Court of Appeals for the Federal Circuit, Case No. 05-M786. Please let us know if PSEG intends to withhold documents on the basis of relevancy or burdensomeness.

Fifth, PSEG argues that numerous documents Plaintiffs' have requested are publicly available. *See* Response to Request Nos. 18-21. Plaintiffs have met with officials from, and reviewed the files of, the New Jersey Board of Public Utilities on numerous occasions. Unfortunately, the documents in question can no longer be readily located through this public source. Accordingly, PSEG renews its request for these documents. In so far as responsive documents exist, you are required to produce them no later than October 28, 2005. To the extent these documents no longer exist, please confirm that they do not exist and the dates upon which they were destroyed. Please provide this information no later than October 28, 2005.

Finally, PSEG has claimed that certain terminology used in Plaintiffs' subpoenas is vague. In particular, PSEG objects to the terms "number and type of dry storage modules" (Response to Request No. 4), "annual capacity" (Response to Request No. 5), "total number of spent fuel assemblies in the reactor vessels" and "initial construction completion date" (Response to Request No. 6), "average number" (Response to Request No. 7), "type and cost" and "dry storage modules" (Response to Request Nos. 8-9), "staffing, security, insurance, equipment, materials, and property taxes" (Request No. 10), "projected or future costs" (Request No. 12), "budget information" and "Forecasted Five Year Capital budgets" (Request No. 13), "economic engineering studies" (Request No. 14), and "data requests" (Request No. 19). We note that several of these terms are used and/or contained in the documents PSEG produced to the Government or in testimony PSEG offered in public proceedings. To the extent that you require clarification regarding Plaintiffs' use of these terms, we will be happy to provide it to you. In the meantime, please let us know if PSEG intends to withhold documents on the basis of Plaintiffs' use of one or more of these terms.

Alex, I would like to reiterate my desire to resolve this matter amicably. If you have any questions, please call me at (202) 828-2235. Your response to this letter by or before close of business on Thursday, October 20, 2005 is greatly appreciated.

Very truly yours,

Richard J. Conway

Enclosures

cc: Joshua Gardner, Esq. (w/o enclosures)

# EXHIBIT G

Pillsbury Winthrop Shaw Pittman LLP

1650 Tysons Boulevard
McLean, VA 22102-4859
Tel 703.770.7900 | Fax 703.770.7901
www.pillsburylaw.com

**FACSIMILE**

CENTURY CITY
HOUSTON
LONDON
LOS ANGELES
NEW YORK
NORTHERN VIRGINIA
ORANGE COUNTY
SACRAMENTO
SAN DIEGO
SAN DIEGO-NORTH COUNTY
SAN FRANCISCO
SILICON VALLEY
SYDNEY
TAIPEI
TOKYO
WASHINGTON DC

Total Pages (including cover): 4

| | | | |
|---|---|---|---|
| Date: | November 1, 2005 | Must Be Sent By: | 4:50 pm |
| To: | Richard Conway | Fax No: | 202-887-0689 |
| Company: | Dickstein Shapiro | Phone No: | 202-828-2235 |
| To: | Joshua Gardner | Fax No: | 202-307-2503 |
| Company: | Department of Justice | Phone No: | 202-305-7583 |
| From: | Daniel S. Herzfeld | Phone No: | 703.770.7612 |
| Email: | daniel.herzfeld@pillsburylaw.com | Fax No: | 703.770.7901 |
| User No: | 53929 | C/M No: | 515134.0000000 |

Comments:

See attached.

Confidentiality Note:
The documents accompanying this facsimile transmission may contain confidential information which is legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in this transmission is strictly PROHIBITED. If you have received this transmission in error, please immediately notify us by telephone and mail the original transmission to us. Thank you.

If you have not properly received this fax, please call (703) 770-7900. Thank you.

Operator: ____________ Time Sent: ____________ Batch ID: ____________

Pillsbury Winthrop Shaw Pittman LLP

1650 Tysons Boulevard
McLean, VA 22102-4859

Tel 703.770.7900
Fax 703.770.7901
www.pillsburylaw.com

Alex D. Tomaszczuk
Phone: 213.488.7110
alex.tomaszczuk@pillsburylaw.com

November 1, 2005

**Via Facsimile & U.S. Mail**

Richard J. Conway, Esq.
DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L St.,N.W.
Washington, DC 20037-1526

**Re:** ***Delmarva Power & Light Co. v. United States*, Nos. 04-34C, 04-36C**
**Response Providing Additional Documents**

Dear Mr. Conway:

This letter responds to your October 18, 2005 letter, in which you responded to the general and specific objections served on October 12, 2005 by Public Services Enterprise Group, Inc., Public Service Electric and Gas Company, and PSEG Power, LLC (together "PSEG"). We respond in an effort to further detail what, if any, additional documents will be produced in response to Delmarva Power & Light Company ("Delmarva") and Atlantic City Electric Company's ("ACE") document requests in the subpoenas dated September 28, 2005.

