F &G CONTRACT NO. 83-6-ND-68
U. S. DEPARTMENT OF ENERGY CONTRACT NO. DE-CR01-83NE44480
SALEM GENERATING STATION
NOS. 1 AND 2 UNITS

CONTRACT FOR DISPOSAL OF SPENT NUCLEAR FUEL AND/OR HIGH-LEVEL

RADIOACTIVE WASTE.

THIS CONTRACT, entered into this 13th day of June 1983, by and between the UNITED STATES OF AMERICA (hereinafter referred to as the "Government"), represented by the UNITED STATES DEPARTMENT OF ENERGY (hereafter referred to as "DOE") and PUBLIC SERVICE ELECTRIC AND GAS COMPANY, (hereinafter referred to as the "Purchaser"), a corporation organized and existing under the laws of the State of New Jersey, acting on its own behalf as managing utility for Salem Generating Station, Nos. 1 and 2 Units and on behalf of the joint owners, Philadelphia Electric Company, Atlantic City Electric Company, and Delmarva Power and Light Company.

WITNESSETH THAT:

WHEREAS, the DOE has the responsibility for the disposal of spent nuclear fuel and high-level radioactive waste of domestic origin from civilian nuclear power reactors in order to protect the public health and safety, and the environment; and

WHEREAS, the DOE has the responsibility, following commencement of operation of a repository, to take title to the spent nuclear fuel or high-level radioactive waste involved as expeditiously as practicable upon the request of the generator or owner of such waste or spent nuclear fuel; and

WHEREAS, all costs associated with the preparation, transportation, and the disposal of spent nuclear fuel and high-level radioactive waste from civilian nuclear power reactors shall be borne by the owners and generators of such fuel and waste; and

WHEREAS, the DOE is required to collect a full cost recovery fee from owners and generators delivering to the DOE such spent nuclear fuel and/or high level radioactive waste; and

WHEREAS, the DOE is authorized to enter into contracts for the permanent disposal of spent nuclear fuel and/or high-level radioactive waste of domestic origin in DOE facilities; and

WHEREAS, the Purchaser desires to obtain disposal services from DOE; and

WHEREAS, DOE is obligated and willing to provide such disposal services, under the terms and conditions hereinafter set forth; and

WHEREAS this contract is made and entered into under the authority of the DOE Organization Act (Pub. L. 95-91, 42 U.S.C. 7101 et seq.) and the Nuclear Waste Policy Act of 1982 (Pub. L. 97-425, 42 U.S.C. 10101 et seq.)

NOW, THEREFORE, the parties hereto do hereby agree as follows:

ARTICLE I - DEFINITIONS

As used throughout this contract, the following terms shall have the meanings set forth below:

1. The term "assigned three-month period" means the period that each Purchaser will be assigned by DOE, giving due consideration to the Purchaser's assignment preference, for purposes of reporting kilowatt hours generated by the Purchaser's nuclear power reactor and for establishing fees due and payable to DOE.
2. The term "cask" means a container for shipping spent nuclear fuel and/or high-level radioactive waste which meets all applicable regulatory requirements.

3. The term "civilian nuclear power reactor" means a civilian nuclear powerplant required to be licensed under Sections 103 or 104(b) of the Atomic Energy Act of 1954, as amended (42 U.S.C. 2133, 2134(b)).

4. The term "Commission" means the United States Nuclear Regulatory Commission.

5 The term "contract" means this agreement and any duly executed amendment or modification thereto.

6. The term "Contracting Officer" means the person executing this contract on behalf of the Government, and any other officer or civilian employee who is a properly designated Contracting Officer of the DOE; and the term includes, except as otherwise provided in this contract, the authorized representative of a Contracting Officer acting within the limits of his authority.

7. The term "delivery" means the transfer of custody, f.o.b. carrier, of spent nuclear fuel or high-level radioactive waste from Purchaser to DOE at the Purchaser's civilian nuclear power reactor or such other domestic site as may be designated by the Purchaser and approved by DOE.

8. The term "disposal" means the emplacement in a repository of high-level radioactive waste, spent nuclear fuel, or other highly radioactive waste with no foreseeable intent of recovery, whether or not such emplacement permits recovery of such waste.

9. The term "DOE" means the United States Department of Energy or any duly authorized representative thereof, including the Contracting Officer.

10. The term "DOE facility" means a facility operated by or on behalf of DOE for the purpose of disposing of spent nuclear fuel and/or high-level radioactive waste, or such other facility(ies) to which spent nuclear fuel and/or high-level radioactive waste may be shipped by DOE prior to its transportation to a disposal facility.

