**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on April 6, 2007)

| | |
|---|---|
| **DELMARVA POWER & LIGHT CO.,** | |
| **and ,** | |
| **ATLANTIC CITY ELECTRIC CO.** | |
| Plaintiffs, | |
| v. | Nos. 04-34C & 04-36C (Judge Christine O.C. Miller) |
| **THE UNITED STATES,** | |
| Defendant. | |

**RESPONSE OF PSEG NUCLEAR LLC AND PUBLIC SERVICE ELECTRIC AND GAS COMPANY TO THE MARCH 27, 2007 ORDER TO SHOW CAUSE**

PSEG Nuclear, LLC and Public Service Electric and Gas Company (collectively "PSEG"), by and through the undersigned counsel, submit their response to the Order to Show Cause entered by this Court on March 27, 2007 ("Show Cause Order"). PSEG has sought leave to file the instant brief in order to inform the Court of its position with regard to a stay of this litigation pending arbitration and to note its objection to the Plaintiffs' characterization of PSEG's pre-arbitration conduct. The Court should stay this litigation so that Plaintiffs and PSEG may arbitrate their dispute over the ownership and control of claims pending before this Court in an expedited and efficient manner. Although PSEG is not a party to this litigation, PSEG likely would continue to be subject to discovery requests from the parties in this litigation while conducting the arbitration if the Court declines to stay the litigation.

## I. INTRODUCTION

PSEG is the operator and sole owner of the Hope Creek nuclear power station and the operator and majority owner of the Salem nuclear power station. In 1999, PSEG bought the minority interests of Plaintiffs in the Hope Creek and Salem nuclear power stations. Pursuant to that purchase, the minority owners executed detailed agreements ("Purchase Agreements" or "PAs") whereby both Delmarva Power & Light Co. ("DP&L") and Atlantic City Electric Co. ("ACE") sold and surrendered to PSEG any and all interests in the claims relating to the failure of the U.S. Department of Energy ("DOE") to begin removing spent nuclear fuel ("SNF") from the two stations that were subject to the sale. DP&L and ACE also agreed that PSEG had all associated rights of recovery for such actions and the right to control all litigation related thereto. *See generally,* PAs Sections 2.1(l),(m), 2.5, 2.6 and 6.8.

Notwithstanding these provisions, DP&L and ACE commenced the instant litigation (the "Delmarva Litigation") based wholly on claims that they were injured by DOE's failure to commence removal of SNF. Because DP&L and ACE have refused to accede to PSEG's demand to dismiss this litigation, PSEG has invoked the disputes procedures in Section 8.3 of the Purchase Agreements providing for binding arbitration.

PSEG sent a notice of dispute to Plaintiffs on January 31, 2007 ("January 31 Letter") outlining the dispute and proposing a meeting between party executives on March 16, 2007. On February 22, 2007, Respondents replied to the January 31 Letter and supplemented that letter on March 15, 2007 ("March 15 Letter") by sending a notice of dispute to PSEG over whether PSEG's notice of dispute was valid and whether PSEG is precluded from bringing this arbitration as a result of orders entered by this Court and PSEG's alleged delay in bringing its

arbitration demand. True copies of the January 31, February 22 and March 15 Letters are attached hereto as Exhibits A, B, and C respectively. A meeting between authorized executives for each party was held on March 16, 2007. No resolution to the dispute was reached at that meeting.

The arbitration is anticipated to commence within the next 45 days. The parties have exchanged written arbitration demands and each side has appointed its party arbitrator.

## II. A STAY OF LITIGATION IS APPROPRIATE IN THIS CASE

As the Court noted in its Show Cause Order, Section 8.3 of the Purchase Agreements requires binding arbitration to determine PSEG's and Plaintiffs' respective rights under the PAs. Arbitration may benefit this litigation by establishing a binding ruling on the assignment of Plaintiffs' breach of contract and takings claims. Show Cause Order at 7. Continuing litigation involving claims that the plaintiffs may no longer have would be a waste of the Court's and the litigants' time and effort. A stay of the instant proceedings is appropriate in order to advance the strong federal policy in favor of arbitration and judicial economy.

