# In the United States Court of Federal Claims

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| **DELMARVA POWER & LIGHT CO.,** | * | |
| and | * | |
| **ATLANTIC CITY ELECTRIC CO.,** | * | Nos. 04-34C & 04-36C |
| Plaintiffs, | * | (Refiled Apr. 12, 2007) |
| v. | * | (Effective Mar. 27, 2007) |
| **THE UNITED STATES,** | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## CORRECTED ORDER TO SHOW CAUSE 1/

Defendant's Motion To Consolidate or, in the Alternative, for Issuance of a Summons Pursuant to RCFC 14(a) and Notice Pursuant to RCFC 14(b), was filed on January 5, 2007. Plaintiffs filed their response on January 31, 2007, and defendant filed Defendant's Reply to Delmarva Power and Light Company's Response to Defendant's Motion To Consolidate or, in the Alternative, for Issuance of a Summons Pursuant to RCFC 14(a) and Notice Pursuant to RCFC 14(b), on February 28, 2007. Plaintiffs requested leave to file a surreply, which was granted March 2, 2007; plaintiffs' surreply, filed on March 12, 2007, addressed defendant's request to stay proceedings pending completion of arbitration. This order to show cause relates to the substance of the pending arbitration between PSEG Nuclear, L.L.C., plaintiff in PSEG Nuclear, L.L.C. v. United States, No. 01-551C (Fed. Cl. filed Sept. 26, 2001), and plaintiffs.

---

1/ This order originally was filed on March, 27, 2007, and is filed this date, as corrected. The effective date of the original order is operative.

**BACKGROUND** 2/

Delmarva Power & Light Co. and Atlantic City Electric Co. (collectively, "plaintiffs") are former owners of minority interests in certain nuclear facilities and nonsignatories to a "Standard Contract" entered into with the Federal Government relating to the disposal and storage of spent nuclear fuel ("SNF"). Plaintiffs in their Amended Complaint seek relief under three counts for violation of the takings clause of the Fifth Amendment, breach of contract, and breach of the covenant of good faith and fair dealing.

Plaintiffs Delmarva Power & Light Co. ("Delmarva") and Atlantic City Electric Co. ("Atlantic") filed separate complaints on January 13, 2004, seeking relief solely on a takings theory. Atlantic City Electric Co. v. United States, No. 04-36C (Fed. Cl. filed Jan. 13, 2004); Delmarva Power & Light Co. v. United States, No. 04-34C (Fed. Cl. filed Jan. 13, 2004). Both Delmarva and Atlantic were owners of minority interests in two nuclear stations. They sold their interests to PSEG Nuclear, L.L.C. ("PSEG") and PECO Energy Company ("PECO") at separate times during 2000 and 2001. The Government's failure to dispose of the SNF (the history of which has been set forth succinctly in, among many other cases, Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1337-39 (Fed. Cir. 2000)), according to plaintiffs, reduced the value of their property and caused plaintiffs to receive a diminished price when they sold their interests to PSEG and PECO.

Defendant moved to dismiss both complaints on May 12, 2004. On December 2, 2004, one day prior to the hearings on these motions, both plaintiffs filed what they deem as their "protective" amended complaints, Pls.' Br. filed May 25, 2005, at 6, adding to the takings claims two additional claims for breach of contract. At the hearing on defendant's motion to dismiss in Delmarva Power & Light Co., this court informed the parties that it would defer ruling on defendant's motion because the amended complaint had just added claims and because defendant's central argument was made only in its reply brief. Consequently, in order to ensure Delmarva the opportunity to be heard fully, the court presented defendant with the option of proceeding by subsequent motion. An order dated December 3, 2004, was entered to that effect.

---

2/ This recitation of the procedural history of this case repeats, with minor revisions, portions of this court's unpublished memorandum opinion and order denying defendant's motion for summary judgment. See Order entered July 1, 2005.

