**No. 04-0034C, into which has been consolidated No. 04-0036C**
**(Judge Christine O.C. Miller)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**DELMARVA POWER & LIGHT COMPANY,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# PLAINTIFFS' MOTION TO VACATE ARBITRATION RULING

---

**Richard J. Conway**
**DICKSTEIN SHAPIRO LLP**
**1825 Eye Street, NW**
**Washington, DC 20006**
**Tel: (202) 420-2200**
**Fax: (202) 420-2201**

**Attorney for Plaintiffs**

**Of Counsel:**
**Frederick M. Lowther**
**Beth L. Webb**
**Nicholas W. Mattia, Jr.**
**DICKSTEIN SHAPIRO LLP**
**1825 Eye Street, NW**
**Washington, DC 20006**

**Todd Goodman, Esq.**
**Assistant General Counsel**
**Conectiv**
**P. O. Box 231**
**Wilmington, DE 19899**

**July 2, 2007**

## TABLE OF CONTENTS

I. POSTURE OF THE CASE ........................................................................ 6

II. ARBITRABILITY IS AN ISSUE FOR THIS COURT, NOT THE ARBITRATION PANEL ........................................................................ 8

III. THE ARBITRATION PANEL INCORRECTLY DECLINED TO APPLY EHLEITER ........................................................................ 11

IV. PSEG'S LITIGATION CONDUCT CONSTITUTES WAIVER OF ITS RIGHT TO ARBITRATE ........................................................................ 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Argent v. United States*, 124 F.3d 1277 (Fed. Cir. 1997) ....................3

*Boston Edison Co. v. United States*, 64 Fed. Cl. 167 (2005)....................4

*Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d Cir. 2007) .................... *passim*

*Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) ....................8

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)....................8

*King v. Innovation Books*, 976 F.2d 824 (2d Cir. 1992)....................13

*In re Lagerstrom*, 300 F. Supp. 538 (S.D. Ill. 1969) ....................3

*Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1 (1st Cir. 2005) ....................8, 9

*Miller Brewing Co. v. Fort Worth Distributing Co., Inc.*, 781 F.2d 494 (5th Cir. 1986)....................8

*Rochester Gas & Electric Corp. v. United States*, 65 Fed. Cl. 431 (2005) ....................3

*United States v. Dow*, 357 U.S. 17 (1958)....................3

## STATE CASES

*Murphy v. Trapani*, 604 A.2d 635 (N.J. Sup. Ct. App. Div. 1992) ....................13

## DOCKETED CASES

*PSEG Nuclear, L.L.C. v. United States*, No. 01-551C (Fed. Cl. filed Jan. 26, 2001)....................16

## FEDERAL STATUTES

31 U.S.C. § 203....................3

31 U.S.C. § 3727....................3

Act of Sept. 13, 1982, Pub. L. No. 97-258, § 1, 96 Stat. 976 (1982) ....................3

## STATE STATUTES

N.J. Stat. Ann. § 2A:24-4 (West 2007)....................9

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DELMARVA POWER & LIGHT COMPANY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | ) | **No. 04-0034C, into which has been consolidated No. 04-0036C (Judge Christine Miller)** |

**PLAINTIFFS' MOTION TO VACATE ARBITRATION RULING**

By this motion, Plaintiffs ask this Court to address, and redress, the extraordinary consequences of an arbitration proceeding commenced by PSEG Power LLC and PSEG Nuclear LLC (collectively, "PSEG") more than three years after initiation of this judicial proceeding. What has happened here highlights the dangers inherent in making this Court's jurisdiction subservient to an arbitration process which could (and should) have been initiated before the judicial proceeding commenced, and certainly before it had proceeded through years of motions practice and detailed discovery.

The purpose of this motion is not to seek review of the substance of the arbitration decision, but to seek a determination that the arbitration proceeding should not have occurred in the first place because PSEG had waived its right to arbitrate. The outcome and legal effect of the arbitration is relevant only in the sense that it demonstrates the need for relief by this Court.

On June 20, 2007, two members of the arbitration panel (the third member dissenting) determined that the takings claims asserted by Plaintiffs in this judicial proceeding had been

assigned to PSEG under the relevant Purchase Agreements ("PAs"). That determination ("Decision")[1] was made in the face of Plaintiffs' demonstration that PSEG itself is legally barred from asserting the takings claims.[2] Indeed, the Decision conceded (as PSEG admitted on brief) that the effect of the assignment is to extinguish the claims, but held that extinguishment is an unavoidable, but acceptable, consequence of the assignment of takings claims.[3] Decision at 20-

---

[1] A true and accurate copy of the Decision is attached hereto as Exhibit 1.

