# EXHIBIT 2

**IN THE MATTER OF THE ARBITRATION OF:**

| | |
|---|---|
| **PSEG POWER LLC, and PSEG NUCLEAR LLC,** | ) |
| **Claimants,** | ) |
| **v.** | ) |
| **PEPCO HOLDINGS, INC., ATLANTIC CITY ELECTRIC CO., and DELMARVA POWER AND LIGHT CO.,** | ) |
| **Respondents.** | ) |

**ARBITRATION DEMAND OF PSEG POWER LLC AND PSEG NUCLEAR LLC**

Claimants PSEG Power LLC and PSEG Nuclear LLC (collectively "PSEG") hereby request arbitration of their claims against Respondents PEPCO Holdings, Inc., Atlantic City Electric Co. and Delmarva Power and Light Company (collectively "Respondents") as set forth below.

## I. INTRODUCTION

PSEG Power LLC is the parent of PSEG Nuclear LLC, which is the operator and sole owner of the Hope Creek Nuclear Generating Station ("Hope Creek") and the operator and majority owner of the Salem Nuclear Generating Station ("Salem").

In 1999, PSEG bought the minority interests of Respondents Delmarva Power and Light Company ("DP&L") and Atlantic City Electric Company ("ACE") in the Hope Creek and Salem stations.[1] Pursuant to that purchase, the minority owners executed detailed agreements whereby they agreed to sell all aspects of their minority interests, including all claims related to the assets

---

[1] Respondent PEPCO Holdings, Inc., is the parent corporation of both ACE and DP&L.

being sold.[2] The minority owners further agreed to permit PSEG to control any litigation related to the assets sold and assigned all rights to any recovery associated therewith to PSEG. By agreeing to these provisions, the minority owners effectively warranted that they would not assert any claims related to the purchased assets.

Despite the unequivocal transfer of rights contained in the sale contracts, the former minority owners (Respondents herein) have ignored their contractual obligations by pursuing claims against the Department of Energy ("DOE") arising from the minority interests in Salem and Hope Creek that they sold to PSEG and by refusing PSEG's request that those claims be dismissed. This refusal is interfering with PSEG's ability to resolve its claims against DOE with regard to DOE's past and on-going failure to remove spent nuclear fuel from Salem and Hope Creek.

## II. NATURE OF THE DISPUTE

### A. *Background for Spent Fuel Claims*

In response to the need for the storage and disposal of spent nuclear fuel ("SNF") that was being generated by the nation's nuclear power stations, as well as SNF and high-level radioactive waste ("HLW") generated by the Federal Government's defense and other activities, Congress in 1982 passed the Nuclear Waste Policy Act ("NWPA"). Among the purposes of the NWPA was to establish a process and schedule for siting, constructing, and operating one or more repositories for the disposal of SNF and HLW and for the DOE to dispose of SNF from commercial nuclear power reactors beginning by January 1998.

Under the NWPA, the DOE was authorized to accept title to, transport, and dispose of SNF. The NWPA also authorized the DOE to enter into contracts with utilities for this purpose. As a result, in 1983, DOE created a standard contract ("Standard Contract") that required DOE

[2] Certain inapplicable exclusions are addressed below.

to commence acceptance of SNF no later than January 31, 1998 in exchange for a one-time fee for SNF generated prior to 1983 and an on-going fee assessed by DOE for SNF generated thereafter.

DOE has failed to meet its obligations to begin SNF removal and disposal. Although the Standard Contract required DOE to begin disposal on January 31, 1998, DOE now projects it will not commence performance until 2017, at the earliest. Utilities generating SNF have therefore been required to incur additional costs for storing SNF as a result of DOE's breach of its obligations under the Standard Contract and the NWPA. At issue in this arbitration is the ownership and control of claims against DOE arising from DOE's failure to remove spent fuel from the Hope Creek and Salem nuclear stations.

PSEG has filed suit in the United States Court of Federal Claims to recover damages as a result of DOE's failure to meet its obligations with respect to SNF generated and stored at Salem and Hope Creek.

As discussed in more detail below, Respondents have filed their own suits (now consolidated) against the DOE related to Salem and Hope Creek despite the fact that they hold no present interest in the stations and even though they conveyed to PSEG all claims related to DOE's failure to take SNF. Respondents' consolidated suit, which seeks damages based on breach of contract and Fifth Amendment "takings" theories, is interfering with PSEG's suit against DOE because the government has refused to settle PSEG's suit without a concurrent settlement of Respondents' claims. Additionally, the government has made plain that it intends to argue that any recovery by PSEG in its suit against DOE must be reduced or offset by any eventual recovery of Respondents and that in any settlement with PSEG, anything paid to Respondents would come from money otherwise available to be paid to PSEG. To implement

that strategy, the government has recently moved to consolidate PSEG's case with that of . Respondents under the theory that the cases represent "overlapping and duplicative theories of recovery."[3] Because Respondents' suit is now directly interfering with PSEG's suit and with PSEG's efforts to settle all SNF claims relating to the two stations, PSEG has asserted the right it bought in 1999 to control all claims that relate to Salem and Hope Creek.

