IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DELMARVA POWER & LIGHT COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04–0034C, into which has |
| v. | ) | been consolidated No. 04-0036C |
| | ) | (Judge Christine Miller) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

# DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO VACATE ARBITRATION RULING


PETER D. KEISLER
Assistant Attorney General

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER
Assistant Director

ALAN J. LO RE
Senior Trial Counsel

PATRICK B. BRYAN
SCOTT R. DAMELIN
STEPHEN FINN
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530

JOSHUA E. GARDNER
Trial Attorney
Commercial Litigation Branch
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7583
Fax: (202) 307-2503


July 19, 2007

Attorneys for Defendant

# TABLE OF CONTENTS

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. THIS COURT DOES NOT POSSESS JURISDICTION TO VACATE AN ARBITRATION DECISION BETWEEN TWO PRIVATE PARTIES . . . . . . . . 1

A. The Court of Federal Claims Does Not Possess Jurisdiction To Adjudicate Disputes Between Private Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B. Other Judicial Fora Potentially Are Appropriate For Consideration Of The Arbitration Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

C. Plaintiffs' Motion To Vacate Simply Highlights The Fact That Plaintiffs Lack Any Basis To Allege A Takings Claim . . . . . . . . . . . . . . . . . . . . . . 6

1. Plaintiffs May Not Challenge Their Assignment Of Their Claims To PSEG On The Basis That It Violates The Assignment Of Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

2. Plaintiffs May Not Allege A Takings Claim Under These Circumstances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II. PLAINTIFFS' CASE SHOULD BE STAYED PENDING THE FINAL RESOLUTION OF THEIR CLAIMS REGARDING SALEM AND HOPE CREEK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

### CASES

AGCO Corp. v. Anglin,
216 F.3d 589 (7th Cir. 2000) . . . . . 4

Adams v. United States,
391 F.3d 1212 (Fed. Cir. 2004) . . . . . 15

Allegra Villa v. United States,
60 Fed. Cl. 11 (2004) . . . . . 10, 11

Boston Edison Co. v. United States,
64 Fed. Cl. 167 (2005) . . . . . *passim*

Branch v. United States,
69 F.3d 1571 (Fed. Cir. 1995) . . . . . 15

Castle v. United States,
301 F.3d 1328 (Fed. Cir. 2002) . . . . . 12

Cermak v. Babbitt,
234 F.3d 1356 (Fed. Cir. 2000) . . . . . 13

Cienega Gardens v. United States,
331 F.3d 1319 (Fed. Cir. 2003) . . . . . 10

Coast Indian Cmty. v. United States,
213 Ct. Cl. 129, 550 F.2d 639 (1977) . . . . . 13

Commonwealth Edison Co. v. United States,
56 Fed. Cl. 652 (2003) . . . . . 16

Danning v. Mintz,
367 F.2d 304 (9th Cir. 1966) . . . . . 8

Ehleiter v. Grapetree Shores, Inc.,
482 F.3d 207 (3d Cir. 2007) . . . . . 5

Fern v. United States,
908 F.2d 955 (Fed. Cir. 1990) . . . . . 15

Ficek v. Southern Pacific Co.,
338 F.2d 655 (9th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fisherman's Harvest, Inc. v. PBS&J,
No. 2006-1208, 2007 WL 1774922 (Fed. Cir. Jun. 21, 2007) . . . . . . . . . . . . . . . . . 2, 3, 4

In re Ideal Mercantile Corp.,
244 F.2d 828 (2d Cir. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Kaufman,
37 P.3d 845 (Okla. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Klamath Irrigation District v. United States,
67 Fed. Cl. 504 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Lane v. Pena,
518 U.S. 187 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Maffia v. United States,
143 Ct. Cl. 198, 163 F. Supp. 859 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Martin v. National Surety Co.,
300 U.S. 588 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

McKenzie v. Irving Trust Co.,
323 U.S. 365 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Members of the Peanut Quota Holders Association, Inc. v. United States,
421 F.3d 1323 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

National City Bank of Evansville v. United States,
143 Ct. Cl. 163 F. Supp. 846 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,
458 U.S. 50 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Pacific Gas & Electric Co. v. United States,
70 Fed. Cl. 766 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Pittman v. Chicago Bd. of Education,
64 F.3d 1098 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Prudential Ins. Co. of Am. v. United States,
801 F.2d 1295 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

RHI Holdings, Inc. v. United States,
142 F.3d 1459 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Reynolds v. Army & Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Riviera Fin. of Texas, Inc. v. United States,
58 Fed. Cl. 528 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Stearns Co. v. United States,
396 F.3d 1354 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sullivan v. United States,
46 Fed. Cl. 480 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Texas State Bank v. United States,
423 F.3d 1370 (Fed. Cir. 2005), reh'g denied (Dec. 13, 2005) . . . . . . . . . . . . . . . . . . . 13

