# EXHIBIT

# 2

# EXHIBIT

# A

(ACE-SALEM)

# PURCHASE AGREEMENT

BY AND BETWEEN

ATLANTIC CITY ELECTRIC COMPANY

and

PSEG POWER LLC

Dated as of September 27, 1999

Indemnitee recovers full payment of its Indemnifiable Loss, any and all claims of the Indemnifying Party against any such third party on account of said indemnity payment is hereby made expressly subordinated and subjected in right of payment to the Indemnitee's rights against such third party. Without limiting the generality or effect of any other provision hereof, each such Indemnitee and Indemnifying Party shall duly execute upon request all instruments reasonably necessary to evidence and perfect the above-described subrogation and subordination rights, and otherwise cooperate in the prosecution of such claims at the direction of the Indemnifying Party. Nothing in this Section 8.2(e) shall be construed to require any Party hereto to obtain or maintain any insurance coverage.

(f) A failure to give timely notice as provided in this Section 8.2 shall not affect the rights or obligations of any Party hereunder except to the extent that, as a result of such failure, the Party which was entitled to receive such notice was actually prejudiced as a result of such failure.

8.3 Arbitration.

(a) Notwithstanding any provision hereof to the contrary, in the event of any dispute between Seller and Buyer arising after the Closing (whether relating to facts, events or circumstances occurring or existing prior to, on or after the Closing Date) and relating to or arising out of any provision of this Agreement (other than disputes arising under Section 2.3, 2.4, 3.2, 3.3, 3.4, 6.5, 8.1(a)(iii) or 8.1(b)(iii)), the sole remedy available to either Party is the dispute resolution procedure set forth in this Section 8.3; provided, however, that either Party may seek a preliminary injunction or other provisional judicial remedy if such action is necessary to prevent irreparable harm or preserve the status quo, in which case both Parties shall nonetheless continue to pursue resolution of the dispute by means of this procedure. The Party asserting such dispute shall give written notice to the other of the fact that a dispute has arisen pursuant hereto. Such notice shall include (i) a statement setting forth in reasonable detail the facts, events, circumstances, evidence and arguments underlying such dispute and (ii) proposed arrangements for a meeting to attempt to resolve the dispute to be held within sixty (60) days after such notice is given. Within thirty (30) days after such notice is given, the other Party hereto shall submit to the Party giving such notice a written summary responding to such statement of facts, events, circumstances, evidence and arguments contained in the notice and an acceptance of or proposed alternative to the meeting arrangements set forth in the initial notice.

(b) The chief executive officers (or any other executive officer or officers directly reporting to, and duly designated by, such chief executive officers) of each of the Parties shall meet at a mutually acceptable time and place to attempt to settle any dispute in good faith: provided, however, that such meeting shall be held at the principal offices of the Party receiving the notice of dispute unless otherwise agreed: and provided further, that any such meeting shall be held no later than sixty (60) days after the written notice of dispute is given pursuant to Section 8.3(a) hereof. Each Party shall bear its own costs and expenses with respect to preparation for, attendance at and participation in such meeting.

(c) In the event that (i) a meeting has been held in accordance with Section 8.3(b) and (ii) any such dispute of the kind referred to in Section 8.3(a) shall have not been resolved at such meeting, then, upon the written request of any Party, the Parties shall submit such dispute to binding arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association (the "Commercial Arbitration Rules"). In the event that such dispute is submitted to arbitration pursuant to the Commercial Arbitration Rules, then the arbitration tribunal shall be composed of three arbitrators (one such arbitrator to be selected by each Party within thirty (30) days after the meeting held in accordance with Section 8.3(b) with the third such arbitrator, who shall be a former U.S. District Court or U.S. Circuit Court of Appeals judge and shall serve as chairperson of such tribunal, selected by the other two arbitrators or, in the absence of agreement between such arbitrators, by the American Arbitration Association). The venue of the arbitration shall be Wilmington, Delaware; the language of the arbitration shall be English and the arbitration shall commence no later than sixty (60) days after the meeting held in accordance with Section 8.3(b). The decision, judgment and order of the arbitration tribunal shall be final, binding and conclusive as to the Parties involved in such dispute, and their respective Representatives, and may be entered in court of competent jurisdiction. Other than the fees and expenses of the arbitrators, which shall be shared equally by the Parties, each Party shall bear its own costs and expenses (including attorneys' fees and expenses) relating to the arbitration.

# EXHIBIT

# B

Frank Cassidy
President and COO

PSEG Power LLC
80 Park Plaza, 4th Floor, Newark, NJ 07102-4194
tel: 973-430-5687 fax: 973-242-5162

PSEG Power LLC

January 31, 2007

VIA FEDERAL EXPRESS

Thomas S. Shaw
Executive Vice President and
Chief Operating Officer
Pepco Holdings, Inc.
800 King Street
Post Office Box 231
Wilmington, Delaware 19899

Re **PSEG's purchase of assets from Delmarva Power & Light Company and Atlantic City Electric Company relating to the Salem and Hope Creek nuclear plants, and the actions brought by DP&L and ACE in the U.S. Court of Federal Claims.**

Dear Tom:

As you are aware from our earlier correspondence, PSEG objects to litigation brought by Delmarva Power and Light Company ("DP&L") and Atlantic City Electric Company ("ACE") in the United Stated Court of Federal Claims ("COFC") entitled *Delmarva Power & Light Co., v. United States*, Nos. 04-34C & 04-36C (*"Delmarva"*). That litigation asserts claims that are grounded on the U.S. Department of Energy's ("DOE's") breach of the Standard Contract for removal of Spent Nuclear Fuel ("SNF"). We previously advised you that these actions violated the Purchase Agreements ("PAs") between PSEG and DP&L and ACE. We asked that you dismiss the *Delmarva* case, but you have declined to do so.

**Notice of Dispute**

This is PSEG's written notice that a dispute exists relating to and arising out of the PAs between PSEG and DP&L and ACE.[1] PSEG is now formally invoking the dispute resolution procedures of Section 8.3 of the PAs. *See* Section 8.3(a). The disputes procedures provide for binding arbitration of this dispute, in the event we are unable to resolve it through the meeting of executives specified in Section 8.3(b) and proposed below. We intend to invoke binding arbitration if that meeting is unsuccessful.

**PSEG's Statement of Facts and Position**

---

[1] The PAs addressed by this notice are (1) the Purchase Agreement by and between Delmarva Power and Light Company (Seller) and PSEG Power LLC (Buyer), dated as of September 27, 1999 for DP&L's 7.41% interest in the Salem Station, (2) the Purchase Agreement by and between Atlantic City Electric Company (Seller) and PSEG Power LLC (Buyer), dated as of September 27, 1999 for ACE's 7.41% interest in the Salem Station, (3) the Purchase Agreement by and between Atlantic City Electric Company (Seller) and PSEG Power LLC (Buyer), dated as of September 27, 1999 for ACE's 5.00% interest in the Hope Creek Station.

Under the PAs between PSEG and both DP&L and ACE, PSEG acquired, as one of the "Purchased Assets" listed in Article II, Section 2.1 of the PAs, all claims of DP&L and ACE relating in any way to DOE's defaults under the Standard Contract and all other claims against DOE, except for one immaterial exception.[2] Section 2.1(l) of each PA states that DP&L and ACE transferred:

> All claims of Seller relating to or pertaining to the Department of Energy's defaults under the Department of Energy Standard Contract (including all claims for failure by the Department of Energy to take Spent Nuclear Fuel) accrued prior to, on or after the Closing Date, whether relating to periods prior to, on or after the Closing Date, and all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased Assets, other than the claims described in Section 2.2(l);

PAs Section 2.1(l). Additionally, PSEG acquired all claims and causes of action against any third parties relating to the Purchased Assets other than those constituting "Excluded Assets" or "Excluded Liabilities." Under Section 2.1(m) of the PAs, DP&L and ACE transferred to PSEG:

> The rights of Seller in, to and under all causes of action against third parties with respect to, arising out of or in connection with Seller's rights, title and interests in and to the Purchased Assets or the Assumed Liabilities, or any portion thereof, whether accruing prior to, on or after the Closing Date, other than any such causes of action as constitute Excluded Assets or Excluded Liabilities, whether received as payment or credit against future liabilities, in each case, relating to any period prior to, on or after the Closing Date, other than the claims described in Section 2.2(m).

