No. 04-0034C, into which has been consolidated No. 04-0036C
(Judge Christine O.C. Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

DELMARVA POWER & LIGHT COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# OPPOSITION OF THIRD-PARTIES PSEG NUCLEAR LLC AND PUBLIC SERVICE ELECTRIC AND GAS COMPANY TO PLAINTIFFS' MOTION TO VACATE ARBITRATION RULING

---


OF COUNSEL:

JAY E. SILBERG
DANIEL S. HERZFELD
JACK Y. CHU
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, NW
Washington, DC 20037-1128
(202) 663-8000
(202) 663-8007 (fax)

ALEX D. TOMASZCZUK
Pillsbury Winthrop Shaw Pittman LLP
1650 Tysons Boulevard
McLean, VA 22102-4859
(703) 770-7950
(703) 770-7901 (fax)

Counsel of Record for
PSEG Nuclear, L.L.C. and Public
Service Electric and Gas Company


August 8, 2007

# TABLE OF AUTHORITIES

*Arthur Pew Constr. Co. v. Lipscomb*,
965 F.2d 1559 (11th Cir. 1992) ....................23

*Bd. of Educ. of the Borough of Alpha, Warren County v. Alpha Educ. Ass'n*,
918 A.2d 579 (N.J. Super. Ct. 2006) ....................17

*Carey v. Conn. Gen. Life Ins. Co.*,
93 F. Supp. 2d 165 (D. Conn. 1999) ....................9

*Centron Corp. v. United States*,
585 F.2d 982 (Ct. Cl. 1978) ....................22

*Commerce Bank v. Dimaria Constr., Inc.*,
692 A.2d 54 (N.J. Super. Ct. App. Div. 1997) ....................17

*Data-Stream AS/RS Tech., LLC v. China Int'l Marine Containers, Ltd.*, No. 02 CIV 6530 (JFK), 2003 WL 22519456 (S.D.N.Y. Nov. 6, 2003) .................... 8-9

*Ehleiter v. Grapetree Shores, Inc.*,
482 F.3d 207 (3d Cir. 2007) .................... *passim*

*Exxon Chem. Co. v. National Labor Relations Bd.*,
386 F.3d 1160 (D.C. Cir. 2004) ....................19

*Flex-Foot, Inc. v. CRP, Inc.*,
238 F.3d 1362 (Fed. Cir. 2001) ....................14

*Galaxie Boat Ctr. v. ITT Commercial Fin. Corp.*, No. 96-55175, 1997 U.S. App. LEXIS 14934 (9th Cir. June 19, 1997) ....................8

*Hanford v. United States*,
154 F.App'x 216 (Fed. Cir. 2005), *cert. denied*, 127 S. Ct. 2045 (2007) ....................10

*Hardie v. United States*,
134 F.App'x 434 (Fed. Cir. 2005) .................... 12-13

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ....................18

*In re Lagerstrom*,
300 F. Supp. 538 (S.D. Ill. 1969) ....................23

*In re Metric Metals Int'l, Inc.*, No. 80 CV 5414 (HFW), 1981 U.S. Dist. LEXIS 10124 (S.D.N.Y. Nov. 9, 1981) .................... 23-24

*Int'l Union of Operating Eng'rs v. Flair Builders, Inc.*,
406 U.S. 487 (1972) ....................18

*Jackson v. United States*,
10 Cl. Ct. 691 (1986) ....................12

*John Wiley & Sons, Inc. v. Livingston*,
376 U.S. 543 (1964) .......... 18

*King v. Gilbert*,
569 F.2d 398 (5th Cir. 1978) .......... 24

*Marie v. Allied Home Mortgage Corp.*,
402 F.3d 1 (1st Cir. 2005) .......... 19

*McKenzie v. Irving Trust Co.*,
323 U.S. 365 (1945) .......... 22

*Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*,
409 F.3d 574 (3d Cir. 2005), *cert. denied*, 126 S. Ct. 1021 (2006) .......... 13-14

*Microchip Tech., Inc. v. U.S. Philips Corp.*,
367 F.3d 1350 (Fed. Cir. 2004) .......... 18-19

*Moran v. Paine, Webber, Jackson & Curtis*,
389 F.2d 242 (3d Cir. 1968) .......... 8

*Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n*,
351 F.3d 43 (2d Cir. 2003) .......... 19

*Ont. Power Generation, Inc. v. United States*,
369 F.3d 1298 (Fed. Cir. 2004) .......... 10

*Paradise Enters. Ltd. v. Sapir*,
811 A.2d 516 (N.J. Super. App. Div. 2002) .......... 13

*Portland Gen. Elec. Co. v. United States*,
1 Cl. Ct. 232 (1982) .......... 11

*Qualcomm Inc. v. Nokia Corp.*,
466 F.3d 1366 (Fed. Cir. 2006) .......... 21

*Saint John Marine Co. v. United States*,
92 F.3d 39 (2d Cir. 1996) .......... 23

*Segal v. Rochelle*, 382 U.S. 375 (1996) .......... 24

*St. John's Mercy Med. Ctr. v. Delfino*,
414 F.3d 882 (8th Cir. 2005) .......... 15, 16

*Todd v. United States*,
386 F.3d 1091 (Fed. Cir. 2004) .......... 10

*Transamerica Assurance Corp. v. United States*,
423 F. Supp. 2d 691 (W.D. Ky. 2006), *aff'd*, 489 F.3d 256 (6th Cir. 2007) .......... 23

*Trentacost v. City of Passaic*,
743 A.2d 349 (N.J. Super. Ct. App. Div. 2000) .......... 17

*Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*,
97 F.App'x 462 (5th Cir. 2004) .......... 19

*Turner v. United States*, No. 97-5087, 1997 U.S. App. LEXIS 27957
(Fed. Cir. Oct. 9, 1997) .......... 12

*United States v. Certain Space In the Property Known As the Chimes Bldg.*,
320 F. Supp. 491 (N.D.N.Y. 1969), *aff'd*, 435 F.2d 872 (2d Cir. 1970) .......... 22-23

