# EXHIBIT

# C

Pepco Holdings, Inc

701 Ninth Street NW
Washington, DC 20068

Thomas S. Shaw
Executive Vice President
Chief Operating Officer

202 872-2157
302 429-3221

RECEIVED
OFFICE OF THE
PRESIDENT AND COO
FEB 26 ...
PSEG POWER LLC

February 22, 2007

Mr. Frank Cassidy
President and COO
PSEG Power LLC
80 Park Place – 4th Floor
Newark, NJ 07102-4194

Dear Frank:

Once again I must express my disappointment at PSEG Power's ("PSEG") attempts to forestall my Company's efforts to protect customers of Atlantic City Electric Company ("Atlantic") from the economic harm caused them by the U.S. Department of Energy's failure to abide by its legislative mandate with regard to establishing a permanent repository for Spent Nuclear Fuel ("SNF"). Since the enactment of the Nuclear Waste Policy Act in 1982, our customers have paid many millions of dollars in SNF fees, and I suspect your New Jersey utility's customers have paid considerably more. As I noted in my October 14, 2005 correspondence to you on this subject, it is our belief and position that our respective SNF litigation claims do not overlap, and are indeed mutually exclusive of one another. In that regard, we had hoped that PSEG would cooperatively support and assist our efforts on behalf of our customers.

Unfortunately, and as stated in my October 14, 2005 letter to you, that has not been the case. Rather, PSEG, as well as its affiliate Public Service Electric and Gas Company ("PSE&G"), have availed themselves of every opportunity to impede the litigation that we have brought for the benefit of our customers, including causing us to incur substantially higher litigation costs through your unwillingness to provide essential documentation in your possession which is required for the prosecution of our claims. For example, as recently as three weeks ago, we requested from the decommissioning study vendor for Salem and Hope Creek, TLG Services ("TLG"), copies of certain workpapers that were prepared by TLG while we were still an owner of Salem and Hope Creek, and for which we paid our proportionate share of the costs to prepare. We were advised that the requested material would not be provided without the consent of PSEG, which consent has been requested but has not been provided. We will now have to incur further substantial, and unnecessary, expense to subpoena those documents.

This recent example of PSEG's unwillingness to provide essential documents in its possession follows a past pattern of such conduct by PSEG. In August, 2005, after Judge C. Miller scheduled Atlantic's case for trial in May, 2006 and after she commented that many essential documents were likely in the possession of PSEG (and PECO), our counsel met with your counsel to seek your cooperation with respect to document production. PSEG refused to provide Atlantic access to key documents at that time, forcing us to issue a subpoena to PSEG in October 2005. As noted above, we continue to have to resort to the use of subpoenas, at significant cost and time delay to Atlantic and its customers, in order to gain access to documents to which Atlantic has always been entitled. I would further note that at no time during our efforts to obtain such documents did your counsel express any objection to our pursuing our claim.

Your continued efforts to impede the progress of our SNF litigation ultimately resulted in our having to advise Judge Miller in September, 2005 of our inability to gain access to essential documents in PSEG's possession. This conduct resulted in our inability to timely develop our Expert Reports and required us to seek a suspension of our procedural schedule, including the deferral of our trial date to a now unspecified date that will likely be well into the future. The costs of that delay will be significant and would not have been necessary but for PSEG's efforts to impede our case from moving forward.

Most recently, the Government filed a Motion to Consolidate our respective cases. Rather than support our objection to that Motion, PSEG's counsel filed, under seal, a Motion to Stay the proceedings. That filing will likely further impede and delay the prosecution of our case. As noted above, PSEG's conduct to date has caused Atlantic, and, therefore, its customers, to incur substantial and unnecessary legal fees and expenses, which we are obligated to explain and justify to the NJBPU.

I will not repeat here the legal and constitutional bases upon which our claims are founded. My October 14, 2005 letter to you more than adequately sets that forth in detail, and is incorporated herein by reference. Further, as noted in my October 14 correspondence, after PSEG's SNF case was dismissed by the Court, we amended our complaints to assert a protective breach of contract claim. At the time that we amended our claim to assert breach of contract, we informed both your counsel and the Court that upon reinstatement of your breach claim, after appeal, we would seek a voluntary dismissal of our protective breach of contract filing. Due to the recent reinstatement of PSEG's claim, I have instructed our attorney to advise the Court that we are withdrawing our breach of contract claim. For the reasons set forth in my October 14, 2005 letter, however, we will continue to actively and aggressively pursue all our legal and constitutional rights against the United States as set forth in our original 2004 Complaint filed with the United States Court of Federal Claims ("COFC").

I believe it is important to make one additional comment in response to your January 31, 2007 letter, which relates to the timing of your current and prior correspondence to me. The following is a brief chronology of relevant events in this regard. In December, 2003 representatives on our behalf met with your counsel, Tony Borden, as well as representatives from PSE&G, to advise you of

our intention to file our complaint and the constitutional basis upon which it was being filed, i.e. a Fifth Amendment "taking" by the United States. We expressly stated that we did not intend to assert a breach of contract claim against the government because we believed that any breach claim had been transferred to PSEG as part of the asset sale. We further informed you that we did not believe our respective claims were in conflict with one another. No one from PSEG or PSE&G voiced any objection to our filing a Fifth Amendment Takings complaint. One month later, in January, 2004, we filed our complaint with the COFC alleging a Fifth Amendment "taking" of our property by the United States.

It was not until nearly two years later, and after we had expended considerable funds in preparing and prosecuting our claim, that PSEG first wrote to express its views with respect to what was and was not transferred as part of the sale of our nuclear assets to you (and Philadelphia Electric Company). Over the course of the next 30 days we exchanged letters in that regard, including the aforementioned October 14 letter from me to you, after which we heard nothing further from you for the next 15 months. During that 15 month period we continued to expend significant funds for the litigation of our SNF claim, a large portion of which were incurred seeking discovery of documents from you which, over your objection, Judge Christine Miller of the COFC concluded you were obligated to provide. While I am not an attorney, I am advised that there are certain legal principles under these circumstances that preclude you from asserting the alleged contractual rights against us that you claim to possess.

Our commitment to protect and pursue the rights of our customers, and to seek redress from the United States for its taking of the value of those rights is as firm today as it was when we first advised you over three years ago of our intentions in this regard. We have every intention of continuing to seek the lost economic value experienced by our customers as a result of the government's SNF failures. As we have repeatedly explained to PSEG, we do not believe that our efforts in this regard will in any way be harmful to PSEG. We continue to hope that you will reach that conclusion as well, so that we can begin to work in a cooperative manner with regard to our respective SNF litigation claims.

In your January 31, 2007 letter you request a meeting with me, pursuant to Section 8.3(a) of the Purchase Agreements between us to attempt to resolve our differences. You further suggest that such meeting take place at our King Street offices in Wilmington, DE beginning at 10am on March 16, 2007. I am available for such a meeting at the time and location you have proposed. Please be advised that in addition to myself, I expect to have both internal and outside counsel present at the meeting. Unless I hear to the contrary, I look forward to seeing you on March 16th.

Very truly yours,

Thomas S. Shaw