# EXHIBIT

# F

**IN THE MATTER OF THE ARBITRATION OF:**

**ATLANTIC CITY ELECTRIC CO. and**
**DELMARVA POWER AND LIGHT CO.,**

**Claimants,**

**v.**

**PSEG POWER LLC and**
**PSEG NUCLEAR LLC,**

**Respondents.**

**AMENDED ARBITRATION DEMAND OF**
**ATLANTIC CITY ELECTRIC CO. and**
**DELMARVA POWER AND LIGHT CO.**

By an Arbitration Demand dated April 5, 2007, Respondents PSEG Power LLC and PSEG Nuclear LLC (collectively "PSEG") initiated an arbitration against Pepco Holdings, Inc., Atlantic City Electric Co. ("ACE") and Delmarva Power and Light Co. ("Delmarva") under certain Purchase Agreements ("PAs") by which ACE and Delmarva ("Claimants") sold certain nuclear power plant assets to Respondents.[1] Respondents' Demand seeks a declaration that Claimants are not entitled to pursue lawsuits they initiated against the Department of Energy

[1] The PAs at issue are: (1) the Purchase Agreement between Delmarva and PSEG Power LLC dated September 27, 1999 for Delmarva's 7.41% interest in the Salem Station; (2) the Purchase Agreement between ACE and PSEG Power LLC dated September 27, 1999 for ACE's 7.41% interest in the Salem Station; and (3) the Purchase Agreement between ACE and PSEG Power LLC dated September 27, 1999 for ACE's 5.0% interest in the Hope Creek Station. It should be noted that Pepco Holdings, Inc. is not a party to the PAs or to the litigation described in this Demand.

("DOE") in the United States Court of Federal Claims ("USCOFC") in January 2004.[2] Claimants hereby seek arbitration of their claim that Respondents are precluded from asserting a right to arbitrate this matter. Simply stated, by delaying the initiation of this arbitration by more than three years, and participating in litigation in which the very issues PSEG seeks to arbitrate are pending, PSEG has forfeited its right to arbitrate its objections to Claimants' lawsuits. In any event, Respondents' claims fall outside the scope of the PAs and are not subject to arbitration.

## I. The Dispute

ACE and Delmarva advised PSEG in December 2003 that they intended to initiate actions against DOE, alleging that DOE's failure to remove spent nuclear fuel ("SNF") from the Salem and Hope Creek Stations constituted an unconstitutional "taking" under the Fifth Amendment. Those actions were initiated on January 13, 2004. PSEG raised no objection prior to, or in the months following, the institution of the litigation.[3] That is not surprising because the "takings" claim is by law not a claim that private parties can assign or affect by mutual agreement,[4] and thus does not fall within the meaning of "claims" as that term is used in the assignment provisions of Section 2.1 of the PAs. Therefore, Respondents' dispute is not one "relating to or arising out of any provision of this Agreement" subject to the dispute resolution procedures of Section 8.3 of the PAs and accordingly is not subject to this arbitration.

---

[2] *Delmarva Power & Light Co. v. The United States*, USCOFC No. 04-34C and *Atlantic City Electric Co. v. The United States*, USCOFC No. 04-36C. These lawsuits, both filed on January 13, 2004, were consolidated by a January 21, 2005 Order.

[3] To the contrary, PSEG Counsel, in an April 20, 2005 letter to counsel for ACE and Delmarva, stated among other things, that "PSEG Nuclear understands that Delmarva is pursuing various legal theories, such as diminution in value, which PSEG Nuclear simply has no interest or desire to prosecute or defend."

[4] The transfer or assignment of claims against the U.S. government, including "takings" claims, is prohibited by the Anti-Assignment Act, 31 U.S.C. §3727, unless certain limited exceptions (not relevant here) apply.

In fact, it was not until almost two years after Claimants initiated the litigation against DOE, on October 6, 2005, that PSEG first alleged that those "takings" claims had been transferred by ACE and Delmarva to PSEG by, and pursuit of them was a contractual breach of, the PAs.[5] In response, ACE and Delmarva informed PSEG that their claims did not violate the PAs and that they would continue to vigorously pursue them. It was not for another 15 months that PSEG gave notice that it intended to challenge ACE and Delmarva's right to pursue their claims against DOE under the arbitration provisions of the PAs. In short, PSEG – despite its clear knowledge of, and even participation in,[6] the USCOFC litigation -- "sat" on its objections to ACE's and Delmarva's lawsuits for 37 months.

