**No. 04-0034C, into which has been consolidated No. 04-0036C**
**(Judge Christine O.C. Miller)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**DELMARVA POWER & LIGHT COMPANY,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO VACATE ARBITRATION RULING

---

**Richard J. Conway**
**DICKSTEIN SHAPIRO LLP**
**1825 Eye Street, NW**
**Washington, DC 20006**
**Tel: (202) 420-2200**
**Fax: (202) 420-2201**

**Attorney for Plaintiffs**

**Of Counsel:**
**Frederick M. Lowther**
**Beth L. Webb**
**Nicholas W. Mattia, Jr.**
**DICKSTEIN SHAPIRO LLP**
**1825 Eye Street, NW**
**Washington, DC 20006**

**Todd Goodman, Esq.**
**Assistant General Counsel**
**Conectiv**
**P. O. Box 231**
**Wilmington, DE 19899**

**August 20, 2007**

# TABLE OF CONTENTS

I. INTRODUCTION........................................................................................................ 1

II. UNDER *EHLEITER*, THIS COURT, NOT THE ARBITRATION PANEL, SHOULD CONSIDER THE ARBITRABILITY OF PSEG'S ALLEGATIONS....... 2

A. The Government's And PSEG's Jurisdictional Argument Has No Merit ...... 2

B. Neither The Government Nor PSEG Can Show That Plaintiffs Waived The Right To Ask This Court To Act.................................................................. 5

C. PSEG's Delay Deprived It of the Right to Arbitrate. ........................................ 7

III. THE GOVERNMENT'S CHALLENGE TO THE MERITS OF PLAINTIFFS' TAKINGS CLAIM IS MISPLACED................................................................... 9

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bay Ship Management, Inc. v. United States*, 43 Fed. Cl. 535 (1999)................................3

*Brown v. United States*, 74 Fed. Cl. 546 (2006) ..............................................................3

*Colonial Navigation Co. v. United States*, 149 Ct. Cl. 242, 181 F. Supp. 237 (1960)..........................................................................................................9, 11

*Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512 (D.C. Cir. 1966)................................5

*Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d Cir. 2007) .............................*Passim*

*Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005)...................................................3

*Gunn v. Veterans Admin. Medical Ctr.*, 892 F.2d 1036 (Fed. Cir. 1990)...........................5

*Henke v. United States*, 60 F.3d 795 (Fed. Cir. 1995) .......................................................3

*International Union v. Cummins, Inc.*, 434 F.3d 478 (6th Cir. 2006) ...............................4

*Locke v. U.S.*, ---, Fed. CL.---, No. 06-629T, 2007 U.S. Claims LEXIS 218 (July 10, 2007) .........................................................................................................3

*Miller Brewing Co. v. Fort Worth Distributing Co.*, 781 F.2d 494 (5th Cir. 1986)...........5

*New Hampshire v. Maine*, 532 U.S. 742 (2001)..............................................................10

*Paalan v. United States*, 51 Fed. Cl. 738 (2002) ...............................................................3

*Portland Gen. Elec. Co. v. United States*, 1 Cl. Ct. 232, 234 (1982) ................................3

*Rochester Gas & Electric Corp. v. United States*, 65 Fed. Cl. 431 (2005) ..............*Passim*

*Saint John Marine Co. v. United States*, 92 F.3d 39 (2d Cir. 1996).................................10

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ...........................................................................3

*St. Mary's Medical Ctr. of Evansville, Inc. v. Disco Aluminum Products Co.*, 969 F.2d 585 (7th Cir. 1992) ........................................................................................4

*United States v. Dow*, 357 U.S. 17 (1958) ..........................................................*Passim*

## DOCKETED CASES

*PSEG Nuclear, L.L.C. v. United States*, No. 01-551C (Fed. Cl. filed Jan. 26, 2001) .................................................................9, 13

