**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on September 12, 2007)

| | |
|---|---|
| **DELMARVA POWER & LIGHT CO., and ATLANTIC CITY ELECTRIC CO.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**THE UNITED STATES,**<br><br>Defendant. | Nos. 04-34C & -36C<br>(Judge Miller) |

**PSEG'S SUPPLEMENTAL BRIEF IN RESPONSE TO**
**THE AUGUST 30, 2007 ORDER OF THIS COURT**

Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102-4859
(703) 770-7900
(703) 770-7901 (fax)

Counsel of Record for Intervenors
PSEG Nuclear, LLC and Public
Service Electric and Gas Company

Of Counsel:
Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

September 12, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............ ii
QUESTION NO. 1 ............ 1
PSEG'S RESPONSE TO QUESTION NO. 1 ............ 1
QUESTION NO. 2 ............ 4
PSEG'S RESPONSE TO QUESTION NO. 2 ............ 4
QUESTION NO. 3 ............ 5
PSEG'S RESPONSE TO QUESTION NO. 3 ............ 5
QUESTION NO. 4 ............ 8
PSEG'S RESPONSE TO QUESTION NO. 4 ............ 8
QUESTION NO. 5 ............ 8
PSEG'S RESPONSE TO QUESTION NO. 5 ............ 9
QUESTION NO. 6 ............ 12
PSEG'S RESPONSE TO QUESTION NO. 6 ............ 12

# TABLE OF AUTHORITIES

## Cases & Decisions

*Bailey v. United States*,
2007 WL 2317493 (Fed. Cl. Aug. 10, 2007)........8

*Boston Edison Co. v. United States*,
64 Fed. Cl. 167 (2005)........7

*Canal Electric Co. v. United States*,
65 Fed. Cl. 650 (2005)........9

*Cienega Gardens v. United States*,
331 F. 3d 1319 (Fed. Cir. 2003)........9, 10

*Detroit Edison Co. v. United States*,
56 Fed. Cl. 299 (2003)........5, 6, 8

*Forest Props., Inc. v. United States*,
177 F.3d 1360 (Fed. Cir. 1999)........9, 11

*Huntleigh USA Corp., v. United States*,
63 Fed. Cl. 440 (2005)........9

*Penn Cent. Transp. Co. v. New York City*,
438 U.S. 104 (1978)........9, 11

*Rith Energy Inc. v. United States*,
270 F.3d 1347 (Fed. Cir. 2001)........10

*Rochester Gas and Electric Corp. v. United States*,
65 Fed. Cl. 431 (2005)........7

*Rose Acre Farms, Inc. v. United States*,
373 F.3d 1177 (Fed. Cir. 2004)........11

*Sacramento Mun. Util. Dist. v. United States*,
61 Fed. Cl. 438 (2004)........6, 7

*Sys. Fuels, Inc. v. United States*,
65 Fed. Cl. 163 (2005)........7

*United States v. Dow*,
357 U.S. 17 (1958)........5, 7

*Vt. Yankee Nuclear Power Corp. v. United States*,
73 Fed. Cl. 236 (2006) ....................................................................................................11

**Statutes**

42 U.S.C. § 10222...............................................................................................................3

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on September 12, 2007)

| | | |
|---|---|---|
| **DELMARVA POWER & LIGHT CO., and ATLANTIC CITY ELECTRIC CO.,** Plaintiffs, | ) | |
| vs. | ) | Nos. 04-34C & -36C (Judge Miller) |
| **THE UNITED STATES,** Defendant. | ) | |

**PSEG'S SUPPLEMENTAL BRIEF IN RESPONSE TO**
**THE AUGUST 30, 2007 ORDER OF THIS COURT**

By Order dated August 30, 2007, this Court directed the parties to respond to various questions posed by the Court in that Order. PSEG Nuclear, LLC and Public Service Electric and Gas Company (collectively "PSEG") respectfully submits this response to the Court's questions, presented here in the same order as set forth in the Court's August 30 Order.[1]

**QUESTION NO. 1:**

If the Purchase Agreements ("PAs") transferred all extant claims as of September 27, 1999, were Plaintiffs' takings claims in existence at the effective date of transfer?