Notwithstanding this response, we reiterate that PSEG still believes that Delmarva and ACE have no right to bring the current claims, including their Fifth Amendment takings claims. The various purchase and sale agreements not only transferred any breach claims from Delmarva and ACE to PSEG, but also transferred "all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased Assets" with only an exception not pertinent to the cases brought by Delmarva and ACE. *See, e.g.*, Purchase Agreement By and Between Delmarva Power & Light Company and PSEG Power LLC § 2.1(*l*)(Sept. 27, 1999). This "all other claims" language means exactly what it says and, therefore, precludes Delmarva and ACE's takings claims against the Department of Energy. Furthermore, in my April 20, 2005 letter I made no comments on the propriety of Delmarva and ACE's suit. I merely stated that Delmarva and ACE were pursuing diminution in value claims that PSEG "has no interest or desire to prosecute or defend" and sought to avoid consolidating PSEG's claims with Delmarva and ACE's diminution in value claims. While PSEG has

endeavored and will endeavor to cooperate with Delmarva and ACE's request for documents, that cooperation is subject to this objection, which is continuing in nature.

Without waiving its October 12, 2005 general and specific objections, PSEG states the following:

1. PSEG has searched for and believes that it has provided all cost or valuation documents relating to its acquisition of Delmarva and ACE's interests in the plants, to the extent such documents exist, in its response to the United States' (the "Government's") subpoena duces tecum. Since this was viewed by PSEG as a relatively small, straight-forward transaction, few PSEG personnel (other than Frank Cassidy) were involved in cost or valuation activities and their work product is encompassed in the work papers previously provided. You can find Mr. Cassidy's files, for example, at bates range PSEG-0000857 through PSEG-0001177.

2. Your October 18, 2005 letter states that you have unsuccessfully attempted to retrieve certain requested documents from the New Jersey Board of Public Utilities. Due to the burdensomeness of locating, securing, and copying these documents, among other objections, PSEG still objects to providing these documents and notes that such documents should still be available from another source. In this regard, the law firm of Leboeuf, Lamb, Greene, & MacRae LLP ("Leboeuf Lamb") represented Conectiv (parent company for Delmarva and ACE) in those public utility proceedings. Therefore, Leboeuf Lamb should be able to provide your client with these documents, if they have not already done so. In addition, PSEG provided copies of all documents directly to Conectiv as a party to the proceedings.

3. PSEG reiterates that it produced all relevant technical and engineering documents regarding spent fuel pool re-racking and building a dry storage facility in response to the Government's subpoena duces tecum. You can find examples of these types of documents at bates ranges PSEG-0001560 through PSEG-0001567, PSEG-0014283 through PSEG-0014465, PSEG-0014658 through PSEG-0014668, PSEG-0015848 through PSEG-0015982, and PSEG-0016024 through PSEG-0016415.

Richard J. Conway, Esq.
November 1, 2005
Page 3

4. Finally, PSEG is searching for additional responsive documents such as five-year capital budgets, additional financial information you have requested regarding the plants, and decommissioning studies. We will produce any non-privileged responsive documents when they become available; we currently expect that production to occur within ten days.

Please let us know if you have any questions or concerns regarding this letter. You may contact me at 213.488.7110 or alex.tomaszczuk@pillsburylaw.com to discuss this further.

Sincerely,

Alex D. Tomaszczuk
Counsel for
Public Services Enterprise Group, Inc.
Public Service Electric and Gas Company
PSEG Power, LLC

cc: Joshua Gardner, Esq.

# EXHIBIT H

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*

*Writer's Direct Dial: (202) 828-2235*
*ConwayR@dsmo.com*

November 11, 2005

**VIA FACSIMILE AND U.S. MAIL**

Alexander Tomaszczuk, Esquire
Pillsbury Winthrop Shaw Pittman LLP
725 South Figueroa Street
Suite 2800
Los Angeles, California 90017

Re: *Delmarva Power and Light Company v. United States*, No. 04-34C, 04-36C (Miller, J.)