11. The term "full cost recovery," means the recoupment by DOE, through Purchaser fees and any interest earned, of all direct costs, indirect costs, and all allocable overhead, consistent with generally accepted accounting principles consistently applied, of providing disposal services and conducting activities authorized by the Nuclear Waste Policy Act of 1982 (Pub. L. 97-425). As used herein, the term "cost" includes the application of Nuclear Waste Fund monies for those uses expressly set forth in section 302(d) and (e) of the said Act and all other uses specified in the Act.

12. The term "high-level radioactive waste" (HLW) means -

(a) the highly radioactive material resulting from the reprocessing of spent nuclear fuel, including liquid waste produced directly in reprocessing and any solid material derived from such liquid waste that contains fission products in sufficient concentrations; and

(b) other highly radioactive material that the Commission, consistent with existing law, determines by rule requires permanent isolation.

13. The term "kilowatt hours generated" means electricity generated by nuclear fuel at a civilian nuclear power reactor specified in Appendix A hereto as measured at the output terminals of the turbine generator, including an equivalent amount of electricity for any process heat generated by the reactor and used other than at the reactor.

14. The term "metric tons uranium" means that measure of weight equivalent to 2,204.6 pounds of uranium and other fissile and fertile material that are loaded into a reactor core as fresh fuel.

15. The term "Purchaser's site" means the location of Purchaser's civilian nuclear power reactor or such other location as the Purchaser may designate.

16. The term "quarterly Treasury rate" means the current value of funds rate as specified by the Treasury Fiscal Requirements Manual, Volume 1, Part 6, section 8020.20. This rate is published quarterly in the Federal Register prior to the beginning of the affected quarter.

17. The term "shipping lot" means a specified quantity of spent nuclear fuel or high-level radioactive waste designated by Purchaser for delivery to DOE beginning on a specified date.

18. The term "spent nuclear fuel" (SNF) means fuel that has been withdrawn from a nuclear reactor following irradiation, the constituent elements of which have not been separated by reprocessing.

19. The term "spent nuclear fuel and high-level radioactive waste of domestic origin" means irradiated fuel material used, and radioactive wastes resulting from such use, in nuclear power reactors located only in the United States.

20. The term "year" means the period which begins on October 1 and ends on September 30.



COF0201175

ARTICLE II - SCOPE

This contract applies to the delivery by Purchaser to DOE of SNF and/or HLW of domestic origin from civilian nuclear power reactors, acceptance of title by DOE to such SNF and/or HLW, subsequent transportation, and disposal of such SNF and/or HLW and, with respect to such material, establishes the fees to be paid by the Purchaser for the services to be rendered hereunder by DOE. The SNF and/or HLW shall be specified in a delivery commitment schedule as provided in Article V below. The services to be provided by DOE under this contract shall begin, after commencement of facility operations, not later than January 31, 1998 and shall continue until such time as all SNF and/or HLW from the civilian nuclear power reactors specified in Appendix A, annexed hereto and made a part hereof, has been disposed of.

ARTICLE III - TERM

The term of this contract shall be from the date of execution until such time as DOE has accepted, transported from the Purchaser's site(s) and disposed of all SNF and/or HLW of domestic origin from the civilian nuclear power reactor(s) specified in Appendix A.

ARTICLE IV - RESPONSIBILITIES OF THE PARTIES

A. Purchaser's Responsibilities

1. Discharge Information

(a) On an annual basis, commencing October 1, 1983, the Purchaser shall provide DOE with information on actual discharges to date and projected discharges for the next

ARTICLE XIII - REPRESENTATION CONCERNING NUCLEAR HAZARDS INDEMNITY

A. DOE represents that it will include in its contract(s) for the operation of any DOE facility an indemnity agreement based upon Section 170(d) of the Atomic Energy Act of 1954, as amended, a copy of which agreement shall be furnished to the Purchaser; that under said agreement, DOE shall have agreed to indemnify the contractor and other persons indemnified against claims for public liability (as defined in said Act) arising out of or in connection with contractual activities; that the indemnity shall apply to covered nuclear incidents which (1) take place at a contract location; or (2) arise out of or in the course of transportation of source, special nuclear or by-product material to or from a contract location. The obligation of DOE to indemnify shall be subject to the conditions stated in the indemnity agreement.

B. The provisions of this Article XIII shall continue beyond the term of this contract.

ARTICLE XIV - ASSIGNMENT

The rights and duties of the Purchaser may be assignable with transfer of title to the SNF and/or HLW involved; provided, however, that notice of any such transfer shall be made to DOE within ninety (90) days of transfer.

3. In the event that proprietary data of a third party, with respect to which the Purchaser is subject to restrictions on use or disclosure, is furnished with the Limited Rights Legend above, Purchaser shall secure the agreement of such third party to the rights of the Government as set forth in the Limited Rights Legend. DOE shall upon request furnish the names of those contractors to which proprietary data has been disclosed.