Nonetheless, Plaintiffs have represented to PSEG that they intend to assert that this case should not be stayed because there is no arbitration pending over Plaintiffs' Peach Bottom claims. Presumably, Plaintiffs believe that the Peach Bottom claims should move forward or that the existence of the non-arbitrable claims provides a justification for the entire case to move forward. Neither should occur.

Courts routinely stay the entire litigation where non-arbitrable claims remain pending in order to enforce the strong public policy favoring arbitration and for judicial economy purposes – namely the avoidance of wasteful or piecemeal litigation. *See, e.g., American Home Assurance Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 964 (4th Cir. 1980) (finding that "all litigation

should be stayed pending the arbitration proceedings. While it is true that the arbitrator's findings will not be binding as to those not parties to the arbitration, considerations of judicial economy and avoidance of confusion and possible inconsistent results nonetheless militate in favor of staying the entire action."); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 856 (2d Cir. 1987) (Noting that "[b]road stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit[,]" and remanding non-arbitrable claim to district court to determine whether it should be stayed pending arbitration.); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983) ("In some cases, of course, it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration. That decision is one left to the district court …as a matter of its discretion to control its docket.") (*citing Landis* v. *North American Co*., 299 U.S. 248, 254-55 (1936)). The factors in this matter militate in favor of a stay because allowing any part of the case to proceed while the viability of certain claims is arbitrated creates the potential for duplicative or wasteful proceedings.

## III. PLAINTIFFS' DEFENSE OF LACHES OR WAIVER WILL BE HEARD BY THE ARBITRATORS

There is no doubt that the issues of laches and/or waiver or estoppel will be addressed by the arbitrators. Plaintiffs have consented to arbitrating such defenses by noticing a dispute over them pursuant to the arbitration provision contained in Section 8.3 of the PAs. *See* March 15 Letter, attached as Exhibit C. Thus, Plaintiffs' defenses have already been submitted to arbitration and will be heard by the arbitrators as provided for in the parties' arbitration agreement. This procedure is in accordance with authorities that hold that procedural defenses to arbitration, such as those advanced by Plaintiffs, are presumptively for the arbitrator. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("[P]rocedural questions which

grow out of the dispute and bear on its final disposition .... [or] allegations of waiver, delay, or a like defense to arbitrability" are presumptively for the arbitrator to decide.); *Microchip Technology, Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1359 n.7 (Fed. Cir. 2004) (noting that "[t]he district court did not reach Microchip's argument that Philips waived the right to compel arbitration. We note that the Supreme Court has stated that the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability.") (internal citations and quotations omitted); *Pro Tech Industries v. URS Corp.*, 377 F.3d 868, 872 (8th Cir. 2004) ("[w]hether waiver occurred and whether demand was sufficient and timely under the agreement, involve issues of procedural arbitrability, matters presumptively for the arbitrator, not for the judge."); *Exxon Chemical Co. v. Nat'l Labor Rel. Bd.*, 386 F.3d 1160, 1166 (D.C. Cir. 2004) ("Exxon's objections that the three grievances were untimely under the contract, and its claims of waiver and estoppel ... are properly for the arbitrator to resolve.").

## IV. PLAINTIFFS' DELAY-RELATED ALLEGATIONS ARE WITHOUT MERIT

The Court's Show Cause Order alluded to Plaintiffs' allegation that PSEG had waived its right to arbitrate. The Court properly noted, however, that such an issue should be addressed by the arbitrators and does not require a denial of the request to stay the litigation. PSEG is confident that the record before the panel will establish that PSEG acted appropriately and timely in asserting its right to control the Plaintiffs' litigation and to enforce its right through arbitration when Plaintiffs refused to recognize that they had sold their claims to PSEG under the PAs. The arbitration will establish (1) the absence of any affirmative conduct in litigation by PSEG that is the hallmark of waiver of the right to arbitrate and (2) the absence of any prejudice to Plaintiffs that would support laches.