Judge George W. Miller denied the motion to dismiss Atlantic's complaint, Atlantic City Electric Co., No. 04-36C (Fed. Cl. Jan. 11, 2005) (unpubl.), and transferred the case to the undersigned by order entered on January 11, 2005. The cases were consolidated by order entered on January 21, 2005, which also allowed the parties an opportunity to attempt settlement. Defendant, on January 14, 2005, requested leave to defer its motion to request third-party notice to PSEG pursuant to RCFC 14. The court granted defendant's motion by its January 21, 2005 order. See Order entered January 21, 2005, ¶ 4. The settlement efforts produced no results. On April 28, 2005, defendant filed a motion for summary judgment on all counts against both Delmarva and Atlantic. The court denied defendant's motion for summary judgment on July 1, 2005. See Order entered July 1, 2005, ¶ 1.

Defendant filed a motion requesting consolidation of PSEG with this case on January 5, 2007, and filed a corresponding request for consolidation before Senior Judge Bohdan A. Futey in PSEG. PSEG filed a Motion To Stay Further Proceedings Pending Completion of Binding Arbitration in PSEG on January 31, 2007; defendant filed a copy of PSEG's motion to stay in this case on February 9, 2007. Judge Futey has ordered a stay of consideration of the motion for consolidation filed in PSEG pending completion of arbitration. See PSEG, No. 01-551C (Fed. Cl. Mar. 6, 2007) (order granting stay for ninety days pending arbitration).

## FACTS

Delmarva and Atlantic entered into a series of Purchase Agreements (collectively, the "PSEG PAs") with PSEG and PECO regarding the sale of their interests in the Salem, Hope Creek, and Peach Bottom Nuclear Stations on September 27, 1999. Delmarva and Atlantic transferred their 7.41% ownership interests in Salem (the "Delmarva Salem PA" and the "Atlantic Salem PA," respectively); their 7.51% ownership interests in Peach Bottom Nuclear Station (the "Delmarva Peach Bottom PA" and "Atlantic Peach Bottom PA", respectively); and Atlantic's 5.00% ownership interest in the Hope Creek Nuclear Station (the "Atlantic Hope Creek PA") via purchase agreement. 3/

Article 2.1(l) in each of the PSEG PAs states:

---

3/ The Atlantic Hope Creek PA is identical, in pertinent part, unless otherwise noted, to the Delmarva Salem PA and the Atlantic Salem PA. PSEG has only invoked arbitration for the PAs relating to the Hope Creek and Salem Nuclear Stations. See Plaintiffs' Motion To Stay Further Proceedings Pending Completion of Binding Arbitration at 4, PSEG Nuclear L.L.C. v. United States, No. 01-551 (Fed. Cl. Jan. 31, 2007) .

> All claims of Seller relating to or pertaining to the Department of Energy's defaults under the Department of Energy Standard Contract (including all claims for failure by the Department of Energy to take Spent Nuclear Fuel) accrued prior to, on or after the Closing Date, whether relating to periods prior to, on or after the Closing Date, and all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased Assets . . . .

Delmarva Salem PA, art. 2.1(l); see also Atlantic Salem PA, art. 2.1(l); Delmarva Peach Bottom PA, art 2.1(l); Atlantic Peach Bottom PA, art. 2.1(l). Section 2.2 of the PSEG PAs excludes "[a]ll claims of Seller relating to or pertaining to any refund or credit received on or after the Closing Date by Buyer or its successors or permitted assigns of all or any part of Department of Energy Decommissioning and Decontamination Fees for which Seller is or was liable" from the assignment of claims in Article 2.2(l). Delmarva Salem PA, art. 2.2(l); Atlantic Salem PA, art. 2.2(l); see also Delmarva Peach Bottom PA, art. 2.2(j) (providing similar language); Atlantic Peach Bottom PA, art. 2.2(j) (providing similar language).

Article 8.3 of the Delmarva Salem PA provides, in relevant part:

> [I]n the event of any dispute between Seller and Buyer arising after the Closing (whether relating to facts, events or circumstances occurring or existing prior to, on or after the Closing Date) and relating to or arising out of any provision of this Agreement . . . the sole remedy available to either Party is the dispute resolution procedure set forth in this Section 8.3; provided, however, that either Party may seek a preliminary injunction or other provisional judicial remedy if such action is necessary . . . .
>
> . . . .
>
> . . . The decision, judgment, and order of the arbitration tribunal shall be final, binding and conclusive as to the Parties involved in such dispute, and their respective Representatives, and may be entered in [a] court of competent jurisdiction.