[2] As Plaintiffs showed in their briefs to the arbitration panel, the law is clear, and uncontested, that only the party which owned the property at the time of taking is able to assert a takings claim, and any attempt to assign a takings claim is null and void. *United States v. Dow*, 357 U.S. 17, 20 (1958) ("[i]t is well-established . . . that the Assignment of Claims Act prohibits the voluntary assignment of a compensation claim against the Government for the taking of property") (citation omitted); *see also Argent v. United States*, 124 F.3d 1277, 1287 (Fed. Cir. 1997); 31 U.S. C. § 3727 (replacing without substantive change 31 U.S.C. § 203). While the Government can consent to assignment of certain types of claims under certain circumstances, takings claims are different: the Government cannot and did not consent to the assignment of takings claims such as those asserted by Plaintiff. *Rochester Gas & Elec. Corp. v. United States*, 65 Fed. Cl. 431, 441-42 (2005) (holding that while a broad assignment of claims clause effectuated the assignment of all SNF claims arising under the Standard Contract, it was ineffective with respect to the takings claim because "Rochester Gas may not assign its takings claim to [the buyer].") (citing. *Dow*, 357 U.S. at 20-21).

[3] The Decision erroneously found that the prohibition against assignment of takings claims under *Dow* operated only for the benefit of the Government, but did not invalidate the assignment as between the Plaintiffs and PSEG, even where such an assignment extinguished the takings claims. The law is to the contrary; any attempt to assign a takings claim to a person or entity not owning the property at the time of the taking is "null and void" as to *all* parties. That fundamental principle is set out in the Assignment of Claims Act, which provides: "An assignment [of any part of a claim against the United States Government or of an interest in the claim] may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses" 31 U.S.C. § 3727(b) (incorporating 31 U.S.C. § 3727(a)(1)). The quoted version of the Assignment of Claims Act reflects amendments made in 1982. Act of Sept. 13, 1982, Pub. L. No. 97-258, § 1, 96 Stat. 976 (1982). The predecessor statute, 31 U.S.C. § 203, was enacted in 1940 and stated: "All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor . . . except as hereinafter provided, shall be *absolutely null and void*, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof." *In re Lagerstrom*, 300 F. Supp. 538, 539-40 (S.D. Ill. 1969) (quoting 31 U.S.C. § 203 (emphasis added) (current version at 31 U.S.C. § 3727)). The 1982 amendments were passed "without substantive change" to the Act. Act of Sept. 13, 1982, Pub. L. No. 97-258, § 1, 96 Stat. 976 (1982). Under the principles of *Dow*, the Government has an "obligation to provide just

21. There is no issue of overlapping claims in this case, since Plaintiffs' claims are for diminished value and excess funding of the decommissioning trust caused by the Government's conduct – damages to Plaintiffs (the sellers) which were in fact direct *benefits* to PSEG (the buyer, which paid the reduced price and has possession of the excess decommissioning trust funds).[4] Thus, the principal victims of the Decision are the ratepayers on whose behalf Plaintiffs seek tens of millions of dollars in damages.[5] The beneficiary of the Decision is the Government – a result expressly intended by PSEG since its admitted motivation for initiating the arbitration was to dispose of Plaintiffs' claims as a precondition to settling its separate claims with the Government.[6]

The notion that three years into a judicial proceeding – after the Court has denied the Government's summary judgment motion and granted enforcement of discovery subpoenas against PSEG, recognizing in doing so its continuing jurisdiction over the assignment issue – a

---

compensation," 357 U.S. at 24, and any contractual agreement which would transfer entitlement to bring a taking claim to a subsequent property owner – or eliminate the entitlement of the property owner suffering the taking – would be null and void. *Id*. at 20-21; *see also Rochester Gas*, 65 Fed. Cl. at 441-42.

[4] The Decision at 23-24 speculated that PSEG's contract claims might somehow supersede Plaintiffs' takings claims, erroneously citing *Boston Edison Co. v. United States*, 64 Fed. Cl. 167, 187, (2005), but failed to explain how PSEG could claim under the Standard Contract damages (i) for a taking of property it did not own and (ii) arising from *benefits* which it received directly in the transaction.