**B.** *The Purchase Agreements*

Claimant PSEG is a party to certain purchase agreements ("PAs") with Respondents DP&L and ACE that are at issue in this arbitration. Under the PAs, Respondents sold their minority interests in the Salem and Hope Creek stations. Specifically, the PAs at issue are: (1) a Purchase Agreement between DP&L (Seller) and PSEG (Buyer), dated as of September 27, 1999 for DP&L's 7.41% interest in the Salem Station, (2) a Purchase Agreement between ACE (Seller) and PSEG (Buyer), dated as of September 27, 1999 for ACE's 7.41% interest in the Salem Station, and (3) a Purchase Agreement between ACE (Seller) and PSEG (Buyer), dated as of September 27, 1999 for ACE's 5.00% interest in the Hope Creek Station.

Section 2.6 of the PAs provided that, effective with the Closing Dates, PSEG "shall have all rights of recovery from third parties and the Department of Energy relating to, arising from or in connection with the Department of Energy's failure to take Spent Nuclear Fuel." PAs Section 2.6.

Furthermore, under each of the PAs, PSEG acquired, as one of the "Purchased Assets" listed in Article II, Section 2.1, all claims of DP&L and ACE relating in any way to DOE's defaults under the Standard Contract for removal of SNF and all other claims against DOE with

---

[3] *See* Motion of the United States To Consolidate Or, In The Alternative, For Issuance Of A Summons Pursuant To RCFC 14(a) And Notice Pursuant To RCFC 14(b) dated January 5, 2007 at 6-8.

respect to the assets that it purchased, except for one immaterial exception.[4] Section 2.1(l) of each PA states that DP&L and ACE transferred:

> All claims of Seller relating to or pertaining to the Department of Energy's defaults under the Department of Energy Standard Contract (including all claims for failure by the Department of Energy to take Spent Nuclear Fuel) accrued prior to, on or after the Closing Date, whether relating to periods prior to, on or after the Closing Date, and all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased Assets, other than the claims described in Section 2.2(l);

PAs Section 2.1(l).

PSEG also acquired all claims and causes of action against any third parties relating to the Purchased Assets other than those constituting "Excluded Assets" or "Excluded Liabilities." Under Section 2.1(m) of the PAs, DP&L and ACE transferred to PSEG:

> The rights of Seller in, to and under all causes of action against third parties with respect to, arising out of or in connection with Seller's rights, title and interests in and to the Purchased Assets or the Assumed Liabilities, or any portion thereof, whether accruing prior to, on or after the Closing Date, other than any such causes of action as constitute Excluded Assets or Excluded Liabilities, whether received as payment or credit against future liabilities, in each case, relating to any period prior to, on or after the Closing Date, other than the claims described in Section 2.2(m).

PAs Section 2.1(m). "Excluded Assets" did not include claims against DOE.

Additionally, after the Closing Dates, PSEG was "entitled exclusively to control, defend and settle any suit, action or proceeding, and any investigation arising out of or related to any Purchased Assets or Assumed Liabilities ...." PAs Section 2.5(b).

---

[4] The immaterial exception deals with "Department of Energy Decommissioning or Decontamination Fees." Section 2.2(l) of the PAs excepted as an "Excluded Asset" all claims of DP&L or ACE relating or pertaining to any refund or credit of Department of Energy Decommissioning or Decontamination Fees (defined in Section 1.1 as fees related to DOE's special assessment of utilities, in order to decontaminate and decommission DOE's gaseous diffusion enrichment facilities). The DOE Decommissioning and Decontamination Fees have no relation to the SNF claims.

Under these provisions, individually and cumulatively, and in the broadest possible language, DP&L and ACE expressly and unambiguously transferred to PSEG all rights relating to claims arising out of or connected in any way to DOE's failure to timely remove SNF and any right of recovery for SNF-related claims.

The PAs also obligated Respondents to provide notice to PSEG, before closing, if they believed that any assets being sold might be taken by eminent domain. In particular, the PAs state that:

> if, before the Closing Date, all or any portion of the Purchased Assets is (i) condemned or taken by eminent domain or is the subject of a pending or threatened condemnation or taking which has not been consummated … Seller shall notify Buyer promptly in writing of such fact and (x) in the case of a condemnation or taking, Seller shall assign or pay, as the case may be, any proceeds thereof to Buyer at the Closing ….

PAs Section 6.8. No such notice has been given.