Tuftco Corp. v. United States,
222 Ct. Cl. 277, 614 F.2d 740 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United Pacific Ins. Co. v. United States,
175 Ct. Cl. 358 F.2d 966 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Dow,
357 U.S. 17 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Shannon,
342 U.S. 288 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Vermont Yankee Nuclear Power Corp. v. United States,
73 Fed. Cl. 236 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## STATUTES

31 U.S.C. § 3727(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

## MISCELLANEOUS

6 Am. Jur. 2d Assignments § 155, at 245 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**INDEX TO APPENDIX**

Amended Arbitration Demand of Atlantic City Electric Company And Delmarva Power And Light Company, dated 4/23/07 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Attachment 1

Memorandum of Law In Support Order To Show Cause, filed by PSEG Power, LLC and PSEG Nuclear, LLC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Attachment 2

Order to Show Cause, filed by Honorable Neil H. Shuster, Superior Court of New Jersey, Chancery Division–Mercer County, dated 7/2/07 . . . . . . . . . . . . . . . . . . . . . . . . . . . Attachment 3

Joint Stipulations, dated 6/4/07, filed in Boston Edison Company v. United States, No. 99-447C (Fed. Cl.) & Entergy Nuclear Generation Co. v. United States, No. 03-2626C (Fed. Cl.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Attachment 4

Letter to A. Lo Re from R. Conway, dated 2/15/07, in Boston Edison Company v. United States, No. 99-447C (Fed. Cl.) & Entergy Nuclear Generation Co. v. United States, No. 03-2626C (Fed. Cl.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Attachment 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DELMARVA POWER & LIGHT COMPANY, Plaintiff, | ) | No. 04–0034C, into which has been consolidated No. 04-0036C (Judge Christine Miller) |
| v. | ) | |
| UNITED STATES OF AMERICA, Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION TO VACATE ARBITRATION RULING

Defendant, the United States, respectfully submits this response to "Plaintiffs' Motion To Vacate Arbitration Ruling,' dated July 2, 2007. In addition, we respectfully request clarification regarding one aspect of the Court's April 12, 2007 order.

## DISCUSSION

### I. THIS COURT DOES NOT POSSESS JURISDICTION TO VACATE AN ARBITRATION DECISION BETWEEN TWO PRIVATE PARTIES

#### A. The Court of Federal Claims Does Not Possess Jurisdiction To Adjudicate Disputes Between Private Parties

In their motion, plaintiffs, Delmarva Power & Light Company and Atlantic City Electric Company (collectively, "plaintiffs"), request that this Court vacate the arbitration decision between plaintiffs and PSEG Power LLC and PSEG Nuclear LLC (collectively, "PSEG"). Pl. Mot. 7.[1] The inherent, and unstated, assumption in plaintiffs' motion is that this Court possesses jurisdiction to vacate a private arbitration decision between private parties. Plaintiffs' assumption is incorrect.

[1] "Pl. Mot. ___" refers to the plaintiffs' motion to vacate, dated July 2, 2007.

"The jurisdiction of the Court of Federal Claims is prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." RHI Holdings, Inc. v. United States, 142 F.3d 1459, 1461 (Fed. Cir. 1998). Further, consent to be sued "will be strictly construed, in terms of its scope, in favor of the sovereign." Lane v. Pena, 518 U.S. 187, 192 (1996). Pursuant to Section 1491(a) of Title 28, the Court of Federal Claims possesses jurisdiction to consider claims for money damages "founded either on the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or impled contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." Plaintiffs carry the burden of establishing the existence of jurisdiction. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). Plaintiffs cannot meet this burden.

As the United States Supreme Court has made clear, this Court does not possess jurisdiction to adjudicate disputes between private parties. See United States v. Sherwood, 312 U.S. 584, 588-89 (1941) ("We think it plain that the present suit could not have been maintained in the Court of Claims because the court is without jurisdiction of any suit brought against private parties . . ."); see also National City Bank of Evansville v. United States, 143 Ct. Cl. 154, 163 F. Supp. 846, 852 (1958) ("It is well established that the jurisdiction of this court extends only to claims against the United States, and obviously a controversy between private parties could not be entertained"). As the United States Court of Appeals for the Federal Circuit recently noted, "the Court of Federal Claims is a legislative court limited to resolving claims involving public rights, not private rights." Fisherman's Harvest, Inc. v. PBS&J, No. 2006-1208, 2007 WL 1774922, at *3 (Fed. Cir. Jun. 21, 2007) (emphasis added); see Northern

Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 67 (1982) (court's jurisdiction is limited to resolving claims involving public rights).[2]