PAs Section 2.1(m). Neither Section 2.2 (Excluded Assets) nor 2.4 (Excluded Liabilities) authorizes the *Delmarva* litigation. In the broadest possible language, DP&L and ACE expressly and unambiguously transferred to PSEG upon the PAs' Closing Dates in 2000 and 2001 all rights relating to claims arising out of, or connected in any way to, DOE's failure to timely remove SNF. After the Closing Dates, PSEG was "entitled exclusively to control, defend and settle any suit, action or proceeding, and any investigation arising out of or related to any Purchased Assets or Assumed Liabilities . . ." PAs Section 2.5(b). Additionally, Section 2.6 of the PAs provided that, effective with the Closing Dates, PSEG "shall have all rights of recovery from third parties and the Department of Energy relating to, arising from or in connection with the Department of Energy's failure to take Spent Nuclear Fuel." Notwithstanding these provisions, DP&L and ACE commenced the *Delmarva* litigation in 2004 based wholly on claims that they were injured by DOE's breach of the Standard Contract when DOE failed to timely commence removal of SNF as required.

---

[2] The immaterial exception deals with "Department of Energy Decommissioning or Decontamination Fees." Section 2.2(l) of the PAs excepted as an "Excluded Asset" all claims of DP&L or ACE relating or pertaining to any refund or credit of Department of Energy Decommissioning or Decontamination Fees (defined in Section 1.1 (44) as fees related to DOE's special assessment of utilities, in order to decontaminate and decommission DOE's gaseous diffusion enrichment facilities). The DOE Decommissioning and Decontamination Fees have no relation to SNF claims.

As we previously advised you, PSEG contends that DP&L's and ACE's actions plainly violate the terms of the PAs and the initiation of the *Delmarva* litigation is a material breach of those PAs. We previously requested your dismissal of the litigation, which you have declined to do. Since the *Delmarva* litigation is now interfering with PSEG's rights under the PAs, we insist on your compliance with the terms of the PAs. If we are unable to resolve this issue by agreement in the meeting we propose below, we have determined to invoke the binding arbitration procedures of Section 8.3 to establish our respective rights.

Our claim is presently a nonmonetary one for interpretation of the PAs. If our interpretation is upheld, however, this is also notice that future monetary claims may be asserted under provisions of the PAs providing for indemnification and recovery of damages for breach of warranty, nondisclosures, and failure to cooperate. (*E.g.*, Sections 8.1 and 2.5, Article VI.)

**PSEG's Proposed Arrangements for the Meeting of Executives**

In accordance with Section 8.3(a) of the PAs, PSEG proposes the following arrangements for a meeting to attempt to resolve the dispute described in this notice. PSEG proposes to meet approximately 44 days after the date of this letter (approximately two weeks after receiving your response to our notice above). PSEG proposes, pursuant to Section 8.3(b) of the PAs, that the meeting be held between the chief operating officers of PSEG Power and Pepco Holdings, Inc., at 10 am on March 16, 2007, at the principal offices of Pepco Holdings, Inc., 800 King Street in Wilmington, Delaware, unless otherwise agreed, but in no event later than 60 days following this notice.

Unless the parties resolve the dispute at the meeting proposed above, PSEG intends to have this dispute submitted to binding arbitration, with arbitrators to be selected within 30 days after the meeting described above, and with the arbitration to commence within 60 days after the meeting, as set forth in Section 8.3(c) of the PAs.

We look forward to your written response to our notice within 30 days, along with your acceptance of, or proposed alternative to, the meeting arrangements set forth above.

Sincerely,

# EXHIBIT

# C

FEB-26-2007 08:42 PSEG

Pepco Holdings, Inc

701 Ninth Street NW
Washington, DC 20068

Thomas S. Shaw
Executive Vice President
Chief Operating Officer

202 872-2157
302 429-3221

RECEIVED
OFFICE OF THE
PRESIDENT AND COO
FEB 26
PSEG POWER LLC

February 22, 2007

Mr. Frank Cassidy
President and COO
PSEG Power LLC
80 Park Place – 4th Floor
Newark, NJ 07102-4194

Dear Frank:

Once again I must express my disappointment at PSEG Power's ("PSEG") attempts to forestall my Company's efforts to protect customers of Atlantic City Electric Company ("Atlantic") from the economic harm caused them by the U.S. Department of Energy's failure to abide by its legislative mandate with regard to establishing a permanent repository for Spent Nuclear Fuel ("SNF"). Since the enactment of the Nuclear Waste Policy Act in 1982, our customers have paid many millions of dollars in SNF fees, and I suspect your New Jersey utility's customers have paid considerably more. As I noted in my October 14, 2005 correspondence to you on this subject, it is our belief and position that our respective SNF litigation claims do not overlap, and are indeed mutually exclusive of one another. In that regard, we had hoped that PSEG would cooperatively support and assist our efforts on behalf of our customers.

Unfortunately, and as stated in my October 14, 2005 letter to you, that has not been the case. Rather, PSEG, as well as its affiliate Public Service Electric and Gas Company ("PSE&G"), have availed themselves of every opportunity to impede the litigation that we have brought for the benefit of our customers, including causing us to incur substantially higher litigation costs through your unwillingness to provide essential documentation in your possession which is required for the prosecution of our claims. For example, as recently as three weeks ago, we requested from the decommissioning study vendor for Salem and Hope Creek, TLG Services ("TLG"), copies of certain workpapers that were prepared by TLG while we were still an owner of Salem and Hope Creek, and for which we paid our proportionate share of the costs to prepare. We were advised that the requested material would not be provided without the consent of PSEG, which consent has been requested but has not been provided. We will now have to incur further substantial, and unnecessary, expense to subpoena those documents.

This recent example of PSEG's unwillingness to provide essential documents in its possession follows a past pattern of such conduct by PSEG. In August, 2005, after Judge C. Miller scheduled Atlantic's case for trial in May, 2006 and after she commented that many essential documents were likely in the possession of PSEG (and PECO), our counsel met with your counsel to seek your cooperation with respect to document production. PSEG refused to provide Atlantic access to key documents at that time, forcing us to issue a subpoena to PSEG in October 2005. As noted above, we continue to have to resort to the use of subpoenas, at significant cost and time delay to Atlantic and its customers, in order to gain access to documents to which Atlantic has always been entitled. I would further note that at no time during our efforts to obtain such documents did your counsel express any objection to our pursuing our claim.

Your continued efforts to impede the progress of our SNF litigation ultimately resulted in our having to advise Judge Miller in September, 2005 of our inability to gain access to essential documents in PSEG's possession. This conduct resulted in our inability to timely develop our Expert Reports and required us to seek a suspension of our procedural schedule, including the deferral of our trial date to a now unspecified date that will likely be well into the future. The costs of that delay will be significant and would not have been necessary but for PSEG's efforts to impede our case from moving forward.

Most recently, the Government filed a Motion to Consolidate our respective cases. Rather than support our objection to that Motion, PSEG's counsel filed, under seal, a Motion to Stay the proceedings. That filing will likely further impede and delay the prosecution of our case. As noted above, PSEG's conduct to date has caused Atlantic, and, therefore, its customers, to incur substantial and unnecessary legal fees and expenses, which we are obligated to explain and justify to the NJBPU.

I will not repeat here the legal and constitutional bases upon which our claims are founded. My October 14, 2005 letter to you more than adequately sets that forth in detail, and is incorporated herein by reference. Further, as noted in my October 14 correspondence, after PSEG's SNF case was dismissed by the Court, we amended our complaints to assert a protective breach of contract claim. At the time that we amended our claim to assert breach of contract, we informed both your counsel and the Court that upon reinstatement of your breach claim, after appeal, we would seek a voluntary dismissal of our protective breach of contract filing. Due to the recent reinstatement of PSEG's claim, I have instructed our attorney to advise the Court that we are withdrawing our breach of contract claim. For the reasons set forth in my October 14, 2005 letter, however, we will continue to actively and aggressively pursue all our legal and constitutional rights against the United States as set forth in our original 2004 Complaint filed with the United States Court of Federal Claims ("COFC").

I believe it is important to make one additional comment in response to your January 31, 2007 letter, which relates to the timing of your current and prior correspondence to me. The following is a brief chronology of relevant events in this regard. In December, 2003 representatives on our behalf met with your counsel, Tony Borden, as well as representatives from PSE&G, to advise you of

our intention to file our complaint and the constitutional basis upon which it was being filed, i.e. a Fifth Amendment "taking" by the United States. We expressly stated that we did not intend to assert a breach of contract claim against the government because we believed that any breach claim had been transferred to PSEG as part of the asset sale. We further informed you that we did not believe our respective claims were in conflict with one another. No one from PSEG or PSE&G voiced any objection to our filing a Fifth Amendment Takings complaint. One month later, in January, 2004, we filed our complaint with the COFC alleging a Fifth Amendment "taking" of our property by the United States.