*United States v. King,* 395 U.S. 1 (1969) .......... 10

*United States v. Testan*,
424 U.S. 392 (1976) .......... 10

*Wallace v. Buttar*,
378 F.3d 182 (2d Cir. 2004) .......... 14, 15, 16

*Watkins v. AIT Worldwide Logistics, Inc.*,
441 F. Supp. 2d 762 (E.D.Va. 2006) .......... 15

*Wonderland Greyhound Park, Inc. v. Autotote Sys., Inc.*,
274 F.3d 34 (1st Cir. 2001) .......... 16

**U.S. CODE AND STATUTES**

Federal Arbitration Act ("FAA")
9 U.S.C. § 1-16 (2007) .......... *passim*

Tucker Act
28 U.S.C. § 1491 (2007) .......... 9-10

Anti-Assignment Act
31 U.S.C. § 3727 (2007) .......... 22

N.J. Stat. Ann. § 2A:23B-23 .......... 14

**OTHER AUTHORITIES**

Commercial Rules of the Am. Arbitration Ass'n, Rule 7 .......... 21-22

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 2

II. ARGUMENT ..... 7

A. Plaintiffs Waived The Right To Challenge The Jurisdiction Of The Arbitration Panel ..... 7

B. The Court of Federal Claims Lacks Subject Matter Jurisdiction To Vacate An Arbitration Award Between Private Parties ..... 9

C. Plaintiffs Cite No Grounds That Would Entitle Them To An Order Vacating the Arbitration Award ..... 13

D. The Arbitrators Correctly Concluded That Plaintiffs Assigned Their Claims To PSEG ..... 22

III. CONCLUSION ..... 25

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on August 8, 2007)

| | |
|---|---|
| **DELMARVA POWER & LIGHT CO.,**<br><br>**and ,**<br><br>**ATLANTIC CITY ELECTRIC CO.**<br><br>Plaintiffs,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | Nos. 04-34C & 04-36C<br>(Judge Christine O.C. Miller) |

**OPPOSITION OF THIRD-PARTIES PSEG NUCLEAR LLC AND PUBLIC SERVICE ELECTRIC AND GAS COMPANY TO PLAINTIFFS' MOTION TO VACATE ARBITRATION RULING**

PSEG Nuclear, LLC and Public Service Electric and Gas Company (collectively "PSEG"), by and through the undersigned counsel, submit their opposition to the Motion to Vacate Arbitration Ruling ("Motion to Vacate") filed by Plaintiffs Delmarva Power and Light Company and Atlantic City Electric Company (collectively "Plaintiffs"). Plaintiffs' Motion to Vacate is an impermissible attempt to escape a binding arbitration award that resolved a question that Plaintiffs themselves submitted to the arbitration Panel for decision. Plaintiffs have not only waived their right to request such relief, they make such a request in a court that, with all due respect, lacks subject matter jurisdiction to decide the Motion to Vacate. In addition, the motion cites no grounds for granting relief under the Federal Arbitration Act, which defines the circumstances upon which an arbitration award may be vacated. Finally, Plaintiffs are simply wrong both in their characterization of the law governing the appropriate forum to determine

waiver/delay claims and in their effort to attack the arbitrators' underlying decision on the assignability of Plaintiffs' takings claims. None of Plaintiffs' arguments withstands scrutiny, and their Motion to Vacate should accordingly be denied.

## I. INTRODUCTION

PSEG is the operator and sole owner of the Hope Creek nuclear power station and the operator and majority owner of the Salem nuclear power station.[1] In 1999, PSEG bought the minority interests of Plaintiffs in the Hope Creek and Salem nuclear power stations. To carry out those transactions, Plaintiffs executed detailed agreements ("Purchase Agreements" or "PAs") whereby Plaintiffs transferred and surrendered to PSEG any and all interests in the claims relating to the failure of the U.S. Department of Energy ("DOE") to begin removing spent nuclear fuel ("SNF"). Plaintiffs also agreed that PSEG had all associated rights of recovery for such actions and the right to control all litigation related thereto. *See generally,* PAs Sections 2.1(l), (m), 2.5, 2.6 and 6.8.

Notwithstanding these provisions, Plaintiffs commenced the instant litigation (the "Delmarva Litigation") based wholly on claims that they were injured by DOE's failure to commence removal of SNF. Because Plaintiffs refused to accede to PSEG's repeated demands to dismiss this litigation, PSEG invoked the disputes procedures in Section 8.3 of the Purchase Agreements (Exhibit A) providing for binding arbitration.

---

[1] PSEG Nuclear LLC is the operator and sole owner of the Hope Creek Nuclear Generating Station ("Hope Creek") and the operator and majority owner of the Salem Nuclear Generating Station ("Salem"). PSEG Power LLC, the parent company of PSEG Nuclear LLC, was the original purchasing entity under the PAs.

Pursuant to Section 8.3, PSEG sent a notice of dispute to Plaintiffs on January 31, 2007 ("January 31 Letter") (Exhibit B) outlining the dispute and proposing a meeting between party executives on March 16, 2007. By letter dated February 22, 2007 ("February 22 Letter") (Exhibit C), Plaintiffs replied to the January 31 Letter and supplemented that letter on March 15, 2007 ("March 15 Letter") (Exhibit D). The March 15 letter was Plaintiffs' own notice of dispute to PSEG under Section 8.3. It described Plaintiffs' dispute with PSEG as being whether PSEG's notice of dispute was valid and whether PSEG is precluded from arbitrating the dispute as a result of alleged delay in bringing its arbitration demand.[2] A meeting between authorized executives for each party was held on March 16, 2007. No resolution to the dispute was reached at that meeting.

PSEG served its Arbitration Demand on April 5, 2007, seeking a declaration that Plaintiffs assigned to PSEG all claims that relate to DOE's failure to take SNF from Salem and Hope Creek, that PSEG holds the right to control any litigation involving the Purchased Assets (including "takings" claims related to DOE's failure to take SNF), and that Plaintiffs are required to dismiss the Delmarva Litigation at PSEG's request.