In the meantime, PSEG has also been pursuing its own claims against DOE,[7] and is now attempting to settle that litigation. It appears that DOE has suggested that PSEG must, as a condition of settlement, relieve DOE of having to litigate the ACE and Delmarva claims against DOE. See PSEG's Demand at pp. 2 and 3 ( the litigation is "interfering with PSEG's ability to resolve its claims against DOE" and "the government has refused to settle PSEG's suit without a concurrent settlement of Respondents' claims."). While discovery will shed additional light on this matter, it thus appears clear that the sudden attempt to initiate this arbitration after a 37-month delay is a function not of Respondents' view that they are entitled to arbitrate, but rather their response to inappropriate pressure from the government to make Claimants' case against DOE "go away."

---

[5] PSEG took this position only after the Government's motions for summary judgment, which were based in part on the Government's contention that ACE and Delmarva lacked standing because their claims had been assigned to PSEG under the PAs, were denied by the Court. Memorandum Opinion and Order, USCOFC Nos. 04-34C and 04-36C, July 1, 2005.

[6] *See* page 5 below.

[7] *PSEG Nuclear, L.L.C. v. United States*, USCOFC No. 01-551C (Fed. Cl. filed Jan. 26, 2001).

In fact, shortly after PSEG's notice initiating this arbitration, the government moved to stay the USCOFC litigation. ACE and Delmarva opposed the stay on the grounds that, *inter alia*, PSEG's delay in initiating the arbitration would likely result in a finding that it had forfeited its right to arbitration under the PAs. The Court observed that PSEG's delay "should be a relevant factor in the arbitration proceeding . . .particularly in light of the extended time period between PSEG's initial objections and the initiation of arbitration proceedings," and cautioned that the Court would address the issue should the arbitrators fail to do so.[8] While the Court

[8] The Court stated:

> Should the arbitrators fail to consider delay in the arbitration proceeding, the court cautions parties that it will address the issue of PSEG's delay in consideration of plaintiffs' claims, particularly in light of PSEG's active participation in prosecution of PSEG and PSEG's awareness of the proceedings in this case. "Courts may refuse to enforce arbitration agreements on a number of grounds, and federal courts have consistently held that among those grounds is a waiver of the right to arbitrate." St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co., 969 F.2d 585, 587 (7th Cir. 1992) (affirming district court's finding of implied waiver of right to arbitrate, in part, due to ten-month delay in commencing arbitration); see also Int'l Union v. Cummins, Inc., 434 F.3d 478, 486 (6th Cir. 2006) ("Laches is an equitable defense to an arbitration that is properly considered by the court rather than by the arbitrator. The laches inquiry consists of two elements: (1) whether there was unwarranted delay, and (2) whether the delay was detrimental to the party raising the defense." (internal citations omitted)); Gunn v. Veterans Admin. Med. Ctr., 892 F.2d 1036, 1040 n.4 (Fed. Cir. 1990) (noting that "the principles of laches and estoppel because of delay pertain to the initiation of a grievance or arbitration, not to delay or dilatoriness during the course of the proceedings"); Miller Brewing Co. v. Fort Worth Distrib. Co., 781 F.2d 494, 497 (5th Cir. 1986) ("Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party."); Cornell & Co. v. Barber & Ross Co., 360 F.2d 512, 513 (D.C. Cir. 1966) ("The right to arbitration, like any other contract right, can be waived. A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right." (internal citations omitted)).

found that PSEG's delay did not "necessarily require[] a denial of defendant's request to stay proceedings,"[9] and ultimately granted "[a] one-time stay," it did so "without prejudice to plaintiffs' position regarding delay and laches and/or waiver or estoppel in connection with PSEG Nuclear's demand for arbitration."[10]