## FEDERAL STATUTES

9 U.S.C. § 10 (2007) .....5

28 U.S.C. § 1491 (2007) .....2

## MISCELLANEOUS

18 *Moore's Federal Practice* § 134.30 .....10

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DELMARVA POWER & LIGHT COMPANY,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **THE UNITED STATES,** <br><br> **Defendant.** | ) | **No. 04-0034C, into which has been consolidated No. 04-0036C (Judge Christine Miller)** |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION**
**<u>TO VACATE ARBITRATION RULING</u>**

## I. INTRODUCTION

Plaintiffs – and this Court – are confronted with the extraordinary circumstance of an arbitration proceeding and an award occurring nearly three and one half years into this case, with the purported effect of extinguishing significant claims (brought for the benefit of regulated electric customers) against the Government arising under the United States Constitution. Neither the Government nor PSEG denies that effect. Yet the United States Supreme Court (in *United States v. Dow*, 357 U.S. 17 (1958)) and this Court (in *Rochester Gas & Electric Corp. v. United States*, 65 Fed. Cl. 431 (2005)) have made clear beyond doubt that the Government's obligations under the Fifth Amendment <u>cannot</u> be extinguished in this manner. Ironically, and most telling, as was the case in the arbitration proceeding, both the Government and PSEG fail even to mention *Dow* or *Rochester Gas*, as if ignoring them will somehow cause this Court to disregard them.

Despite the Government and PSEG's assertions to the contrary, Plaintiffs are not asking this Court to overturn the arbitration award on the merits. The substance of the award will be addressed, if necessary, in the New Jersey state court in which PSEG seeks confirmation

of the award. However, Plaintiffs submit that this Court should render the New Jersey confirmation proceeding moot by finding that, despite the award, Plaintiffs' claims can and should proceed in this forum.

## II. UNDER *EHLEITER*,[1] THIS COURT, NOT THE ARBITRATION PANEL, SHOULD CONSIDER THE ARBITRABILITY OF PSEG'S ALLEGATIONS.

### A. The Government's And PSEG's Jurisdictional Argument Has No Merit

The Government and PSEG state that, under the Tucker Act, 28 U.S.C. §1491 (2007), this Court has jurisdiction to consider only claims for money damages against the United States founded upon the Constitution, federal statute or regulation, or an express or implied contract with the United States, and, that this Court has no jurisdiction to adjudicate disputes between private parties. Relying on these broad legal principles, they maintain that this Court is without jurisdiction to consider Plaintiffs' Motion to Vacate. *See* Defendant's Response To Plaintiffs Motion' To Vacate Arbitration Ruling ("Gov't Opp.") at 2; Opposition Of Third-Parties PSEG Nuclear LLC And Public Service Electric And Gas Company To Plaintiffs' Motion To Vacate Arbitration Ruling ("PSEG Opp.") at 9-13.

The Government and PSEG are incorrect. This Court is currently exercising jurisdiction over Plaintiffs' claims that the Government has taken Plaintiffs property and must pay just compensation for that taking. The arbitrators' award concluded that all of Plaintiffs' claims -- including its Constitutional takings claims -- were assigned to PSEG. If this Court must simply accept that award (as the Government and PSEG assert), it will extinguish Plaintiffs' claims in exactly the same manner as would the grant of a motion to dismiss or motion for summary judgment issued by this Court on jurisdictional grounds.[2] As this Court recently

---

[1] *Ehleiter v. Grapetree Shores, Inc.* 482 F.3d 207 (3d Cir. 2007)

[2] Indeed, if Plaintiffs were to withdraw their Motion to Vacate, presumably either the Government or PSEG – which is a party to this case, at least for the "purpose of resolving the arbitrability of the transfer claim and the effect of an arbitration award," ( July 30, 2007 Order at 1) – would move to dismiss on the basis of the award. There is no question that this Court would have jurisdiction over such a motion, which would put the parties in exactly the same position, and the Court in the same jurisdictional posture, as does the Motion to Vacate.

observed in *Locke v. U.S.*, --- Fed. CL.---, No. 06-629T, 2007 U.S. Claims Lexis 218, at *8 (July 10, 2007):

> When a federal court hears such a jurisdictional challenge, "its task is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id*. The court must accept as true the facts alleged in the complaint, and must construe such facts in the light most favorable to the pleader. *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (holding that courts are obligated "to draw all reasonable inferences in plaintiff's favor").