**PSEG'S RESPONSE TO QUESTION NO. 1:**

PSEG respectfully submits that, as a matter of law and logic, any cognizable takings claims of Plaintiffs Delmarva Power & Light Co. ("Delmarva") and Atlantic City Electric Co.

[1] The Court's Order dated July 30, 2007 granted PSEG leave to intervene in this matter for a limited purpose. In the interests of brevity, and in light of the extensive briefing that has already occurred in this case, PSEG will not repeat the various facts and arguments it provided to the Court concerning the enforceability of the June 20, 2007 arbitration panel award in favor of PSEG. PSEG has limited its discussion here to those facts and arguments necessary to answer the discrete questions posed by the Court.

("Atlantic"), were in existence as of September 27, 1999. This is the date on which Plaintiffs executed agreements to sell their minority interests in the Salem and Hope Creek nuclear plants to PSEG for approximately $30.9 million. As part of these transactions, the Plaintiffs executed broad assignments of claims to PSEG; PSEG, in turn, acquired the entire interests of Delmarva and Atlantic in the plants, notably *including* any of their interests in the spent nuclear fuel stored on-site, all claims related thereto and all responsibility for its disposition.[2] As discussed at oral argument on August 22, 2007, each of the PAs specifically addressed the assignment of claims against the Department of Energy, in § 2.1(1):[3]

> All claims of Seller relating to or pertaining to the Department of Energy's defaults under the Department of Energy Standard Contract (including all claims for failure by the Department of Energy to take Spent Nuclear Fuel) accrued prior to, on or after the Closing Date, whether relating to periods prior to, on or after the Closing Date, and all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased Assets, other than the claims described in Section 2.2(1);

The spent nuclear fuel has been accumulating at the facilities for all relevant periods prior to and subsequent to the September 27, 1999 sale of Plaintiffs' interests in the plants.

Plaintiffs' takings claims, however parsed, all relate or pertain to the spent nuclear fuel located at the facilities, or the impact of the Department of Energy's breach of contract on Plaintiffs' interests in the nuclear plants (one of the Purchased Assets). That is evident from a review of Plaintiffs' First Amended Complaints, which constructed takings claims based on the Department of Energy's unconditional obligation to begin acceptance of Plaintiffs' spent nuclear

---

[2] Among the interests that Delmarva and Atlantic sold were the liabilities associated with the spent nuclear fuel that had already been generated by the Hope Creek and Salem plants when the Purchase Agreements were executed. Needless to say, Plaintiffs have not offered to assume any of those spent fuel liabilities.

[3] In accordance with the direction provided by the Court during the hearing on August 22, 2007, PSEG filed the two Salem Purchase Agreements and the single Hope Creek Purchase Agreement with the Court on August 23, 2007.

fuel by January 31, 1998 as required by the Nuclear Waste Policy Act ("NWPA" or "Act"). In this regard, paragraph 86 of Delmarva's First Amended Complaint is illustrative; it states:

> DOE's failure to dispose of Delmarva's SNF by January 31, 1998 as required by the Act deprived Delmarva of the full use and value of its nuclear facilities, caused it to incur substantial unnecessary capital and other expenses, and severely diminished the value of these facilities and the Standard Contract. This failure constitutes a taking of Delmarva's vested property rights without just compensation. (Emphasis added.)[4]

According to Plaintiffs' own allegations, Plaintiffs' takings claims arose, ripened and sprang into being as of January 31, 1998. The taking for which the Plaintiffs seek relief was directly caused by the Department of Energy's failure to dispose of spent nuclear fuel at the plants. Even though it is unclear from the complaints whether the taking alleged is a physical taking or a regulatory taking (and it appears to fall largely in the latter category), that distinction is immaterial for purposes of assessing when the takings claim arose. In either instance, the taking first occurred on January 31, 1998 when DOE failed to commence disposal of the spent nuclear fuel from the plants.