Dear Alex:

I am writing in response to your November 1, 2005 letter explaining Public Service Electric and Gas Company's ("PSEG") general and specific objections to Delmarva Power & Light Company's ("Delmarva") and Atlantic City Electric Company's ("Atlantic") subpoena *duces tecum* dated September 28, 2005. In your letter, you indicated that PSEG has provided "all cost and valuation documents relating to its acquisition of Delmarva and Atlantic's interests." Clearly, this is not responsive to our subpoena. We fully understand that PSEG may have considered its acquisition of Atlantic's and Delmarva's nuclear assets as being "relatively small" and therefore did not require extensive valuation. However, we are equally aware that PSEG, through its affiliate and regulated utility PSE&G, performed very detailed analyses of the value of these assets as part of its Stranded Cost proceedings (Docket Nos. EO97070461, EO97070462 and EX941205854) before the New Jersey Board of Public Utilities ("NJBPU"). These analyses are very relevant to ascertaining the value of the nuclear assets. As a result, we have requested very specific documents which we have identified in detail in our subpoena to PSEG, request numbers 18 through 21. Your letter makes clear that PSEG will not provide these documents, even though we have reason to believe that they are readily identifiable and easily accessible within your client's offices.

Your suggestion that Atlantic obtain these documents from its counsel, Leboeuf Lamb, does not relieve PSEG from its obligation to comply with the subpoena with which PSEG has been served. Although Atlantic continues to work with its former counsel to identify such documents, the referenced proceedings were quite extensive in both scope and duration, and not all parties actively participated in all aspects of the case. Accordingly, parties such as Atlantic do not have access to the entire universe of

documents produced therein. Notwithstanding, it is without question that PSE&G has maintained in the ordinary course of its regulated business all significant documents which supported its stranded cost determination. It is equally without question that PSE&G's rates and regulatory department can readily locate and provide such requested documents pursuant to the subpoena. Accordingly, Atlantic and Delmarva repeat their request for these documents.

Finally, one aspect of the subpoena PSEG has not addressed pertains to communications between PSEG and Philadelphia Electric Company ("PECO") relating to the valuation of the Nuclear Stations. The September 28, 2005 subpoena specifically requests "all documents regarding analysis of the fair market value of the Nuclear Station." *See* Request No. 15. This request includes documents and communications pre- and post-sale. To date, PSEG has not produced any documents containing or relating to communications by and/or between PSEG and PECO regarding the sale of the Nuclear Stations or the values attached to them by either of these entities. Please let us know if such documents exist, and if so, when they will be produced.

Very truly yours,

Richard J. Conway

Enclosures

cc: Joshua Gardner, Esq.

# EXHIBIT I

Pillsbury
Winthrop
Shaw
Pittman LLP

1650 Tysons Boulevard
McLean, VA 22102-4859

Tel 703.770.7900
Fax 703.770.7901
www.pillsburylaw.com

Alex D. Tomaszczuk
Phone: 703.770.7940
alex.tomaszczuk@pillsburylaw.com

December 7, 2005

**By Facsimile and U.S. Mail**

Richard J. Conway, Esq.
DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L St., N.W.
Washington, DC 20037-1526

**Re: *Delmarva Power & Light Co. v. United States*, Nos. 04-34C, 04-36C
Response to November 11, 2005 Letter**

Dear Rick:

I am writing to respond to your November 11, 2005 letter, in which you request that Public Service Electric and Gas Company (although presumably you meant Public Services Enterprise Group, Inc., Public Service Electric and Gas Company, and PSEG Power, LLC (together "PSEG")) provide certain documents from stranded cost proceedings before the New Jersey Board of Public Utilities ("NJBPU") and correspondence between PSEG and Philadelphia Electric Company ("PECO") regarding the fair market value of the Salem and Hope Creek nuclear stations.

PSEG has already produced seven boxes of documents in response to the various subpoenas served by the Government and Delmarva Power & Light Company ("Delmarva") and Atlantic City Electric Company ("ACE"). PSEG will also be producing an additional four boxes of documents in response to these subpoenas. PSEG has produced this information notwithstanding the substantial burden associated with searching for and producing documents in a case that PSEG believes is being pursued in violation of both the letter and spirit of the purchase and sale agreements between PSEG and ACE and Delmarva.