ARTICLE XXII - ENTIRE CONTRACT

A. This contract, which consists of Articles I through XXII and Appendices A through G, annexed hereto and made a part hereof, contains the entire agreement between the parties with respect to the subject matter hereof. Any representation, promise, or condition not incorporated in this contract shall not be binding on either party. No course of dealing or usage of trade or course of performance shall be relevant to explain or supplement any provision contained in this contract.

B. Nothing in this contract is intended to affect in any way the contractual obligation of any other persons with whom the Purchaser may have contracted with respect to assuming some or all disposal costs or to accept title to SNF and/or HLW.

C. Appendices:

A. Nuclear Power Reactor(s) or Other Facilities Covered

B. Discharge Information (Ten Year; Annual)

C. Delivery Commitment Schedule

D. Final Delivery Schedule

E. General Specifications

F. Detailed Description of Purchaser's Fuel

G. Standard Remittance Advice

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first above written.

UNITED STATES OF AMERICA

UNITED STATES DEPARTMENT OF ENERGY

BY: ______________________
(Contracting Officer)
Thomas S. Keefe

PUBLIC SERVICE ELECTRIC AND GAS COMPANY

ATTEST:

______________________
(Assistant Secretary)

BY: ______________________

TITLE: VICE PRESIDENT - CORPORATE SERVICES

DATE: JUN 13 1983

I, Marion Reynolds, certify that I am the Assistant Secretary of the corporation named as Purchser herein; that W. E. Mange, Jr. who signed this document on behalf of the Purchaser was then Vice President - Corporate Services of said corporation; that said document was duly signed for and on behalf of said corporation by authoirty of its governing body and is within the scope of its corporate powers.

IN WITNESS WHEREOF, I have hereunto affixed my hand and the seal of said corporation this 13th day of June, 1983.

______________________
(Assistant Secretary)

PSE&G CONTRACT NO. 83-6-ND-684

# APPENDIX A

## NUCLEAR POWER REACTOR(S) OR OTHER FACILITIES COVERED

Purchaser PUBLIC SERVICE ELECTRIC AND GAS COMPANY

Contract Number/Date DE-CR01-83NE44480 / June 13, 1983

Reactor/Facility Name Salem Unit No. 1

Location:

Street ______

City Hancocks Bridge

County/State Salem / New Jersey

Zip Code 08038

Capacity (MWE) - Gross 1124

Reactor Type:

BWR ☐

PWR ☒

Other (Identify) ______

Facility Description Four loop Westinghouse PWR

Date of Commencement of Operation 12/25/76 (generator on-line)
(actual XXXXXXXXXX)

NRC License #: DPR-70

By Purchaser:

James P. Boyle
Signature

James P. Boyle
General Manager – Purchasing
Title

JUN 13 1983
Date

PSE&G CONTRACT NO. 83-6-ND-684

## APPENDIX A

## NUCLEAR POWER REACTOR(S) OR OTHER FACILITIES COVERED

Purchaser PUBLIC SERVICE ELECTRIC AND GAS COMPANY

Contract Number/Date ______ / ______

Reactor/Facility Name Salem Unit No. 2

Location:

Street ______

City Hancocks Bridge

County/State Salem / New Jersey

Zip Code 08038

Capacity (MWE) - Gross 1149

Reactor Type:

BWR ☐

PWR ☒

Other (Identify) ______

Facility Description Four loop Westinghouse PWR

Date of Commencement of Operation 6/25/81 (generator on-line)
(actual ~~or estimated~~)

NRC License #: DPR-75

By Purchaser: James P. Boyle
Signature

James P. Boyle
General Manager - Purchasing
Title

JUN 13 1983
Date

PS...G CONTRACT NO. 83-6-ND-685
U. S. DEPARTMENT OF ENERGY CONTRACT NO. DE-CR01-83NE44411
HOPE CREEK GENERATING STATION
NO. 1 UNIT

CONTRACT FOR DISPOSAL OF SPENT NUCLEAR FUEL AND/OR HIGH-LEVEL

RADIOACTIVE WASTE.

THIS CONTRACT, entered into this 13th day of June 19 83, by and between the UNITED STATES OF AMERICA (hereinafter referred to as the "Government"), represented by the UNITED STATES DEPARTMENT OF ENERGY (hereafter referred to as "DOE") and PUBLIC SERVICE ELECTRIC AND GAS COMPANY, (hereinafter referred to as the "Purchaser"), a corporation organized and existing under the laws of the State of New Jersey, acting on its own behalf as managing utility for Hope Creek Generating Station, No. 1 Unit and on behalf of the joint owner Atlantic City Electric Company.