## V. CONCLUSION

For the reasons stated above, this Court should stay further proceedings pending completion of binding arbitration.

Dated: April 6, 2007

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Chu

Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102-4859
(703) 770-7940
(703) 770-7901 (fax)
Counsel of Record for Plaintiffs
PSEG Nuclear, L.L.C. and
Public Service Electric and Gas Company

Of Counsel:

Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037-1128
(202) 663-8000
(202) 663-8007 (fax)

# EXHIBIT A

Frank Cassidy
President and COO

PSEG Power LLC
80 Park Plaza, 4th Floor, Newark, NJ 07102-4194
tel: 973-430-5687 fax: 973-242-5162

PSEG
Power LLC

January 31, 2007

VIA FEDERAL EXPRESS

Thomas S. Shaw
Executive Vice President and
Chief Operating Officer
Pepco Holdings, Inc.
800 King Street
Post Office Box 231
Wilmington, Delaware 19899

Re **PSEG's purchase of assets from Delmarva Power & Light Company and Atlantic City Electric Company relating to the Salem and Hope Creek nuclear plants, and the actions brought by DP&L and ACE in the U.S. Court of Federal Claims.**

Dear Tom:

As you are aware from our earlier correspondence, PSEG objects to litigation brought by Delmarva Power and Light Company ("DP&L") and Atlantic City Electric Company ("ACE") in the United Stated Court of Federal Claims ("COFC") entitled *Delmarva Power & Light Co., v. United States*, Nos. 04-34C & 04-36C (*"Delmarva"*). That litigation asserts claims that are grounded on the U.S. Department of Energy's ("DOE's") breach of the Standard Contract for removal of Spent Nuclear Fuel ("SNF"). We previously advised you that these actions violated the Purchase Agreements ("PAs") between PSEG and DP&L and ACE. We asked that you dismiss the *Delmarva* case, but you have declined to do so.

Notice of Dispute

This is PSEG's written notice that a dispute exists relating to and arising out of the PAs between PSEG and DP&L and ACE.[1] PSEG is now formally invoking the dispute resolution procedures of Section 8.3 of the PAs. *See* Section 8.3(a). The disputes procedures provide for binding arbitration of this dispute, in the event we are unable to resolve it through the meeting of executives specified in Section 8.3(b) and proposed below. We intend to invoke binding arbitration if that meeting is unsuccessful.

**PSEG's Statement of Facts and Position**

[1] The PAs addressed by this notice are (1) the Purchase Agreement by and between Delmarva Power and Light Company (Seller) and PSEG Power LLC (Buyer), dated as of September 27, 1999 for DP&L's 7.41% interest in the Salem Station, (2) the Purchase Agreement by and between Atlantic City Electric Company (Seller) and PSEG Power LLC (Buyer), dated as of September 27, 1999 for ACE's 7.41% interest in the Salem Station, (3) the Purchase Agreement by and between Atlantic City Electric Company (Seller) and PSEG Power LLC (Buyer), dated as of September 27, 1999 for ACE's 5.00% interest in the Hope Creek Station.

Under the PAs between PSEG and both DP&L and ACE, PSEG acquired, as one of the "Purchased Assets" listed in Article II, Section 2.1 of the PAs, all claims of DP&L and ACE relating in any way to DOE's defaults under the Standard Contract and all other claims against DOE, except for one immaterial exception.[2] Section 2.1(l) of each PA states that DP&L and ACE transferred:

> All claims of Seller relating to or pertaining to the Department of Energy's defaults under the Department of Energy Standard Contract (including all claims for failure by the Department of Energy to take Spent Nuclear Fuel) accrued prior to, on or after the Closing Date, whether relating to periods prior to, on or after the Closing Date, and all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased Assets, other than the claims described in Section 2.2(l);

PAs Section 2.1(l). Additionally, PSEG acquired all claims and causes of action against any third parties relating to the Purchased Assets other than those constituting "Excluded Assets" or "Excluded Liabilities." Under Section 2.1(m) of the PAs, DP&L and ACE transferred to PSEG:

> The rights of Seller in, to and under all causes of action against third parties with respect to, arising out of or in connection with Seller's rights, title and interests in and to the Purchased Assets or the Assumed Liabilities, or any portion thereof, whether accruing prior to, on or after the Closing Date, other than any such causes of action as constitute Excluded Assets or Excluded Liabilities, whether received as payment or credit against future liabilities, in each case, relating to any period prior to, on or after the Closing Date, other than the claims described in Section 2.2(m).