Delmarva Salem PA, art. 8.3(a), (c); see Atlantic Salem PA, art 8.3(a), (c) (providing identical language); see also Delmarva Peach Bottom PA, art. 9.3(a), (c) (providing similar language); Atlantic Peach Bottom PA, art. 9.3(a), (c) (providing similar language).

## DISCUSSION

Defendant argues that this case should be stayed, in accordance with the stay entered in PSEG pending resolution of the arbitration between PSEG and plaintiffs. Defendant states that it does "not oppose PSEG's request that these cases be stayed to permit it to attempt to negotiate a resolution of its dispute . . . so long as both the Delmarva and PSEG cases are stayed simultaneously and for an equal period of time." Def.'s Br. filed Feb. 28, 2007, at 22. Nevertheless, defendant also asserts that "Section 3 of the [Federal Arbitration Act] does not apply to either case, and a stay is not absolutely mandated" and that "the United States will [not] be bound by any arbitration result regarding the agreement." Id. at 23, 25. Defendant, however, also expresses its opposition to the stay if only one of the two cases is stayed.

Defendant objects to PSEG's characterization of the stay of proceedings as mandatory under Section 3 of the Federal Arbitration Act (the "FAA"). See 9 U.S.C. § 3 (2000) (providing that court enter stay on application of party "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement"). Defendant cites to several appellate decisions that have held that, when a non-party to an arbitration agreement is a party to the court proceeding, no mandatory stay is required. See, e.g., DSC, Inc. v. Convera Corp., 349 F.3d 679, 685 (D.C. Cir. 2003) ("We simply conclude that the mandatory stay provision of Section 3 does not apply to litigation involving parties not subject to a written arbitration agreement . . . ."); Adams v. Ga. Gulf Corp., 237 F.3d 538, 541 (5th Cir. 2001) ("Oldham's status as a non-party to the arbitration agreement is not in dispute. Therefore, we find that § 3 does not apply to Oldham."); Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440, 441 (2d Cir. 1964) ("Granting of the stay cannot be justified under the terms of the Arbitration Act. Defendants are not parties to the arbitration agreement. The issues of the present action are not referable to arbitration between the parties."). Section 3 of the FAA does not mandate a stay where the United States is not a party to the agreement referring a dispute to arbitration.

The court nevertheless possesses the authority to stay cases, apart from the mandated stay provision of Section 3 of the FAA:

> Apart, however, from any concession, the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936). Defendant asserts that a stay of proceedings in both cases would promote judicial economy, avoid duplicative and inconsistent damages recoveries, and promote judicial efficiency.

Plaintiffs object to staying proceedings in this case pending arbitration with PSEG for two reasons: (1) PSEG has raised the issue of arbitration with this court unsuccessfully on two prior occassions; and alternatively, (2) PSEG's delay in raising the arbitration requirement should foreclose PSEG's right to arbitrate.

1. This court's rejection of PSEG's argument on two prior occassions

Plaintiffs argue that the court should deny defendant's request for a stay pending arbitration because the issue of the assignment of rights to PSEG has been raised and rejected by the court on two prior occassions. First, defendant argued as part of its April 28, 2005 motion for summary judgment in Delmarva Power & Light Co. that plaintiffs' claims should be dismissed due to the assignment of claims under the PSEG PAs. See Def.'s Br. filed April 28, 2005, at 6-10. The court denied defendant's motion for summary judgment, stating that "[r]egardless of any inconsistent position in either of the cases . . . defendant argues that plaintiffs cannot plead or go forward . . . because they do not seek to invalidate the assignment [with respect to the breach of contract claims]" and holding that "[t]his court is not impressed with [defendant's assigment of claims] argument, given the litigation position that the Government has taken in these cases." Order entered July 1, 2005, at 3. The court noted:

> Plaintiffs candidly admit that they consider the assignments to be valid, see Pls.' Br. filed May 25, 2005, at 9, and they provide defendant with an opportunity to resolve these problems so long as defendant concedes that the assignments are valid: "To the extent that the Government is willing to make such a concession, [plaintiffs] would be willing to dismiss the breach claims in the amended complaints." Id. at 8, n.4. Until defendant articulates a position in response to this offer, this court will allow plaintiffs to proceed "protectively" to develop their cases with respect to a breach at their election.