[5] The Decision inappropriately asserts that "[i]t is also uncertain whether the takings theory under which the claims are being brought will prove to be viable and to what extent ACE/Delmarva would be able to show any significant loss as a minority owner." Decision at 23. The issue of the viability of the takings claims was not before the panel and was not properly a basis for the Decision.

[6] *See* Arbitration Demand of PSEG (a true and accurate copy of which is attached hereto as Exhibit 2) at 2, 3 (stating that Plaintiffs' litigation is "interfering with PSEG's ability to resolve its claims against DOE" and that "the government has refused to settle PSEG's suit without a concurrent settlement of [Plaintiffs'] claims."); *see also* Decision at 5 n.5; Separate Opinion of John D. Aldock, Decision at 26 & n. 17.

late-filed parallel arbitration proceeding could snuff out Plaintiffs' claims is contrary to fundamental principles of judicial economy and jurisdiction, for the reasons set forth herein.

## I. POSTURE OF THE CASE

This Court issued its Order staying this proceeding to permit conduct of the arbitration on April 12, 2007,[7] following issuance of an Order to Show Cause why this case should not be stayed for that purpose on March 27, 2007.[8] The Show Cause Order acknowledged Plaintiffs' arguments that PSEG was barred from asserting a right to arbitrate under Section 8.3 of the PSEG PAs because PSEG has "'sat silent regarding its alleged breach of contract claims against Plaintiffs' for nearly two years." Show Cause Order at 8. The Show Cause Order also stated: "Should the arbitrators fail to consider delay in the arbitration proceeding, the court cautions parties that it will address the issue of PSEG's delay in consideration of plaintiffs' claims, particularly in light of PSEG's active participation in prosecution of <u>PSEG</u> and PSEG's awareness of the proceedings in this case." *Id.* at 9. In subsequently ordering a time stay, the Court did so "without prejudice to plaintiffs' position regarding delay and laches and/or waiver or estoppel in connection with PSEG Nuclear's demand for arbitration." Stay Order at 2.

Days after the Show Cause Order was issued, on April 6, 2007, the Third Circuit issued its decision in *Ehleiter v. Grapetree Shores, Inc.,* 482 F.3d 207 (3d Cir. 2007). That decision makes clear that this Court, and not the arbitration panel, has the jurisdiction and authority to decide the question of whether PSEG waived its right to arbitrate under the PAs.[9]

---

[7] April 12, 2007 Order (entering stay) (Docket No. 117) ("Stay Order").

[8] March 27, 2007 Corrected Order to Show Cause (Docket No. 117-1) ("Show Cause Order").

[9] The *Ehleiter* decision thus clarified the law in the Third Circuit, applicable to the arbitration proceedings subject to New Jersey law.

*Id.* at 221. *Ehleiter* first arose in the context of the arbitration proceedings at the May 9, 2007 initial pre-hearing conference, where the panel chair, Judge Mukasey, brought it to the parties' attention as potentially relevant. It had been Plaintiffs' position going into the pre-hearing conference that the panel should separate the issue of arbitrability, including the question of whether PSEG was barred by delay from initiating the arbitration, from the merits question regarding assignment of the takings claims. As had been stated by Plaintiffs' counsel, Frederick Lowther, in an April 28, 2007 letter to the panel, "the jurisdictional question is a threshold question which should be decided by the Panel first; and only after a final determination that the Panel has jurisdiction to consider the merits should [Plaintiffs] be required to brief their position on the merits."[10] At the pre-hearing conference, Plaintiffs continued to urge bifurcation and incorporated the suggestion that the recent *Ehleiter* holding was relevant to the threshold jurisdictional questions.

The panel ruled that the briefing should and would be bifurcated, setting an intense briefing schedule.[11] Judge Mukasey specifically instructed that the briefs on arbitrability should address not only whether PSEG had waived or otherwise lost its right to arbitrate, but also whether that question was for the panel or for the court to decide. Plaintiffs' briefs urged that, under *Ehleiter*, the question of whether PSEG had waived its right to arbitrate by its litigation conduct was for this Court and not the panel.

---

[10] April 28, 2007 letter from Mr. Lowther to the arbitration panel, a true and accurate copy of which is attached hereto as Exhibit 3, at 2.