Respondents were also obligated under Section 6.3 of the PAs to make "Commercially Reasonable Efforts … [to] make effective the purchase sale, assignment, conveyance, transfer and delivery of the Purchased Assets …. including obtaining all necessary consents, approvals, and authorizations of third parties and Governmental Authorities …." PAs Section 6.3. PSEG knows of no such efforts.

### C. *The Delmarva Litigation*

Notwithstanding the clear provisions of the PAs, on January 13, 2004, DP&L and ACE commenced litigation in the United States Court of Federal Claims (the "Delmarva Litigation")[5] based wholly on claims that they were injured by DOE's failure to timely commence removal of

---

5 *Delmarva Power and Light Company v. United States*, No. 04-34C, and *Atlantic City Electric Company v. United States*, No. 04-36C. Both lawsuits were filed on January 13, 2004. By Order dated January 21, 2005, the two cases were consolidated.

SNF as required.[6] By letter to Respondents on October 6, 2005, PSEG requested that Respondents dismiss the Delmarva Litigation due to its clear violation of the PAs. This request was reiterated in letters to Respondents dated November 4, 2005 and January 4, 2006. Respondents flatly refused to dismiss the Delmarva Litigation.

**D.** *Arbitration of Claims*

DP&L's and ACE's actions plainly violate the terms of the PAs. The initiation of the Delmarva Litigation was a material breach of those PAs, as was the refusal to follow PSEG's exercise of control over the litigation and dismiss it. PSEG has filed this arbitration for a declaration that Respondents have no right to pursue litigation against DOE relating in any way to SNF at the Hope Creek and Salem stations and for an order declaring that Respondents are required under the PAs to dismiss the Delmarva Litigation at PSEG's direction. That litigation is interfering with the rights of PSEG Nuclear LLC, as owner and operator of the two plants, to resolve claims relating to the failure of DOE to remove spent fuel from the plants.

Section 8.3 of the PAs provides for arbitration of "any dispute between Seller and Buyer arising after the Closing … and relating to or arising out of any provision of this agreement …."[7] PAs Section 8.3. Section 8.3 further provides for a pre-arbitration dispute resolution mechanism that the parties have completed. *Id.* PSEG sent a notice of dispute to Respondents on January 31, 2007 ("January 31 Letter") outlining the dispute and proposing a meeting between party executives on March 16, 2007. On February 22, 2007, Respondents replied to the January 31 Letter and supplemented that letter on March 15, 2007 by sending a notice of dispute to PSEG over whether PSEG's notice of dispute was valid and whether PSEG is precluded from bringing

---

[6] Neither Section 2.2 (Excluded Assets) nor 2.4 (Excluded Liabilities) authorizes the Delmarva Litigation.

[7] Certain exclusions to this clause exist in the PAs but are inapplicable to the instant controversy.

this arbitration. A meeting between authorized executives for each party was held on March 16, 2007. No resolution of the dispute was reached at that meeting.

## III. CLAIMS

By instituting the Delmarva Litigation and refusing to dismiss the Delmarva Litigation upon PSEG's request, Respondents breached their obligations under the PAs. Respondents initiated that litigation, alleging "takings" claims that Respondents argue were not transferred under the PAs. Respondents make this assertion even though the language contained in the PAs transferring all SNF claims to PSEG is unequivocal and even though the PAs required Respondents to provide notice of any "taking" to PSEG prior to closing and to make commercially reasonable efforts to effect assignment of any claims to PSEG.

## IV. RELIEF SOUGHT

PSEG seeks a declaration that, under the PAs, Respondents assigned to PSEG all rights in the Purchased Assets, including all claims, however characterized, that relate to the DOE's failure to take SNF. These claims included any claims under the Fifth Amendment of the United States Constitution.

PSEG further seeks a declaration that, under the PAs, PSEG holds the right to control any litigation involving the Purchased Assets, including claims related to the DOE's failure to take SNF and claims arising under the Fifth Amendment of the United States Constitution.

PSEG also seeks a declaration that Respondents' initiation of the Delmarva Litigation and their refusal to dismiss the Delmarva Litigation constitute breaches of their obligations under the PAs and that Respondents are required to dismiss the Delmarva Litigation at PSEG's request.

Additionally, PSEG seeks a declaration that Respondents' failure to give pre-closing notice of their "takings" claims to PSEG and failure to make efforts to have any such claims assigned to PSEG also constitute breaches of the PAs that bar their claims.

Alternatively, PSEG seeks a declaration that, if Respondents are able to pursue their "takings" claims, any amounts recovered by Respondents from the DOE in the Delmarva Litigation must be paid to PSEG.

Dated: April 5, 2007

Respectfully submitted,

Jack McKay (jack.mckay@pillsburylaw.com)
Thomas G. Allen (thomas.allen@pillsburylaw.com)
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
Phone: (202) 663-8000
Fax: (202) 663-8007

Counsel for Claimants