In Fisherman's Harvest, oyster growers sued private contractors in Federal district court for the negligent design and implementation of a dredging project. Id. at *1. Subsequently, one of the private contractors filed a third-party complaint against the Army Corps of Engineers, alleging a contractual right to contribution and indemnity. Id. The Army Corps of Engineers moved to dismiss the contractor's third-party complaint for lack of jurisdiction, asserting that the Court of Federal Claims possessed exclusive jurisdiction to adjudicate the contractor's claims for contribution and indemnification. Id. In response to the Army Corps of Engineers' motion, the private contractor moved to transfer the entire case, including the oyster growers' claims against the private contractor, to this Court. Id. The district court granted the contractor's motion and concluded that this Court had exclusive jurisdiction to adjudicate the third-party complaint against the Army Corps of Engineers, and that there was no prohibition against transferring the oyster growers' claims against the private contractor to the Court of Federal Claims. Id.

On appeal, the oyster growers challenged the district court's transfer of their negligence claims against private contractors to this Court. Id. at *2. The Federal Circuit reversed the district court's order transferring the oyster growers' negligence claims and concluded that there was no "want of jurisdiction" that would deprive the district court of jurisdiction to adjudicate the oyster growers' claims. Id. at *3. The Federal Circuit concluded that, although the district

[2] Indeed, the Court's rules explicitly provide that the defendant in this Court, except in vaccine cases, is the United States. RCFC 10(a), see Rules Committee Note to RCFC 4; see also United States v. Sherwood, 312 U.S. 584, 588 (1941) (only United States can serve as party defendant in this Court).

court properly transferred the Tucker Act claim against the Army Corps of Engineers to this Court, the oyster growers' claims were private claims that fell outside of this Court's jurisdiction:

> Here, however, the oyster growers' claims are private claims – not claims against the government – and the diversity and amount in controversy requirements of 28 U.S.C. § 1332 have been met. Therefore, the reasoning that supports exclusive jurisdiction for Tucker Act claims over $10,000 against the government does not apply to claims brought solely between diverse private parties for damages to oyster beds.

Id. at *4.

The arbitration proceeding between plaintiffs and PSEG does not involve a waiver of sovereign immunity and is not the type of claim that could be addressed by Congress. Thus, the Court of Federal Claims cannot entertain claims concerning the private arbitration between plaintiffs and PSEG, because this claim falls outside of this Court's jurisdiction under the Tucker Act.[3]

---

[3] Even assuming, arguendo, that this Court somehow possesses jurisdiction to vacate a private arbitration decision between private parties, the Court should conclude that plaintiffs have waived their challenge to the arbitration panel's consideration of PSEG's alleged waiver by voluntarily submitting the issue for the arbitrator's consideration. After PSEG filed its demand for arbitration, plaintiffs filed an arbitration demand seeking, among other things, for the arbitrators to determine whether PSEG had waived its right to arbitration based upon its previous litigation conduct in the Court of Federal Claims. See Att. 1 (plaintiffs amended arbitration demand). Pursuant to plaintiffs' request, the arbitration panel did address, and ultimately rejected, plaintiffs' claim that PSEG waived its right to arbitration. See Arbitration Decision, at 13-17. Only now, after they have been confronted with an adverse arbitration decision, do plaintiffs contend that the arbitration panel lacked the authority to determine whether PSEG waived its right to arbitration. Such conduct should not be allowed by this Court. By affirmatively placing this issue before the arbitrators, plaintiffs have waived any claim that the arbitrators lacked the ability to consider this issue. See AGCO Corp. v. Anglin, 216 F.3d 589, 593 (7th Cir. 2000) ("If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the mater"); Ficek v. Southern Pacific Co., 338 F.2d 655, 657 (9th Cir. 1964)

B. Other Judicial Fora Potentially Are Appropriate For Consideration Of The Arbitration Decision

In their motion, plaintiffs rely exclusively upon the United States Court of Appeals for the Third Circuit's decision in Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207 (3d Cir. 2007), for the proposition that this Court, rather than the arbitration panel, presumptively is the appropriate forum for resolving the issue of PSEG's alleged waiver by litigation conduct. Pl. Mot. 7-10. Regardless of the Third Circuit's decision regarding the division of presumptive jurisdiction between Article III courts and arbitration panels, that decision did not address whether the Court of Federal Claims possesses jurisdiction to adjudicate issues associated with the waiver of an arbitration claim between two private parties. Indeed, as we explained above, this Court does not possess such jurisdiction.