It was not until nearly two years later, and after we had expended considerable funds in preparing and prosecuting our claim, that PSEG first wrote to express its views with respect to what was and was not transferred as part of the sale of our nuclear assets to you (and Philadelphia Electric Company). Over the course of the next 30 days we exchanged letters in that regard, including the aforementioned October 14 letter from me to you, after which we heard nothing further from you for the next 15 months. During that 15 month period we continued to expend significant funds for the litigation of our SNF claim, a large portion of which were incurred seeking discovery of documents from you which, over your objection, Judge Christine Miller of the COFC concluded you were obligated to provide. While I am not an attorney, I am advised that there are certain legal principles under these circumstances that preclude you from asserting the alleged contractual rights against us that you claim to possess.

Our commitment to protect and pursue the rights of our customers, and to seek redress from the United States for its taking of the value of those rights is as firm today as it was when we first advised you over three years ago of our intentions in this regard. We have every intention of continuing to seek the lost economic value experienced by our customers as a result of the government's SNF failures. As we have repeatedly explained to PSEG, we do not believe that our efforts in this regard will in any way be harmful to PSEG. We continue to hope that you will reach that conclusion as well, so that we can begin to work in a cooperative manner with regard to our respective SNF litigation claims.

In your January 31, 2007 letter you request a meeting with me, pursuant to Section 8.3(a) of the Purchase Agreements between us to attempt to resolve our differences. You further suggest that such meeting take place at our King Street offices in Wilmington, DE beginning at 10am on March 16, 2007. I am available for such a meeting at the time and location you have proposed. Please be advised that in addition to myself, I expect to have both internal and outside counsel present at the meeting. Unless I hear to the contrary, I look forward to seeing you on March 16th.

Very truly yours,

Thomas S. Shaw

# EXHIBIT

# D

Pepco Holdings, Inc

701 Ninth Street NW
Washington, DC 20068

202 872-2157
302 429-3221

Thomas S. Shaw
Executive Vice President
Chief Operating Officer

March 15, 2007

**Via Facsimile: 973-242-5162 and U.S. Mail**

Mr. Frank Cassidy
President and COO
PSEG Power LLC
80 Park Place – 4th Floor
Newark, NJ 07102-4194

**Re: PSEG's Purchase of Assets From Delmarva Power & Light Company and Atlantic City Electric Company Relating to Salem and Hope Creek Nuclear Plants – NOTICE OF DISPUTE**

Dear Frank:

This NOTICE OF DISPUTE is given pursuant to Section 8.3(a) of the Purchase Agreements which are listed in footnote 1 of your letter to me dated January 31, 2007 and Section 9.3(a) of the Purchase Agreement By and Among Atlantic City Electric Company, PECO Energy and PSEG Power LLC, dated as of September 27, 1999.[1] The dispute noticed hereby is whether the Notice of Dispute given by PSEG in your letter of January 31, 2007 (to which I responded on February 22, 2007) is valid, or whether PSEG (i) has forfeited or is otherwise precluded from asserting a right to invoke arbitration or (ii) is precluded from such arbitration by the adverse determinations of the Court in *Delmarva Power & Light Co. v. The United States*, No. 04-34C and *Atlantic City Electric Co. v. The United States*, No. 04-36C (USCOFC) relating to the issues raised by your Notice of Dispute.

The facts and the positions of Delmarva Power & Light ("Delmarva") and Atlantic City Electric Company ("ACE") are as follows:

Delmarva and ACE advised PSEG in December 2003 that actions against the United States relating to disposal of spent nuclear fuel would be commenced in January 2004. The legal basis for those actions was given to PSEG representatives.[2] No objections were heard from PSEG and

---

[1] We assume that the omission of reference to the latter Purchase Agreement was unintentional on your part.

[2] PSEG's recognition of the basis for the Delmarva and ACE actions was expressly stated in a, April 20, 2005 letter from PSEG counsel to counsel for ACE and Delmarva, in which PSEG counsel stated, among other things: "PSEG Nuclear understands that Delmarva is pursuing various legal theories, such as diminution in value, which PSEG Nuclear simply has no interest or desire to prosecute or defend."

Mr. Frank Cassidy
President and COO
March 15, 2007
Page 2

the actions were duly filed in January 2004. The cases have been actively litigated against the Government from commencement. On July 1, 2005, the Court denied the Government's motions for summary judgment, expressly considering and rejecting the Government's claim that Delmarva and ACE lacked standing to bring the actions because of a prior assignment to PSEG. On October 6, 2005, you sent a letter to me demanding that the actions (which had just been sustained by the Court) be withdrawn. I responded to your demand on October 14, 2005 and you responded further on November 4, 2005, purporting to reserve your rights (but not requesting arbitration). The litigation against DOE continued without interruption, complicated in part by PSEG's refusal to cooperate in the production of essential documents. As noted below, PSEG's resistance has been the subject of action by the Court. Fifteen months after your November 2005 letter, on January 31, 2007, you provided your Notice of Dispute, proposing to arbitrate issues which already been resolved by the Court more than one year earlier. It is our position that, by waiting more than three years to give notice of a dispute in the face of your clear knowledge of the pending litigation and in light of the clear prejudice to Delmarva and ACE (in terms, for example, of the cost of litigation and the burden of litigating in multiple forums), PSEG is guilty of *laches* and has forfeited or is otherwise precluded from asserting its right to arbitration.

Further, by refusing to abide by its obligation to cooperate with Delmarva and ACE, PSEG forced Delmarva and ACE to seek the Court's assistance to compel production of critical documents. PSEG resisted such production before the Court in part on grounds encompassed within your Notice of Dispute. The Court ruled against PSEG on January 27, 2006.[3] PSEG is bound by that ruling and is precluded from reasserting the same claims in a second forum.

In accordance with Sections 8.3(b) and 9.3(b) of the Purchase Agreements, we are requesting a meeting of executives to address this NOTICE OF DISPUTE. Since we have already agreed to such a meeting on March 16, 2007 in connection with your Notice of Dispute, we propose that that meeting also serve as the meeting for discussion of this NOTICE OF DISPUTE. Please advise me at your earliest convenience that you agree to include the issues raised herein in the March 16, 2007 meeting of executives.

This NOTICE OF DISPUTE is without prejudice to Delmarva's and ACE's rights to pursue other rights and remedies which they may have at law or in equity, including the pursuit of rights and remedies in a judicial forum.

Very truly yours,

Thomas S. Shaw

[3] The Court's January 27, 2006 ruling is consistent with its July 1, 2005 ruling denying the Government's motion for summary judgment.



DSMDB-2227100v01

TOTAL P.02

# EXHIBIT

# E

**IN THE MATTER OF THE ARBITRATION OF:**

| | |
|---|---|
| **ATLANTIC CITY ELECTRIC CO. and DELMARVA POWER AND LIGHT CO.,** | ) |
| **Claimants,** | ) |
| **v.** | ) |
| **PSEG POWER LLC and PSEG NUCLEAR LLC,** | ) |
| **Respondents.** | ) |

**ARBITRATION DEMAND OF**
**ATLANTIC CITY ELECTRIC CO. and**
**DELMARVA POWER AND LIGHT CO.**

By an Arbitration Demand dated April 5, 2007, Respondents PSEG Power LLC and PSEG Nuclear LLC (collectively "PSEG") initiated an arbitration against Pepco Holdings, Inc., Atlantic City Electric Co. ("ACE") and Delmarva Power and Light Co. ("Delmarva") under certain Purchase Agreements ("PAs") by which ACE and Delmarva ("Claimants") sold certain nuclear power plant assets to Respondents.[1] Respondents' Demand seeks a declaration that Claimants are not entitled to pursue lawsuits they initiated against the Department of Energy

[1] The PAs at issue are: (1) the Purchase Agreement between Delmarva and PSEG Power LLC dated September 27, 1999 for Delmarva's 7.41% interest in the Salem Station; (2) the Purchase Agreement between ACE and PSEG Power LLC dated September 27, 1999 for ACE's 7.41% interest in the Salem Station; and (3) the Purchase Agreement between ACE and PSEG Power LLC dated September 27, 1999 for ACE's 5.0% interest in the Hope Creek Station. It should be noted that Pepco Holdings, Inc. is not a party to the PAs or to the litigation described in this Demand.

("DOE") in the United States Court of Federal Claims ("USCOFC") in January 2004.[2] Claimants hereby seek arbitration of their claim that Respondents are precluded from asserting a right to arbitrate this matter. Simply stated, by delaying the initiation of this arbitration by more than three years, and participating in litigation in which the very issues PSEG seeks to arbitrate are pending, PSEG has forfeited its right to arbitrate its objections to Claimants' lawsuits.