In response, Plaintiffs filed their own Arbitration Demand on April 16, 2007 (Exhibit E) which was superseded by an Amended Arbitration Demand filed on April 23, 2007 (Exhibit F). In both demands, Plaintiffs put into arbitration the very claim that they now say could not be heard in arbitration: that PSEG's notice of dispute and Arbitration Demand were invalid because PSEG allegedly waived its right to arbitrate and was barred by laches and estoppel. Plaintiffs'

---

[2] Plaintiffs also contended that this Court had already ruled upon the assignability of Plaintiffs' claims.

Amended Arbitration Demand repeated the same issues and also submitted to arbitration the question of whether PSEG's claims were beyond the scope of the arbitration provision. In neither their initial nor amended Arbitration Demands did Plaintiffs contest the authority of the Panel to determine any of the claims contained in Plaintiffs' Arbitration Demand – including claims related to waiver and alleged delay.

The arbitration Panel convened a preliminary arbitration hearing on May 9, 2007 ("May 9 Hearing"). At that hearing, Plaintiffs argued, contrary to all of their prior letters and Arbitration Demands, that the Panel lacked jurisdiction to hear Plaintiffs' claims that PSEG should be estopped or otherwise waived its rights through delay. Plaintiffs made this assertion despite the fact that they acknowledged in pleadings before this Court that they had in fact submitted to arbitration the very issues they maintained the arbitration Panel was incompetent to decide. *See* Plaintiffs' Supplemental Brief Requested by the Court's March 27, 2007 Order to Show Cause, April 6, 2007 at 1 ("Plaintiffs have squarely placed in issue, in the arbitration between Plaintiffs and [PSEG], PSEG's significant, unexcused delay in seeking arbitration and believe that the panel will consider it forthwith."). At the May 9 Hearing, Plaintiffs also requested that the arbitration panel bifurcate the arbitration proceedings to determine first the issue of whether PSEG was barred from arbitration on the grounds of laches or estoppel, or otherwise waived its right to arbitrate, and to determine whether the arbitrators or the Court were the appropriate body to resolve the delay-related question. The second part of the proceeding, if necessary, would address the merits of PSEG's claims.

The arbitration Panel granted a modified form of Plaintiffs' request and issued a scheduling order on May 9, 2007 that required the parties to file separate briefs on the question

of arbitrability, the appropriate body to determine arbitrability, and whether PSEG was barred from arbitration on the grounds of waiver/delay. (May 9, 2007 Scheduling Order at 1.)[3] Initial briefs on these issues were to be filed on May 15, 2007, with responsive briefs filed on May 17, 2007. The scheduling order also indicated that the Panel would make a preliminary determination as to whether the case should move forward after considering the briefs of the parties. If the arbitrators decided the case should move forward, additional briefs addressing the merits of the parties' claims would be filed on May 21, 2007, with replies filed on May 23, 2007. A hearing on all issues briefed by the parties would then be held on May 24, 2007.[4]

The arbitrators determined that the case should move forward after receiving and considering the parties' first briefs and supporting documents and affidavits on May 15 and May 17, 2007. Per the May 9 scheduling order, the parties submitted additional briefs and supporting documents and affidavits on May 21 and May 23, 2007. A five-hour hearing was held on May 24, 2007, during which time, in addition to hearing oral argument, the Panel received additional documentary evidence that was introduced from Plaintiffs.

On June 20, 2007, the arbitration panel issued an opinion and order ("June 20 Award"). The Panel first ruled that it had jurisdiction to hear Plaintiffs' claims of waiver, laches, and

---

[3] The May 9, 2007 Scheduling Order is attached as Exhibit 4 to Plaintiffs' Motion to Vacate.

[4] While Plaintiffs suggest in their Motion to Vacate that this briefing schedule was somehow unfair and did not provide enough time to consider the issues, the schedule is completely consistent with the arbitration agreement at issue that provides that the arbitration must commence within 60 days of the dispute resolution meeting that was held on March 16, 2007. PAs Section 8.3. Moreover, Plaintiffs agreed at the May 9 Hearing that the schedule was acceptable. Contrary to Plaintiffs' suggestion, the arbitration Panel gave no indication that it intended to issue a written opinion or order on the preliminary questions regarding arbitrability.

delay. The Panel then rejected those claims. (June 20 Award at 12-17.)[5] The Panel further determined that Plaintiffs "assigned the takings claims at issue here to PSEG, and that ACE/Delmarva's initiation of its taking litigation and its refusal to dismiss that litigation breached the PAs." (June 20 Award at 24.)

Pursuant to Section 10.10 of the PAs (Exhibit G), which provides that venue and exclusive jurisdiction for "any and all suits ... related to the subject matter of this Agreement shall be in the state and federal courts located in and for the State of New Jersey," PSEG filed a verified complaint in the Superior Court of New Jersey, Mercer County, on June 25, 2007 ("PSEG's Complaint"). PSEG's complaint asks for confirmation of the June 20 Award.

On July 2, 2007, the Superior Court of New Jersey issued an order to show cause (Exhibit H) why the June 20 Award should not be confirmed and set a briefing schedule for the parties to respond to the show cause order. Although Plaintiffs' counsel was provided a copy of PSEG's Complaint on June 25, 2007, Plaintiffs filed the instant Motion to Vacate on July 2, 2007, claiming that only this Court could intervene and set aside the June 20 Award. The Motion to Vacate fails to make any reference to the pending New Jersey state court proceedings.

On July 12, 2007, Plaintiffs filed a motion in the state court proceedings asking that court to stay those proceedings in favor of the instant motion. On July 17, 2007, the Superior Court of New Jersey issued an order permitting Plaintiffs to include their stay arguments in their response to the order to show cause why the award should not be confirmed.

---

[5] The June 20 Award is attached as Exhibit 1 to Plaintiffs' Motion to Vacate.

Plaintiffs filed an answer and counterclaim and a response to the order to show cause in the state court proceedings on July 20, 2007, to which PSEG replied on July 30, 2007. Oral argument on Plaintiff's motion to stay and the show cause order will be heard on August 17, 2007, in the Superior Court of New Jersey.