If PSEG is permitted to arbitrate its objections to the USCOFC litigation following this inexcusable delay, it will be to the substantial prejudice of ACE and Delmarva, who have expended considerable time, effort and resources pursuing their claims against DOE. During the 37-month period that PSEG had full knowledge of ACE's and Delmarva's claims and their intent to pursue them, ACE and Delmarva incurred in excess of $3.5 million in fees and costs in pursuing the USCOFC litigation. PSEG has unnecessarily magnified Claimants' expense by failing to cooperate in the production of essential documents. ACE and Delmarva were required to file a motion to compel PSEG to produce those documents. PSEG unsuccessfully resisted that motion, on the very ground, *inter alia*, that underlies its arbitration demand – to wit, that "[ACE] and Delmarva transferred all claims against the Department of Energy to PSEG" under the PAs.[11] PSEG went so far as to assert that the claims pending before the USCOFC were subject to the arbitration provisions of the PAs.[12] Nonetheless, Respondents elected once again not to initiate an arbitration proceeding, choosing again to wait for more than another year to do so. Claimants assert that PSEG has forfeited, and is precluded from arbitrating its objections to the

---

Order to Show Cause, March 27, 2007, *Delmarva Power & Light Co. v. The United States*, USCOFC No. 04-34C and *Atlantic City Electric Co. v. The United States*, USCOFC No. 04-36C.

[9] *Id.*

[10] Order, April 12, 2007, *Delmarva Power & Light Co. v. The United States*, USCOFC No. 04-34C and *Atlantic City Electric Co. v. The United States*, USCOFC No. 04-36C.

[11] Expedited Response of Third-Party PSEG Nuclear, LLC to Plaintiffs' Motion to Compel, January 18, 2006, at 5-6.

[12] *Id.*

litigation (a) which has been underway for more than three years and (b) in which the very issue that PSEG seeks to arbitrate – the scope of the assignment of Claimants' claims against the government to PSEG – is currently pending.

## II. Arbitration Claim

Section 8.3 of the PAs provides for arbitration of any dispute between Seller and Buyer "... relating to or arising our of any provision of this Agreement." In accordance with that provision, by letter dated March 15, 2007, ACE and Delmarva gave their Notice of Dispute to PSEG. As agreed by the parties, the March 16, 2007 meeting of executives in connection with the January 31, 2007 Notice of Dispute given by PSEG to ACE and Delmarva, also served as the meeting of executives for discussing ACE's and Delmarva's March 15, 2007 Notice of Dispute. No resolution of either dispute was reached at that meeting.

ACE's and Delmarva's claim is that PSEG's January 31, 2007 Notice of Dispute and April 5, 2007 Arbitration Demand are not valid because PSEG is barred by the doctrines of *laches* and estoppel from asserting a right to invoke arbitration and, in any event, PSEG's asserted claims are not subject to the arbitration clause of the PAs.

ACE and Delmarva expressly assert that their claim is a threshold issue that goes directly to the jurisdiction of this arbitral panel and, for this reason, must be resolved prior to any consideration by the panel of the merits of PSEG's claims. Moreover, it would be manifestly unfair to Claimants if they are required to put their full case on the merits before this arbitral panel, to the benefit of DOE and PSEG, in advance of putting that case before the USCOFC, which has retained jurisdiction of both the delay and the scope of assignment issues, and where Claimants have already invested substantial resources in discovery in preparation for the trial on the merits in that tribunal.

Accordingly, ACE and Delmarva seek:

1) the arbitral panel's consideration of ACE's and Delmarva's claim, that PSEG's January 31, 2007 Notice of Dispute and April 5, 2007 Arbitration Demand are not valid, as a threshold issue separately and in advance of any consideration of PSEG's April 5, 2007 Arbitration Demand;

2) a declaration that PSEG's January 31, 2007 Notice of Dispute and April 5, 2007 Arbitration Demand are not valid because PSEG is barred by *laches* and estopped from pursuing those arbitration claims and, in any event, PSEG's claims are not subject to the arbitration clause;

3) the dismissal of PSEG's arbitration claims set forth in its January 31, 2007 Notice of Dispute and April 5, 2007 Arbitration Demand.

Dated: April 23, 2007

Respectfully submitted,

Frederick M. Lowther
DICKSTEIN SHAPIRO LLC
1825 Eye Street, NW
Washington, DC 20006
Tel: (202) 420-2200
Fax: (202) 420-2201