*Id.*; *see Brown v. United States*, 74 Fed. Cl. 546, 548 (2006); *Paalan v. United States*, 51 Fed. Cl. 738, 742 (2002). The Court added:

> The Federal Circuit adopted a single-step approach to addressing whether a constitutional provision, statute, or regulation is money-mandating and, therefore, within the jurisdiction of the Court of Federal Claims: "When a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation, . . . the trial court at the outset shall determine, either in response to a motion by the Government or *sua sponte*[,] . . . whether the Constitutional provision, statute, or regulation is one that is money-mandating.
>
> If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course. . . ."

*Id*. at *12-*13 (alterations in original) (quoting *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005)).

This proceeding clearly satisfies that test because it involves a claim for money damages against the United States that is founded upon the United States Constitution (and, on a protective basis, on contract),[3] and this Court is in fact already exercising jurisdiction over this case.[4] The issue of the validity of the assignment clause to transfer Plaintiffs' takings and

---

[3] *Portland Gen. Elec. Co. v. United States*, 1 Cl. Ct. 232, 234 (1982), on which PSEG relies in its opposition brief at pages 10-11, is distinguishable, because the only claim asserted against the United States was for equitable relief. The Court held: "no claim to money damages against the United States . . . is pleaded. Accordingly, and on [that] ground alone, defendant's argument of lack of jurisdiction is upheld." *Id*. at 234.

[4] This Court has jurisdiction to determine its own jurisdiction. *See Bay Ship Mgmt., Inc. v. United States*, 43 Fed. Cl. 535, 536 (1999) ("A court is required to determine its own jurisdiction, *sua sponte*, whenever it appears it may be lacking.") A private agreement of the

contract claims to PSEG is already an issue in this proceeding. In its July 1, 2005 Memorandum Opinion and Order denying the Government's motion for summary judgment, this Court noted that the Government had challenged "plaintiffs' standing based on the assignment of their [breach of contract and covenant of good faith and fair dealing] claims to the purchasers." In its April 12, 2007 Corrected Order To Show Cause, the Court explained its July 1, 2005 decision, noting that it was "not impressed with [defendants' assignment of claims] argument, given the litigation position the Government has taken in these cases.'" *See id.* at 6 (alteration in original) (citing July 1, 2005 Order at 3). It added that it "has not addressed the issue of the impact of the assignment of claims directly" and has "permitted plaintiffs 'protectively' to develop their breach of contract claims due to defendant's inconsistent positions in PSEG and this case. Also, this court has ruled that a material issue of fact exists as to the question of plaintiffs' takings claim independent of the rights created by the Standard Contract." *Id.* at 7.

Plaintiffs' Motion to Vacate requests the Court determine first that it, not the arbitration panel, is the appropriate forum to determine whether PSEG has waived any right to arbitrate it may have had; and, second that, because PSEG has waived its right to arbitrate, the Court is not bound by the arbitrators' decision and can (and should) lift its stay of this proceeding to permit Plaintiffs to continue prosecution of their claims against the Government. Because there is no question that Plaintiffs' claims meet the jurisdictional standard and the arbitrability issues are already before it, the Court has jurisdiction to resolve these questions. As this Court recognized in its April 12 Order at 9, "Courts may refuse to enforce arbitration agreements on a number of grounds, and federal courts have consistently held that among those grounds is a waiver of the right to arbitrate" resulting, for example, from unwarranted delay detrimental to the party raising the defense. *See id*. (citing *St. Mary's Med. Ctr. of Evansville, Inc*. v. *Disco Aluminum Prods Co.*, 969 F.2d 585, 587 (7th Cir. 1992); *Int'l Union v. Cummins,*

---

parties cannot change this power of the Court. *See* PSEG Opp. at 21-22 (arguing that the parties' agreement to arbitrate under AAA rules strips this court of such jurisdiction).