To the extent Plaintiffs allege a physical taking, that taking was clearly in existence as of September 27, 1999, since any such "forced" storage of spent nuclear fuel by the Government on Plaintiffs' property, or any diminution of value, arose as of January 31, 1998, more than one year *prior to* the transaction date. A similar analysis applies to the extent Plaintiffs allege a regulatory taking, since the only identified basis for any such regulatory taking claim would be the Government's obligation under the NWPA to commence disposal of spent nuclear fuel on January 31, 1998. *See* 42 U.S.C. § 10222(a)(5)(B).

This analysis is fully consistent with Plaintiffs' own litigation conduct. Delmarva and Atlantic filed suit on January 13, 2004, just before the six-year statute of limitations governing takings claims against the Government would have run, assuming a takings action arose or accrued on January 31, 1998. The filing of the Complaints in January, 2004 was not mere

---

[4] Except for the reference to the party plaintiff, paragraph 86 of Atlantic's First Amended Complaint is identical to paragraph 86 of Delmarva's First Amended Complaint.

happenstance. A later filing would have been time-barred, assuming — as Delmarva and Atlantic did —that their takings claims arose on January 31, 1998.

Finally, and most importantly from PSEG's standpoint, the arbitration panel, by decision dated June 20, 2007, correctly concluded that all such takings claims were transferred from Plaintiffs to PSEG in accordance with the language of the applicable PAs. In this regard, the holding of the arbitration panel (page 18) is quite definitive:

> These broad assignments make no exceptions for particular kinds of claims, and the detailed Excluded Assets list in the PAs make no mention of any takings claims. *See* PAs § 2.2. It is hard to imagine a more comprehensive assignment of claims. On their face, the PAs leave no doubt that the takings claims at issue here were assigned to PSEG and that PSEG received the exclusive right to control the litigation over the claims.
>
> * * *
>
> The Purchased Assets explicitly include SNF, and the takings claims indisputably arise out of or are in connection with DOE's failure to take SNF. Accordingly, it is irrelevant whether the takings claims arise from the Standard Contract or from some other source — in either case, they are covered by the PAs assignment clauses.

In summary, (1) assuming they are valid, Plaintiffs' takings claims were in existence as of January 31, 1998, more than one year prior to September 27, 1999, and (2) any and all such claims relating to the DOE's failure to dispose of spent nuclear fuel were transferred to PSEG as of September 27, 1999.

**<u>QUESTION NO. 2:</u>**

What effect does defendant's notice formally accepting Plaintiffs' assignment of claims to PSEG have on Plaintiffs' maintenance of a suit under a theory of retained takings claims?

**<u>PSEG'S RESPONSE TO QUESTION NO. 2:</u>**

PSEG respectfully submits that the Government's Notice Regarding the Assignment of Plaintiffs' Claims ("Notice") dated August 22, 2007 has several immediate effects upon Plaintiffs' claims. In pertinent part, the Government in that Notice advised that it "is exercising its sole discretion to accept the assignments of those claims that the Plaintiffs purported to make to PSEG nuclear." *Id.* at 3.

First and foremost, the Government's Notice — when coupled with the terms of the PAs — has the effect of requiring the dismissal of Plaintiffs' diminution in value/takings claims with respect to the Salem and Hope Creek plants. As the arbitration panel correctly held, the language of the PAs contained an express and broad assignment of *all* claims that Plaintiffs' enjoyed "arising from or in connection with the Department of Energy's failure to take Spent Nuclear Fuel." There is nothing in the law that prohibits such a broad assignment as between two private parties. And the Government, by expressly acknowledging and accepting the assignment, has satisfied any residual concern that the Supreme Court's decision in *United States v. Dow*, 357 U.S. 17 (1958), prohibits such an assignment *vis-à-vis* the Government. This acceptance by the Government renders moot all of Plaintiffs' arguments regarding the Anti-Assignment Acts.