In light of PSEG's good faith efforts in producing these documents in response to the various subpoenas, we find it remarkable that you demand PSEG produce NJBPU documents that you admit might be obtained from ACE's own counsel. You argue that this salient fact does not "relieve" PSEG from producing these documents, asserting that ACE had only limited access to the universe of the documents in the NJBPU proceedings and that "it is without question" that PSEG has maintained these documents such that PSEG's "regulatory department" can locate these documents. As to the latter point,

Richard J. Conway, Esq.
December 7, 2005
Page 2

PSEG disagrees that its "regulatory department" can so easily locate, secure, and produce these documents. As to the former point, it is unclear why ACE – as a party to the proceedings – would not have had access to the full range of NJBPU documents that it now seeks from PSEG. PSEG reiterates that it would be an undue burden to produce these documents, particularly where it appears that ACE and Delmarva can obtain these documents from its own counsel if not from the NJBPU. This is precisely why PSEG timely served objections under Rule 45(c) to the production of such documents.

You also ask for additional valuation documents and have essentially amended the request by asking for specific communications between PSEG and PECO. As we stated in our previous letter, however, we have already provided all such responsive valuation documents. PSEG is unaware of any other specific communications between PSEG and PECO regarding ACE and Delmarva's sale of their relatively small ownership shares in the various nuclear plants.

Please contact me with any questions or concerns regarding this letter or PSEG's document production.

Sincerely yours,

Alex D. Tomaszczuk
Counsel for
Public Services Enterprise Group, Inc.
Public Service Electric and Gas Company
PSEG Power, LLC

cc: Josh Gardner, Esq.

# EXHIBIT J

**From:** Conway, Richard
**Sent:** Tuesday, December 27, 2005 5:15 PM
**To:** 'Alex Tomaszczuk'
**Cc:** Wine, Bradley; Mattia, Nick; 'todd.goodman@pepcoholdings.com'
**Subject:** Delmarva et al. v. United States

Alex, this is to follow-up our conversation last week at the Boston Edison hearing regarding the PSEG documents. Our client has now obtained the documents that we discussed from LeBoeuf Lamb concerning the valuation of the nuclear stations (including any related communications). I have had one of our attorneys travel to review these documents personally. I am advised that the documents that we have requested form PSEG, and which you have requested that we obtain from the files of LeBouef, are not contained in LeBeouf's files. Accordingly, I again request that PSEG produce these documents. There is no reasonable basis for PSEG to refuse to produce these documents in response to our subpoena, documents which we have previously explained we need for our case. Please advise me by email or letter by the close of business Friday, December 30, 2005, whether PSEG will or will not produce the subpoenaed documents. We have a report due to the judge next week on the status of the case, and I need to advise the Court whether PSEG will comply with the existing subpoena. If PSEG decides not to comply, we will seek to have this matter resolved by the court on an expedited basis. Since we have taken every possible step to locate these documents elsewhere but have been unsuccessful, I hope that PSEG will cooperate and not require us to seek judicial intervention.

I hope that you have a happy New Year. Rick

*Richard J. Conway*
*Dickstein Shapiro Morin & Oshinsky, LLP*
*2101 L Street N.W.*
*Washington, D.C. 20037*
*(202) 828-2235*
*(202) 822-9544 - fax*

# EXHIBIT K

Pillsbury
Winthrop
Shaw
Pittman LLP

1650 Tysons Boulevard
McLean, VA 22102-4859
Tel 703.770.7900 | Fax 703.770.7901
www.pillsburylaw.com

**FACSIMILE**

Total Pages (including cover): 3

CENTURY CITY
HOUSTON
LONDON
LOS ANGELES
NEW YORK
NORTHERN VIRGINIA
ORANGE COUNTY
SACRAMENTO
SAN DIEGO
SAN DIEGO-NORTH COUNTY
SAN FRANCISCO
SILICON VALLEY
SYDNEY
TAIPEI
TOKYO
WASHINGTON DC

| | | | |
|---|---|---|---|
| Date: | January 4, 2006 | Must Be Sent By: | |
| To: | Joshua E. Gardner | Fax No: | 202.307.2503 |
| Company: | U.S. Department of Justice | Phone No: | 202.305.7583 |
| To: | Richard Conway | Fax No: | 202.887.0689 |
| Company: | Dickstein, Shapiro, Morin & Oshinsky | Phone No: | 202.785.9700 |
| From: | Alex Tonaszczuk | Phone No: | 703.770.7940 |
| User No: | 50202 | C/M No: | 515134.0000000 |

Comments:

Please see attached.