WITNESSETH THAT:

WHEREAS, the DOE has the responsibility for the disposal of spent nuclear fuel and high-level radioactive waste of domestic origin from civilian nuclear power reactors in order to protect the public health and safety, and the environment; and

WHEREAS, the DOE has the responsibility, following commencement of operation of a repository, to take title to the spent nuclear fuel or high-level radioactive waste involved as expeditiously as practicable upon the request of the generator or owner of such waste or spent nuclear fuel; and

WHEREAS, all costs associated with the preparation, transportation, and the disposal of spent nuclear fuel and high-level radioactive waste from civilian nuclear power reactors shall be borne by the owners and generators of such fuel and waste; and

WHEREAS, the DOE is required to collect a full cost recovery fee from owners and generators delivering to the DOE such spent nuclear fuel and/or high level radioactive waste; and

WHEREAS, the DOE is authorized to enter into contracts for the permanent disposal of spent nuclear fuel and/or high-level radioactive waste of domestic origin in DOE facilities; and

WHEREAS, the Purchaser desires to obtain disposal services from DOE; and

WHEREAS, DOE is obligated and willing to provide such disposal services, under the terms and conditions hereinafter set forth; and

WHEREAS this contract is made and entered into under the authority of the DOE Organization Act (Pub. L. 95-91, 42 U.S.C. 7101 et seq.) and the Nuclear Waste Policy Act of 1982 (Pub. L. 97-425, 42 U.S.C. 10101 et seq.)

NOW, THEREFORE, the parties hereto do hereby agree as follows:

ARTICLE I - DEFINITIONS

As used throughout this contract, the following terms shall have the meanings set forth below:

1. The term "assigned three-month period" means the period that each Purchaser will be assigned by DOE, giving due consideration to the Purchaser's assignment preference, for purposes of reporting kilowatt hours generated by the Purchaser's nuclear power reactor and for establishing fees due and payable to DOE.
2. The term "cask" means a container for shipping spent nuclear fuel and/or high-level radioactive waste which meets all applicable regulatory requirements.

3. The term "civilian nuclear power reactor" means a civilian nuclear powerplant required to be licensed under Sections 103 or 104(b) of the Atomic Energy Act of 1954, as amended (42 U.S.C. 2133, 2134(b)).

4. The term "Commission" means the United States Nuclear Regulatory Commission.

5 The term "contract" means this agreement and any duly executed amendment or modification thereto.

6. The term "Contracting Officer" means the person executing this contract on behalf of the Government, and any other officer or civilian employee who is a properly designated Contracting Officer of the DOE; and the term includes, except as otherwise provided in this contract, the authorized representative of a Contracting Officer acting within the limits of his authority.

7. The term "delivery" means the transfer of custody, f.o.b. carrier, of spent nuclear fuel or high-level radioactive waste from Purchaser to DOE at the Purchaser's civilian nuclear power reactor or such other domestic site as may be designated by the Purchaser and approved by DOE.

8. The term "disposal" means the emplacement in a repository of high-level radioactive waste, spent nuclear fuel, or other highly radioactive waste with no foreseeable intent of recovery, whether or not such emplacement permits recovery of such waste.

9. The term "DOE" means the United States Department of Energy or any duly authorized representative thereof, including the Contracting Officer.

10. The term "DOE facility" means a facility operated by or on behalf of DOE for the purpose of disposing of spent nuclear fuel and/or high-level radioactive waste, or such other facility(ies) to which spent nuclear fuel and/or high-level radioactive waste may be shipped by DOE prior to its transportation to a disposal facility.

11. The term "full cost recovery," means the recoupment by DOE, through Purchaser fees and any interest earned, of all direct costs, indirect costs, and all allocable overhead, consistent with generally accepted accounting principles consistently applied, of providing disposal services and conducting activities authorized by the Nuclear Waste Policy Act of 1982 (Pub. L. 97-425). As used herein, the term "cost" includes the application of Nuclear Waste Fund monies for those uses expressly set forth in section 302(d) and (e) of the said Act and all other uses specified in the Act.

12. The term "high-level radioactive waste" (HLW) means -

(a) the highly radioactive material resulting from the reprocessing of spent nuclear fuel, including liquid waste produced directly in reprocessing and any solid material derived from such liquid waste that contains fission products in sufficient concentrations; and

(b) other highly radioactive material that the Commission, consistent with existing law, determines by rule requires permanent isolation.

13. The term "kilowatt hours generated" means electricity generated by nuclear fuel at a civilian nuclear power reactor specified in Appendix A hereto as measured at the output terminals of the turbine generator, including an equivalent amount of electricity for any process heat generated by the reactor and used other than at the reactor.

14. The term "metric tons uranium" means that measure of weight equivalent to 2,204.6 pounds of uranium and other fissile and fertile material that are loaded into a reactor core as fresh fuel.