PAs Section 2.1(m). Neither Section 2.2 (Excluded Assets) nor 2.4 (Excluded Liabilities) authorizes the *Delmarva* litigation. In the broadest possible language, DP&L and ACE expressly and unambiguously transferred to PSEG upon the PAs' Closing Dates in 2000 and 2001 all rights relating to claims arising out of, or connected in any way to, DOE's failure to timely remove SNF. After the Closing Dates, PSEG was "entitled exclusively to control, defend and settle any suit, action or proceeding, and any investigation arising out of or related to any Purchased Assets or Assumed Liabilities . . ." PAs Section 2.5(b). Additionally, Section 2.6 of the PAs provided that, effective with the Closing Dates, PSEG "shall have all rights of recovery from third parties and the Department of Energy relating to, arising from or in connection with the Department of Energy's failure to take Spent Nuclear Fuel." Notwithstanding these provisions, DP&L and ACE commenced the *Delmarva* litigation in 2004 based wholly on claims that they were injured by DOE's breach of the Standard Contract when DOE failed to timely commence removal of SNF as required.

---

[2] The immaterial exception deals with "Department of Energy Decommissioning or Decontamination Fees." Section 2.2(l) of the PAs excepted as an "Excluded Asset" all claims of DP&L or ACE relating or pertaining to any refund or credit of Department of Energy Decommissioning or Decontamination Fees (defined in Section 1.1 (44) as fees related to DOE's special assessment of utilities, in order to decontaminate and decommission DOE's gaseous diffusion enrichment facilities). The DOE Decommissioning and Decontamination Fees have no relation to SNF claims.

As we previously advised you, PSEG contends that DP&L's and ACE's actions plainly violate the terms of the PAs and the initiation of the *Delmarva* litigation is a material breach of those PAs. We previously requested your dismissal of the litigation, which you have declined to do. Since the *Delmarva* litigation is now interfering with PSEG's rights under the PAs, we insist on your compliance with the terms of the PAs. If we are unable to resolve this issue by agreement in the meeting we propose below, we have determined to invoke the binding arbitration procedures of Section 8.3 to establish our respective rights.

Our claim is presently a nonmonetary one for interpretation of the PAs. If our interpretation is upheld, however, this is also notice that future monetary claims may be asserted under provisions of the PAs providing for indemnification and recovery of damages for breach of warranty, nondisclosures, and failure to cooperate. (*E.g.*, Sections 8.1 and 2.5, Article VI.)

**PSEG's Proposed Arrangements for the Meeting of Executives**

In accordance with Section 8.3(a) of the PAs, PSEG proposes the following arrangements for a meeting to attempt to resolve the dispute described in this notice. PSEG proposes to meet approximately 44 days after the date of this letter (approximately two weeks after receiving your response to our notice above). PSEG proposes, pursuant to Section 8.3(b) of the PAs, that the meeting be held between the chief operating officers of PSEG Power and Pepco Holdings, Inc., at 10 am on March 16, 2007, at the principal offices of Pepco Holdings, Inc., 800 King Street in Wilmington, Delaware, unless otherwise agreed, but in no event later than 60 days following this notice.

Unless the parties resolve the dispute at the meeting proposed above, PSEG intends to have this dispute submitted to binding arbitration, with arbitrators to be selected within 30 days after the meeting described above, and with the arbitration to commence within 60 days after the meeting, as set forth in Section 8.3(c) of the PAs.

We look forward to your written response to our notice within 30 days, along with your acceptance of, or proposed alternative to, the meeting arrangements set forth above.