Id. at 4.

In Boston Edison, Judge Charles F. Lettow denied defendant's motion to dismiss, holding that

> Boston Edison has argued that the rights taken do not derive from the Standard Contract, but rather from the Atomic Energy Act of 1954, 42 U.S.C.

> §§ 2011-2297g-4, that the Standard Contract was not voluntary, and that some of the remedies it is pursuing may be unavailable under a breach-of-contract theory. Pl.'s Resp. at 27-37. Because the parties dispute issues of material fact, the government's motion for summary judgment is denied.
>
> . . . Given that the standard for determining whether a regulatory taking has occurred is both case-specific and fact-intensive, developing a more comprehensive record is particularly important to resolve this dispute.

64 Fed. Cl. 167, 187 (2005) (internal citations omitted).

In denying defendant's motion for summary judgment, this court adopted the rationale proposed by Judge Lettow in Boston Edison, which permitted the parties to pursue a takings claim for property interests created by the the Atomic Energy Act of 1956 separate from those rights created by the Standard Contract. While not necessarily binding upon defendant, the outcome of the arbitration between plaintiffs and PSEG may impact any possible recovery. As Judge Lettow stated in Boston Edison, "[Plaintiff] may bring contract and taking claims concurrently, but, if both claims remain viable, recovery under the contract damages theory is appropriate. . . . Both claims are currently viable, but a more complete record is necessary to determine if either theory would allow recovery." 64 Fed. Cl. at 187-88 (internal citations omitted).

Second, on January 12, 2006, plaintiffs filed their motion to compel, requesting, in part, that PSEG produce documents requested by subpoena dated September 28, 2005. PSEG responded on January 18, 2006, in which it asserted, in part, that "Atlantic and Delmarva transferred all claims against the Department of Energy to PSEG in connection with the Purchase and Sale agreements dated September 1999." PSEG's Br. (as third party) filed Jan. 18, 2006, at 5. Plaintiffs concede, however, that "the point was not specifically addressed" by the court in its order granting plaintiffs' motion to compel. Pls.' Br. filed Mar. 12, 2007, at 5; see Order entered Jan. 27, 2006.

Contrary to plaintiffs' assertions, this court has not addressed the issue of the impact of the assignment of claims directly and has not rejected the argument on two prior occassions. The court permitted plaintiffs "protectively" to develop their breach of contract claims due to defendant's inconsistent positions in PSEG and this case. Also, this court has ruled that a material issue of fact exists as to the question of plaintiffs' takings claims independent of the rights created by the Standard Contract. See Order entered July 1, 2005, at 5. Although plaintiffs argue that the arbitration is "largely irrelevant" to the claims before this court, a determination made by an independent third-party arbitration panel, as required by Article 8.3 of the PSEG PAs, would be binding on plaintiffs and PSEG. Such a

determination would avoid a possible double- or non- recovery against the Goverment for plaintiffs' claims based on diminished value. Coordinating the result of the arbitration with PSEG and this case will help ensure that no party is able to take an inconsistent position regarding the proper assignment of the breach of contract and takings claims.

2. Delay by PSEG

Alternatively, plaintiffs argue that PSEG's delay in requesting arbitration under Article 8.3 of the PSEG PAs should bar PSEG's right to arbitrate the dispute. Plaintiffs note that PSEG has "sat silent regarding its alleged breach of contract claims against Plaintiffs" for nearly two years. Pls.' Br. filed Mar. 12, 2007, at 6.

Atlantic and Delmarva filed their complaints with the United States Court of Federal Claims on January 13, 2004. PSEG, pending before Senior Judge Futey, was filed on September 26, 2001. See PSEG, No. 01-551C. On October 6, 2005, almost twenty-one months following filing of Delmarva's and Atlantic's complaints, PSEG sent a letter to plaintiffs in response to a discovery subpoena in which PSEG stated that "PSEG believes the language in the [PSEG PAs] unambiguously transferred to PSEG . . . the claims now pressed . . . . PSEG requests that [Atlantic] and Delmarva immediately dismiss the *Delmarva* case." Pls.' Br. filed March 12, 2007, Ex. F, at 3. On October 14, 2005, plaintiffs responded to PSEG, refusing voluntarily to dismiss the Delmarva Power & Light Co. and Atlantic City Electric Co. cases and asserting that

> we do not believe that our respective lawsuits and claims overlap, and therefore are not competitive with each other. Atlantic and Delmarva are seeking the lost value to our nuclear assets . . . as a result of the government's "taking" of their property. PSEG, on the other hand, is seeking the costs which it has incurred and is continuing to incur as a result of the government's breach of the Standard Contract.