[11] The scheduling order (a true and accurate copy of which is attached hereto as Exhibit 4) was issued the same day as the pre-hearing conference and requested briefs as follows: initial briefs on jurisdiction on May 15, with reply briefs on May 17; a conference of the arbitrators on May 18; and, unless determined that "the substantive claims herein should be dismissed or stayed," initial briefs on the merits on May 21, with reply briefs on May 23. The arbitration hearing was to be (and was) held the next day, May 24.

Plaintiffs anticipated that the panel would issue a preliminary ruling on its jurisdiction. Instead, by email at 4:05 p.m. on Friday, May 18, 2007, the panel merely requested, without explanation, that the parties proceed to brief the merits, in initial and reply briefs to be filed within the next three business days.[12] So as not to be in default under that schedule, and cognizant of this Court's stay pending completion of the arbitration, Plaintiffs prepared and submitted the merits briefs and participated in the hearing on Thursday, May 24, 2007. It was not until the panel issued its split ruling on June 20, 2007 that the Plaintiffs had a ruling on the question of arbitrability that could be brought back to this Court. Plaintiffs immediately prepared this motion to vacate the arbitration ruling.

## II. ARBITRABILITY IS AN ISSUE FOR THIS COURT, NOT THE ARBITRATION PANEL

Rather than determining the arbitrability of PSEG's claim, the arbitration panel should have deferred to this Court to decide whether PSEG's conduct – continuing to participate actively in this proceeding while consistently and repeatedly declining to exercise its asserted right to arbitrate the very claims it put before this Court – barred it from demanding arbitration. *Ehleiter*, 482 F.3d at 221. Because PSEG's waiver is best evidenced by its conduct in this litigation, this Court is in the best position to evaluate that conduct and its prejudicial effect. *Id.* Accordingly, this Court should determine that *it* is the proper forum to address PSEG's behavior; rule that PSEG has waived its right to arbitrate by its conduct; decline on that basis to give effect to the arbitrators' ruling; and, permit Plaintiffs to proceed with this litigation.

The *Ehleiter* court confirmed that "waiver of the right to arbitrate based on litigation conduct remains presumptively an issue for the court to decide," observing that it and its sister

[12] A true and accurate copy of the May 18, 2007 email from Judge Mukasey to the parties is attached hereto as Exhibit 5.

courts have "long decided questions of waiver based on litigation conduct instead of referring the issue to an arbitrator," and reaffirming the propriety of that approach in the wake of two Supreme Court decisions, *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002), and *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 451-52 (2003). *Ehleiter*, 482 F.3d at 221, 217-18; *see also Miller Brewing Co. v. Fort Worth Distrib. Co., Inc.*, 781 F.2d 494, 497 (5th Cir. 1986) (considering and finding waiver, recognizing that "[a] party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right.") (citing *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966), in which court also considered and found waiver) (other citations omitted). In *Howsam*, the Supreme Court reasoned that "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide," while "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide." 537 U.S. at 84 (internal citations and emphasis omitted). The Court provided examples of gateway matters that are for the court to decide, including whether the parties have a valid arbitration agreement or whether an arbitration clause applies to a certain type of controversy. *Id.* at 84. The Supreme Court reiterated its *Howsam* holdings in *Green Tree*. 539 U.S. at 451-52. The *Ehleiter* court noted that in the wake of *Howsam* and *Green Tree* it and other circuits continued to treat waiver claims based on litigation conduct as questions of arbitrability that are for the court to resolve. 482 F.3d at 217.

The *Ehleiter* court found persuasive the First Circuit's analysis in *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1 (1st Cir. 2005), one of the few post-*Howsam* and *Green Tree* cases on point. *Ehleiter,* 482 F.3d at 217-18. In *Marie*, the First Circuit reasoned that *Howsam* and *Green Tree* did not intend to disturb the traditional rule that waiver by conduct, and in