However, the fact that this Court does not possess jurisdiction to vacate the arbitration decision does not mean that plaintiffs lack any forum in which to resolve their dispute. Indeed, PSEG has sought to have the arbitration award confirmed in New Jersey state court. See Att. 2. After PSEG filed its complaint for summary affirmance, the state court issued an order to show cause, providing plaintiffs an opportunity to challenge the entry of an order confirming the

---

("[a] claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act.") (citing Wooley v. Eastern Air Lines, Inc., 250 F.2d 86, 91 (5th Cir. 1957)).

Here, plaintiffs voluntarily and affirmatively placed at issue before the arbitration panel their claim that PSEG waived its right to arbitration by its litigation conduct in the Court of Federal Claims. Now that they have received an adverse decision from the arbitration panel, they cannot now argue that the arbitrators did not posses the authority to resolve this issue. Consequently, to the extent that the Court concludes that it possesses jurisdiction to vacate the arbitration decision, it should conclude that plaintiffs' have waived their ability to challenge the arbitration decision by affirmatively placing this claim at issue in the arbitration.

arbitration decision. See Att. 3.[4] Allowing the New Jersey state court to resolve issues associated with the arbitration between plaintiffs and PSEG is consistent both with this Court's limited jurisdiction and the Third Circuit's decision in Ehleiter.

C. Plaintiffs' Motion To Vacate Simply Highlights The Fact That Plaintiffs Lack Any Basis To Allege A Takings Claim

1. Plaintiffs May Not Challenge Their Assignment Of Their Claims To PSEG On The Basis That It Violates The Assignment Of Claims Act

In its motion, apparently relying upon the Assignment of Claims Act, 31 U.S.C. § 3727, plaintiffs assert that they somehow retained the right to bring a takings claim because "any contractual agreement which would transfer entitlement to bring a takings claim to a subsequent property owner – or eliminate the entitlement of the property owner suffering the taking – would be null and void." Pl. Mot. 3 n.3. Plaintiffs have misconstrued the Assignment of Claims Act.

The Assignment of Claims Act protects the Government against assignments in certain instances:

> An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses. The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment. The certificate shall state that the official completely explained the assignment when it was acknowledged. An assignment under this subsection is valid for any purpose.

[4] PSEG filed its request with the New Jersey state court on June 22, 2007, 10 days before plaintiffs filed their motion to vacate in this Court. Plaintiffs' motion did not indicate that PSEG had filed such a motion in New Jersey state court.

31 U.S.C. § 3727(b) (emphasis added). Consequently, if the Government does not "allow" the assignment claim, no claim may be assigned – whether it be a takings claim, a contract claim, or any other type of claim. Conversely, if the Government "allows" the assignment claim, any type of claim may be assigned. Contrary to plaintiffs' suggestion, the Assignment of Claims Act makes no distinction between takings claims, on the one hand, and other types of claims, on the other.[5]

Any doubt that the intended beneficiary of the Assignment of Claims Act is the Government, and not private litigants, is dispelled by reference to the underlying purpose of the statute. As the United States Supreme Court has recognized, the three primary purposes of the statute are: (1) "to prevent persons of influence from buying up claims against the United States, which might then be improperly urged upon officers of the Government;" (2) "to prevent possible multiple payments of claims, to make unnecessary the investigation of alleged assignments, and to enable the Government to deal only with the original claimant;" and (3) "to save to the United States 'defenses which it has to claims by an assignor by way of set-off, counter claim, etc., which might not be applicable to an assignee.'" United States v. Shannon, 342 U.S. 288, 291-92 (1955). Indeed, it is beyond peradventure that the Assignment of Claims Act was enacted for the protection of the Government, see In re Ideal Mercantile Corp., 244 F.2d 828, 832 (2d Cir. 1957), and that only the Government may assert its protections. See Martin v.

[5] In United States v. Dow, 357 U.S. 17 (1958), the Supreme Court tied the prohibition against the assignment of takings claims to the Assignment of Claims Act. Id. at 20. That Act applies not only to takings claims, but also to contract claims. As discussed below, it is well established that the Government can waive that prohibition and accept a contract claim assignment. Tuftco Corp v. United States, 222 Ct. Cl. 277, 614 F.2d 740, 745 (1980). Plaintiffs have identified no reason that the same rule regarding waiver of the Assignment of Claims Act as they apply to contract claims is somehow different as they apply to takings claims.

National Surety Co., 300 U.S. 588, 594-95 (1937); McKenzie v. Irving Trust Co., 323 U.S. 365 (1945).