## I. The Dispute

ACE and Delmarva advised PSEG in December 2003 that they intended to initiate actions against DOE, alleging that DOE's failure to remove spent nuclear fuel ("SNF") from the Salem and Hope Creek Stations constituted an unconstitutional "taking" under the Fifth Amendment. Those actions were initiated on January 13, 2004. PSEG raised no objection prior to, or in the months following, the institution of the litigation.[3] In fact, it was not until almost two years later, on October 6, 2005, that PSEG first alleged that those "takings" claims had been transferred by ACE and Delmarva to PSEG by, and pursuit of them was a contractual breach of, the PAs.[4] In response, ACE and Delmarva informed PSEG that their claims did not violate the PAs and that they would continue to vigorously pursue them. It was not for another 15 months that PSEG gave notice that it intended to challenge ACE and Delmarva's right to pursue their

[2] *Delmarva Power & Light Co. v. The United States*, USCOFC No. 04-34C and *Atlantic City Electric Co. v. The United States*, USCOFC No. 04-36C. These lawsuits, both filed on January 13, 2004, were consolidated by a January 21, 2005 Order.

[3] To the contrary, PSEG Counsel, in an April 20, 2005 letter to counsel for ACE and Delmarva, stated among other things, that "PSEG Nuclear understands that Delmarva is pursuing various legal theories, such as diminution in value, which PSEG Nuclear simply has no interest or desire to prosecute or defend."

[4] PSEG took this position only after the Government's motions for summary judgment, which were based in part on the Government's contention that ACE and Delmarva lacked standing because their claims had been assigned to PSEG under the PAs, were denied by the Court. Memorandum Opinion and Order, USCOFC Nos. 04-34C and 04-36C, July 1, 2005.

claims against DOE under the arbitration provisions of the PAs. In short, PSEG – despite its clear knowledge of, and even participation in,[5] the USCOFC litigation -- "sat" on its objections to ACE's and Delmarva's lawsuits for 37 months.

In the meantime, PSEG has also been pursuing its own claims against DOE,[6] and is now attempting to settle that litigation. It appears that DOE has suggested that PSEG must, as a condition of settlement, relieve DOE of having to litigate the ACE and Delmarva claims against DOE. See PSEG's Demand at pp. 2 and 3 ( the litigation is "interfering with PSEG's ability to resolve its claims against DOE" and "the government has refused to settle PSEG's suit without a concurrent settlement of Respondents' claims."). While discovery will shed additional light on this matter, it thus appears clear that the sudden attempt to initiate this arbitration after a 37-month delay is a function not of Respondents' view that they are entitled to arbitrate, but rather their response to inappropriate pressure from the government to make Claimants' case against DOE "go away."

In fact, shortly after PSEG's notice initiating this arbitration, the government moved to stay the USCOFC litigation. ACE and Delmarva opposed the stay on the grounds that, *inter alia*, PSEG's delay in initiating the arbitration would likely result in a finding that it had forfeited its right to arbitration under the PAs. The Court observed that PSEG's delay "should be a relevant factor in the arbitration proceeding . . .particularly in light of the extended time period between PSEG's initial objections and the initiation of arbitration proceedings," and cautioned

[5] *See* page 5 below.

[6] *PSEG Nuclear, L.L.C. v. United States*, USCOFC No. 01-551C (Fed. Cl. filed Jan. 26, 2001).

that the Court would address the issue should the arbitrators fail to do so.[7] While the Court found that PSEG's delay did not "necessarily require[] a denial of defendant's request to stay proceedings,"[8] and ultimately granted "[a] one-time stay," it did so "without prejudice to

---

[7] The Court stated:

> Should the arbitrators fail to consider delay in the arbitration proceeding, the court cautions parties that it will address the issue of PSEG's delay in consideration of plaintiffs' claims, particularly in light of PSEG's active participation in prosecution of PSEG and PSEG's awareness of the proceedings in this case. "Courts may refuse to enforce arbitration agreements on a number of grounds, and federal courts have consistently held that among those grounds is a waiver of the right to arbitrate." St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co., 969 F.2d 585, 587 (7th Cir. 1992) (affirming district court's finding of implied waiver of right to arbitrate, in part, due to ten-month delay in commencing arbitration); see also Int'l Union v. Cummins, Inc., 434 F.3d 478, 486 (6th Cir. 2006) ("Laches is an equitable defense to an arbitration that is properly considered by the court rather than by the arbitrator. The laches inquiry consists of two elements: (1) whether there was unwarranted delay, and (2) whether the delay was detrimental to the party raising the defense." (internal citations omitted)); Gunn v. Veterans Admin. Med. Ctr., 892 F.2d 1036, 1040 n.4 (Fed. Cir. 1990) (noting that "the principles of laches and estoppel because of delay pertain to the initiation of a grievance or arbitration, not to delay or dilatoriness during the course of the proceedings"); Miller Brewing Co. v. Fort Worth Distrib. Co., 781 F.2d 494, 497 (5th Cir. 1986) ("Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party."); Cornell & Co. v. Barber & Ross Co., 360 F.2d 512, 513 (D.C. Cir. 1966) ("The right to arbitration, like any other contract right, can be waived. A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right." (internal citations omitted)).

Order to Show Cause, March 27, 2007, *Delmarva Power & Light Co. v. The United States*, USCOFC No. 04-34C and *Atlantic City Electric Co. v. The United States*, USCOFC No. 04-36C.

[8] *Id.*

plaintiffs' position regarding delay and laches and/or waiver or estoppel in connection with PSEG Nuclear's demand for arbitration."[9]

If PSEG is permitted to arbitrate its objections to the USCOFC litigation following this inexcusable delay, it will be to the substantial prejudice of ACE and Delmarva, who have expended considerable time, effort and resources pursuing their claims against DOE. During the 37-month period that PSEG had full knowledge of ACE's and Delmarva's claims and their intent to pursue them, ACE and Delmarva incurred in excess of $3.5 million in fees and costs in pursuing the USCOFC litigation. PSEG has unnecessarily magnified Claimants' expense by failing to cooperate in the production of essential documents. ACE and Delmarva were required to file a motion to compel PSEG to produce those documents. PSEG unsuccessfully resisted that motion, on the very ground, *inter alia*, that underlies its arbitration demand – to wit, that "[ACE] and Delmarva transferred all claims against the Department of Energy to PSEG" under the PAs.[10] PSEG went so far as to assert that the claims pending before the USCOFC were subject to the arbitration provisions of the PAs.[11] Nonetheless, Respondents elected once again not to initiate an arbitration proceeding, choosing again to wait for more than another year to do so. Claimants assert that PSEG has forfeited, and is precluded from arbitrating its objections to the litigation (a) which has been underway for more than three years and (b) in which the very issue that PSEG seeks to arbitrate – the scope of the assignment of Claimants' claims against the government to PSEG – is currently pending.

[9] Order, April 12, 2007, *Delmarva Power & Light Co. v. The United States*, USCOFC No. 04-34C and *Atlantic City Electric Co. v. The United States*, USCOFC No. 04-36C.

[10] Expedited Response of Third-Party PSEG Nuclear, LLC to Plaintiffs' Motion to Compel, January 18, 2006, at 5-6.

[11] *Id.*

## II. Arbitration Claim

Section 8.3 of the PAs provides for arbitration of any dispute between Seller and Buyer "... relating to or arising our of any provision of this Agreement." In accordance with that provision, by letter dated March 15, 2007, ACE and Delmarva gave their Notice of Dispute to PSEG. As agreed by the parties, the March 16, 2007 meeting of executives in connection with the January 31, 2007 Notice of Dispute given by PSEG to ACE and Delmarva, also served as the meeting of executives for discussing ACE's and Delmarva's March 15, 2007 Notice of Dispute. No resolution of either dispute was reached at that meeting.

ACE's and Delmarva's claim is that PSEG's January 31, 2007 Notice of Dispute and April 5, 2007 Arbitration Demand are not valid because PSEG is barred by the doctrines of *laches* and estoppel from asserting a right to invoke arbitration.

ACE and Delmarva expressly assert that their claim is a threshold issue that goes directly to the jurisdiction of this arbitral panel and, for this reason, must be resolved prior to any consideration by the panel of the merits of PSEG's claims. Moreover, it would be manifestly unfair to Claimants if they are required to put their full case on the merits before this arbitral panel, to the benefit of PSEG, in advance of putting that case before the USCOFC, which has retained jurisdiction of both the procedural delay and the substantive scope of assignment issues, and where Claimants have already invested substantial resources in discovery in preparation for the trial on the merits in that tribunal.