## II. ARGUMENT

### A. Plaintiffs Waived The Right To Challenge The Jurisdiction Of The Arbitration Panel

Plaintiffs' Motion to Vacate suggests that Plaintiffs were forced to arbitrate their claims that PSEG lost its right to arbitrate as a result of its alleged delay. (Motion to Vacate at 5-7.) Exactly the contrary is true. First, Plaintiffs were contractually bound to arbitrate their dispute with PSEG under the clear dictates of Section 8.3 of the PAs (as recognized by this Court in its March 27, 2007 Show Cause Order at 4). Second, Plaintiffs further consented to the arbitration of their waiver/delay claims by themselves submitting those very issues to be resolved in arbitration. At the May 9 Hearing, Plaintiffs also asked the Panel to rule upon the issue of whether waiver should be resolved in arbitration or in court. This conduct constitutes a clear contradiction of Plaintiffs' position in their Motion to Vacate that the arbitration should not have occurred.

Plaintiffs' waiver of the right to object now to the Panel's jurisdiction is manifested in many ways:

- Plaintiffs failed to raise the issue of the arbitration Panel's jurisdiction in proceedings before this Court prior to arbitration and failed to initiate an appropriate action in New Jersey resisting arbitration. Indeed, Plaintiffs argued exactly the contrary to this Court: stating that they had submitted their delay claims to the Panel and expected the Panel to decide them forthwith. *See* Plaintiffs' Supplemental Brief Requested by the Court's March 27, 2007 Order to Show Cause, April 6, 2007 at 1.



400620618v1

- Plaintiffs participated extensively in the dispute resolution process under Section 8.3 without any jurisdictional objection to arbitration. *See* letter of February 22, 2007 from Thomas Shaw to Frank Cassidy and March 15 Notice of Dispute from Thomas Shaw to Frank Cassidy. (Exhibits C and D hereto). Under Section 8.3 of the PAs, the February 22 letter and the March 15 Notice required Plaintiffs to detail their arguments in response to PSEG's claims and to detail the facts and arguments in support of their own claims.

- Plaintiffs' March 15 notice of dispute put the waiver/delay issue squarely into the dispute resolution process, which leads to "final, binding and conclusive" arbitration. PAs Section 8.3.

- Plaintiffs served two arbitration demands raising the very waiver/delay issues that they now claim the Panel was incompetent to hear.

- Plaintiffs appointed a party-arbitrator, participated in the appointment of a neutral arbitrator, drafted a supplemental agreement governing the arbitration and served discovery on PSEG in arbitration. *See* Supplemental Arbitration Agreement and ACE/Delmarva First Set of Interrogatories to PSEG attached hereto as Exhibits I and J respectively.

- In a letter to the Panel dated April 28, 2007, Plaintiffs urged the Panel to hear their claims related to arbitrability (including waiver and delay) in advance of hearing PSEG's claims. Plaintiffs made no objection to the Panel's considering their claims. *See* April 28, 2007 Letter from Frederick Lowther to Panel, attached as Exhibit 3 to Plaintiffs Motion to Vacate.

- At the May 9 Hearing, Plaintiffs, for the first time, raised a question of whether the Panel or the Court should determine the waiver/delay claim; however, Plaintiffs urged the <u>Panel</u> to consider and resolve that question.

By submitting the very issues to arbitration that Plaintiffs now claim the Court should have resolved, Plaintiffs may not now be heard to claim that the arbitration should be set aside on jurisdictional grounds. *See Galaxie Boat Ctr. v. ITT Commercial Fin. Corp.*, No. 96-55175, 1997 U.S. App. LEXIS 14934, at *4 (9th Cir. June 19, 1997) ("A party that agrees to submit the question of arbitrability to an arbitrator waives any right to object to that arbitrator's authority later.") (internal citations omitted). *See also Moran v. Paine, Webber, Jackson & Curtis*, 389 F.2d 242, 246 (3d Cir. 1968) (by voluntarily submitting her claim to arbitration in which a valid award was rendered, the appellant waived her right to litigate those claims); *Data-Stream AS/RS*

*Tech., LLC v. China Int'l Marine Containers, Ltd.*, No. 02 Civ. 6530 (JFK), 2003 WL 22519456, at *3 (S.D.N.Y. Nov. 6, 2003) (Noting that if CIMC felt that it should not have been a party to the arbitration, it should have refused to arbitrate and forced the opposing party to move the district court to compel arbitration; "[b]y actively participating and waiting until an award has been entered against it to complain to a district court, CIMC is essentially seeking a second bite at the apple."); *Carey v. Conn. Gen. Life Ins. Co.*, 93 F. Supp. 2d 165, 169 (D. Conn. 1999) (holding that Carey could not object to the arbitration after she herself had submitted the dispute to arbitration).

Plaintiffs' acts, individually and cumulatively, require Plaintiffs to abide by their decision to arbitrate their waiver/delay-related claims and preclude this collateral attack on a concluded arbitration. To hold to the contrary would allow Plaintiffs to submit claims to arbitration, participate without objection in the entire arbitration process, and then ask for the whole process to be repeated in court if they did not like the result.

### B. The Court of Federal Claims Lacks Subject Matter Jurisdiction To Vacate An Arbitration Award Between Private Parties

Plaintiffs have not only waived their right to contest the arbitrability of their waiver/delay-related claims; they have brought their challenge in a court whose subject matter jurisdiction does not reach the relief that Plaintiffs seeks.