*Inc.*, 434 F.3d 478, 486 (6th Cir. 2006); *Gunn v. Veterans Admin. Med. Ctr.*, 892 F.2d 1036, 1040 n. 4 (Fed. Cir. 1990); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986); *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966)). Thus, there is no jurisdictional bar that would require this Court to defer to an arbitrators' decision improperly issued after a party's waiver of the right to arbitrate.

Finally, while PSEG also maintains that Plaintiffs' Motion to Vacate fails to allege grounds for vacating the arbitration award under section 10 of the Federal Arbitration Act, 9 U.S.C. § 10 (2007) (" FAA") (*see* PSEG Opp. at 13-22), the FAA is inapplicable here. Plaintiffs are not requesting this Court to review and overturn the arbitration award on its merits as contemplated by Section 10 of the FAA.[5] That issue will be addressed by Judge Shuster in New Jersey state court, if it becomes necessary.[6]

### B. Neither The Government Nor PSEG Can Show That Plaintiffs Waived The Right To Ask This Court To Act.

Contrary to the contentions of the Government (Gov't Opp. at 4-5 n.3) and PSEG (PSEG Opp. at 7-9), there is no evidence to support the idea that Plaintiffs waived their right to ask this Court to determine whether PSEG waived its right to arbitrate the viability of the takings claims Plaintiffs filed in this Court three and a half years ago. Throughout the events leading up to and during the arbitration proceeding, Plaintiffs have loudly maintained that PSEG's delay in

---

[5] PSEG suggests, PSEG Opp. at 15-16, 20, that the panel's decision with regard to *Ehleiter* is a decision "on the merits" which is subject to the standards for challenging an arbitration award. *Ehleiter* is a case addressing this Court's jurisdiction and this Court is the appropriate forum for determining its applicability. The fact that the panel addressed *Ehleiter* before it proceeded to the merits does not take away this Court's right under *Ehleiter* to address Plaintiff's Motion to Vacate.

[6] PSEG's argument that, under the Federal Arbitration Act, only federal district courts have jurisdiction over the vacation of arbitration awards, so that "this matter cannot be heard in this Court" (PSEG Brief at 12), is flatly inconsistent its argument that the forum selection clause of the PA's requires Plaintiffs to litigate the validity of the arbitration award in New Jersey state court (PSEG Brief at 13). Leaving aside the applicability of the FAA, it is clear that the parties agree that the jurisdiction given to federal District Courts thereunder is not exclusive.

asserting its purported rights should be a barrier to any arbitration. Plaintiffs' position could not surprise any party.

As described in further detail in Plaintiffs' Motion to Vacate, Plaintiffs participated in the arbitration process, as requested by this Court, and, as soon as possible, brought to this Court's attention the question of whether the impact of PSEG's conduct on this litigation should be determined by this Court rather than by the arbitration panel. Motion to Vacate at 5-7. Plaintiffs promptly and diligently, following the *Ehleiter* decision and the arbitration panel's erroneous ruling, requested that this Court enforce its jurisdiction over this matter. PSEG's and the Government's implication that Plaintiffs should have done so *before* the arbitration is unpersuasive,[7] given this Court's directive, the speed at which the arbitration was conducted, the lack of any preliminary ruling by the arbitration panel that would have allowed Plaintiffs to return to this Court on a preliminary basis, and the very recent decision in *Ehleiter*.[8] Moreover, neither PSEG nor the Government argues, because neither can, that it has been prejudiced in any way by Plaintiffs' actions. On the other hand, a finding that Plaintiffs waived their right to bring this issue to this Court would presumably result in the denial of Plaintiffs' Motion to Vacate. Again, in that event, the Government, or PSEG, would likely move to dismiss this case. A finding that Plaintiffs had waived their right to challenge PSEG's right to bring the arbitration would be tantamount to a holding that Plaintiffs had forfeited their right to defend such a motion, a result which would certainly be highly prejudicial to Plaintiffs.