Second, in light of the Government's Notice, Plaintiffs' "protective" claims for breach of contract in their First Amended Complaint must be dismissed. Since the Government has accepted the assignment of claims as set forth in the PAs, there are no unassigned contractual claims left for Plaintiffs to "protect."[5]

In short, the PAs assigned to PSEG all the claims that may be brought against the Government in this case relating to the Salem and Hope Creek plants and the assignment has been accepted by the Government. The Plaintiffs have no residual claims — either in takings, contract, or otherwise — to litigate against the Government relating to those two plants.

**<u>QUESTION NO. 3:</u>**

Can an independent takings claim be maintained concurrently with a breach of contract claim pursuant to the Standard Contract? If not, how can a takings claim be maintained separately by bifurcating the claims through an assignment of the contract claims to a third-party?

---

[5] PSEG has repeatedly requested that Plaintiffs dismiss any "protective" breach of contract claims; to date, Plaintiffs have ignored this request.

**<u>PSEG'S RESPONSE TO QUESTION NO. 3:</u>**

"Yes, as a general matter" is the answer to the first part of this question, as this Court previously and corrected decided in *Detroit Edison Co. v. United States*, 56 Fed. Cl. 299 (2003). In this case, Plaintiffs may have had the ability to maintain independent takings claims and concurrent breach of contract claims prior to the 1999 assignment of those claims resulting from their execution of the PAs. However, as described above, the Plaintiffs here no longer have any such "independent takings claim" since any such claim was assigned to PSEG in 1999 by the PAs entered into by Plaintiffs and PSEG.

The latter point is critical. In *Detroit Edison*, there was no assignment of rights or claims as between the buyer and seller of a nuclear plant. In that case, Detroit Edison was (and remains) the sole owner of the Fermi nuclear plant. Based on that undivided ownership interest, *Detroit Edison* alleged both breach of contract and takings claims in a single action. In the *Detroit Edison* decision, this Court correctly held that *Detroit Edison* could properly bring both a breach of contract claim and a takings claim. 56 Fed. Cl. at 303. However, the Court also observed, "If plaintiff succeeds on its breach claim, the court will award only the damages contemplated by the Standard Contract and will not permit plaintiff to pursue a takings remedy in order to circumvent the limitations inherent in its contractual relationship with the Government." *Id*.

The *Detroit Edison* analysis remains valid as to the takings claims involving the Hope Creek and Salem facilities. However, that analysis is not applicable to the *Delmarva* and *Atlantic City* Plaintiffs. In the present case, as discussed above, the Plaintiffs assigned <u>all</u> of their claims "relating to or pertaining to the Department of Energy's defaults . . . (including all claims for failure by the Department of Energy to the Spent Nuclear Fuel) . . . and all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased Assets." Accordingly, the only party who may properly pursue a takings claim (and breach of contract claim) at this point with respect to the Hope Creek and Salem facilities is PSEG. And, going forward, PSEG intends to proceed with its contract claim in the first instance, prosecuting its takings claim only to the extent its contract claim is unsuccessful. That is the

procedural rule articulated by the Court in *Detroit Edison*, and it is fully consistent with other decisions in this Court. *See, e.g.*, *Sacramento Mun. Util. Dist. v. United States*, 61 Fed. Cl. 438, 442 (2004); *Sys. Fuels, Inc. v. United States*, 65 Fed. Cl. 163, 172-73 (2005); *Boston Edison Co. v. United States*, 64 Fed. Cl. 167, 187 (2005).