Confidentiality Note:
The documents accompanying this facsimile transmission may contain confidential information which is legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in this transmission is strictly PROHIBITED. If you have received this transmission in error, please immediately notify us by telephone and mail the original transmission to us. Thank you.

If you have not properly received this fax, please call (703) 770-7900. Thank you.

Operator: ______________________ Time Sent: __________ Batch ID: ______________

400068130v1

Pillsbury
Winthrop
Shaw
Pittman LLP

1650 Tysons Boulevard
McLean, VA 22102-4859

Tel 703.770.7900
Fax 703.770.7901
www.pillsburylaw.com

Alex D. Tomaszczuk
Phone: 703.770.7940
alex.tomaszczuk@pillsburylaw.com

January 4, 2006

**By Facsimile and U.S. Mail**

Richard J. Conway, Esq.
DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L St., N.W.
Washington, DC 20037-1526

**Re: *Delmarva Power & Light Co. v. United States*, Nos. 04-34C, 04-36C**
**New Jersey Board of Public Utilities Material**

Dear Rick:

I am writing to you on behalf of PSEG Nuclear, LLC (and the related Public Service Electric and Gas Company, Public Services Enterprise Group, Inc., and PSEG Power, LLC) (together "PSEG") concerning certain New Jersey Board of Public Utilities ("NJBPU") documents you have requested on behalf of Delmarva Power & Light Company's ("Delmarva") and Atlantic City Electric Company's ("ACE"). This letter is in response to our discussions outside Judge Lettow's courtroom on December 20 and your December 27 email.

First, as we have stated in prior correspondence, we believe PSEG – as a subpoenaed third-party – has been cooperative in searching for and producing documents. To date, PSEG has produced approximately 27,000 pages of document images in the *Delmarva* case in response to subpoenas issued by Delmarva, ACE, and the Government. PSEG has acted in good faith even though PSEG believes the clear language and spirit of the purchase and sale agreements between PSEG and Delmarva or ACE precludes Delmarva and ACE from bringing their claims.

Second, as we stated in our December 7, 2005 letter to you, it remains PSEG's position that you have not conclusively established that the requested NJBPU proceedings are unavailable to your clients from its counsel or other sources. PSEG maintains that searching for and supplying these documents should in the first instance fall on Delmarva and ACE, as the plaintiffs in their case against the U.S. Government. In particular, before shifting that burden to PSEG (a third-party), Delmarva and ACE need

Richard J. Conway, Esq.
January 4, 2006
Page 2

to establish by declaration or affidavit (1) the efforts made to locate the relevant NJBPU documents, (2) why the documents are not available in their own files or the files of their counsel, LeBoeuf Lamb, and (3) the particular NJBPU documents (testimony, exhibits, etc.) that Delmarva and ACE want PSEG to locate. Absent such a showing and a particularized list of NJBPU information requested from PSEG, PSEG is unwilling to expend the substantial time and effort associated with a further search of its files. Such an effort simply constitutes an undue burden on PSEG (among other objections outlined in its RCFC 45 objections and responses), particularly given that PSEG's staff has been preoccupied with finalizing the merger with Exelon.

Please contact me with any questions or concerns regarding this letter.

Sincerely,

Alex D. Tomaszczuk /by

Alex D. Tomaszczuk
Counsel for
PSEG Nuclear, LLC
Public Services Enterprise Group, Inc.
Public Service Electric and Gas Company
PSEG Power, LLC

cc: Joshua Gardner, Esq.

# EXHIBIT L

Pillsbury Winthrop Shaw Pittman LLP

725 South Figueroa Street Suite 2800
Los Angeles, CA 90017-5406
Tel 213.488.7100 | Fax 213.629.1033
www.pillsburylaw.com

**FACSIMILE**

Total Pages (including cover): 4

Century City
Houston
London
Los Angeles
New York
Northern Virginia
Orange County
Palo Alto
Sacramento
San Diego
San Diego-North County
San Francisco
Silicon Valley
Stamford
Sydney
Tokyo
Washington DC

| | | | |
|---|---|---|---|
| Date: | April 20, 2005 | Must Be Sent By: | |
| To: | Richard J. Conway, Esq. | Fax No: | 202-822-9544 |
| Company: | Dickstein Shapiro Morin & Oshinsky, LLP | Phone No: | 202-828-2235 |
| To: | Harold D. Lester, Jr., Esq. | Fax No: | 202-307-2530 |
| Company: | United States Department of Justice | Phone No: | 202-305-7562 |
| From: | Alex Tomaszczuk | Phone No: | 213.488.7110 |
| User No: | 15758 | C/M No: | 099754 - 0016040 |