15. The term "Purchaser's site" means the location of Purchaser's civilian nuclear power reactor or such other location as the Purchaser may designate.

16. The term "quarterly Treasury rate" means the current value of funds rate as specified by the Treasury Fiscal Requirements Manual, Volume 1, Part 6, section 8020.20. This rate is published quarterly in the Federal Register prior to the beginning of the affected quarter.

17. The term "shipping lot" means a specified quantity of spent nuclear fuel or high-level radioactive waste designated by Purchaser for delivery to DOE beginning on a specified date.

18. The term "spent nuclear fuel" (SNF) means fuel that has been withdrawn from a nuclear reactor following irradiation, the constituent elements of which have not been separated by reprocessing.

19. The term "spent nuclear fuel and high-level radioactive waste of domestic origin" means irradiated fuel material used, and radioactive wastes resulting from such use, in nuclear power reactors located only in the United States.

20. The term "year" means the period which begins on October 1 and ends on September 30.

ARTICLE II - SCOPE

This contract applies to the delivery by Purchaser to DOE of SNF and/or HLW of domestic origin from civilian nuclear power reactors, acceptance of title by DOE to such SNF and/or HLW, subsequent transportation, and disposal of such SNF and/or HLW and, with respect to such material, establishes the fees to be paid by the Purchaser for the services to be rendered hereunder by DOE. The SNF and/or HLW shall be specified in a delivery commitment schedule as provided in Article V below. The services to be provided by DOE under this contract shall begin, after commencement of facility operations, not later than January 31, 1998 and shall continue until such time as all SNF and/or HLW from the civilian nuclear power reactors specified in Appendix A, annexed hereto and made a part hereof, has been disposed of.

ARTICLE III - TERM

The term of this contract shall be from the date of execution until such time as DOE has accepted, transported from the Purchaser's site(s) and disposed of all SNF and/or HLW of domestic origin from the civilian nuclear power reactor(s) specified in Appendix A.

ARTICLE IV - RESPONSIBILITIES OF THE PARTIES

A. Purchaser's Responsibilities

1. Discharge Information

(a) On an annual basis, commencing October 1, 1983, the Purchaser shall provide DOE with information on actual discharges to date and projected discharges for the next

ARTICLE XIII - REPRESENTATION CONCERNING NUCLEAR HAZARDS INDEMNITY

A. DOE represents that it will include in its contract(s) for the operation of any DOE facility an indemnity agreement based upon Section 170(d) of the Atomic Energy Act of 1954, as amended, a copy of which agreement shall be furnished to the Purchaser; that under said agreement, DOE shall have agreed to indemnify the contractor and other persons indemnified against claims for public liability (as defined in said Act) arising out of or in connection with contractual activities; that the indemnity shall apply to covered nuclear incidents which (1) take place at a contract location; or (2) arise out of or in the course of transportation of source, special nuclear or by-product material to or from a contract location. The obligation of DOE to indemnify shall be subject to the conditions stated in the indemnity agreement.

B. The provisions of this Article XIII shall continue beyond the term of this contract.

ARTICLE XIV - ASSIGNMENT

The rights and duties of the Purchaser may be assignable with transfer of title to the SNF and/or HLW involved; provided, however, that notice of any such transfer shall be made to DOE within ninety (90) days of transfer.

3. In the event that proprietary data of a third party, with respect to which the Purchaser is subject to restrictions on use or disclosure, is furnished with the Limited Rights Legend above, Purchaser shall secure the agreement of such third party to the rights of the Government as set forth in the Limited Rights Legend. DOE shall upon request furnish the names of those contractors to which proprietary data has been disclosed.

ARTICLE XXII - ENTIRE CONTRACT

A. This contract, which consists of Articles I through XXII and Appendices A through G, annexed hereto and made a part hereof, contains the entire agreement between the parties with respect to the subject matter hereof. Any representation, promise, or condition not incorporated in this contract shall not be binding on either party. No course of dealing or usage of trade or course of performance shall be relevant to explain or supplement any provision contained in this contract.

B. Nothing in this contract is intended to affect in any way the contractual obligation of any other persons with whom the Purchaser may have contracted with respect to assuming some or all disposal costs or to accept title to SNF and/or HLW.

C. Appendices:

A. Nuclear Power Reactor(s) or Other Facilities Covered

B. Discharge Information (Ten Year; Annual)

C. Delivery Commitment Schedule

D. Final Delivery Schedule

E. General Specifications

F. Detailed Description of Purchaser's Fuel

G. Standard Remittance Advice

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first above written.