Sincerely,

[signature]

# EXHIBIT B

Pepco Holdings, Inc

701 Ninth Street NW
Washington, DC 20068

Thomas S. Shaw
Executive Vice President
Chief Operating Officer

202 872-2157
302 429-3221

RECEIVED
OFFICE OF THE
PRESIDENT AND COO
FEB 26 ...
PSEG POWER LLC

xc C. McAuliffe

February 22, 2007

Mr. Frank Cassidy
President and COO
PSEG Power LLC
80 Park Place – 4th Floor
Newark, NJ 07102-4194

Dear Frank:

Once again I must express my disappointment at PSEG Power's ("PSEG") attempts to forestall my Company's efforts to protect customers of Atlantic City Electric Company ("Atlantic") from the economic harm caused them by the U.S. Department of Energy's failure to abide by its legislative mandate with regard to establishing a permanent repository for Spent Nuclear Fuel ("SNF"). Since the enactment of the Nuclear Waste Policy Act in 1982, our customers have paid many millions of dollars in SNF fees, and I suspect your New Jersey utility's customers have paid considerably more. As I noted in my October 14, 2005 correspondence to you on this subject, it is our belief and position that our respective SNF litigation claims do not overlap, and are indeed mutually exclusive of one another. In that regard, we had hoped that PSEG would cooperatively support and assist our efforts on behalf of our customers.

Unfortunately, and as stated in my October 14, 2005 letter to you, that has not been the case. Rather, PSEG, as well as its affiliate Public Service Electric and Gas Company ("PSE&G"), have availed themselves of every opportunity to impede the litigation that we have brought for the benefit of our customers, including causing us to incur substantially higher litigation costs through your unwillingness to provide essential documentation in your possession which is required for the prosecution of our claims. For example, as recently as three weeks ago, we requested from the decommissioning study vendor for Salem and Hope Creek, TLG Services ("TLG"), copies of certain workpapers that were prepared by TLG while we were still an owner of Salem and Hope Creek, and for which we paid our proportionate share of the costs to prepare. We were advised that the requested material would not be provided without the consent of PSEG, which consent has been requested but has not been provided. We will now have to incur further substantial, and unnecessary, expense to subpoena those documents.

This recent example of PSEG's unwillingness to provide essential documents in its possession follows a past pattern of such conduct by PSEG. In August, 2005, after Judge C. Miller scheduled Atlantic's case for trial in May, 2006 and after she commented that many essential documents were likely in the possession of PSEG (and PECO), our counsel met with your counsel to seek your cooperation with respect to document production. PSEG refused to provide Atlantic access to key documents at that time, forcing us to issue a subpoena to PSEG in October 2005. As noted above, we continue to have to resort to the use of subpoenas, at significant cost and time delay to Atlantic and its customers, in order to gain access to documents to which Atlantic has always been entitled. I would further note that at no time during our efforts to obtain such documents did your counsel express any objection to our pursuing our claim.

Your continued efforts to impede the progress of our SNF litigation ultimately resulted in our having to advise Judge Miller in September, 2005 of our inability to gain access to essential documents in PSEG's possession. This conduct resulted in our inability to timely develop our Expert Reports and required us to seek a suspension of our procedural schedule, including the deferral of our trial date to a now unspecified date that will likely be well into the future. The costs of that delay will be significant and would not have been necessary but for PSEG's efforts to impede our case from moving forward.

Most recently, the Government filed a Motion to Consolidate our respective cases. Rather than support our objection to that Motion, PSEG's counsel filed, under seal, a Motion to Stay the proceedings. That filing will likely further impede and delay the prosecution of our case. As noted above, PSEG's conduct to date has caused Atlantic, and, therefore, its customers, to incur substantial and unnecessary legal fees and expenses, which we are obligated to explain and justify to the NJBPU.