Id., Ex. G, at 2. On November 4, 2005, PSEG responded in writing to plaintiffs, reiterating its request to voluntarily dismiss the Delmarva Power & Light Co. and Atlantic City Electric Co. lawsuits and reserving "all rights and remedies in law and equity and under the purchase and sale agreements." Id., Ex. H, at 2.

Fourteen months following the November 2005 correspondence, PSEG provided written notice on January 31, 2007, of a dispute "relating to and arising out of the [PSEG PAs]" and "formally invok[ed] the dispute resolution procedures of Section 8.3 of the [PSEG PAs]." Pls.' Br. filed Mar. 12, 2007, Ex. I, at 1. PSEG states that "[w]e previously requested your dismissal of the litigation, which you have declined to do. Since the *Delmarva* litigation

is now interfering with PSEG's rights under the PAs, we insist on your complience with the terms of the [PSEG PAs]." Id. at 3.

Plaintiffs contend that "the elements of unexcused delay and prejudice to Plaintiffs are clearly present, and PSEG's belated claims are likely to be barred by the types of legal theories that are designed to prevent parties from 'sitting on their rights.'" Pls.' Br. filed Mar. 12, 2007, at 6-7. The court agrees that PSEG's delay, particularly in light of the extended time period between PSEG's intitial objections and the initiation of arbitration proceedings, should be a relevant factor in the arbitration proceeding between PSEG and plaintiffs. However, the court disagrees that PSEG's delay necessarily requires a denial of defendant's request to stay proceedings.

Should the arbitrators fail to consider delay in the arbitration proceeding, the court cautions parties that it will address the issue of PSEG's delay in consideration of plaintiffs' claims, particularly in light of PSEG's active participation in prosecution of PSEG and PSEG's awareness of the proceedings in this case. "Courts may refuse to enforce arbitration agreements on a number of grounds, and federal courts have consistently held that among those grounds is waiver of the right to arbitrate." St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co., 969 F.2d 585, 587 (7th Cir. 1992) (affirming district court's finding of implied waiver of right to arbitrate, in part, due to ten-month delay in commencing arbitration); see also Int'l Union v. Cummins, Inc., 434 F.3d 478, 486 (6th Cir. 2006) ("Laches is an equitable defense to arbitration that is properly considered by the court rather than by the arbitrator. The laches inquiry consists of two elements: (1) whether there was unwarranted delay, and (2) whether the delay was detrimental to the party raising the defense." (internal citations omitted)); Gunn v. Veterans Admin. Med. Ctr., 892 F.2d 1036, 1040 n.4 (Fed. Cir. 1990) (noting that "the principles of laches and estoppel because of delay pertain to the initiation of a grievance or arbitration, not to delay or dilatoriness during the course of the proceedings"); Miller Brewing Co. v. Fort Worth Distrib. Co., 781 F.2d 494, 497 (5th Cir. 1986) ("Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party."); Cornell & Co. v. Barber & Ross Co., 360 F.2d 512, 513 (D.C. Cir. 1966) ("The right to arbitration, like any other contract right, can be waived. A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right.") (internal citations omitted)).

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Plaintiffs and defendant shall show cause in briefs to be filed, by 5:00 pm on April 6, 2007. The briefs shall not exceed ten pages, shall take a position on whether the court should not decline a stay unless the arbitrators will consider plaintiffs' argument concerning delay and laches and/or waiver or estoppel. The briefs shall be double-spaced, twelve point font, with one-inch margins on all sides.

2. The Clerk of the Court shall serve a copy of this order on counsel for plaintiffs and defendant in PSEG Nuclear, L.L.C. v. United States, No. 01-551C (Fed. Cl. filed Jan. 26, 2001).

s/ Christine O.C. Miller

**Christine Odell Cook Miller**
Judge

cc: Sr. Judge Futey