particular by litigation-related activity, should be decided by courts and not arbitrators. *Marie*, 402 F.3d at 3. The court found that Section 3 of the Federal Arbitration Act, which permits a court to stay litigation pending arbitration only if "'the applicant for the stay is not in default in proceeding with such arbitration,'"[13] seemed "to place a statutory command on courts, in cases where a stay [was] sought, to decide the waiver issue themselves." *Id.* at 12. The court also relied on a comment in the Revised Uniform Arbitration Act of 2000 providing that "[w]aiver is one area where courts, rather than arbitrators, often make the decision as to enforceability of an arbitration clause." *Id.* at 13 (quotation omitted). The *Ehleiter* court adopted the *Marie* court's observation that "the trial judge, having been directly involved in the entire course of the legal proceedings, is better positioned to determine whether the belated request for arbitration is a thinly veiled attempt to forum shop." *Ehleiter*, 482 F.3d at 218 (citing *Marie*, 402 F.3d at 13). It noted too that "[m]ore fundamentally, because the inquiry into whether a party has waived its right to arbitrate by litigating the case in court 'heavily implicates *judicial* procedures' . . . the court should remain free to 'control the course of proceedings before it and to correct abuses of those proceedings,' rather than being required to defer to the findings [of] an arbitrator with no previous involvement in the case." *Ehleiter*, 482 F.3d at 218 (citing *Marie*, 402 F.3d at 13) (additional citations omitted).[14]

Thus, because Plaintiffs' claim that PSEG has waived its right to arbitrate based on its litigation conduct is an issue that, under *Ehleiter*, should properly have been addressed by this

---

[13] *Marie*, 402 F.3d at 12-13 (quoting 9 U.S.C. § 3); *see also* N.J. Stat. Ann. § 2A:24-4 (West 2007) (the court shall stay an action brought upon an issue arising out of an arbitration agreement "if the applicant for the stay is not in default in proceeding with the arbitration").

[14] The Court's statements in the Show Cause Order, quoted at page 4 *supra*, show its familiarity with PSEG's litigation conduct. It is precisely this kind of familiarity with litigation conduct that demonstrates the wisdom of the *Ehleiter* holding.

Court and not referred to arbitration, this Court should reassert jurisdiction and decide that issue itself. *See Ehleiter*, 482 F.3d at 209-10, 225.

## III. THE ARBITRATION PANEL INCORRECTLY DECLINED TO APPLY *EHLEITER*

Although the parties briefed the issue, the panel majority declined to apply the holding of *Ehleiter* and defer to this Court's jurisdiction. The reason given – that there is no single court before which both PSEG and Plaintiffs are parties – ignores the realities of this litigation and is not a valid basis for ignoring the teaching of *Ehleiter*.

First, as this Court has noted, PSEG is aware of, has participated in, and has raised the same issues in this case as it raised at arbitration.[15] Second, PSEG is actively pursuing its own separate SNF claims against the DOE, which are on a parallel track to Plaintiffs' claims before the COFC.[16] Third, there is a motion pending before the Court to consolidate PSEG's and Plaintiffs' cases or to require that PSEG and Plaintiffs each participate in each other's cases. To the extent that the Court granted that motion "in part,"[17] PSEG may in fact be a party to this case; to the extent that this is not already so, this Court has the authority and discretion to act now to join PSEG as a party or to consolidate the cases.[18] Thus, under the circumstance of this litigation, the absence of a single court is not (as the panel majority suggests) sufficient to overcome the presumption that waiver of the right to arbitrate based on litigation conduct is a matter for the court. *See Ehleiter*, 482 F.3d at 217-18.

---

[15] *See* Show Cause Order at 8-9; *see also* p. 4 *supra*.

[16] PSEG's claims allege breach of the Standard Contract and are distinct from the takings claims that are brought, and can only be brought, by Plaintiffs on behalf of their ratepayers. *See* n.20 *infra*.

[17] Stay Order at 2, ¶ 1.

[18] Plaintiffs respectfully request that the Court grant the consolidation motion to the extent it deems it necessary to apply the holding of *Ehleiter*.

In sum, the principles of *Ehleiter* are wholly applicable to PSEG's conduct and to this Court's experience with that conduct. Indeed, dissenting panel member John Aldock so found. *See* Separate Opinion of John D. Aldock, Decision at 26. The panel should have applied the holding of that case and deferred to this Court. Accordingly, Plaintiffs request that the Court correct the panel's error and apply the *Ehleiter* holding to take jurisdiction of the waiver by litigation conduct issue.