Further, although the Assignment of Claims Act works exclusively for the Government's protection, it is well-established that the Government may waive those protections or otherwise recognize an assignment. See Vermont Yankee Nuclear Power Corp. v. United States, 73 Fed. Cl. 236, 241 (2006) ("an assignment of claims is permissible where the assignment occurs by operation of law, or where the government chooses to 'recognize' the assignment of a claim"); Riviera Fin. of Texas, Inc. v. United States, 58 Fed. Cl. 528, 530 (2003) ("It is well established in the case law of this circuit that the Government can waive coverage of the Anti-Assignment Acts, as the Government concedes in this case"); Maffia v. United States, 143 Ct. Cl. 198, 163 F. Supp. 859, 862 (1958) ("the Government, if it chooses to do so, may recognize an assignment") (cited in Riviera Fin,, 58 Fed. Cl. at 530). Plaintiffs' implicit contention that the Government may recognize the assignment of contract claims, but not takings claims, is unsupported by the law.

Indeed, it is for this reason that courts have held that, even where an assignment does not comply with the Assignment of Claims Act, that assignment may still be enforceable between parties to the assignment. See Danning v. Mintz, 367 F.2d 304, 306 (9th Cir. 1966) (rejecting claim that assignment was null and void as between assignor and assignee because Assignment of Claims Act does not apply vis-a-vis private parties); United Pacific Ins. Co. v. United States, 175 Ct. Cl. 118, 358 F.2d 966, 969 (1966) ("There is no need to discuss whether the assignment in question complies with all the provisions of the Assignment of Claims Act, for whether or not

the transaction is valid as against the United States, it is in any event effective and binding on the parties").

Further, "[a]s against the assignee, an assignor is not permitted to raise the question of nonassignability." 6 Am. Jur. 2d Assignments § 155, at 245 (1999); see In re Kaufman, 37 P.3d 845, 855 (Okla. 2001) ("[t]he rule that an assignor cannot as against his assignee allege nonassignability is well settled"); see also Sullivan v. United States, 46 Fed. Cl. 480, 488 (2000) ("doctrine of equitable estoppel is a remedy by which a party may be precluded, by a party's own act or omission, from asserting a right to which it otherwise would have been entitled"). Consequently, plaintiffs have no basis for contending that their voluntary assignment of all of their claims to PSEG is somehow invalid under the Assignment of Claims Act.

### 2. Plaintiffs May Not Allege A Takings Claim Under These Circumstances

Regardless of plaintiffs' inability to challenge its assignment of all of its claims to PSEG, the underlying nature of plaintiffs' alleged "taking" – that is, that it received diminished value for the sale of its minority ownership interests as a result of DOE's delay in SNF acceptance – simply reflects the fact that plaintiffs' claim is one arising under the Standard Contract rather than the Constitution.

In the Court's July 1, 2005 unpublished decision denying the Government's motion for summary judgment, the Court adopted the rationale utilized in Boston Edison Co. v. United States, 64 Fed. Cl. 167 (2005). In Boston Edison, the Court held that "Boston Edison may bring contract and takings claims concurrently, but, if both claims remain viable, recovery under the contract damages theory is appropriate." Boston Edison, 66 Fed. Cl. at 187-88 (citing Cienega Gardens v. United States, 331 F.3d 1319, 1334 (Fed. Cir. 2003), & Prudential Ins. Co. of Am. v.

United States, 801 F.2d 1295, 1300 n.13 (Fed. Cir. 1986)). The Court stated that "[b]oth claims are currently viable, but a more complete record is necessary to determine if either theory would allow recovery." Boston Edison, 66 Fed. Cl. at 188. With all due respect, this conclusion contradicts the Federal Circuit's decisions regarding takings claims and breach of contract and, further, is in conflict with a recent decision by this Court.[6]

In concluding that takings and contract claims may be brought simultaneously, the Court in Boston Edison relied primarily upon the Federal Circuit's decisions in Cienega Gardens and Prudential. However, neither of these decisions support the conclusion that takings claims may be brought as alternatives to contract claims. The Federal Circuit's decision in Cienega Gardens has no relevance to the resolution of Boston Edison's takings claim. Indeed, if anything, Cienega Gardens supports the proposition that, where the Government enters into a contract with a plaintiff and breaches that contract, plaintiff's remedies lay in breach of contract rather than the Takings Clause of the Fifth Amendment. Cienega Gardens involved the implementation of regulations that interfered with the plaintiffs' investment-backed expectations in contracts that it had with third parties. Because the Government was not a party to the contracts, no contract remedy existed and, thus, the court found a regulatory taking had occurred. Id. at 1325; see Allegra Villa v. United States, 60 Fed. Cl. 11, 19 (2004) (explaining rationale of taking in Cienega). Conversely, because the plaintiff in Allegre Villa had a contract with the

[6] Notably, the plaintiff in Boston Edison voluntarily dismissed, with prejudice, its takings claim prior to trial. Att. 5. Specifically, when the Government served a Rule 30(b)(6) notice of deposition upon Boston Edison regarding the nature of its claimed property interest, Boston Edison indicated that it would withdraw its takings claim rather than produce a witness for the deposition. Att. 6**.**

Government and was in privity of contract with the Government, this Court required it to pursue the breach of contract claim and dismissed its takings claims:

> Because their contracts were with private lenders, plaintiffs in Cienega Gardens and Chancellor Manor were not in privity with the Government; thus, no contract claim against the Government was available to address the subsequent prepayment limitations by the Government. The present action, in contrast, involves plaintiffs that entered into contracts directly with the Government, and such contracts provide a remedy for the later prepayment restrictions.