Accordingly, ACE and Delmarva seek:

1) the arbitral panel's consideration of ACE's and Delmarva's claim, that PSEG's January 31, 2007 Notice of Dispute and April 5, 2007 Arbitration Demand are not

valid, as a threshold issue separately and in advance of any consideration of PSEG's April 5, 2007 Arbitration Demand;

2) a declaration that PSEG's January 31, 2007 Notice of Dispute and April 5, 2007 Arbitration Demand are not valid because PSEG is barred by *laches* and estopped from pursuing those arbitration claims;

3) the dismissal of PSEG's arbitration claims set forth in its January 31, 2007 Notice of Dispute and April 5, 2007 Arbitration Demand.

Dated: April 16, 2007

Respectfully submitted,

Frederick M. Lowther
DICKSTEIN SHAPIRO LLC
1825 Eye Street, NW
Washington, DC 20006
Tel: (202) 420-2200
Fax: (202) 420-2201

# EXHIBIT

# F

**IN THE MATTER OF THE ARBITRATION OF:**

| | |
|---|---|
| **ATLANTIC CITY ELECTRIC CO. and DELMARVA POWER AND LIGHT CO.,** | ) |
| **Claimants,** | ) |
| **v.** | ) |
| **PSEG POWER LLC and PSEG NUCLEAR LLC,** | ) |
| **Respondents.** | ) |

**AMENDED ARBITRATION DEMAND OF ATLANTIC CITY ELECTRIC CO. and DELMARVA POWER AND LIGHT CO.**

By an Arbitration Demand dated April 5, 2007, Respondents PSEG Power LLC and PSEG Nuclear LLC (collectively "PSEG") initiated an arbitration against Pepco Holdings, Inc., Atlantic City Electric Co. ("ACE") and Delmarva Power and Light Co. ("Delmarva") under certain Purchase Agreements ("PAs") by which ACE and Delmarva ("Claimants") sold certain nuclear power plant assets to Respondents.[1] Respondents' Demand seeks a declaration that Claimants are not entitled to pursue lawsuits they initiated against the Department of Energy

[1] The PAs at issue are: (1) the Purchase Agreement between Delmarva and PSEG Power LLC dated September 27, 1999 for Delmarva's 7.41% interest in the Salem Station; (2) the Purchase Agreement between ACE and PSEG Power LLC dated September 27, 1999 for ACE's 7.41% interest in the Salem Station; and (3) the Purchase Agreement between ACE and PSEG Power LLC dated September 27, 1999 for ACE's 5.0% interest in the Hope Creek Station. It should be noted that Pepco Holdings, Inc. is not a party to the PAs or to the litigation described in this Demand.

("DOE") in the United States Court of Federal Claims ("USCOFC") in January 2004.[2] Claimants hereby seek arbitration of their claim that Respondents are precluded from asserting a right to arbitrate this matter. Simply stated, by delaying the initiation of this arbitration by more than three years, and participating in litigation in which the very issues PSEG seeks to arbitrate are pending, PSEG has forfeited its right to arbitrate its objections to Claimants' lawsuits. In any event, Respondents' claims fall outside the scope of the PAs and are not subject to arbitration.

## I. The Dispute

ACE and Delmarva advised PSEG in December 2003 that they intended to initiate actions against DOE, alleging that DOE's failure to remove spent nuclear fuel ("SNF") from the Salem and Hope Creek Stations constituted an unconstitutional "taking" under the Fifth Amendment. Those actions were initiated on January 13, 2004. PSEG raised no objection prior to, or in the months following, the institution of the litigation.[3] That is not surprising because the "takings" claim is by law not a claim that private parties can assign or affect by mutual agreement,[4] and thus does not fall within the meaning of "claims" as that term is used in the assignment provisions of Section 2.1 of the PAs. Therefore, Respondents' dispute is not one "relating to or arising out of any provision of this Agreement" subject to the dispute resolution procedures of Section 8.3 of the PAs and accordingly is not subject to this arbitration.

---

[2] *Delmarva Power & Light Co. v. The United States*, USCOFC No. 04-34C and *Atlantic City Electric Co. v. The United States*, USCOFC No. 04-36C. These lawsuits, both filed on January 13, 2004, were consolidated by a January 21, 2005 Order.

[3] To the contrary, PSEG Counsel, in an April 20, 2005 letter to counsel for ACE and Delmarva, stated among other things, that "PSEG Nuclear understands that Delmarva is pursuing various legal theories, such as diminution in value, which PSEG Nuclear simply has no interest or desire to prosecute or defend."

[4] The transfer or assignment of claims against the U.S. government, including "takings" claims, is prohibited by the Anti-Assignment Act, 31 U.S.C. §3727, unless certain limited exceptions (not relevant here) apply.

In fact, it was not until almost two years after Claimants initiated the litigation against DOE, on October 6, 2005, that PSEG first alleged that those "takings" claims had been transferred by ACE and Delmarva to PSEG by, and pursuit of them was a contractual breach of, the PAs.[5] In response, ACE and Delmarva informed PSEG that their claims did not violate the PAs and that they would continue to vigorously pursue them. It was not for another 15 months that PSEG gave notice that it intended to challenge ACE and Delmarva's right to pursue their claims against DOE under the arbitration provisions of the PAs. In short, PSEG – despite its clear knowledge of, and even participation in,[6] the USCOFC litigation -- "sat" on its objections to ACE's and Delmarva's lawsuits for 37 months.

In the meantime, PSEG has also been pursuing its own claims against DOE,[7] and is now attempting to settle that litigation. It appears that DOE has suggested that PSEG must, as a condition of settlement, relieve DOE of having to litigate the ACE and Delmarva claims against DOE. See PSEG's Demand at pp. 2 and 3 ( the litigation is "interfering with PSEG's ability to resolve its claims against DOE" and "the government has refused to settle PSEG's suit without a concurrent settlement of Respondents' claims."). While discovery will shed additional light on this matter, it thus appears clear that the sudden attempt to initiate this arbitration after a 37-month delay is a function not of Respondents' view that they are entitled to arbitrate, but rather their response to inappropriate pressure from the government to make Claimants' case against DOE "go away."

---

[5] PSEG took this position only after the Government's motions for summary judgment, which were based in part on the Government's contention that ACE and Delmarva lacked standing because their claims had been assigned to PSEG under the PAs, were denied by the Court. Memorandum Opinion and Order, USCOFC Nos. 04-34C and 04-36C, July 1, 2005.

[6] *See* page 5 below.

[7] *PSEG Nuclear, L.L.C. v. United States*, USCOFC No. 01-551C (Fed. Cl. filed Jan. 26, 2001).

In fact, shortly after PSEG's notice initiating this arbitration, the government moved to stay the USCOFC litigation. ACE and Delmarva opposed the stay on the grounds that, *inter alia*, PSEG's delay in initiating the arbitration would likely result in a finding that it had forfeited its right to arbitration under the PAs. The Court observed that PSEG's delay "should be a relevant factor in the arbitration proceeding . . .particularly in light of the extended time period between PSEG's initial objections and the initiation of arbitration proceedings," and cautioned that the Court would address the issue should the arbitrators fail to do so.[8] While the Court

---

[8] The Court stated:

> Should the arbitrators fail to consider delay in the arbitration proceeding, the court cautions parties that it will address the issue of PSEG's delay in consideration of plaintiffs' claims, particularly in light of PSEG's active participation in prosecution of PSEG and PSEG's awareness of the proceedings in this case. "Courts may refuse to enforce arbitration agreements on a number of grounds, and federal courts have consistently held that among those grounds is a waiver of the right to arbitrate." St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co., 969 F.2d 585, 587 (7th Cir. 1992) (affirming district court's finding of implied waiver of right to arbitrate, in part, due to ten-month delay in commencing arbitration); see also Int'l Union v. Cummins, Inc., 434 F.3d 478, 486 (6th Cir. 2006) ("Laches is an equitable defense to an arbitration that is properly considered by the court rather than by the arbitrator. The laches inquiry consists of two elements: (1) whether there was unwarranted delay, and (2) whether the delay was detrimental to the party raising the defense." (internal citations omitted)); Gunn v. Veterans Admin. Med. Ctr., 892 F.2d 1036, 1040 n.4 (Fed. Cir. 1990) (noting that "the principles of laches and estoppel because of delay pertain to the initiation of a grievance or arbitration, not to delay or dilatoriness during the course of the proceedings"); Miller Brewing Co. v. Fort Worth Distrib. Co., 781 F.2d 494, 497 (5th Cir. 1986) ("Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party."); Cornell & Co. v. Barber & Ross Co., 360 F.2d 512, 513 (D.C. Cir. 1966) ("The right to arbitration, like any other contract right, can be waived. A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right." (internal citations omitted)).