It is well settled that the United States Court of Federal Claims is a court of limited jurisdiction whose authority is defined by the Tucker Act, 28 U.S.C. § 1491 (2007). The Tucker Act provides in relevant part that:



400620618v1

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The jurisdictional constraints outlined in the Tucker Act have been construed by numerous judicial decisions that have interpreted the statute. Those decisions affirm what is plain on the face of statute itself: this Court's jurisdiction is limited to monetary claims against the United States. *See United States v. Testan*, 424 U.S. 392, 397-98 (1976) ("[T]he Court of Claims was established by Congress in 1855; [and] that 'throughout its entire history . . . its jurisdiction has been limited to money claims against the United States Government . . . .'") (quoting *United States v. King*, 395 U.S. 1, 2-3 (1969)); *Todd v. United States*, 386 F.3d 1091, 1093 (Fed. Cir. 2004) ([A]ffirming dismissal of appellants' claims because "[t]he jurisdiction of the Court of Federal Claims under the Tucker Act is 'limited to actual, presently due money damages from the United States.'") (quoting *Testan*, 424 U.S. at 398)); *Ont. Power Generation, Inc. v. United States*, 369 F.3d 1298, 1303 (Fed. Cir. 2004) (holding that "jurisdiction under the Tucker Act is lacking" because the statute pursuant to which relief was sought did not create a "money-mandating" claim against the United States); *Hanford v. United States*, 154 F.App'x 216 (Fed. Cir. 2005) ("The jurisdictional statutes governing the United States Court of Federal Claims only grant authority to that court to issue judgments for money against the United States, provided that the claims are grounded in a contract or arise pursuant to a money-mandating statute, regulation, or provision of the constitution."), *cert. denied*, 127 S. Ct. 2045 (2007).

Because Plaintiffs' Motion to Vacate does not state a claim for monetary relief against the United States, it does not fall within the jurisdictional strictures of the Tucker Act.

Accordingly, the Court lacks jurisdiction to hear Plaintiffs' motion. *See Portland Gen. Elec. Co. v. United States*, 1 Cl. Ct. 232, 234 (1982) (Request by plaintiff to modify or vacate an arbitration award did not state "claim to money damages against the United States within the purview of Section 1491 .... Accordingly, and on the latter ground alone, defendant's argument of lack of jurisdiction is upheld.").

In *Portland*, plaintiff, a utility company, was a party to a contract related to hydro-electric power with the Confederated Tribes of the Warm Springs Reservation of the Oregon Tribes (the "Tribes"). *Id.* at 232-33. The contract, to which the United States was not a party, contained an arbitration provision. When a dispute over payment terms arose under the contract, an arbitration was held and an award resolving the dispute was entered. The utility objected to the award and filed a petition to vacate or modify the award in the United States Claims Court, alleging that jurisdiction was proper because the United States was trustee for the Tribes and held approval rights over the contract sued upon. The court dismissed the petition, finding that irrespective of the United States' status as trustee and regardless of whether any claim against the United States had been stated, the petition to vacate or modify the award did not state a claim for monetary relief against the United States and therefore jurisdiction could not lie in the United States Claims Court. *Id.* at 233-34.

In *Portland*, as here, the United States is not a party to the arbitration agreement, and Plaintiffs' request for relief does not state a claim for monetary relief within the Tucker Act.

Moreover, the arbitration agreement between the parties is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1-16 (2007) et seq.[6] Under the FAA, federal court jurisdiction to vacate arbitration awards rests exclusively in the district courts, and such matters cannot be heard in this Court. *See* 9 U.S.C. § 10 (2007) ("the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration … ."); *Turner v. United States*, No. 97-5087, 1997 U.S. App. LEXIS 27957, at *5 (Fed. Cir. Oct. 9, 1997) ("[T]he Court of Federal Claims does not have jurisdiction to hear claims of wrongdoing by arbitrators, because jurisdiction over such claims is vested in the district courts under 9 U.S.C. § 10."); *Jackson v. United States*, 10 Cl. Ct. 691, 694 (1986) ("[T]o the extent that the instant action may be grounded on 9 U.S.C. § 10, the court finds that it does not provide a jurisdictional basis for Claims Court review.").

Plaintiffs' contention that this Court has jurisdiction to vacate the June 20 Award is even less compelling than the arguments in *Turner* and *Jackson*. In those decisions, the relief sought at least implicated arbitrations involving the United States. Here, Plaintiffs seek to invoke this Court's jurisdiction over a contractual dispute that is strictly between two private parties.

Additionally, the PAs at issue include a forum selection clause wherein the parties consented to the exclusive jurisdiction and venue of the Federal and state courts of New Jersey for any and all suits "related to the subject matter" of the PAs. PAs Sec. 10.10. Such forum selection clauses are enforceable under the FAA, and the Court should not countenance Plaintiffs' breach of their contractual obligations. *See Hardie v. United States.*, 134 F.App'x

---

[6] The Federal Arbitration Act is applicable because the PAs are contracts involving interstate commerce. 9 U.S.C. § 2 (2007).

434, 435 (Fed. Cir. 2005) ("[T]he FAA allows a party to seek relief to confirm an award in the court specified in the agreement [] or, if no court is specified in the agreement, in the appropriate United States District Court."). Even if the Court had subject matter jurisdiction to hear Plaintiffs' Motion to Vacate, Plaintiffs are bound by the forum selection clause in the PAs and must litigate the validity of the arbitration award in New Jersey. *Paradise Enters. Ltd. v. Sapir*, 811 A.2d 516, 520-21 (N.J. Super. Ct. App. Div. 2002) (forum selection clauses are "prima facie valid and enforceable in New Jersey") (internal citation and quotations omitted).

Finally, PSEG has already initiated court proceedings in the Superior Court for New Jersey to enforce the arbitration award (the only forum available to PSEG under the FAA and the PAs). Plaintiffs have an appropriate forum to address their challenges to the arbitration in those proceedings. Hearing Plaintiffs' Motion to Vacate in this Court would waste judicial resources and give rise to the danger of inconsistent results.

For each of these reasons the Court should conclude that it lacks jurisdiction to hear Plaintiffs' Motion to Vacate.

### C. Plaintiffs Cite No Grounds That Would Entitle Them To An Order Vacating the Arbitration Award

Even if this Court had the authority to hear Plaintiffs' Motion to Vacate, the motion should also be denied because Plaintiffs cite no appropriate grounds to vacate an award under the FAA.