[7] It is somewhat ironic that PSEG, which waited years to assert its purported right to arbitrate, here criticizes Plaintiffs for an asserted delay measured in weeks, if not days.

[8] Plaintiffs submit that, in fact, this Court explicitly retained jurisdiction over this issue in its April 12, 2007 Order staying this case "without prejudice to plaintiffs' position regarding delay and laches and/or waiver or estoppel in connection with PSEG Nuclear's demand for arbitration" and noting that the Court would "coordinate proceedings when the arbitration was completed." April 12, 2007 Order at 2.

### C. PSEG's Delay Deprived It of the Right to Arbitrate.

As noted by the Third Circuit in *Ehleiter*, this Court, not the arbitration panel, has proper jurisdiction to determine whether PSEG waived its right to arbitrate its claims. Ignoring a delay that spanned not months, but years, and substantially prejudices Plaintiffs, the arbitrators wrongly considered this issue and improperly infringed upon this Court's authority. As *Ehleiter* explains, because PSEG's conduct occurred and continues to occur before this Court, it is this Court, not an outside arbitration panel, that is in the best position to evaluate that conduct. Arbitrator John D. Aldock noted as much in his dissent: "Judge Miller, who has presided over the ACE/Delmarva litigation against the Government for more than three years, and who has pending a renewed motion for consolidation of the PSEG case against the Government, is in a better position to evaluate the waiver/laches/prejudice arguments." June 20, 2007 Arbitration Decision at 26 (citing *Ehleiter)*.

PSEG's attempts to evade *Ehleiter* are unpersuasive. Despite PSEG's protestations, it can point to no substantive way in which its conduct in this case -- "unwillingly" producing documents, deponents, and participating in motions practice – differs from that of an unwilling defendant, such as the defendant in *Ehleiter*. *See* PSEG Opp. at 16-17, 20 n.8. Thus PSEG's argument that *Ehleiter* should not be applied, because PSEG is not a formal "party" to this case, is unconvincing. *See* PSEG Opp. at 19-20. Moreover, PSEG is a formal "party" to this case, as was established by this Court's July 30, 2007 ruling that PSEG's case is consolidated with this case "for the limited purpose of resolving the arbitrability of the transfer claim and the effect of an arbitration award and for no other purpose." July 30, 2007 Order at 1. That is precisely the question Plaintiffs present. Accordingly, PSEG cannot avoid the application of *Ehleiter* here.

As Plaintiffs explained in their Motion to Vacate, *Ehleiter* is persuasive authority from a federal Circuit Court of Appeals, which agreed with other federal Circuit Courts of

Appeals and relied on and interpreted precedent from the United States Supreme Court.[9] Motion to Vacate at 7-9. Though these federal Circuit Court of Appeals decisions are not binding on this Court, they display a well-reasoned approach to handling the question of waiver by litigation conduct. None of the New Jersey decisions PSEG presents involve waiver by litigation conduct. See PSEG Opp. at 17. Overall, PSEG presents no good reason why the well-reasoned rule in *Ehleiter* should not be applied here.

Plaintiffs have described, and this Court has noted, PSEG's lengthy, unexplained delay in asserting its demand for arbitration. Motion to Vacate at 11-14; Order to Show Cause at 8-9. Even now, PSEG has not disputed that it was motivated by a desire to simply *eliminate* – not assert – Plaintiffs' takings claims. It is clear that PSEG's purpose in doing so is to appease the Government, thereby effecting a more advantageous settlement of PSEG's claims, to the detriment and at the direct expense of Plaintiffs and their customers. *See* Arbitration Decision at 5 n.5, 26 & n.17; Motion to Vacate at 4 & n.6; Motion to Vacate, Exhibit 2 at 2, 3. These statements all went unchallenged by PSEG.