This Court's decision in *Rochester Gas and Electric Corp. v. United States*, 65 Fed. Cl. 431 (2005), does not alter this analysis. In *Rochester*, unlike the present case, the seller remained responsible for the one-time fee payment to the Department of Energy required under the Standard Contract.[6] Under the asset purchase agreement at issue in *Rochester Gas*, Rochester Gas (the seller) retained "some rights and duties that were treated as excluded assets and excluded liabilities ... most notably the obligation to pay the one-time fee, while others were transferred as purchased assets and assumed liabilities." 65 Fed. Cl. at 439. Thus, as noted during the oral argument in this case on August 22, 2007, the underlying agreement at issue in *Rochester Gas* is significantly different than those present in this case. *See* Oral Argument Transcript at 47-48 (Aug. 22, 2007). Furthermore, precisely because *Rochester Gas* retained its one-time fee payment obligation, in that case the Government did not consent to the assignment of the takings claims to the buyer and opposed the motion to substitute the buyer (Ginna LLC) for Rochester Gas as the party plaintiff. In this case, of course, the Government has consented to the assignment of Plaintiffs' claims.

Thus, *Rochester Gas* does not entitle Delmarva and Atlantic to continue to prosecute their takings claims here, in view of the broad assignment embodied in the PAs and the Government's consent thereto. *Rochester Gas* stands for the proposition that a takings claim may be maintained separately where the assignment of rights and duties *vis-à-vis* the Government is only partial.[7] That is not this case. Delmarva and Atlantic City assigned all of

---

[6] PSEG, on the other hand, has no "one time fee" obligation to the Department of Energy, having satisfied that obligation previously in accordance with the Standard Contract.

[7] While *Rochester Gas* cites *United States v. Dow*, 357 U.S. 17 (1958), for the proposition that a takings claim can only be brought by the party which owned the property at the time the takings claim arose, as noted above, the facts in *Rochester Gas* are very different from those

their rights and duties to PSEG, and the Government has acknowledged as much. In such circumstances, all of the claims of Delmarva and Atlantic City relating to the Hope Creek and Salem plants must be dismissed.

**QUESTION NO. 4:**

If the court enters an order ruling that Plaintiffs have no takings claims because the source of their claims was a viable contract at the time that the putative takings claim arose, *see Detroit Edison Co. v. United States*, 56 Fed. Cl. 299, 302 (2003), can any takings claims survive?

**PSEG'S RESPONSE TO QUESTION NO. 4:**

Plaintiffs' takings claims relating to the Hope Creek and Salem plants should be dismissed for all the reasons set forth above. However, applying the logic of *Detroit Edison Co. v. United States*, 56 Fed. Cl. 299, 302 (2003), PSEG's separate contract and takings claim relating to the Hope Creek and Salem plants should go forward before Judge Futey or such other Judge as the Court may direct, with the breach of contract claim taking precedence in the first instance. *See* PSEG's Response to Question No. 3.

**QUESTION NO. 5:**

If the source of the takings claims is independent from the Standard Contract and/or arises from a statute or regulation, *see Boston Edison*, 64 Fed. Cl. 167, 187 (2005), what precisely is that source? Can the source of the right be resolved as a matter of law? If such an independent source exists, on what date did each takings claim arise?

---

present in this case. Here, unlike in *Rochester Gas*, (1) the Government has consented to the assignment, (2) the PAs contain a broad and complete assignment of claims, not a partial assignment, (3) the sellers owned only a minority interest in the plants, and (4) a duly-constituted arbitration panel has determined that all of sellers' claims were assigned as part of the sales transaction. Moreover, the holding in *Rochester Gas* appears to conflict with this Court's recent decision in *Bailey v. United States*, No. 02-1078L, 2007 WL 2317493, at *34 (Fed. Cl. Aug. 10, 2007) (holding that "just compensation for the regulatory taking of real property interests may be owed to owners who have acquired their property interests after the outset of the taking").