Comments:

CONFIDENTIALITY NOTE:
The documents accompanying this facsimile transmission may contain confidential information which is legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in this transmission is strictly PROHIBITED. If you have received this trans-mission in error, please immediately notify us by telephone and mail the original transmission to us. Thank you.

If you have not properly received this fax, please call (213) 488-7577. Thank you.

Operator: ____________________ Time Sent: __________ Batch ID: __________

Pillsbury
Winthrop
Shaw
Pittman LLP

725 South Figueroa Street
Suite 2800
Los Angeles,
CA 90017-5406
Tel 213.488.7100
Fax 213.629.1033
www.pillsburylaw.com

April 20, 2005

Alex D. Tomaszczuk
Phone: 213.488.7110
alex.tomaszczuk@pillsburylaw.com

VIA FACSIMILE AND U.S. MAIL

Richard J. Conway, Esq.
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, D.C. 20037

Harold D. Lester, Jr., Esq.
Assistant Director
Commercial Litigation Branch
Civil Division
United States Department of Justice
Eighth Floor Mailroom
1100 L Street, N.W.
Washington, DC 20530

Re: April 7 Orders entered by Judge Miller in Delmarva Power & Light Co. v. United States

Dear Messrs. Conway and Lester:

I write in response to the Orders entered by Judge Miller on April 7, 2005 in Delmarva Power & Light Co. v. United States, Nos. 04-34C & -36C ("Delmarva"), concerning the possibility of bringing my client, PSEG Nuclear, L.L.C., ("PSEG Nuclear") into the Delmarva case in some capacity. As I communicated to both of you last Friday by phone, PSEG Nuclear is opposed to participation in the Delmarva case as a party. PSEG Nuclear's amended complaint seeks damages from the Government for partial breach of contract, breach of the obligation of good faith and fair dealing, and for taking its real property interests. PSEG Nuclear understands that Delmarva is pursuing various legal theories, such as diminution in value, which PSEG Nuclear simply has no interest or desire to prosecute or defend. PSEG Nuclear is also opposed to consolidating its pending case, No. 01-551C (J. Futey), with the Delmarva case because the cases are in completely different procedural postures. In particular, at the present time Judge Futey is considering PSEG Nuclear's motion for reconsideration of Judge Sypolt's decision of January 31, 2005 determining that the Court of Federal Claims lacks jurisdiction over PSEG Nuclear's claim for breach of contract. Indeed, Judge Sypolt's decision has

Pillsbury
Winthrop
Shaw
Pittman LLP



Pillsbury Winthrop Shaw Pittman LLP
Alex D. Tomaszczuk
alex.tomaszczuk@pillsburylaw.com

actually dismissed PSEG Nuclear's claim for partial breach of contract, which further evidences the disparate procedural nature of the two cases.

In the event the motion for reconsideration is granted, PSEG Nuclear plans to ask Judge Futey to turn to the various other dispositive and partially dispositive motions that are pending in that case (such as, for example, PSEG Nuclear's motion for summary judgment on liability on its claim for partial breach of contract, and the parties' cross-motions for summary judgment on the acceptance rate issues). Those particular motions have been pending for more than two years. As we discern from reading Judge Miller's April 7 Order, a wholly different set of motions is apparently being briefed and will be argued on May 24, 2005 in the Delmarva case. The fact that the two cases are in such different procedural postures augurs strongly against any consolidation of the two cases at the present time. See, e.g., Judge Lettow's Order in Entergy Nuclear Indian Point 2, LLC v. United States, 62 Fed. Cl. 798, 803 (2004) (denying Government's motion to consolidate on the ground, inter alia, that the cases were in different procedural postures).

Although PSEG Nuclear opposes its joinder to or consolidation with the Delmarva case, as I mentioned to you in my phone call PSEG Nuclear is not opposed to the transfer of the Delmarva and PSEG Nuclear cases such that they are on the docket of a single judge. In essence, this means that the Delmarva case would have to be transferred to Judge Futey or the PSEG Nuclear case would have to be transferred to Judge Miller. Either result would help ensure that the cases are handled in a uniform and efficient manner, even if not technically consolidated, and that any discovery is coordinated to avoid duplicative effort.