UNITED STATES OF AMERICA

UNITED STATES DEPARTMENT OF ENERGY

BY: [signature]

(Contracting Officer)

Thomas S. Keefe

PUBLIC SERVICE ELECTRIC AND GAS COMPANY

BY: [signature]

TITLE: VICE PRESIDENT - CORPORATE SERVICES

DATE: JUN 13 1983

ATTEST: M. F. Reynolds

(Assistant Secretary)

I, Marion Reynolds, certify that I am the Assistant Secretary of the corporation named as Purchser herein; that W. E. Mange, Jr. who signed this document on behalf of the Purchaser was then Vice President - Corporate Services of said corporation; that said document was duly signed for and on behalf of said corporation by authoirty of its governing body and is within the scope of its corporate powers.

IN WITNESS WHEREOF, I have hereunto affixed my hand and the seal of said corporation this 13th day of June, 1983.

M. F. Reynolds

(Assistant Secretary)

CONTRA⌐ ‾ NO. 83-6-ND-685

## APPENDIX A

## NUCLEAR POWER REACTOR(S) OR OTHER FACILITIES COVERED

Purchaser PUBLIC SERVICE ELECTRIC AND GAS COMPANY

Contract Number/Date DE-CR01-83NE44411 / June 13, 1983

Reactor/Facility Name Hope Creek Unit 1

Location:

Street

City Hancocks Bridge

County/State Salem / New Jersey

Zip Code 08038

Capacity (MWE) - Gross 1118

Reactor Type:

BWR [X]

PWR [ ]

Other (Identify)

Facility Description General Electric BWR-4

Date of Commencement of Operation 9/86 (generator on-line)
(XXXXXXXXX estimated)

NRC License #:

By Purchaser:
James P. Boyle
Signature

James P. Boyle
General Manager - Purchasing
Title

JUN 13 1983
Date

(DP&L-SALEM)

# PURCHASE AGREEMENT

BY AND BETWEEN

DELMARVA POWER & LIGHT COMPANY

and

PSEG POWER LLC

Dated as of September 27, 1999

179501.03-WilmingtonS1A

# TABLE OF CONTENTS

Page

## ARTICLE I
## DEFINITIONS

1.1 Definitions . . . . . . 1
1.2 Certain Interpretive Matters . . . . . . 18
1.3 U.S. Dollars . . . . . . 18
1.4 Seller's Interest in Purchased Assets . . . . . . 18

## ARTICLE II
## PURCHASE AND SALE

2.1 Transfer of Purchased Assets . . . . . . 18
2.2 Excluded Assets . . . . . . 20
2.3 Assumed Liabilities . . . . . . 23
2.4 Excluded Liabilities . . . . . . 26
2.5 Control of Litigation . . . . . . 27
2.6 Spent Nuclear Fuel Fees . . . . . . 28
2.7 Department of Energy Decommissioning and Decontamination Fees . . . . . . 28

## ARTICLE III
## THE CLOSING

3.1 Closing . . . . . . 29
3.2 Payment of Purchase Price . . . . . . 29
3.3 Adjustment to Nuclear Fuel Supply Payment . . . . . . 30
3.4 Tax Reporting and Allocation of Purchase Price . . . . . . 31
3.5 Prorations . . . . . . 32
3.6 Deliveries by Seller . . . . . . 34
3.7 Deliveries by Buyer . . . . . . 35
3.8 Relationship of this Agreement and Collateral Agreement . 37
3.9 Owners Agreement to Govern . . . . . . 37
3.10 Additional Agreements . . . . . . 37

Page

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF SELLER


4.1 Organization, Qualification . . . . . . . . . . 37
4.2 Authority . . . . . . . . . . 38
4.3 No Violations; Consents and Approvals . . . . . . . . . . 38
4.4 Permits . . . . . . . . . . 39
4.5 Seller's Qualified Decommissioning Funds . . . . . . . . . . 39
4.6 Seller's Nonqualified Decommissioning Funds . . . . . . . . . . 42
4.7 Nuclear Law Matters . . . . . . . . . . 43
4.8 Legal Proceedings . . . . . . . . . . 43
4.9 Personal Property . . . . . . . . . . 43
4.10 Real Property . . . . . . . . . . 44
4.11 Contracts . . . . . . . . . . 44
4.12 Certain Environmental Liabilities . . . . . . . . . . 44
4.13 Undisclosed Liabilities . . . . . . . . . . 44
4.14 Intellectual Property . . . . . . . . . . 44
4.15 Taxes . . . . . . . . . . 45


## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF BUYER


5.1 Organization; Qualification . . . . . . . . . . 45
5.2 Authority . . . . . . . . . . 45
5.3 No Violations; Consents and Approvals . . . . . . . . . . 46
5.4 Buyer Permits . . . . . . . . . . 47
5.5 Nuclear Law Matters . . . . . . . . . . 47
5.6 Legal Proceedings . . . . . . . . . . 47
5.7 Qualified Buyer . . . . . . . . . . 48
5.8 Inspections . . . . . . . . . . 48
5.9 Certain Environmental Liabilities . . . . . . . . . . 48