I will not repeat here the legal and constitutional bases upon which our claims are founded. My October 14, 2005 letter to you more than adequately sets that forth in detail, and is incorporated herein by reference. Further, as noted in my October 14 correspondence, after PSEG's SNF case was dismissed by the Court, we amended our complaints to assert a protective breach of contract claim. At the time that we amended our claim to assert breach of contract, we informed both your counsel and the Court that upon reinstatement of your breach claim, after appeal, we would seek a voluntary dismissal of our protective breach of contract filing. Due to the recent reinstatement of PSEG's claim, I have instructed our attorney to advise the Court that we are withdrawing our breach of contract claim. For the reasons set forth in my October 14, 2005 letter, however, we will continue to actively and aggressively pursue all our legal and constitutional rights against the United States as set forth in our original 2004 Complaint filed with the United States Court of Federal Claims ("COFC").

I believe it is important to make one additional comment in response to your January 31, 2007 letter, which relates to the timing of your current and prior correspondence to me. The following is a brief chronology of relevant events in this regard. In December, 2003 representatives on our behalf met with your counsel, Tony Borden, as well as representatives from PSE&G, to advise you of

our intention to file our complaint and the constitutional basis upon which it was being filed, i.e. a Fifth Amendment "taking" by the United States. We expressly stated that we did not intend to assert a breach of contract claim against the government because we believed that any breach claim had been transferred to PSEG as part of the asset sale. We further informed you that we did not believe our respective claims were in conflict with one another. No one from PSEG or PSE&G voiced any objection to our filing a Fifth Amendment Takings complaint. One month later, in January, 2004, we filed our complaint with the COFC alleging a Fifth Amendment "taking" of our property by the United States.

It was not until nearly two years later, and after we had expended considerable funds in preparing and prosecuting our claim, that PSEG first wrote to express its views with respect to what was and was not transferred as part of the sale of our nuclear assets to you (and Philadelphia Electric Company). Over the course of the next 30 days we exchanged letters in that regard, including the aforementioned October 14 letter from me to you, after which we heard nothing further from you for the next 15 months. During that 15 month period we continued to expend significant funds for the litigation of our SNF claim, a large portion of which were incurred seeking discovery of documents from you which, over your objection, Judge Christine Miller of the COFC concluded you were obligated to provide. While I am not an attorney, I am advised that there are certain legal principles under these circumstances that preclude you from asserting the alleged contractual rights against us that you claim to possess.

Our commitment to protect and pursue the rights of our customers, and to seek redress from the United States for its taking of the value of those rights is as firm today as it was when we first advised you over three years ago of our intentions in this regard. We have every intention of continuing to seek the lost economic value experienced by our customers as a result of the government's SNF failures. As we have repeatedly explained to PSEG, we do not believe that our efforts in this regard will in any way be harmful to PSEG. We continue to hope that you will reach that conclusion as well, so that we can begin to work in a cooperative manner with regard to our respective SNF litigation claims.

In your January 31, 2007 letter you request a meeting with me, pursuant to Section 8.3(a) of the Purchase Agreements between us to attempt to resolve our differences. You further suggest that such meeting take place at our King Street offices in Wilmington, DE beginning at 10am on March 16, 2007. I am available for such a meeting at the time and location you have proposed. Please be advised that in addition to myself, I expect to have both internal and outside counsel present at the meeting. Unless I hear to the contrary, I look forward to seeing you on March 16th.

Very truly yours,

Thomas S. Shaw

# EXHIBIT C

Pepco Holdings, Inc

701 Ninth Street NW
Washington, DC 20068

202 872-2157
302 429-3221

Thomas S. Shaw
Executive Vice President
Chief Operating Officer

xc C. McAuliffe

March 15, 2007

**Via Facsimile: 973-242-5162 and U.S. Mail**

Mr. Frank Cassidy
President and COO
PSEG Power LLC
80 Park Place – 4th Floor
Newark, NJ 07102-4194

**Re: PSEG's Purchase of Assets From Delmarva Power & Light Company and Atlantic City Electric Company Relating to Salem and Hope Creek Nuclear Plants – NOTICE OF DISPUTE**

Dear Frank:

This NOTICE OF DISPUTE is given pursuant to Section 8.3(a) of the Purchase Agreements which are listed in footnote 1 of your letter to me dated January 31, 2007 and Section 9.3(a) of the Purchase Agreement By and Among Atlantic City Electric Company, PECO Energy and PSEG Power LLC, dated as of September 27, 1999.[1] The dispute noticed hereby is whether the Notice of Dispute given by PSEG in your letter of January 31, 2007 (to which I responded on February 22, 2007) is valid, or whether PSEG (i) has forfeited or is otherwise precluded from asserting a right to invoke arbitration or (ii) is precluded from such arbitration by the adverse determinations of the Court in *Delmarva Power & Light Co. v. The United States*, No. 04-34C and *Atlantic City Electric Co. v. The United States*, No. 04-36C (USCOFC) relating to the issues raised by your Notice of Dispute.

The facts and the positions of Delmarva Power & Light ("Delmarva") and Atlantic City Electric Company ("ACE") are as follows:

Delmarva and ACE advised PSEG in December 2003 that actions against the United States relating to disposal of spent nuclear fuel would be commenced in January 2004. The legal basis for those actions was given to PSEG representatives.[2] No objections were heard from PSEG and

---

[1] We assume that the omission of reference to the latter Purchase Agreement was unintentional on your part.

[2] PSEG's recognition of the basis for the Delmarva and ACE actions was expressly stated in a, April 20, 2005 letter from PSEG counsel to counsel for ACE and Delmarva, in which PSEG counsel stated, among other things: "PSEG Nuclear understands that Delmarva is pursuing various legal theories, such as diminution in value, which PSEG Nuclear simply has no interest or desire to prosecute or defend."

the actions were duly filed in January 2004. The cases have been actively litigated against the Government from commencement. On July 1, 2005, the Court denied the Government's motions for summary judgment, expressly considering and rejecting the Government's claim that Delmarva and ACE lacked standing to bring the actions because of a prior assignment to PSEG. On October 6, 2005, you sent a letter to me demanding that the actions (which had just been sustained by the Court) be withdrawn. I responded to your demand on October 14, 2005 and you responded further on November 4, 2005, purporting to reserve your rights (but not requesting arbitration). The litigation against DOE continued without interruption, complicated in part by PSEG's refusal to cooperate in the production of essential documents. As noted below, PSEG's resistance has been the subject of action by the Court. Fifteen months after your November 2005 letter, on January 31, 2007, you provided your Notice of Dispute, proposing to arbitrate issues which already been resolved by the Court more than one year earlier. It is our position that, by waiting more than three years to give notice of a dispute in the face of your clear knowledge of the pending litigation and in light of the clear prejudice to Delmarva and ACE (in terms, for example, of the cost of litigation and the burden of litigating in multiple forums), PSEG is guilty of *laches* and has forfeited or is otherwise precluded from asserting its right to arbitration.

Further, by refusing to abide by its obligation to cooperate with Delmarva and ACE, PSEG forced Delmarva and ACE to seek the Court's assistance to compel production of critical documents. PSEG resisted such production before the Court in part on grounds encompassed within your Notice of Dispute. The Court ruled against PSEG on January 27, 2006.[3] PSEG is bound by that ruling and is precluded from reasserting the same claims in a second forum.

In accordance with Sections 8.3(b) and 9.3(b) of the Purchase Agreements, we are requesting a meeting of executives to address this NOTICE OF DISPUTE. Since we have already agreed to such a meeting on March 16, 2007 in connection with your Notice of Dispute, we propose that that meeting also serve as the meeting for discussion of this NOTICE OF DISPUTE. Please advise me at your earliest convenience that you agree to include the issues raised herein in the March 16, 2007 meeting of executives.

This NOTICE OF DISPUTE is without prejudice to Delmarva's and ACE's rights to pursue other rights and remedies which they may have at law or in equity, including the pursuit of rights and remedies in a judicial forum.

Very truly yours,

Thomas S. Shaw

[3] The Court's January 27, 2006 ruling is consistent with its July 1, 2005 ruling denying the Government's motion for summary judgment.