## IV. PSEG'S LITIGATION CONDUCT CONSTITUTES WAIVER OF ITS RIGHT TO ARBITRATE

PSEG's arbitration demand came 40 months after Plaintiffs' representatives met with PSEG's representatives in September 2003 to discuss Plaintiffs' intention to file takings claims against DOE and to explain why those takings claims fall outside the transfer of claims under the PAs. Not then, nor when the lawsuits were filed in January 2004, nor in the next 22 months after that filing did PSEG object to this litigation.[19] Indeed, at one point, PSEG disavowed any interest in Plaintiffs' claims.[20] Only after the Court's July 1, 2005 denial of the Government's motion for summary judgment, which was based in part on the Government's contention that ACE and Delmarva lacked standing because their claims had been assigned to PSEG under the PAs, and only after ACE and Delmarva commenced discovery against PSEG, did PSEG first

---

[19] PSEG asserted to the panel that, at the September 2003 meeting, it put Plaintiffs' counsel on notice that the claims had been assigned to PSEG. Affidavits regarding that meeting differ on what transpired, but it is uncontested that PSEG lodged no formal objection to Plaintiffs' claims until October 6, 2005, more than two years after the meeting. A true and accurate copy of the October 6, 2005 letter from Frank Cassidy, President and COO of PSEG Power LLC to Thomas Shaw, President and COO of Plaintiffs' parent company, is attached hereto as Exhibit 6.

[20] By letter dated April 20, 2005 from Mr. Alex Tomaszczuk, counsel for PSEG, to Mr. Richard J. Conway, et al., counsel for Plaintiffs, a true and correct copy of which is attached hereto as Exhibit 7, PSEG explained that its lawsuit against DOE sought damages "for partial breach of contract, breach of the obligation of good faith and fair dealing, and for taking its real property interests" and that it understood that Plaintiffs "are pursuing various legal theories, such as diminution in value, which PSEG Nuclear simply has no interest or desire to prosecute or defend." *Id.* at 1.

allege (in an October 6, 2005 letter[21]) that the takings claims had been transferred to PSEG. Despite Plaintiffs' response, one week later, that their takings claims did not violate the PAs, and PSEG's clear knowledge of, and even participation in, this continuing litigation, PSEG still did not act to demand arbitration, but waited another 15 months to do so.[22]

PSEG has waived any right it may have had to arbitrate by its more than three year delay in initiating arbitration and by its own litigation conduct, described by this Court in the Show Cause Order.[23] PSEG was not only aware of, but actively participated in, this litigation: in 2006 opposing a motion to compel production; later producing 38,500 pages of documents; subsequently presenting witnesses at depositions;[24] and, most recently responding to the Court's Order to Show Cause.[25] PSEG's inexcusable delay has substantially prejudiced Plaintiffs, who during the 40-month period that PSEG had full knowledge of Plaintiffs' claims and their intent to pursue them, expended considerable time, effort and resources and incurred significant fees and costs in pursuing this case. Had PSEG initiated arbitration on a timely basis, and prevailed, none of these expenses would have been incurred. Had it done so and lost, Plaintiffs would not have faced the cost and distractions associated with an arbitration proceeding layered upon advanced,

---

[21] *See* Exhibit 6.

[22] It appears that PSEG is attempting to settle its own case, and that DOE has suggested that PSEG must, as a condition of settlement, relieve DOE of having to litigate the ACE and Delmarva claims against DOE. *See* n. 6 *supra*.

[23] *See* p. 4 *supra and* n. 15 *supra.*

[24] ACE and Delmarva served 4 subpoenas for deposition on November 30, 2006 of designated corporate witnesses from 3 PSEG entities -- Public Service Enterprise Group Incorporated, Public Service Electric and Gas Company, Inc., and PSEG Power LLC. Different dates were negotiated, and the depositions were taken on January 9, 10, and 11, 2007, at PSEG's offices in Newark, New Jersey. PSEG produced these witnesses voluntarily and did not file any motions in opposition to the depositions.

[25] The panel majority's attempt to marginalize the prejudice suffered by Plaintiffs by labeling of PSEG's litigation conduct as "involuntary" is also not valid. Decision at 14. It cannot be disputed that PSEG has participated voluntarily on several occasions in this proceeding, including for example when it responded to subpoenas for the deposition of witnesses (*see* n. 24 *supra*) and sought leave to file a response to the Court's Show Cause Order.

complex litigation. These actions by PSEG have caused the "'prejudice [that] is the touchstone for determining whether the right to arbitrate has been waived' by litigation conduct." *Ehleiter*, 482 F.3d at 222 (quoting *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925 (3d Cir. 1992)).