Allegre Villa, 60 Fed. Cl. at 19. Consequently, there was no issue concerning alternative claims in Cienega because the plaintiff in that case did not have a contract claim against the Government.

Further, the basis for the notion that breach of contract and takings claims may be brought in the alternative is based upon a misapplication of the Federal Circuit's decision in Prudential Insurance Co. of America v. United States, 801 F.2d 1295 (Fed. Cir. 1986). In Prudential, the issue before the Court was whether foreseeability of damages for breach of a lease agreement should be measured as of the date of contract execution or the date that the lease was breached. Id. at 1300. Concluding that foreseeability of damages for breach of a lease agreement should be measured as of the date of contract execution, the Court noted in dicta that, "[a]lthough this may place a more difficult burden on a lessor seeking consequential damages against the government as a holdover tenant, lessors may have an alternative avenue of relief under the Takings Clause of the Fifth Amendment." Id. at 1300 n.13. Indeed, the plaintiff in Prudential had not brought a takings claim based upon the Government's hold-over of the lease.

Any doubt as to the viability of the Federal Circuit's dicta in Prudential has been laid to rest in its more recent decision in Castle v. United States, 301 F.3d 1328 (Fed. Cir. 2002), a

decision that the Court did not address in its decision denying the Government's motion for summary judgment. In Castle, the Federal Circuit expressly rejected the notion that a takings claim may be brought as an alternative to a breach of contract claim, holding that, where a plaintiff retains its contractual remedies, it may not maintain a takings claim based upon a breach of a Government contract. Id. at 1341-42. In this case, where there is no allegation that the Government has taken plaintiffs' contract remedies, plaintiffs may not, as a matter of law, maintain a takings claim – whether as an alternative to its breach claim or otherwise.

Further, in a decision issued one month after the Court's decision in this case, the Court in Klamath Irrigation District v. United States, 67 Fed. Cl. 504 (2005), rejected the notion of "alternative" breach of contract and takings claims, explaining that it was inconsistent with the nature of rights created by a contract with the Government:

> To be sure, some cases suggest that, under this rule, a takings claim is resurrected if a breach of contract is not found, see Systems Fuels, Inc. v. United States, 65 Fed. Cl. 163, 172-73 (2005). But such suggestions reflect a misunderstanding of the rationale for this rule. At least as described in Winstar and Castle, the rule favoring contract remedies depends upon there being symmetry between the contract rights to be enforced and the contract damages that are potentially available. Once this symmetry is established, a finding on the merits that no breach occurred does not break that relationship, but merely reflects that the contract rights that were asserted either never existed or were not adversely affected by the government's actions. Under either scenario, those same contract rights cannot provide the predicate for a takings because the government cannot take what the claimant does not have.

Id. at 432 n.31 (citations omitted).

In this case, there can be no "alternative" takings claim as a matter of fact or law. As the Court explained in Klamath, to the extent that the Court determines that plaintiffs' contract

claims are not viable because they assigned them to PSEG, that does not lead to the conclusion that plaintiffs may assert a takings claim. Rather, that simply means that plaintiffs did not have the rights that they claimed or that such rights had not been adversely affect by the Government.[7]

Further, in denying the Government's motion for summary judgment in Boston Edison, the Court held that a genuine issue of material fact existed because "the origin of plaintiff's rights is in dispute." Boston Edison, 64 Fed. Cl. at 187. However, the nature of a plaintiff's property interest is a question of law rather than a question of fact, and the Federal Circuit has recently explained that a plaintiff does not possess a protected property interest in statutes for purposes of compensation under the Takings Clause of the Fifth Amendment.

One month after this Court's decision denying the Government's motion, the Federal Circuit issued its decision in Texas State Bank v. United States, 423 F.3d 1370 (Fed. Cir. 2005), and reaffirmed the proposition that the determination of the nature of a property interest is a question of law rather than a question of fact. Id. at 1379 (citing Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980); Cermak v. Babbitt, 234 F.3d 1356, 1361 (Fed. Cir. 2000); Coast Indian Cmty. v. United States, 213 Ct. Cl.129, 550 F.2d 639, 649 (1977)).