found that PSEG's delay did not "necessarily require[] a denial of defendant's request to stay proceedings,"[9] and ultimately granted "[a] one-time stay," it did so "without prejudice to plaintiffs' position regarding delay and laches and/or waiver or estoppel in connection with PSEG Nuclear's demand for arbitration."[10]

If PSEG is permitted to arbitrate its objections to the USCOFC litigation following this inexcusable delay, it will be to the substantial prejudice of ACE and Delmarva, who have expended considerable time, effort and resources pursuing their claims against DOE. During the 37-month period that PSEG had full knowledge of ACE's and Delmarva's claims and their intent to pursue them, ACE and Delmarva incurred in excess of $3.5 million in fees and costs in pursuing the USCOFC litigation. PSEG has unnecessarily magnified Claimants' expense by failing to cooperate in the production of essential documents. ACE and Delmarva were required to file a motion to compel PSEG to produce those documents. PSEG unsuccessfully resisted that motion, on the very ground, *inter alia*, that underlies its arbitration demand – to wit, that "[ACE] and Delmarva transferred all claims against the Department of Energy to PSEG" under the PAs.[11] PSEG went so far as to assert that the claims pending before the USCOFC were subject to the arbitration provisions of the PAs.[12] Nonetheless, Respondents elected once again not to initiate an arbitration proceeding, choosing again to wait for more than another year to do so. Claimants assert that PSEG has forfeited, and is precluded from arbitrating its objections to the

---

Order to Show Cause, March 27, 2007, *Delmarva Power & Light Co. v. The United States*, USCOFC No. 04-34C and *Atlantic City Electric Co. v. The United States*, USCOFC No. 04-36C.

[9] *Id.*

[10] Order, April 12, 2007, *Delmarva Power & Light Co. v. The United States*, USCOFC No. 04-34C and *Atlantic City Electric Co. v. The United States*, USCOFC No. 04-36C.

[11] Expedited Response of Third-Party PSEG Nuclear, LLC to Plaintiffs' Motion to Compel, January 18, 2006, at 5-6.

[12] *Id.*

litigation (a) which has been underway for more than three years and (b) in which the very issue that PSEG seeks to arbitrate – the scope of the assignment of Claimants' claims against the government to PSEG – is currently pending.

## II. Arbitration Claim

Section 8.3 of the PAs provides for arbitration of any dispute between Seller and Buyer "… relating to or arising our of any provision of this Agreement." In accordance with that provision, by letter dated March 15, 2007, ACE and Delmarva gave their Notice of Dispute to PSEG. As agreed by the parties, the March 16, 2007 meeting of executives in connection with the January 31, 2007 Notice of Dispute given by PSEG to ACE and Delmarva, also served as the meeting of executives for discussing ACE's and Delmarva's March 15, 2007 Notice of Dispute. No resolution of either dispute was reached at that meeting.

ACE's and Delmarva's claim is that PSEG's January 31, 2007 Notice of Dispute and April 5, 2007 Arbitration Demand are not valid because PSEG is barred by the doctrines of *laches* and estoppel from asserting a right to invoke arbitration and, in any event, PSEG's asserted claims are not subject to the arbitration clause of the PAs.

ACE and Delmarva expressly assert that their claim is a threshold issue that goes directly to the jurisdiction of this arbitral panel and, for this reason, must be resolved prior to any consideration by the panel of the merits of PSEG's claims. Moreover, it would be manifestly unfair to Claimants if they are required to put their full case on the merits before this arbitral panel, to the benefit of DOE and PSEG, in advance of putting that case before the USCOFC, which has retained jurisdiction of both the delay and the scope of assignment issues, and where Claimants have already invested substantial resources in discovery in preparation for the trial on the merits in that tribunal.

Accordingly, ACE and Delmarva seek:

1) the arbitral panel's consideration of ACE's and Delmarva's claim, that PSEG's January 31, 2007 Notice of Dispute and April 5, 2007 Arbitration Demand are not valid, as a threshold issue separately and in advance of any consideration of PSEG's April 5, 2007 Arbitration Demand;

2) a declaration that PSEG's January 31, 2007 Notice of Dispute and April 5, 2007 Arbitration Demand are not valid because PSEG is barred by *laches* and estopped from pursuing those arbitration claims and, in any event, PSEG's claims are not subject to the arbitration clause;

3) the dismissal of PSEG's arbitration claims set forth in its January 31, 2007 Notice of Dispute and April 5, 2007 Arbitration Demand.

Dated: April 23, 2007

Respectfully submitted,

Frederick M. Lowther
DICKSTEIN SHAPIRO LLC
1825 Eye Street, NW
Washington, DC 20006
Tel: (202) 420-2200
Fax: (202) 420-2201

# EXHIBIT

# G

(ACE-SALEM)

# PURCHASE AGREEMENT

BY AND BETWEEN

ATLANTIC CITY ELECTRIC COMPANY

and

PSEG POWER LLC

Dated as of September 27, 1999

ances or dispositions in lieu thereof, or (iii) assign to any Affiliate of PSEG such Purchased Assets as are not material in the aggregate to the extent necessary to assure that the Purchased Assets may be operated as an exempt wholesale generator under Section 32(g) of PUHCA; provided, however, that no such assignment, transfer, pledge, conveyance or disposition pursuant to this Section 10.9(b) shall (A) impair or materially delay the consummation of the transactions contemplated hereby or (B) relieve or discharge Buyer from any of its obligations hereunder.

10.10 Governing Law, Forum, Service of Process. This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey (without giving effect to conflicts of law principles) as to all matters, including validity, construction, effect, performance and remedies. Venue in any and all suits, actions and proceedings related to the subject matter of this Agreement shall be in the state and federal courts located in and for the State of New Jersey (the "Courts"), which shall have exclusive jurisdiction for such purpose, and the Parties hereby irrevocably submit to the exclusive jurisdiction of such Courts and irrevocably waive the defense of an inconvenient forum to the maintenance of any such suit, action or proceeding. Service of process may be made in any manner recognized by such Courts. Each of the Parties hereby irrevocably waives its right to a jury trial in any suit, action or proceeding arising out of any dispute in connection with this Agreement or the transactions contemplated hereby. Nothing in this Section 10.10 is intended to modify or expand the terms and provisions of Section 8.3 with respect to the rights of the Parties to seek judicial remedy of any dispute relating to or arising out of any provision of this Agreement.

10.11 Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

10.12 Entire Agreement. This Agreement (including the Schedules and Exhibits), together with the Confidentiality Agreement, embodies the entire agreement and understanding of the Parties hereto in respect of the transactions contemplated by this Agreement and the Additional Agreements and supersede all prior agreements and understandings among the Parties with respect to such transactions. There are no representations, warranties, covenants or agreements between or among the Parties with respect to the subject matter set forth in such agreements, other than those expressly set forth or referred to herein or therein. Without limiting the generality of the foregoing, Buyer hereby acknowledges and agrees that there are no representations, warranties, covenants or agreements among the Parties with respect

# EXHIBIT

# H

RECEIVED AND FILED
JUL 02 2007

Law Office of William E. Frese
80 Park Plaza, T5D
P.O. Box 570
Newark, New Jersey 07101
(973-)430-8200
Attorney for Plaintiffs
PSEG Power, LLC and
PSEG Nuclear, LLC

| | |
|---|---|
| PSEG POWER, LLC, and PSEG NUCLEAR, LLC.<br><br>Plaintiffs,<br><br>Vs.<br><br>ATLANTIC CITY ELECTRIC CO. And DELMARVA POWER AND LIGHT CO.<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION-MERCER COUNTY – GENERAL EQUITY PART<br>DOCKET NO.: C-59-07<br><br>**ORDER TO SHOW CAUSE** |

**THIS MATTER** having been opened to the Court by Law Offices of William E. Frese, attorneys for the Plaintiffs, PSEG Power, LLC and PSEG Nuclear, LLC, seeking relief by way of summary action pursuant to *R.* 4:67-1(a), based upon the facts set forth in the verified complaint filed herewith; and the Court having determined that this matter may be commenced by order to show cause as a summary proceeding pursuant to N.J.S.A. 2A:23B-22 and for good cause shown.