Judicial review of arbitration awards under the FAA is extremely limited. *Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 578 (3d Cir. 2005) ("Review of arbitration awards under the FAA is extremely deferential.") (internal citation and quotations

omitted), *cert. denied*, 126 S. Ct. 1021 (2006); *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1367 (Fed. Cir. 2001) ("[T]he Arbitration Act sets forth that the decision of the arbitration panel is entitled to great deference by the district court.") (internal citation omitted). Accordingly, under section 10 of the FAA, the circumstances in which a court has the power to vacate an arbitration award are "exceedingly narrow." *Metromedia Energy, Inc.*, 409 F.3d at 578; *see also Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) ("A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law.") (internal citation and quotations omitted); 9 U.S.C. § 10.

Section 10 of the FAA provides four grounds upon which a court may vacate an arbitration award:

> (1) Where the award was procured by corruption, fraud, or undue means. (2) Where there was evident partiality or corruption in the arbitrators, or either of them. (3) Where the arbitrators are guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced. (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10[7]

Plaintiffs' Motion to Vacate does not allege a single ground under Section 10 of the FAA that would allow any court to vacate the June 20 Award. Plaintiffs do not allege corruption, fraud, partiality, or misconduct by the arbitrators. Plaintiffs also do not argue that the arbitrators

---

[7] Although the FAA is applicable, the standard for vacating an arbitration award under New Jersey law is nearly identical to Section 10 of the FAA. *See* N.J. Stat. Ann. § 2A:23B-23.

exceeded their authority by ruling upon Plaintiffs' waiver/delay-related claims – which Plaintiffs themselves had submitted to the Panel.

Instead, Plaintiffs appear only to contend that (1) under *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d Cir. 2007), the question of delay/waiver should have been decided by this Court and that this Court should reassert jurisdiction to decide Plaintiffs' delay-related claims; and (2) the arbitrators erred in allegedly misapplying *Ehleiter*. (Motion to Vacate at 9-10, 11.) Neither of these alleged deficiencies is a basis for vacating the arbitration award.

Plaintiffs' first contention – that the Court should simply supplant the decision of the arbitrators and substitute its own judgment for that of the Panel - would violate a fundamental premise of arbitration jurisprudence. *See St. John's Mercy Med. Ctr. v. Delfino*, 414 F.3d 882, 885 (8th Cir. 2005) (holding that the "district court erred in substituting its remedial judgment for that of the arbitrator"); *Watkins v. AIT Worldwide Logistics, Inc.*, 441 F. Supp. 2d 762, 768 (E.D.Va. 2006) ("[T]his court will not substitute [its] judgment for that of the arbitrator, absent a showing of a proper ground for vacatur.") (internal citation and quotations omitted).

Plaintiffs' second contention – that the Panel erred in its application of *Ehleiter* - is not a challenge to the authority of the Panel to make such a decision but merely a claim that the Panel's interpretation of that case was wrong. Where the grounds for a motion to vacate are that the arbitration panel arrived at an incorrect legal conclusion, even a court with jurisdiction to review the arbitration award must give such legal conclusions great deference and may only overturn them if the arbitrators manifestly disregarded the law. *Wallace*, 378 F.3d at 189. However, "manifest disregard of the law" is a "severely limited doctrine," and courts "cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong

call on the law. On the contrary, the award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Id.* at 189-90 (internal citations and quotations omitted). *See also St. John's Mercy Med. Ctr.*, 414 F.3d at 884 (holding that "manifest disregard of the law" is an "extremely narrow" doctrine and that the party asserting its application "bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it"); *Wonderland Greyhound Park, Inc. v. Autotote Sys., Inc.*, 274 F.3d 34, 35-36 (1st Cir. 2001) (explaining that judicial review of an arbitrator's decision is "extremely narrow and exceedingly deferential" and that an arbitral award is only in manifest disregard of the law if "the award is contrary to the plain language of the contract, or it is clear from the record that the arbitrator recognized the applicable law, but ignored it") (internal citations and quotations omitted).

Here, the Panel's decision to decline to find that *Ehleiter* mandated court-resolution of the waiver/delay-related claims is more than colorable; it is correct both under state and Federal law.

The court in *Ehleiter* described the "typical waiver case" as one in which a party opposed arbitration on the grounds of his opponent's having "actively participat[ed] in the underlying proceedings before that court." *Ehleiter*, 482 F.3d at 220. In that case, Ehleiter, filed a complaint against Grapetree Shores, Inc. ("GSI"). GSI answered the complaint and over the next four years participated extensively in discovery by serving and answering interrogatories and document requests, taking depositions, and serving expert reports. Additionally, GSI filed a stipulation certifying that it was ready for trial. After a failed mediation attempt, Ehleiter

requested a trial date from the court. GSI sought a brief continuance and a new trial date was set. Thereafter, GSI filed a motion for summary judgment, and a motion to implead a third-party defendant. On the final day of motions practice under the scheduling order in place, and the day before pre-trial statements and jury instructions were due, GSI moved to stay the case in favor of arbitration. *Id.* at 210. The stay was denied for the reason that GSI had waived its right to arbitrate by actively participating in the underlying litigation. This decision was appealed, and the Third Circuit affirmed finding that the trial-court and not an arbitration panel was "presumptively" the proper body to determine waiver allegations based on litigation conduct occurring before it. *Id.* at 210-11.

As an initial matter, Plaintiffs incorrectly contend that *Ehleiter* controls because it is a Third Circuit decision applicable to the arbitration proceedings subject to New Jersey law. (Motion to Vacate at 5 n.9.) However, *Ehleiter* in fact arose out of a decision from a court in the Virgin Islands. There is no suggestion that it was applying New Jersey law. New Jersey law holds that procedural defenses to arbitrability, such as those alleged by Plaintiffs, are reserved for the arbitrators. *See, e.g., Bd. of Educ. of the Borough of Alpha, Warren County v. Alpha Educ. Ass'n*, 918 A.2d 579, 584 (N.J. Super. Ct. 2006) (matters of procedural arbitrability "should be left to the arbitrator"); *Trentacost v. City of Passaic*, 743 A.2d 349, 352 (N.J. Super. Ct. App. Div. 2000) ("all procedural matters, including the application and effect of contractual periods of limitations and the fulfillment . . . of conditions precedent to arbitration, should be decided by the arbitrators"); *Commerce Bank v. Dimaria Constr., Inc.*, 692 A.2d 54, 57-59 (N.J. Super. Ct. App. Div. 1997) (holding that the timeliness of the arbitration demand was for the arbitrators to determine).