As explained above, Plaintiffs do not ask the Court to overturn the arbitrators' award on substantive grounds. Rather, Plaintiffs respectfully submit that this Court, not the arbitrators, has jurisdiction to evaluate PSEG's conduct which, as this Court has observed, is inconsistent with any intent to arbitrate. Accordingly, Plaintiffs, ask that this Court hold PSEG responsible for its failure to act on a timely basis, find that PSEG waived its right to bring the arbitration, and determine that these proceedings continue notwithstanding the arbitration award.

[9] Contrary to PSEG's characterization, Plaintiffs noted that *Ehleiter* clarified Third Circuit law, not New Jersey law. *Compare* PSEG Opp. at 17 *with* Motion to Vacate at 5 n.9. Plaintiffs then stated that Third Circuit law was "applicable to the arbitration proceedings subject to New Jersey law." Motion to Vacate at 5 n.9. Nowhere did Plaintiffs contend that *Ehleiter* was based on New Jersey law. *See* PSEG Opp. at 17.

## III. THE GOVERNMENT'S CHALLENGE TO THE MERITS OF PLAINTIFFS' TAKINGS CLAIM IS MISPLACED.

The bulk of the Government's brief is devoted to challenging the merits of Plaintiffs' takings claims. PSEG also devotes the last section of its brief to this topic. Again, this matter is not before the Court on this Motion, although, assuming that the award does not deprive this Court of jurisdiction, it is pending before this Court in the underlying litigation. Notwithstanding that fact, plaintiffs are compelled to point out the clear conflict between the Government's position here and its position in *Rochester Gas*.

The Government asserts here that, "even where an assignment does not comply with the Assignment of Claims Act, that assignment may still be enforceable between parties to the assignment" (Government Brief at 8) and therefore that claims against the Government may be extinguished by such an assignment. The Government took exactly the opposite position in *Rochester Gas*. There the Government argued that Rochester Gas' assignment of its claims against the Government to its purchaser was invalid, inter alia, under the Assignment of Claims Act, with the result, not that the claims were extinguished, but that they were retained by the original owner of the claim.[10] The Government explained that "Assignments of claims found to violate the Assignment of Claims Act are invalid, returning the parties to the status quo ante".[11] In support of this statement the Government cited, inter alia, *Colonial Navigation Co. v. United States*, 149 Ct. Cl. 242, 245, 181 F. Supp. 237, 240 (1960), which holds that "an attempted assignment of a claim against the United States does not forfeit the claim. It leaves the claim where it was before the purported assignment."

---

[10] It is evident that PSEG agrees with the Government on this point: in January 2004, PSEG Power amended its own USCOFC complaint, which encompassed both breach and takings claims, to add as a party its own utility, Public Service Electric and Gas Company, which had sold its nuclear interests to PSEG. First Amended Complaint, filed January 6, 2004, *PSEG Nuclear, L.L.C. v. United States*, USCOFC No. 01-551BAF.

[11] *Rochester Gas*, Defendant's Response in Opposition to Plaintiff's Motion to Substitute Plaintiff and Amend Caption, For Substitution of Counsel, and For Limited Relief From Stay, September 22, 2004 at 14.

As this Court is aware, Judge Lettow upheld the Government's position with respect to Rochester Gas' takings claims.[12] While he found that the Government had consented to the assignment of claims for partial breach of contract and breach of the implied covenants of good faith and fair dealing (thereby permitting the assignment of those claims), he explained that:

> However, Rochester Gas may not assign its takings claims to Ginna LLC. *See United States v. Dow* [, 357 U.S., at 20-21] (Assignment of Claims Act bars the assignment of a takings claim against the United States). For a party to allege that its property right has been taken, it must have owned the property at the time that the alleged taking occurred. In this case, the complaint . . . alleges that DOE's actions constituted an uncompensated taking. Thus, the alleged taking took place before Rochester Gas's ownership of the property right was transferred to Ginna LLC. . . . Accordingly, Rochester Gas can properly assert its takings claims and may not transfer those claims to Ginna LLC . . . .