**<u>PSEG'S RESPONSE TO QUESTION NO. 5:</u>**

A fair reading of the First Amended Complaints of Delmarva and Atlantic suggests that, according to Plaintiffs, the source of their takings claims is the NWPA. *See* First Amended Complaints at ¶¶ 85-87. It also appears that any such claims arose as of January 31, 1998. However, for several different reasons, the alleged diminution in value of the Salem and Hope Creek nuclear plants resulting from the Government's failure to begin accepting SNF by January 31, 1998 — as required by the NWPA — does not constitute a cognizable regulatory taking for these minority owners of the plants. That is precisely what Judge Hodges held in *Canal Electric Co. v. United States*, 65 Fed. Cl. 650 (2005) (dismissing takings claims of former minority nuclear plant owner). As Judge Hodges determined , the source of the "right" (*i.e.*, takings claim) can be resolved as a matter of law. *See* 65 Fed. Cl. 654-55 (discussion of "origin of rights").

By way of background, there are two kinds of regulatory takings: (1) a taking that denies the owner of "all economically beneficial or productive use of land" and (2) a taking that has "crossed the line from a noncompensable mere diminution to a compensable partial taking." *Forest Props., Inc. v. United States*, 177 F.3d 1360, 1364 (Fed.Cir. 1999). Plaintiffs' claim falls into the latter category of partial takings as Plaintiffs do not and cannot claim that they were deprived of all economically beneficial or productive use of their property. However, applying the partial regulatory taking analysis to Plaintiffs' claim reveals that Plaintiffs, as minority owners of the Salem and Hope Creek plants, are not entitled to any compensation because their claim amounts only to a noncompensable mere diminution, if in fact there was any diminution in value at all.

The Supreme Court has articulated three factors that have "particular significance" in a compensable partial taking analysis: (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the government action. *Penn Cent. Transp. Co. v. New*

*York City*, 438 U.S. 104, 124 (1978). With regard to the economic impact factor, Plaintiffs cannot meet the "threshold requirement" of "'serious financial loss' from the regulatory imposition in order to merit compensation." *Huntleigh USA Corp. v. United States*, 63 Fed. Cl. 440, 449-50 (2005) (quoting *Cienega Gardens v. United State*s, 331 F.3d 1319, 1340 (Fed. Cir. 2003)). First, as minority owners of the plants, Plaintiffs cannot show "serious financial loss" attributable to the Government's failure to accept SNF. Notably, when Delmarva submitted the sale to the approval process before the New Jersey Board of Public Utilities ("NJBPU"), it represented that it believed the sale price for the assets reflected fair market value. *See* July 21, 2000 NJBPU Energy Decision and Order at 7 (copy attached hereto at Exhibit A). The NJBPU found that Delmarva was justified in entering into exclusive negotiations with PSEG because "there was very limited interest among the bidders in purchasing the Company's interest in the Nuclear Assets because of their concerns regarding the co-ownership issues and the lack of operating control associated with the assets for sale." *Id.* at 12. No reference was made to spent nuclear fuel issues or their supposed impact on the sale.

Second, even assuming *arguendo* that the Government's failure to begin accepting spent nuclear fuel diminished the value of Plaintiffs' minority interests in Salem and Hope Creek, the Plaintiffs still cannot argue that this diminution in value was a taking because the Plaintiffs nonetheless received good value — indeed, millions of dollars — from the sale. *See Rith Energy, Inc.v. United States*, 270 F.3d 1347, 1352 (Fed.Cir. 2001) (denying a petition for rehearing and explaining that Rith would not prevail under the *Penn Central* analysis because "[a]lthough the regulatory action in this case caused a substantial diminution in the value of Rith's coal leases, it did not deprive Rith of its opportunity to make a profit on the leases; it simply reduced the margin of profit that Rith had hoped to achieve."). In point of fact, Plaintiffs received approximately $30 million for their minority interests in Salem and Hope Creek

including their interest in the nuclear fuel located at those facilities. This fact alone casts substantial doubt upon the legal merits of a diminution claim by Plaintiffs.[8]