I would be most appreciative if you would communicate the views of PSEG Nuclear, as expressed herein, to Judge Miller in the status reports that are due to be filed in the Delmarva case on April 21. Finally, please note that this letterhead contains new contact information for me at my Los Angeles office; however, I continue to maintain my Tysons

Pillsbury
Winthrop
Shaw
Pittman LLP



Pillsbury Winthrop Shaw Pittman LLP
Alex D. Tomaszczuk
alex.tomaszczuk@pillsburylaw.com

Corner office, and you should continue to use my Tysons Corner office for purposes of certificates of service and other official communications. Your cooperation in this matter is greatly appreciated. Please contact me with any questions or comments.

Sincerely yours,

Alex D. Tomaszczuk
Counsel for PSEG Nuclear, L.L.C.

# EXHIBIT M

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **DELMARVA POWER AND LIGHT COMPANY,** | |
| **Plaintiffs,** | **No. 04-0034C, into which has been** |
| **v.** | **consolidated No. 04-0036C (Judge Christine Miller)** |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

**AFFIDAVIT OF LISA M. BARBAS, ESQ.**

I, Lisa M. Barbas, Esq., after being first duly sworn, make this declaration of my own personal knowledge and, if called as a witness, could and would testify competently as follows:

1. I am an Associate with Dickstein Shapiro Morin & Oshinsky LLP ("Dickstein Shapiro"). My principal office is located at 2101 L Street, N.W., Washington, D.C. 20037. I offer this Affidavit on behalf of the firm's clients, Delmarva Power and Light Company ("Delmarva") and Atlantic City Electric Company ("Atlantic").

2. I have been an employee of Dickstein Shapiro for two and a half years. I have gained significant document review experience through my participation on these consolidated cases since their inception. Throughout the course of this litigation, I have reviewed over 100,000 pages of documents related to spent nuclear fuel, and nuclear assets in general. I also have experience with review of regulatory proceeding documents and nuclear asset valuation as a result of my three-year tenure as a management consultant in the energy industry prior to attending law school.

3. At the direction of Nicholas W. Mattia, Jr., Esq., counsel with Dickstein Shapiro, and in coordination with Todd L. Goodman, Esq., Assistant General Counsel for Pepco Holdings, Inc., on December 20, 2005 I traveled to Newark, New Jersey to review documents at the offices of Saul



DSMDB.2026968.2

Ewing, LLP ("Saul Ewing"). The current partners in the Newark Office of Saul Ewing were formerly attorneys at the law firm of LeBoeuf Lamb Greene & McRae LLP ("LeBoeuf"). While with LeBoeuf, the Saul Ewing attorneys represented Atlantic as an intervenor in Public Service Electric & Gas Company's ("PSE&G") Stranded Cost proceedings at the New Jersey Board of Public Utilities ("NJBPU") (Docket Nos. EO97070461, EO97070462, and EX941205854). LeBoeuf made available to Saul Ewing for my review all of its files which it retained from Atlantic's participation in those proceedings.

4. While at Saul Ewing, I reviewed the contents of eighteen (18) boxes of documents over an approximate five (5) hour period of time.

5. Several of the eighteen boxes were pulled inadvertently and contained entirely irrelevant materials. The remaining boxes which contained relevant materials, however, only contained the briefs and testimony submitted in connection with PSEG's appeal to the NJBPU. They did not contain any supporting documentation for the direct testimony, nor any data requests or responses thereto submitted by any party or intervenor in that case. Further, the files did not contain any materials submitted to the Office of Administrative Law in those proceedings. In summary, the vast majority of materials which are the subject of the subpoena served by Dickstein Shapiro on PSE&G in these consolidated proceedings were not present in the files of LeBoeuf that I reviewed.

6. Under penalty of perjury, I hereby affirm that the above statements are true and accurate to the best of my knowledge.

Lisa M. Barbas

Lisa M. Barbas, Esq.

NOTARY:
Subscribed to and sworn to before me this

12 day of January, 2006.

Lynda Jenkins

[Seal]

My Commission expires:

LYNDA JENKINS
Notary Public District of Columbia
My Commission Expires 2-14-07



DSMDB.2026968.2