## ARTICLE VI
## COVENANTS OF THE PARTIES


6.1 Certain Buyer Covenants . . . . . . . . . . 48
6.2 Public Statements . . . . . . . . . . 49
6.3 Further Assurances . . . . . . . . . . 49

Page

6.4 Consents and Approvals . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
6.5 Certain Tax Matters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
6.6 Advice of Changes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
6.7 ISRA Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
6.8 Risk of Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
6.9 Cooperation after Closing . . . . . . . . . . . . . . . . . . . . . . . . 59
6.10 Decommissioning Funds . . . . . . . . . . . . . . . . . . . . . . . . . 60
6.11 Amendment to Seller's Agreements . . . . . . . . . . . . . . . . . 62
6.12 Exclusivity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
6.13 Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

**ARTICLE VII**
**CONDITIONS**

7.1 Conditions to Obligation of Each Party . . . . . . . . . . . . . . . . 63
7.2 Conditions to Obligations of Buyer . . . . . . . . . . . . . . . . . . 63
7.3 Conditions to Obligation of Seller . . . . . . . . . . . . . . . . . . . 66

**ARTICLE VIII**
**INDEMNIFICATION AND ARBITRATION**

8.1 Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67
8.2 Defense of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71
8.3 Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

**ARTICLE IX**
**TERMINATION**

9.1 Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76
9.2 Effect of Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . 77
9.3 Additional Effects of Termination . . . . . . . . . . . . . . . . . . . 78

**ARTICLE X**
**MISCELLANEOUS PROVISIONS**

10.1 Amendment and Modification . . . . . . . . . . . . . . . . . . . . . . 78
10.2 Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78
10.3 Fees and Commissions . . . . . . . . . . . . . . . . . . . . . . . . . . 79

**Page**


| | | |
|---|---|---|
| 10.4 | Bulk Sales Laws | 79 |
| 10.5 | Waiver of Compliance | 79 |
| 10.6 | Survival | 79 |
| 10.7 | Disclaimers | 80 |
| 10.8 | Notices | 81 |
| 10.9 | Assignment, No Third-Party Beneficiaries | 82 |
| 10.10 | Governing Law, Forum, Service of Process | 83 |
| 10.11 | Counterparts | 83 |
| 10.12 | Entire Agreement | 83 |




PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE

# LIST OF EXHIBITS AND SCHEDULES

## EXHIBITS

| | |
|---|---|
| Exhibit A | Form of Assignment and Assumption Agreement |
| Exhibit B | Form of Bill of Sale |
| Exhibit C | Form of FIRPTA Affidavit |
| Exhibit D | Form of Opinions of Counsel to Seller |
| Exhibit E | Form of Opinions of Counsel to Buyer |

## SCHEDULES

| | |
|---|---|
| 1.1(105) | Real Property |
| 1.1(119) | Seller's Agreements |
| 2.1(e) | Certain Assets |
| 2.2(b) | Certain Excluded Assets |
| 4.3(a) | Defaults and Violations |
| 4.3(b) | Seller's Required Regulatory Approvals |
| 4.4(a) | Seller Permits |
| 4.4(b) | Seller's Transferable Permits |
| 4.5(d) | Liabilities Relating to Seller's Qualified Decommissioning Funds |
| 4.5(f) | Tax Liability of Seller's Qualified Decommissioning Funds |
| 4.6(d) | Liabilities Relating to Seller's Nonqualified Decommissioning Funds |
| 4.7 | Nuclear Law Matters |
| 4.8 | Seller Legal Proceedings |
| 4.9 | Encumbrances on Certain Personal Property |
| 4.11 | Certain Seller's Contracts |
| 4.12 | Certain Environmental Liabilities |
| 4.15 | Tax Matters |
| 5.3(a) | Defaults and Violations |
| 5.3(b) | Consents and Approvals |
| 5.6(a) | Buyer Legal Proceedings |
| 5.9 | Certain Environmental Liabilities |
| 6.1(b) | Salem Station Budget |
| 6.10(c) | Decommissioning Funds Investment Manager Agreements and Policies |
| 7.2(a)(i) | Certain Buyer's Required Regulatory Approvals |
| 7.2(a)(ii) | Certain Affiliates |

(DP&L - Salem)

PURCHASE AGREEMENT, dated as of September 27, 1999, by and between Delmarva Power & Light Company, a Delaware and Virginia corporation ("Seller"), and PSEG Power LLC, a Delaware limited liability company ("Buyer"). Seller and Buyer may be referred to herein individually as a "Party," and collectively as the "Parties."