Contrary to the arbitration panel's finding, PSEG's delay in initiating arbitration is not excused because it stated its objections to this litigation. It is worth repeating that it failed to do even that for 22 months after the litigation was initiated.[26] Even after it did so, PSEG continued to participate in this case – indeed, to delay it – without initiating arbitration. Each time PSEG stated an objection, Plaintiffs responded fully and adequately. The burden was not on Plaintiffs to seek arbitration – indeed, Plaintiffs had no dispute to bring to arbitration – but on PSEG, the only party who did.[27]

Nor, contrary to the panel majority's finding, was the dismissal of PSEG's litigation against DOE a reasonable excuse not to initiate arbitration. That dismissal is irrelevant to PSEG's stated objections to Plaintiffs' litigation on the ground that the takings claims had been assigned.[28] It would appear that PSEG simply chose not to initiate arbitration earlier because it

---

[26] *See* n. 19 *supra.*

[27] The panel majority found that, once Plaintiffs were aware of PSEG's objection, Plaintiffs were obliged to commence arbitration themselves, and therefore proceeded with the litigation at their own risk. The only cases relied on by the panel majority are inapposite. *Murphy v. Trapani*, 604 A.2d 635 (N.J. Sup. Ct. App. Div. 1992) (cited in Decision at 15), involved the construction of a residential structure which defendant admitted was in violation of a restrictive covenant. Defendant's claim of laches and equitable estoppel was rejected because plaintiff had objected to the *admitted* violation from inception. *Id.* at 639-40. Here, Plaintiffs admitted to no breach of the PAs, but instead provided evidence that no breach had occurred. *King v. Innovation Books,* 976 F.2d 824, 832-33 (2d Cir. 1992), a "*see also*" cite by the panel majority (Decision at 15), involved a claim of laches against the plaintiff in an infringement suit, where the court found that the plaintiff could not have known whether infringement had occurred until he saw the infringing film four months prior to filing suit. There is simply no law supporting the notion that a threat to invoke arbitration shifts the burden of initiating arbitration to the threatened party.

[28] *See also* Separate Opinion of John D. Aldock, Decision at 25-26 & n. 16: "I do not see PSEG's inaction during the period while its claim against the Government was dismissed as a justification for delay. Judge Miller clearly treated that dismissal as temporary and urged the

had an interest in the continuation of this litigation, conducted at Plaintiffs' expense. Plaintiffs' "protective" breach of contract claims preserved the possibility that PSEG could bring those claims later, or, in the event that the PSEG litigation was not reinstated, could collect from Plaintiffs any revenue recovered from the Government by Plaintiffs related to the protective breach claims. It would be grossly unfair to sanction PSEG's silent encouragement of Plaintiffs' litigation so long as it might benefit PSEG, and then permit PSEG, by filing a dilatory arbitration demand, to snuff out Plaintiffs' claims once PSEG was again on solid footing in pursuing its claims directly in its own reinstated lawsuit.

---

parties to do the same. (See April 7, 2005 Hearing transcript at p. 23 attached to PSEG's prehearing brief.)."

## CONCLUSION

For the reasons stated, the Plaintiffs respectfully request that this Court rule that it is the proper forum to determine, and so determine, that PSEG has waived its right to arbitrate by its litigation conduct[29] and, on that basis, vacate the arbitration ruling, lift the stay and permit the Plaintiffs, who all parties agree are the only parties who can bring these takings claims, to continue their prosecution of their takings claims in this litigation.

Date: July 2, 2007

Respectfully submitted,

/s/ Richard J. Conway
Richard J. Conway
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, D.C. 20006
(202) 420-2200

*Counsel of Record for*
*Delmarva Power & Light Company and*
*Atlantic City Electric Company*

Of Counsel:
Frederick M. Lowther
Beth L. Webb
Nicholas W. Mattia, Jr.
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, D.C. 20006
(202) 420-2200

Todd Goodman, Esq.
Assistant General Counsel
Conectiv
P. O. Box 231
Wilmington, DE 19899

[29] As stated at n. 18 *supra*, Plaintiffs respectfully request that the Court grant the consolidation motion to the extent it deems it necessary to apply the holding of *Ehleiter*.

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that on July 2, 2007, a copy of the foregoing "Plaintiffs' Motion to Vacate Arbitration Ruling" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A courtesy copy was also sent to Chambers pursuant to the Court's Order dated February 9, 2004. Copies were also served upon counsel for plaintiffs and counsel for defendant in *PSEG Nuclear, L.L.C. v. United States*, No. 01-551C (Fed. Cl. filed Jan. 26, 2001).

/s/Erin L. Webb