Indeed, such a rule makes perfect sense. Under the Court's current holding in this case, the Government would be forced to engage in timely and expensive discovery over the nature of

[7] Because the Government has not physically occupied plaintiffs' property or required plaintiffs to submit to physical occupation of their land, plaintiffs cannot assert a physical takings claim as a matter of law. Stearns Co. v. United States, 396 F.3d 1354, 1357 (2005). At most, plaintiffs' claim is that plaintiffs were forced to store plaintiffs' SNF longer than they otherwise would have because of the Government's delay in performance under the Standard Contract. To the extent that plaintiffs have a claim, it lies in contract rather than the Constitution.

plaintiffs' alleged property interest. Indeed, the Government would presumably have to ask plaintiffs' witnesses what the nature of plaintiffs' property interests are and whether plaintiffs have a protected property interest in the Nuclear Waste Policy Act ("NWPA"). We would fully expect that counsel for plaintiffs would object to such questions as calling for a legal conclusion. Consequently, in light of the Federal Circuit's decision in Texas State Bank, as well as its progeny, we respectfully request that the Court reconsider that aspect of its decision holding that the determination of a property interest is a matter of fact and, further, decide the nature of plaintiffs' property interest as a matter of law.

Further, in considering the nature of plaintiffs' property interest, the Court should also consider that the Federal Circuit recently has rejected the notion that statutes like the NWPA may form the basis of a protected property interest that is compensable under the Fifth Amendment. In Members of the Peanut Quota Holders Association, Inc. v. United States, 421 F.3d 1323 (Fed. Cir. 2005), the Federal Circuit held that the Government was not responsible for paying the holders of peanut quotas just compensation when the Government made the quotas less valuable. Id. at 1334. The Federal Circuit explained that the plaintiffs were not entitled to compensation

> because the property interest represented by the peanut quota is entirely the product of a government program unilaterally extending benefits to the quota holders, and nothing in the terms of the statute indicated that the benefits could not be altered or extinguished at the government's election.

Id. The Federal Circuit further explained that, although the quotas were a form of property, they were subject to alteration or elimination by changes in the Federal program and that such changes did not give rise to a takings claim. Id. As in Peanut Quota, plaintiffs may not assert a

protected property interest in the NWPA, as a matter of law, for purposes of compensation under the Fifth Amendment.[8]

In its order denying the Government's motion for summary judgment, the Court in Boston Edison concluded that a disputed genuine issue of material fact existed regarding whether Boston Edison voluntarily entered into the Standard Contract and the "reasonableness of the parties' expectations at issue under the legal framework for a regulatory takings claim." Boston Edison, 64 Fed. Cl. at 187. First, the reasonableness of the parties expectations is an element of the substantive regulatory takings analysis. However, before the Court can address this issue, it must first determine whether plaintiffs have plead a takings claim that is cognizable as a matter of law. If the Court concludes that plaintiffs may not base its takings claim upon a breach of the Standard Contract, as a matter of law, then the issue of the reasonableness of the parties' expectations becomes irrelevant.

Second, the Government is unclear as to the relevance of the voluntariness of entering into the Standard Contract. Regardless of whether plaintiffs voluntarily entered into the

---

[8] Peanut Quota is entirely consistent with other decisions from the Federal Circuit and other courts of appeals that have held that statutes may not confer upon a plaintiff a protected property interest compensable under the Fifth Amendment. See Adams v. United States, 391 F.3d 1212, 1220 (Fed. Cir. 2004) (holding that statutory right to be paid money could not constitute a protected property interest for purposes of the takings clause); Fern v. United States, 908 F.2d 955, 959 (Fed. Cir. 1990) ("[T]he law itself, as a rule of conduct, may be changed at the will or even the whim, of the legislature, unless prevented by constitutional limitations."); Branch v. United States, 69 F.3d 1571, 1577-78 (Fed. Cir. 1995) ("If every time a man relied on the existing law in arranging his affairs, he were made secure against any change in legal rules, the whole body of our law would be ossified forever") (quoting L. Fuller, The Morality of Law 60 (1964)); Pittman v. Chicago Bd. of Education, 64 F.3d 1098, 1104-05 (7th Cir. 1995) ("A statute is not a commitment by the legislature never to repeal the statute . . . Statutes would be ratchets, creating rights that could never be retracted or even modified without buying off the groups upon which the rights had been conferred.")