**IT IS** on this 2nd day of ~~June~~ JULY, 2007, ***ORDERED*** that Defendants, Atlantic City Electric Company and Delmarva Power and Light Company, appear and show cause on the

9th day of AUGUST, 2007 before the Superior Court at the Mercer County Courthouse * in Trenton, New Jersey at 2 P.M. o'clock in the after noon, or as soon thereafter as counsel can be heard, why judgment should not be entered:

A. Confirming the arbitration award entered by the arbitration panel on June 20, 2007, pursuant to 9 U.S.C. § 9 or, in the alternative;

B. Confirming the arbitration award entered by the arbitration panel on June 20, 2007, pursuant to N.J.S.A. 2A:23B-22.

C. Granting such other relief as the court deems equitable and just;

And it is further ***ORDERED***

1. A copy of this order to show cause, verified complaint and all supporting affidavits or certifications be served upon the defendants within personally SEVEN (7) days of the date hereof, in accordance with *R.* 4:4-3 and *R.*4:4-4, this being original process.

2. The plaintiffs must file with the court their proof of service of the pleadings on the defendants no later than three (3) days before the return date.

3. Defendants shall file and serve a written answer and any opposition including brief to this order to show cause and the relief requested in the verified complaint and proof of service of the same by JULY 23, 2007. The answer and opposition must be filed with the Clerk of the Superior Court in the county listed above and a copy of the papers must be sent directly to the chambers of Honorable Neil H. Shuster, P.J.Ch..

*STREET ADDRESS:
210 South Broad St.
5th Floor
Trenton NJ

MAILING ADDRESS:
P.O. BOX 8068,
TRENTON NJ
08650

4. The plaintiffs must file and serve any written reply and brief to the defendant's order to show cause opposition by JULY 30, 2007. The reply papers must be filed with the Clerk of the Superior Court in the county listed above and a copy of the reply papers must be sent to the chambers Honorable Neil H. Shuster, P.J.Ch.

5. If defendants do not file and serve opposition to this order to show cause, the application will be decided on the papers on the return date and relief may be granted by default, provided that the plaintiff files a proof of service and a proposed form of order at least three days prior to the return date.

6. If the plaintiff has not already done so, a proposed form of order and addressing the relief sough on the return date (along with a self-addressed return envelope with return address and postage) must be submitted to the court no later than three (3) days before the return date.

7. Defendants take notice that the plaintiffs have filed a lawsuit against you in the Superior Court of New Jersey. The verified complaint attached to this order to show cause states the basis of this lawsuit. If you dispute this complaint, you, or your attorney, must file a written answer, answering affidavit or a motion returnable on the return date to the order to show cause and proof of service before the return date of the order to show cause.

These documents must be filed with the Clerk of the Superior Court in the county listed above. A list of these offices is provided. Include a $ 135.— filing fee payable to the "Treasurer State of New Jersey." You must also send a copy of your answer and opposition to the plaintiffs' attorney whose name and address appear

above, or to the plaintiffs, if no attorney is named above. A telephone call will not protect your rights; you must file and serve your answer, answering affidavit or motion (with the fee) or judgment may be entered against you by default.

8. If you cannot afford an attorney, you may call the Legal Services office in the county in which you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

8. The Court will entertain argument, but not testimony, on the return date of the order to show cause, unless the court and parties are advised to the contrary no later than ________ days before the return date.

Honorable Neil H. Shuster, P.J.Ch.

# EXHIBIT

# I

**SUPPLEMENTAL ARBITRATION AGREEMENT**
**in the matters of**
**PSEG POWER LLC and PSEG NUCLEAR LLC ("PSEG")**
**and**
**ATLANTIC CITY ELECTRIC CO. and DELMARVA POWER AND LIGHT CO.**
**("ACE/Delmarva")**

PSEG and ACE/Delmarva (individually "Party" and collectively "Parties") hereby agree this 3rd day of May 2007 as follows:

I. ARBITRATION

A. This Agreement is intended to supplement the Parties' arbitration agreement in Section 8.3 of the Purchase Agreements.[1] Nothing in this Agreement should be construed as waiving or modifying Section 8.3 unless expressly so stated.

B. These arbitration proceedings ("Arbitration") arise from the following:

1. The Arbitration Demand dated April 5, 2007 in the matter of the arbitration of PSEG Power LLC and PSEG Nuclear LLC, Claimants, v. Pepco Holdings, Inc., Atlantic City Electric Co. and Delmarva Power and Light Co., Respondents.

2. The Amended Arbitration Demand dated April 23, 2007 in the matter of the arbitration of Atlantic City Electric Co. and Delmarva Power and Light Co., Claimants, v. PSEG Power LLC and PSEG Nuclear LLC, Respondents.

C. Pursuant to Section 8.3(c) of the Purchase Agreements, the Arbitration shall be conducted pursuant to the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). Notwithstanding the Parties' agreement that the AAA Commercial Arbitration Rules govern the Arbitration, the Parties agree that AAA will not be utilized to administer the Arbitration.

D. The Parties waive the provision of Section 8.3(c) of the Purchase Agreements that the arbitration venue be Wilmington, Delaware. The hearing shall be held at a neutral site in Washington, DC/New York City.

[1] The Purchase Agreements are: (1) the Purchase Agreement between Delmarva and PSEG Power LLC dated September 27, 1999 for Delmarva's 7.41% interest in the Salem Station; (2) the Purchase Agreement between ACE and PSEG Power LLC dated September 27, 1999 for ACE's 7.41% interest in the Salem Station; and (3) the Purchase Agreement between ACE and PSEG Power LLC dated September 27, 1999 for ACE's 5.0% interest in the Hope Creek Station.

II. ARBITRAL PANEL

A. The Arbitrators will be John D. Aldock, C. Michael Loftus and Judge Michael B. Mukasey (Chair).

B. From and after the commencement of the initial pre-hearing conference (see Article III), no Arbitrator shall have any contact or other communication, whether direct or indirect, with any party except through the formal proceedings of the Arbitration.

III. PRE-HEARING CONFERENCE

An initial pre-hearing conference of the Arbitrators and the Parties shall be held on May 9, 2007 for the purpose of discussing the procedures to be followed in this Arbitration, the schedule of the Arbitration, the logistics of the Arbitration and all other matters necessary to ensure the efficient progress and completion of the Arbitration.

IV. ARBITRATION PROCEDURES

A. Each Party will have the right to submit interrogatories and document requests related to the matters in Arbitration to the other Party. Each Party reserves the right to seek discovery from third parties. Neither Party intends to place in issue, or seek discovery regarding, the drafting and negotiation of the Purchase Agreements.

B. The Parties will cooperate and use reasonable efforts to endeavor to prepare an agreed statement of facts in advance of the simultaneous filing of the Parties' initial briefs.

C. The Parties will cooperate and use reasonable efforts to endeavor to prepare an agreed compendium of the record documents to date, as well as other relevant documents, in advance of the simultaneous filing of the Parties' initial briefs.

D. The Parties will submit simultaneous initial briefs and simultaneous reply briefs in advance of the hearing.

E. The Arbitrators will convene a hearing to be scheduled.

F. The Arbitrators shall issue a reasoned decision as promptly as reasonable after the conclusion of the hearing.

V. ARBITRATION SCHEDULE

The Parties will use all reasonable efforts to adhere to the following Arbitration Schedule[2]:

A. Interrogatories and Document Requests: April 26, 2007

B. Discovery Responses and Production: May 4, 2007

C. Requests for Third-Party Discovery, if needed: May 7, 2007.

D. Pre-Hearing Conference: May 9, 2007

E. Simultaneous Initial Briefs, maximum length to be 25 pages: date TBD at PHC

F. Simultaneous Reply Briefs, maximum length to be 20 pages: date TBD at PHC

G. Hearing: date TBD at PHC

H. Decision: requested before date TBD at PHC

VI. CONFIDENTIALITY

A. All information disclosed by a Party ("Disclosing Party") to the other Party ("Recipient")during the course of the Arbitration shall be considered Confidential Information to be used only in connection with the Arbitration and will give rise to an obligation upon the Recipient to protect the Confidential Information by using the same degree of care as the Recipient uses to protect its own confidential information of a like nature, provided, however, that information will not be considered Confidential Information if such information was in Recipient's possession before receipt from the Disclosing Party, was independently developed by Recipient without use of the Confidential Information, is or becomes a matter of public knowledge through no fault of Recipient, is rightfully received by the Recipient from a third party without the third-party's imposition of a duty of confidentiality, is disclosed with the Disclosing Party's prior written approval or by operation of law(provided the Disclosing Party is given notice and the opportunity to exhaust all reasonable legal means to maintain the confidentiality).