400620618v1

New Jersey law also conforms to Federal law on this point. Under the FAA, the Supreme Court has carefully crafted the limited circumstances in which judicial intervention into the arbitral process is permitted. In *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964), the Supreme Court distinguished the threshold issues of arbitrability (scope and formation of the arbitration clause) from procedural questions related to the arbitration. The *Wiley* court held that "[o]nce it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *Id.* at 557. The Court in *International Union of Operating Engineers v. Flair Builders, Inc.*, 406 U.S. 487, 490-91 (1972), subsequently held that the arbitrators and not the court should decide the question of whether a delay in noticing an arbitration constituted laches that would bar the right to arbitrate.

In *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), the Court expanded on the holdings of *Wiley* and *Flair Builders* and outlined the categories of disputes that are presumptively for a court to decide and those that are presumptively for the arbitrators. *Howsam* concluded that parties to an arbitration provision contracted to have the arbitrators resolve "procedural questions which grow out of the dispute and bear on its final disposition . . . . [such as] allegations of waiver, delay, or a like defense to arbitrability." *Id.* at 84. These questions are presumptively for the arbitrator and not the courts. *Id.*

In the years following *Howsam,* the vast majority of courts that have considered its holding have agreed that allegations of waiver and delay are procedural defenses that are presumptively for the arbitrator – not the court. *See, e.g., Microchip Tech., Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1359 n.7 (Fed. Cir. 2004) ("We note that the Supreme Court has stated

that the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability."); *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n*, 351 F.3d 43, 46 (2d Cir. 2003) (allegation of repudiation of arbitration agreement "most closely resembles the defenses to arbitrability such as waiver, estoppel, or delay that the Supreme Court listed as questions properly decided by arbitrators"); *Exxon Chem. Co. v. Nat'l Labor Relations Bd.*, 386 F.3d 1160, 1166 (D.C. Cir. 2004) ("Exxon's objections that the three grievances were untimely under the contract, and its claims of waiver and estoppel . . . are properly for the arbitrator to resolve [sic].").

The only exceptions to *Howsam* and its progeny are a few cases where courts have concluded that waiver based on conduct before the court remains presumptively an issue for the court to decide. *See, e.g., Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d Cir. 2007); *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 35 (1st Cir. 2005). These cases hold that the courts are in the best position to assess whether a party has in fact waived its right to arbitrate based on the party's conduct before that very court. *See also Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 F.App'x 462, 463-64 (5th Cir. 2004). It is clear, however, that these decisions are limited to waiver due to extensive participation, as a party, in litigation proceedings and do not address waiver, laches, or estoppel based on delay or acquiescence.

PSEG has not "actively participated" in the instant proceedings, and the facts here do not remotely resemble the facts in *Ehleiter*. PSEG opposed every effort to consolidate its case with the case at bar, and PSEG's participation in this case has been limited to opposing a third-party subpoena imposed on it and filing an April 2007 memorandum supporting the arbitration process already underway. That memorandum was served after the Court directed that its March 27,

2007 Show Cause Order be served on PSEG. PSEG is not a party to this suit. Although Plaintiffs now contend in their Motion to Vacate that consolidation may be appropriate, Plaintiffs have previously opposed every effort of the United States to bring PSEG into this suit as a party through consolidation. The facts here hardly rise to the level of "active participation" in litigation of a type found in *Ehleiter*.[8]

The arbitrators properly found the reasoning in *Ehleiter* to be inapplicable to this dispute. June 20 Award at 11-12. The arbitrators noted that *Ehleiter* and the cases cited therein involved parties litigating against each other before the same court; whereas, in this case, the parties have not been litigating the merits of their cases before the same judge. June 20 Award at 11. In fact, as the arbitrators pointed out, "ACE/Delmarva has opposed DOE's consolidation motions that would have put both parties before the same Judge." The arbitrators therefore felt that "in a case, such as this, in which both parties have submitted the issue to arbitration and there is no single court before which both parties' litigation conduct took place," no court was in a better position than they to determine whether PSEG had waived its arbitration rights through its litigation conduct. *Id.* at 12. This conclusion by the Panel is entitled to deference under the above-referenced standards for vacating arbitration awards. It may not simply be disregarded because Plaintiffs disagree with it.

---

[8] Plaintiffs' suggestion that responding to a third-party document subpoena and producing deponents in response to third-party deposition subpoenas is analogous to the conduct of GSI in the *Ehleiter* decision is so far from the mark that it justifies little discussion. So is Plaintiffs' suggestion that PSEG's awareness of this case and pursuit of its own case somehow resemble the type of conduct present in *Ehleiter*. As the Court is well aware, PSEG resisted, in good faith, what it considered to be over-reaching discovery served on it – a non-party. Plaintiffs' contention that this was an effort to delay the Delmarva Litigation is purely a conclusory statement and bears no relation to the conduct discussed in *Ehleiter*.

Furthermore, as Plaintiffs concede, *Ehleiter* states only a "presumption" in favor of a court determining arbitrability; it is not a jurisdictional ruling. *Ehleiter* does not stand for the proposition that an arbitration panel is incompetent to determine litigation-related waiver questions. In fact, the issue addressed in *Ehleiter* was whether a court, not the arbitrators, should make such a determination in light of the overwhelming authority in favor of arbitral resolution of delay-related claims. *Ehleiter* carved out a limited exception for court resolution where there was litigation conduct nowhere present here. If the Court were to hear Plaintiffs' motion and find that the arbitrators were not competent to resolve allegations of waiver, it would be reversing years of arbitration jurisprudence to the contrary.