*Rochester Gas*, 65 Fed. Cl. at 441-42 (emphasis added) (citations omitted).

The reason for the Government's sleight of hand is obvious: the Government was and is advantaged by arguing that the Assignment of Claims Act bars the assignment of claims in cases in which nuclear asset purchasers, the transferees of those claims, are seeking recovery, and by adopting the contrary position in cases where those seeking recovery are the sellers, or transferors of those claims. But the Government cannot have it both ways: the claims reside with either the sellers, the buyers, or some combination thereof; they cannot be avoided by a game of button, button, who's got the button. *Saint John Marine Co. v. United States*, 92 F.3d 39, 45-46 (2d Cir. 1996) ("An assignment that does not comply with the Anti-Assignment Act cannot occur; the statute voids the assignment as against the United States. An invalid attempted assignment does not forfeit the claim; it leaves it as it was before the purported assignment. On

[12] For this reason, the Government is judicially estopped from arguing to the contrary here. '"The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."' *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting 18 *Moore's Federal Practice* § 134.30, p. 134-62 (3d ed. 2000)). '"[A]bsent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory"' *Id.* (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4477, at 782 (1981)).

the other hand, the assignment remains enforceable as between the parties to the assignment. . . . [T]he Anti-Assignment Act determines who can assert [the claim].") (Citations omitted); *Colonial Navigation*, 149 Ct. Cl. at 245, 181 F.Supp. at, 240.

Finally, the Government's argument that takings claims are indistinguishable from other claims for purposes of the Assignment of Claims Act ignores both *Dow* and *Rochester Gas*, both of which explicitly hold that takings claims against the United States may not be assigned. Takings claims reflect rights and obligations established in the United States Constitution. If such claims are extinguished by an assignment that does not comply with the Assignment of Claims Act, a Constitutional right is also extinguished, and the Government is relieved of its Constitutional obligation to pay just compensation. Plaintiffs submit that it is for this reason that neither the Government nor PSEG (nor Plaintiffs, of course) has been able to find a case in which a takings claim against the United States Government has been extinguished by an assignment to a third party, with the result that the Government was excused from paying the compensation required by the Fifth Amendment. Yet, in asking this Court to find that its jurisdiction over Plaintiffs' claims against the Government is divested by the award, that is exactly the result that both the Government and PSEG seek here – a result that Plaintiffs submit is not permissible under the controlling cases of *Dow* and *Rochester Gas*.

**CONCLUSION**

At issue here are claims by Plaintiffs against the United States for damages which only Plaintiffs are entitled to recover. In an admitted effort to induce the Government to settle PSEG's own (and different) claims, PSEG has taken the extraordinary step of challenging this Court's jurisdiction over Plaintiffs' claims in another, non-judicial forum. Regardless of whether the arbitration forum was once available to PSEG with regard to Plaintiffs' Constitutional claims

– and Plaintiffs submit that it never was – this Court should not countenance PSEG's actions at this late stage (encouraged by Government representatives who do not feel bound to take consistent positions in these important cases). Whether this Court determines that the arbitration award should be vacated, or that it is not binding as to this proceeding, Plaintiffs' claims should be permitted to proceed forthwith.

Date: August 20, 2007

Respectfully submitted,

/s/Richard J. Conway
Richard J. Conway
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, D.C. 20006
(202) 420-2200

*Counsel of Record for*
*Delmarva Power & Light Company and*
*Atlantic City Electric Company*

Of Counsel:
Frederick M. Lowther
Beth L. Webb
Nicholas W. Mattia, Jr.
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, D.C. 20006
(202) 420-2200

Todd Goodman, Esq.
Assistant General Counsel
Conectiv
P. O. Box 231
Wilmington, DE 1989