Third and perhaps most compelling, according to the Federal Circuit, a regulatory takings analysis must be applied to the "parcel as a whole." *See Rose Acre Farms, Inc. v. United States*, 373 F.3d 1177, 1185 (Fed.Cir. 2004) (quoting *Penn Cent. Transp.*, 438 U.S. at 130-31 ("Taking jurisprudence does not divide a single parcel into discrete segments. . . In deciding whether a particular governmental action has effected a taking, this Court focuses . . . on the nature and extent of the interference with rights in the parcel as a whole[.]").). Therefore, when reviewing Plaintiffs' sale of its minority interests to PSEG, it is inappropriate to focus solely on the alleged diminution in value of the minority interests in the two plants. At a minimum, the value that Plaintiffs received from selling their assets, assigning their claims to PSEG, and having PSEG assume all of Plaintiffs' liabilities needs to be taken into account as well. Under this methodology, Plaintiffs cannot demonstrate a sufficiently severe loss because the sale was still a source of great value for Plaintiffs. *See Forest Props., Inc. v. United States*, 177 F.3d at 1366 (affirming the Court of Federal Claims' holding that no taking had been effected and quoting the Court of Federal Claims' conclusion: "Finally, there is substantial economic value remaining in the parcel as a whole, which supports the conclusion that the Government's denial of the plaintiff's permit only caused a noncompensable, mere diminution in the value of its property, which is not substantial enough to protect as a taking.").

For all of these reasons, Plaintiffs' takings claims related to their minority interests in Salem and Hope Creek are insufficient as a matter of law.[9] As in *Canal Electric*, such claims must be dismissed.

---

[8] Of course, not to be ignored in the Court's assessment of the legal sufficiency of Plaintiffs' diminution claim is the fact that Plaintiffs also transferred to PSEG the *liabilities* associated with the on-going storage of the spent nuclear fuel at Salem and Hope Creek. *See* PAs § 2.3(f). These liabilities could potentially dwarf any cash payments made to the Plaintiffs by PSEG incident to the sale.

[9] As noted above in PSEG's Response to Question No. 1, Plaintiffs' takings claims arose on January 31, 1998.

**QUESTION NO. 6:**

If the court cannot resolve Plaintiffs' takings claims at this juncture, should Plaintiffs' case be consolidated with PSEG's earlier-filed case? *See Vt. Yankee Nuclear Power Corp. v. United States*, 73 Fed. Cl. 236, 242 (2006).

**PSEG'S RESPONSE TO QUESTION NO. 6:**

As an initial matter, Plaintiffs' takings claims with regard to Salem and Hope Creek have been resolved by the Purchase Agreements, the decision of the arbitration panel and the Government, all of which indicate that those claims, if they exist at all, belong to PSEG. The answer to whether there should be a consolidation, therefore, is "no." For the reasons set forth above, all of Plaintiffs' claims relating to the Salem and Hope Creek plants must be dismissed. PSEG's separate breach of contract and takings claims relating to the Salem and Hope Creek plants currently pending before Judge Futey should proceed, either before Judge Futey or any other Judge to whom PSEG's case is assigned under RCFC 40.1. Atlantic and Delmarva's residual claims relating to Peach Bottom are wholly unrelated to PSEG's Salem and Hope Creek claims.[10] The claims involve different plants, different Standard Contracts, different witnesses, and markedly disparate theories of recovery. For that reason, consolidation of Plaintiffs' Peach Bottom claim with PSEG's Salem and Hope Creek claims would not conserve any resources and would not "avoid unnecessary costs or delay." *See* RCFC 42(a). PSEG would not object to the reassignment of the cases to a single Judge, to the extent such a reassignment

---

[10] PSEG takes no position with respect to Plaintiffs' Peach Bottom claim; as the Court is aware, that claim was not at issue in the recently completed arbitration between PSEG and the Plaintiffs.

would facilitate the efficient prosecution of each party's residual claims, ensure the avoidance of any double recovery, and promote the Court's effective management of its own docket.

Dated: September 12, 2007

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102-4859
(703) 770-7900
(703) 770-7901 (fax)

Counsel of Record for Intervenors
PSEG Nuclear, LLC and Public
Service Electric and Gas Company

OF COUNSEL:
Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)