## WITNESSETH

WHEREAS, Seller owns an undivided 7.41% interest as tenant in common without the right of partition in the Salem Station (as defined below) and certain properties and assets associated therewith and ancillary thereto;

WHEREAS, Buyer desires to purchase and assume, and Seller desires to sell and assign, or cause to be sold and assigned, all of Seller's rights, title and interests in and to the Purchased Assets (as defined below) and certain associated liabilities, upon the terms and conditions hereinafter set forth in this Agreement; and

WHEREAS, Public Service Enterprise Group Incorporated, a New Jersey corporation and sole member of Buyer, has contemporaneously delivered a Guaranty dated the date hereof to Seller, upon which Seller has relied in entering into this Agreement.

NOW, THEREFORE, in consideration of the foregoing and of the mutual covenants, representations, warranties and agreements set forth herein, and intending to be legally bound hereby, the Parties hereby agree as follows:

## ARTICLE I

## DEFINITIONS

1.1 Definitions. As used in this Agreement, the following capitalized terms have the meanings specified in this Section 1.1.

(1) "ACE" means Atlantic City Electric Company, a New Jersey corporation.

(2) "Additional Agreements" means the Deeds, the Assignment and Assumption Agreement, the Bill of Sale and the Amendment to Owners Agreement.

(3) "Affiliate" has the meaning set forth in Rule 12b-2 of the General Rules and Regulations promulgated under the Exchange Act.

(4) "Agreement" means this Purchase Agreement together with the Schedules and Exhibits hereto.

(5) "Allocation" has the meaning set forth in Section 3.4.

(6) "Amendment to Owners Agreement" means the amendment to the Owners Agreement among the signatories to the Owners Agreement, as executed and delivered on the date hereof, effective from and after the Closing Date.

(7) "Antitrust Laws" means the Sherman Act, the Clayton Act, the HSR Act, the Federal Trade Commission Act, and all other Laws that are designed or intended to prohibit, restrict or regulate actions having the purpose or effect of monopolization or restraint of trade, in each case, as amended from time to time.

(8) "Applicable Tax Law" has the meaning set forth in Section 3.4.

(9) "Assignment and Assumption Agreement" means the assignment and assumption agreement between Seller and Buyer, to be delivered at the Closing, substantially in the form of Exhibit A hereto, pursuant to which Seller shall assign to Buyer all of Seller's rights, title and interests in and to the Seller's Agreements, certain intangible assets and certain other Purchased Assets, and Buyer shall accept such assignments and assume the Assumed Liabilities.

(10) "Assumed Decommissioning Liabilities" has the meaning set forth in Section 2.3(d).

(11) "Assumed Liabilities" has the meaning set forth in Section 2.3.

(12) "Assumed Nuclear Liabilities" has the meaning set forth in Section 2.3(e).

(13) "Assumed Spent Fuel Liabilities" has the meaning set forth in Section 2.3(f).

(14) "Atomic Energy Act" means the Atomic Energy Act of 1954, as amended from time to time, 42 U.S.C. § 2011 *et seq.*

(15) "Bill of Sale" means the bill of sale of Seller, to be delivered at the Closing, substantially in the form of Exhibit B hereto.

(16) [Intentionally Omitted]

(17) "Business Day" means any day other than Saturday, Sunday and any day on which banking institutions in the State of New York are authorized or required by Law or other governmental action to close.

(18) "Buyer" has the meaning set forth in the preamble to this Agreement.

(19) "Buyer Nuclear Permits" has the meaning set forth in Section 5.5(b).

(20) "Buyer Permits" has the meaning set forth in Section 5.4.

(21) "Buyer's Indemnitee" has the meaning set forth in Section 8.1(b).

(22) "Buyer's Insurance Policies" means all insurance policies with respect to the ownership, lease, maintenance or operation of the Salem Station, including the Purchased Assets, including all liability, property damage and business interruption policies in respect thereof, for which Buyer or its Affiliates is liable for payment of the premium and related charges on behalf of itself and the other parties to the Owners Agreement.

(23) "Buyer's Qualified Decommissioning Funds" means the trust funds that are designated as "nuclear decommissioning reserve funds" under Code Section 468A for the Salem Station held pursuant to the Amended Master Decommissioning Trust Agreement between Public Service Electric & Gas Company and Mellon Bank, N.A. dated as of January 1, 1996.

(24) "Buyer's Required Regulatory Approvals" has the meaning set forth in Section 5.3(b).

(25) "Byproduct Material" means any radioactive material (except Special Nuclear Material) yielded in, or made radioactive by, exposure to the radiation incident to the process of producing or utilizing Special Nuclear Material.