Standard Contract, plaintiffs had, at one point, a contractual right to the Government's removal of SNF, and the Government has not taken plaintiffs' contractual remedies. Even if the Court concluded that entering into the Standard Contract was not voluntary, that does not somehow convert plaintiffs' breach of contract claim into a viable takings claim. Consequently, to the extent that the Court concludes that plaintiffs' right to have its SNF accepted by the Government derives solely from the Standard Contract and that the Government did not take plaintiffs' contractual remedies, issues concerning the voluntariness of entering into the contract or the reasonableness of the parties' expectations should not preclude the Court from dismissing plaintiffs' takings claim.[9]

---

[9] In this Court's decision, it noted that "Plaintiffs articulate three distinct property interests which are cognizable for purposes of a takings claim: (1) the real property interests in the property used for storage of the SNF necessitated by the government's actions; (2) the property interests in the assets associated with the nuclear stations; and (3) the ability to enjoy the use and benefit of the nuclear stations." Op. at 5. In Pacific Gas & Electric Co. v. United States, 70 Fed. Cl. 766 (2006), this Court recently rejected a takings claim raised by another SNF plaintiff alleging substantially similar property interests. Id. at 778-80. Specifically, the Court in PG&E, referring to its prior decision in Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 656 (2003), explained as follows:

> Plaintiff alone was responsible for the storage and disposal of its SNF and HLW prior to the Standard Contract. Therefore, absent the contract, plaintiff would have been obligated to conduct the same or similar storage activities that it now asserts create a takings claim . . . [P]laintiff's claim for a taking is dependent upon the existence of the Standard Contract and therefore plaintiff's rights are enforceable through a contract remedy.

Id. at 778.

The Court further rejected PG&E's claim that a taking had occurred because it had to continue storing SNF on its site and explained, "[t]he court finds that plaintiff's unilateral decision to build an ISFSI to continue to store this SNF cannot amount to the accrual of a taking of plaintiff's property by the government any more than can its storage activities to date. Indeed, the costs associated with the construction of such a facility, if they are found to be reasonably

## II. PLAINTIFFS' CASE SHOULD BE STAYED PENDING THE FINAL RESOLUTION OF THEIR CLAIMS REGARDING SALEM AND HOPE CREEK

In the status report filed on June 29, 2007, plaintiffs request an additional stay of the claims relating to the Hope Creek and Salem facilities for "a limited period" while they explore their options regarding the arbitration decision. Status Report, at 1-2. However, plaintiffs also request that the Court lift the stay as it relates to plaintiffs' minority ownership interest in the Peach Bottom facility because the arbitration decision did not relate to that facility. Id. at 2.

Although we do not oppose an additional reasonable stay in these cases, any such stay should apply to all three nuclear generating facilities. In the Court's April 12, 2007 order, the Court granted, in part, the Government's motion to consolidate plaintiffs' case with the plaintiff in PSEG Nuclear L.L.C. v. United States, No. 01-551C (Fed. Cl.) (Futey, J.). To the extent that plaintiffs are ultimately successful in their challenge to the arbitration, allowing plaintiffs to pursue its claims related to Peach Bottom now, and then subsequently to litigate claims related to Hope Creek and Salem, would effectively renders moot this Court's order granting, in part, the Government's motion for consolidation. Further, plaintiffs sold their minority interest in Peach Bottom to both PSEG and PECO Energy Company ("PECO").[10] Consequently, under plaintiffs' proposal, discovery would be needed to be conducted twice for PSEG employees – once related

---

foreseeable by the government, caused by the government's breach, and proved to a reasonable certainty, may be fully vindicated through a breach of contract remedy." Id. at 779 (citation omitted). The Court's reasoning in PG&E should apply with equal force in this case.

[10] Pursuant to plaintiffs' amended complaints, ACE sold its 3.755 percent interest in Peach Bottom to PSEG, and another 3.755 percent interest to PECO. ACE Amended Compl. ¶ 2. Delmarva sold identical interests related to Peach Bottom to both PSEG and PECO. Delmarva Amended Compl. ¶ 2.

to Peach Bottom and a second time, if plaintiffs are successful in challenging the arbitration decision, related to Hope Creek and Salem. Plaintiffs' proposal is both inefficient and will waste significant resources. Further, we understand that the acquisition of Peach Bottom, Hope Creek, and Salem was part of a single transaction, and plaintiffs' suggestion that discovery in this case be somehow bifurcated between the different nuclear generation stations makes little sense. Accordingly, we respectfully request that, to the extent that the Court continues the stay in this case, the Court continue the stay in this case related to all three nuclear generation stations until such time as plaintiffs decide whether to challenge the arbitration decision related to its assignment of all claims to PSEG.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny plaintiffs' motion to vacate the arbitration ruling.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Joshua E. Gardner
JOSHUA E. GARDNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7583
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

PATRICK B. BRYAN
SCOTT R. DAMELIN
STEPHEN FINN
Trial Attorneys

July 19, 2007

CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of July 2007, a copy of foregoing "DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO VACATE ARBITRATION RULING" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Joshua E. Gardner