B. The Recipient may make Confidential Information available to its officers, employees, counsel and consultants only on a need-to-know basis, and only upon making any such persons aware of the terms governing such

[2] The Parties agree that the schedule set forth in Section V of this Agreement substantially conforms with and satisfies the mandate in Section 8.3(c) of the Purchase Agreements providing that the Arbitration shall commence within 60 days of the March 16, 2007 meeting between the Parties.

Confidential Information and obtaining from them undertakings to hold such Confidential Information in confidence in the same manner as Recipient is required to do.

C. Upon the expiration for the period for challenges to the decision of the arbitral panel in this Arbitration or upon the termination of this Arbitration by agreement of the Parties, Recipient shall return the originals and all copies of written Confidential Information so marked. Confidential Information will continue to be subject to confidentiality for a period of two years following the foregoing events.

VII. NOTICES

A. All written communications to be served upon the Parties in this Arbitration shall be delivered to:

Counsel for ACE/Delmarva:

Frederick M. Lowther, Esq.
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006
Telephone: (202) 420-2208
Facsimile: (202) 420-2201
E-mail: lowtherf@dicksteinshapiro.com

Counsel for PSEG:

Jack McKay, Esq.
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, DC 20037
Telephone: (202) 663-8000
Facsimile: (202) 663-8007
E-mail: jack.mckay@pillsburylaw.com

B. All written communications to be served upon the Arbitrators in this Arbitration shall be delivered to:

John D. Aldock, Esq.
Goodwin Procter LLP
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4240
Facsimile: (202) 346-4444
E-mail: jaldock@goodwinprocter.com

C. Michael Loftus, Esq.
Slover & Loftus
1224 Seventeenth Street, N.W.
Washington, DC 20036
Telephone: (202) 347-7170
Facsimile: (202) 347-3619
E-mail: cml@sloverandloftus.com

The Honorable Michael B. Mukasey
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2900
Facsimile: (212) 336-1219
E-mail: mbmukasey@pbwt.com

C. All written communications shall be deemed to have been given on the day delivered by email, by facsimile or by courier provided that such written communications are received before 5 p.m. Eastern on such day.

DICKSTEIN SHAPIRO LLP

Per Frederick M. Lowther
Frederick M. Lowther
Attorneys for Atlantic City Electric Co.
and Delmarva Power and Light Co.

PILLSBURY WINTHROP SHAW PITTMAN LLP

Per ______________________
Jack McKay
Attorneys for PSEG Power LLC
and PSEG Nuclear LLC

# EXHIBIT

# J

**IN THE MATTER OF THE ARBITRATION OF:**

| | |
|---|---|
| **ATLANTIC CITY ELECTRIC CO. and DELMARVA POWER AND LIGHT CO.,** | ) |
| **Claimants,** | ) |
| **v.** | ) |
| **PSEG POWER LLC and PSEG NUCLEAR LLC,** | ) |
| **Respondents.** | ) |

ATLANTIC CITY ELECTRIC CO. AND DELMARVA POWER AND LIGHT CO.'S FIRST SET OF INTERROGATORIES TO PSEG POWER LLC AND PSEG NUCLEAR LLC

Atlantic City Electric Co. and Delmarva Power and Light Co (ACE/Delmarva) hereby propound to PSEG Power LLC and PSEG Nuclear LLC ("PSEG") their First Set of Interrogatories. ACE/Delmarva respectfully requests that PSEG answer each of the following Interrogatories separately and fully in writing within seven (7) days after receipt hereof.

**INTERROGATORIES**

**INTERROGATORY NO. 1:**

At p. 3 of PSEG's Arbitration Demand dated April 5, 2007, PSEG states:

> [ACE/Delmarva's] consolidated suit . . . is interfering with PSEG's suit against DOE because the government has refused to settle PSEG's suit without a concurrent settlement of [ACE/Delmarva's] claims.

(A) Please state what specific agency or agencies are referred to by the term "the government";

(B) Please provide the names of each person within each such agency who has made the above-referenced statement attributed to "the government," and the title or official position of each such person;

(C) Please provide the names of each person employed by or representing PSEG in any capacity to whom statements identified in the responses to this Interrogatory 1 were made, or who participated in discussions identified herein;

(D) Please state, as precisely as possible, the statement(s) or discussion(s) reflecting the government's above-stated position, and provide the exact date of each such statement or discussion and the names of all persons involved in that statement or discussion. To the extent that exact dates are not known, please state whether:

(i) Any such statements or discussions occurred on or before October 6, 2006 and the approximate date(s) thereof;

(ii) Any such statements or discussions occurred between October 6, 2005 and November 4, 2005 and the approximate date(s) thereof;

(iii) Any such statements or discussions occurred between November 5, 2005 and January 31, 2007 and the approximate date(s) thereof;

(E) Please state whether there are any written or electronic documents, including email messages, reflecting the government's above-stated position or any of the statements or discussions identified above, and provide copies of all such documents.

(F) Please state whether PSEG has responded to any of the statements, discussions or documents identified in responses 1-A to 1-E above, orally, electronically or in writing, and identify:

(i) the person(s), by name and title or position, making such response(s);

(ii) the person(s), by name and title or position, to whom such response(s) were addressed;

(iii) the substance of such responses; and

(iv) the exact date(s) of such responses or, if the exact date(s) cannot be recalled, the approximate date(s) using the time periods set forth in Interrogatory 1-D above;

and provide copies of all documents identified in the responses to this Interrogatory No. 1-F.

**INTERROGATORY NO. 2**

At p. 3 of PSEG's Arbitration Demand dated April 5, 2007, PSEG states:

> Additionally, the government has made plain that it intends to argue that any recovery by PSEG in its suit against DOE must be reduced or offset by any eventual recovery of [ACE/Delmarva] and that in any settlement with PSEG, anything paid to [ACE/Delmarva] would come from money otherwise available to be paid to PSEG.

(A) Please state what specific agency or agencies are referred to by the term "the government";

(B) Please provide the names of each person within each such agency who has made the above-referenced statements attributed to "the government," and the title or official position of each such person;

(C) Please provide the names of each person employed by or representing PSEG in any capacity to whom statements identified in the responses to this Interrogatory 2 were made, or who participated in discussions identified herein;.

(D) Please state, as precisely as possible, the statement(s) or discussion(s) reflecting the government's above-stated positions, and provide the exact date of each such statement or discussion and the names of all persons involved in that statement or discussion. To the extent that exact dates are not known, please state whether:

(i) Any such statements or discussions occurred on or before October 6, 2006 and the approximate date(s) thereof;

(ii) Any such statements or discussions occurred between October 6, 2005 and November 4, 2005 and the approximate date(s) thereof;

(iii) Any such statements or discussions occurred between November 5, 2005 and January 31, 2007 and the approximate date(s) thereof;

(E) Please state whether there are any written or electronic documents, including email messages, reflecting the government's above-stated positions or any of the statements or discussions identified above, and provide copies of all such documents.

(F) Please state whether PSEG has responded to any of the statements, discussions or documents identified in responses 2-A to 2-E above, orally, electronically or in writing, and identify:

(i) the person(s) , by name and title or position, making such response(s);

(ii) the person(s), by name and title or position, to whom such response(s) were addressed;

(iii) the substance of such responses; and

(iv) the exact date(s) of such responses or, if the exact date(s) cannot be recalled, the approximate date(s) using the time periods set forth in Interrogatory 2-D above;

and provide copies of all documents identified in the responses to this Interrogatory No. 2-F.

**INTERROGATORY NO. 3**:

PSEG's Arbitration Demand makes clear, *passim*, that the only transactions which are the subject of this arbitration are those involving the Hope Creek Nuclear Generating Station ("Hope Creek") and the Salem Nuclear Generating Station ("Salem"). On the same date on which the Hope Creek and Salem transactions occurred (*to wit*, September 27, 1999), ACE/Delmarva also sold their interests in the Peach Bottom Nuclear Generating Station ("Peach Bottom") to PSEG. Please state whether, in any of the statements or discussions with "the government" or in any documents identified to in responses to Interrogatories 1 and 2, there was any reference to the Peach Bottom plant or the Peach Bottom transaction. If the answer is yes:

(A) Please provide the details of such statements and discussions, including the exact dates (or if the exact dates cannot be recalled, the approximate dates using the time periods set forth in Interrogatory 1-D above) and the persons (including titles or official positions) involved.

(B) Please provide copies of any and all documents which reflect the statements or discussions identified in response to Interrogatory 3-A.

DATED: April 23, 2007

DICKSTEIN SHAPIRO LLP

By [signature]
Frederick M. Lowther



DSMDB-2248647v01