The posture of *Ehleiter* is also worth considering. In *Ehleiter*, the court made a determination that the right to arbitration had been waived when GSI moved to stay litigation in favor of arbitration on the eve of trial. Unlike the present case, in *Ehleiter* no arbitration ever took place and the party resisting arbitration did not submit the waiver issue in question to arbitration as Plaintiffs have done here.

Finally, there is nothing in *Ehleiter* to indicate that the parties there had adopted the Commercial Rules of the American Arbitration Association ("AAA Rules"), as did the parties here in Section 8.3 of the PAs. The AAA Rules confer jurisdiction on the Panel to resolve questions related to arbitrability. *See* AAA Rules, R. 7 ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.") *See also Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1372-73 (Fed. Cir. 2006) (holding that because the parties' agreement incorporates the AAA Rules and the AAA Rules provide that an arbitration panel has the power to rule on its own

jurisdiction, the "clear and unmistakable intent" of the parties was to "delegate the issue of determining arbitrability" to the arbitrators).

Rule 7 gave the arbitrators, and not the court, the ability to decide the delay issue. The AAA Rules alone are dispositive of Plaintiffs' late-arising effort to avoid the arbitrators' finding of jurisdiction.

### D. The Arbitrators Correctly Concluded That Plaintiffs Assigned Their Claims To PSEG

While Plaintiffs contend that they are not challenging the substance of the arbitration award, (Motion to Vacate at 1), Plaintiffs go to great lengths to argue the merits. A brief reply shows that their position has no merit.

Plaintiffs rely on the Anti-Assignment Act (also commonly referred to as the Assignment of Claims Act), 31 U.S.C. § 3727 (2007), to argue that they could not have assigned their takings claims to PSEG because such claims are unassignable as a matter of law under the Act. Plaintiffs' reliance on the Anti-Assignment Act is misplaced.

The Anti-Assignment Act was adopted exclusively for the benefit and protection of the government; <u>it does not determine the rights as between private parties</u>. Plaintiffs may not rely on it. *See McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369 (1945) ("The provisions of the statute governing assignments of claims against the Government are for the protection of the Government and not for the regulation of the equities of the claimants as between themselves."); *Centron Corp. v. United States*, 585 F.2d 982, 986 n. 3 (Ct. Cl. 1978) ("The Act . . . does not invalidate any contractual rights or equities as between the private parties to an assignment that does not satisfy the Act.") (internal citations omitted); *United States v. Certain Space In the*

*Property Known As the Chimes Bldg.*, 320 F. Supp. 491, 496 (N.D.N.Y. 1969) ("The Anti-Assignment Act is for the government's protection and only the United States may assert it."), *aff'd,* 435 F.2d 872 (2d Cir. 1970); *Arthur Pew Constr. Co. v. Lipscomb*, 965 F.2d 1559, 1576 (11th Cir. 1992) ("The assignment statutes are for the protection of the government. They do not regulate the rights of parties to an assignment . . . [and] [w]hether or not an assignment is valid as against the United States, it is effective and binding on the parties.") (internal citation omitted); *Saint John Marine Co. v. United States,* 92 F.3d 39, 45 (2d Cir. 1996) (assignment voided by the Anti-Assignment Act "remains enforceable as between the parties to the assignment") (internal citations omitted); *Transamerica Assurance Corp. v. United States*, 423 F. Supp. 2d 691, 695 n.2 (W.D. Ky. 2006) ("The Act, however, does not affect the rights of parties to an assignment.") (internal citation omitted), *aff'd*, 489 F.3d 256 (6th Cir. June 5, 2007).

Plaintiffs have been unable, either in arbitration or before this Court, to identify a single case where a private party successfully asserted the Anti-Assignment Act to invalidate its contractual obligations to another private party. They have not done so because the law is to the contrary. *See Certain Space In the Property Known As the Chimes Bldg.*, 320 F. Supp. at 496 (Upholding an assignment between the private parties because "SID's assertion that the assignment is void is without merit. The Anti-Assignment Act is for the government's protection and only the United States may assert it."), *In re Lagerstrom*, 300 F. Supp. 538, 540 (S.D. Ill. 1969) (Upholding the assignment between the private parties because the Assignment of Claims Act "is meant for the protection of the United States" and noting that "though an assignment may not comply with the terms of this section, the assignment may, nevertheless, be enforceable between the parties to the assignment.") (internal citation and quotations omitted); *In re Metric Metals Int'l, Inc.*, No. 80 CV 5414 (HFW), 1981 U.S. Dist. LEXIS 10124, at *8

(S.D.N.Y. Nov. 9, 1981) (holding that the Assignment of Claims Act "would not invalidate the assignment in question as between the parties to the assignment, even though it may not have been valid as against the United States"); *King v. Gilbert*, 569 F.2d 398, 398 (5th Cir. 1978) (holding that the assertion of an assignment as being invalid was erroneous because the Assignment of Claims Act "was enacted to protect the federal government from conflicting claims and that between the [private] parties effect might still be given to an assignment that failed to comply with the statute") (*citing Segal v. Rochelle*, 382 U.S. 375, 384 (1966)).[9]

Whether or not the Anti-Assignment Act prevents PSEG from asserting takings claims against the government, the law is clear that the rights of private parties are unaffected by the Anti-Assignment Act. The Panel's conclusion that Plaintiffs assigned their claims to PSEG is sound both in law and reason, as are the other decisions challenged by Plaintiffs.

---

[9] Plaintiffs' argument that there is something unique about a takings claim is unsupported. Plaintiffs' cited cases say nothing about the enforcement of assignments between private parties for such claims and do nothing to negate the substantial authority to the contrary. *See* (Motion to Vacate at 3 n. 2.)

## III. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Vacate.

Dated: August 8, 2007

Respectfully submitted,

_ s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102-4859
(703) 770-7940
(703) 770-7901 (fax)
Counsel of Record for
PSEG Nuclear, L.L.C. and
Public Service Electric and Gas Company

Of Counsel:

Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037-1128
(202) 663-8000
(202) 663-8007 (fax)