# APPENDIX

# In the United States Court of Federal Claims

**ELECTRONIC CASE FILING**
**(Filed July 26, 2004)**

| | | |
|---|---|---|
| **ROCHESTER GAS AND ELECTRIC CORPORATION,** | ) | |
| **Plaintiff,** | ) | **No. 04-118** |
| **v.** | ) | **(Judge Lynn J. Bush)** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**MOTION TO SUBSTITUTE PLAINTIFF AND AMEND CAPTION,**
**FOR SUBSTITUTION OF COUNSEL,**
**AND FOR LIMITED RELIEF FROM STAY**

This is one of a number of so-called "new" spent nuclear fuel lawsuits currently pending before several judges of the Court. The nuclear power plant at issue in this case was recently sold, in a transaction that closed last month. Plaintiff Rochester Gas and Electric Corporation ("RG&E"), together with the new and current holder of the Standard Contract at issue in this case, R.E. Ginna Nuclear Power Plant, LLC ("Ginna LLC"), respectfully move to substitute Ginna LLC as the single party plaintiff in this lawsuit pursuant to RCFC 25(c), and request that the caption of the existing complaint be amended to so reflect. No substantive or other amendment of the complaint is sought at this time. Plaintiff and Ginna LLC also request that Ginna LLC's counsel be designated counsel of

record. To the extent that it is necessary that the stay of this matter be lifted in order to implement these changes, plaintiff and Ginna LLC request that it be so lifted for those limited purposes, but that the stay otherwise remain in place.

On Wednesday, July 21, Ginna LLC's counsel contacted Government's counsel in an effort to ascertain whether the Government would oppose this motion. Counsel of record for the Government is currently in trial in *Yankee Atomic v. United States*, however, and has not responded.

**DISCUSSION**

RG&E filed the complaint in this Court on January 29, 2004, seeking, *inter alia*, all damages incurred, and continuing and expected to be incurred, in connection with the failure of the Department of Energy ("DOE") to commence accepting spent nuclear fuel and/or high level waste (for these purposes "SNF") from the R.E. Ginna Nuclear Power Plant in Ontario, New York. *E.g.*, Complaint ¶ 29. This lawsuit was one of a number of "new" SNF lawsuits, filed by holders of SNF in late 2003 and early 2004. Status reports were filed. A status conference involving this and other new SNF lawsuits was held on April 30, 2004, and the Court ordered that the case be stayed on May 21, 2004.

As noted in Paragraph 11 of the Complaint, at the time that this lawsuit was filed, RG&E had agreed, subject to the satisfaction of certain conditions, to sell the R.E. Ginna Nuclear Power Plant to a subsidiary of Constellation Energy Group,

Inc. (for these purposes, "Constellation").[1] The predicate conditions were subsequently satisfied, and the sale of the plant to Ginna LLC closed on June 10, 2004. The required notice of assignment of the Standard Contract to Ginna LLC (which is an indirect wholly-owned subsidiary of Constellation) under Article XIV of the Standard Contract was transmitted to DOE by letter dated June 24, 2004. The terms of the Asset Purchase Agreement provided in part that Ginna LLC would acquire from RG&E title to all SNF at or associated with the R.E. Ginna Nuclear Power Plant and would assume all of the rights and obligations under the DOE Standard Contract for the R.E. Ginna Nuclear Power Plant, "including but not limited to the right to pursue and recover damages" resulting from DOE's failures to commence accepting SNF from the Ginna facility. The Asset Purchase Agreement also provided that RG&E would remain financially liable for payment of the one-time fee under the Standard Contract when that fee becomes due and owing, and that Constellation would make certain payments to RG&E in the event a monetary recovery from DOE is secured. Accordingly, Ginna LLC is now the single party with authority to pursue any and all claims against DOE in connection

---

[1] Indirect subsidiaries of Constellation Energy Group, Inc. are also the holders of the DOE Standard Contracts for the Nine Mile Point Units 1 and 2 and Calvert Cliffs Units 1 and 2 nuclear power plants. Claims for damages in connection with those plants are asserted in *Constellation Generation Group, LLC et al. v. United States*, No. 04-0068C (Margolis, J.). That action is currently stayed.

with DOE's failures to commence accepting SNF from the R.E. Ginna Nuclear Power Plant.

In circumstances such as these, it is appropriate for the Court to direct that the party possessing the interests being pursued in the litigation be substituted as the named party plaintiff under RCFC 25(c). *E.g., Standard Federal Bank v. United States*, 51 Fed. Cl. 695, 706 (2002). Rule 25(c) operates "when an interest is transferred during pending litigation." *Id.* (citations omitted). In this case, conduct of the lawsuit will be facilitated by the requested substitution. As reflected in the joinder in this motion by RG&E, all potential claimants against the Government in connection with the R.E. Ginna Nuclear Power Plant agree that Ginna LLC is the proper party to be prosecuting this lawsuit. Substitution (and the accompanying agreed-upon substitution of Ginna LLC's attorney as counsel of record for plaintiff in this action) will ensure that the real party in interest is the actual party prosecuting the lawsuit, will ensure that no possibility of duplicative recovery is presented, and will simplify the administration of the case. For all of these reasons, the requested substitution should be granted.[2]

[2] As noted above, the Government has not indicated whether it will consent to this motion, or oppose, or attempt to qualify a concurrence by seeking to reserve purported defenses regarding standing, assignment, or other matters. To the extent that the Government were to attempt to assert or reserve any purported defenses associated with this substitution, RG&E and Ginna LLC expressly reserve all rights in that regard, including, for example and without limitation, the right to maintain RG&E as a nominal or co-plaintiff in the action as alternative relief, and the right to seek and secure such other procedural or substantive relief as may be necessary to address such purported defenses.

Finally, to the extent that it is necessary that the stay in this matter be lifted for the limited purpose of implementing this substitution, RG&E and Ginna LLC respectfully request that the stay be so lifted. Otherwise, for the reasons previously described in prior submissions to the Court, plaintiff requests that the jointly-requested stay of the case be kept in place.

## CONCLUSION

For the foregoing reasons, RG&E and Ginna LLC respectfully request: (1) that Ginna LLC be substituted as the named party plaintiff in this action pursuant to RCFC 25(c); (2) that the caption of the matter be amended to identify "R.E. Ginna Nuclear Power Plant, LLC" as the plaintiff; (3) that the undersigned counsel for Ginna LLC be substituted as counsel of record for plaintiff in this lawsuit, and (4) that the stay of this action entered by the Court on May 21, 2004 be lifted for the limited purpose of implementing these changes, but otherwise remain in place.

Dated: July 26, 2004

Respectfully submitted,

s/ Brad Flagg
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 739-5191
Facsimile: (202) 739-3001
COUNSEL OF RECORD FOR
R.E. GINNA NUCLEAR POWER
PLANT, LLC

s/ M. Stanford Blanton
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8798
COUNSEL OF RECORD FOR
ROCHESTER GAS AND ELECTRIC
CORPORATION

**OF COUNSEL:**

Ed R. Haden
K.C. Hairston
BALCH & BINGHAM LLP
1710 Sixth Avenue North
P. O. Box 306
Birmingham, AL 35204
Phone: (205) 251-8100
Fax: (205) 226-8798

## CERTIFICATE OF FILING

I hereby certify that on this 26th day of July, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Harold D. Lester, Jr.
Assistant Director
Commercial Litigation Branch
Civil Division -- Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 307-6288

Attorney for Defendant

s/ M. Stanford Blanton

APPENDIX
8

No. 04-118C
(Judge Bush)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROCHESTER GAS AND ELECTRIC CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT"S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO SUBSTITUTE PLAINTIFF AND AMEND CAPTION, FOR SUBSTITUTION OF COUNSEL, AND FOR LIMITED RELIEF FROM STAY

PETER D, KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

ELIZABETH THOMAS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington D.C. 20530
Tele: (202) 353-4175
Fax: (202) 307-2503

September 22, 2004

Attorneys for Defendant

## TABLE OF CONTENTS

PAGE(S)

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO SUBSTITUTE PLAINTIFF AND AMEND CAPTION, FOR SUBSTITUTION OF COUNSEL, AND FOR LIMITED RELIEF FROM STAY . . . . . . . . . . . . 1

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. NATURE OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. ROCHESTER'S ATTEMPT TO ASSIGN ITS STANDARD CONTRACT, BUT TO RETAIN CONTROL OVER THE FUTURE ONE-TIME FEE PAYMENT, INVALIDATES THE CONTRACT ASSIGNMENT . . . . . . . . . . . 8

III. REGARDLESS OF WHETHER ITS CONTRACT ASSIGNMENT IS VALID, ROCHESTER'S ATTEMPT TO ASSIGN DAMAGES CLAIMS THAT PRE-EXISTED THAT CONTRACT ASSIGNMENT IS INVALID . . . 12

A. The Standard Contract Does Not Permit Assignment Of Pre-Existing Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

B. Because The Standard Contract Does Not Permit Assignment Of Pre-Existing Damages Claims, Rochester's Assignment Is Invalid Because It Does Not Satisfy The Requirements Of The Assignment Of Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

C. The Government Did Not Waive The Requirements Of The Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

D. In Any Event, Because Rochester Has Not Divested Itself Of Control Or Interest In The Pre-Existing Claims Assigned To Ginna, The Assignment Of Claims Is Invalid . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION .............................................................. 20

# TABLE OF AUTHORITIES

**FEDERAL CASES** **PAGE(S)**

American Financial Associates, Ltd. v. United States,
5 Cl. Ct. 761 (1984) . . . . . 19,20

American National Bank & Trust Co. v. United States,
22 Cl. Ct. 7 (1990) . . . . . 18, 20

American National Bank & Trust Co. v. United States,
23 Cl. Ct. 542 (1991) . . . . . 20

Colonial Navigation Company v. United States,
149 Ct. Cl. 242 (1960) . . . . . 15

Department of the Army v. Blue Fox, Inc.,
525 U.S. 255 (1999) . . . . . 11

Erickson Air Crane Co. v. United States,
731 F.2d 810 (Fed. Cir. 1984) . . . . . 8

Fireman's Fund Insurance Co. v. England,
313 F.3d 1344 (Fed. Cir. 2002) . . . . . 15

George Hyman Construction Co. v. United States,
30 Fed. Cl. 170 (Fed. Cir. 1993) . . . . . 18

Ginsberg v. Austin,
968 F.2d 1198 (Fed. Cir. 1992) . . . . . 16, 17

In re Computer Engineering Associates v. John Desmond,
337 F.3d 38 (1st Cir. 2003) . . . . . 11, 12, 21

Kingsbury v. United States,
215 Ct. Cl. 136 (1977) . . . . . 18

Klamath and Moadac Tribes v. United States,
296 U.S. 244 (1935) . . . . . 17

Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.
13 F.3d 69 (3d Cir. 1993) . . . . . 7

Manufacturers Hanover Trust Co. v. United States,
218 Ct. Cl. 563 (1978) . . . . . 21

Merritt v. United States,
267 U.S. 338 (1925) . . . . . 8

Miller v. Wells Fargo Bank International Corp.,
540 F.2d 548 (2nd Cir. 1976) . . . . . . . . . . 11

National Independent Theatre Exhibitors, Inc. v. Buena Vista Distributing Co.,
748 F.2d 602 (11th Cir. 1985) . . . . . . . . . . 7

Patterson v. United States,
173 Ct. Cl. 819 (1965) . . . . . . . . . . 18

Petrin v. United States,
90 Ct. Cl. 670 (1940) . . . . . . . . . . 8

Putnam Mills Corp. v. United States,
479 F.2d 1334 (Ct. Cl. 1973) . . . . . . . . . . 9

Roedler v. DOE,
255 F.3d 1347 (Fed. Cir. 2001) . . . . . . . . . . 14

Standard Federal Bank v. United States,
51 Fed. Cl. 695 (2002) . . . . . . . . . . 7

Tuftco Corp. v. United States,
222 Ct. Cl. 277 (1980) . . . . . . . . . . 16

Uniroyal, Inc. v. United States,
197 Ct. Cl. 258 (1972) . . . . . . . . . . 20

United California Discount Corp. v. United States,
19 Cl Ct. 504 (1990) . . . . . . . . . . 19, 20, 21

United States v. Johnson Controls, Inc.,
713 F.2d 1541 (Fed. Cir. 1983) . . . . . . . . . . 8

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . 8

United States v. Mitchell,
445 U.S. 535 (1980) . . . . . . . . . . 8

United States v. Nordic Village, Inc.,
503 U.S. 30 (1992) . . . . . . . . . . 17

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . 8

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . 8

**FEDERAL STATUTES**

10 C.F.R. § 961.2 . . . . . . . . . . 3

10 C.F.R. § 961.11 . . . . . . . . . . 2

28 U.S.C. § 149 . . . . . . . . . . 18

31 U.S.C. § 3727 (formerly 31 U.S.C. § 203) . . . . . . . . . . 5, 14, 15, 16, 19

41 U.S.C. § 15 . . . . . . . . . . passim

42 U.S.C. § 10101 *et seq.* . . . . . . . . . . passim

42 U.S.C. § 10222(a)(5) . . . . . . . . . . 10

**MISCELLANEOUS**

Restatement (Second) of Contracts § 326(1) (1981) . . . . . . . . . . 10, 12, 13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROCHESTER GAS AND ELECTRIC CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-118C |
| | ) | (Judge Lynn J. Bush) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO SUBSTITUTE PLAINTIFF AND AMEND CAPTION, FOR SUBSTITUTION OF COUNSEL, AND FOR LIMITED RELIEF FROM STAY

Pursuant to Rule 7.1(a) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully responds to the "Motion To Substitute Plaintiff And Amend Caption, For Substitution Of Counsel, And For Limited Relief From Stay," filed July 26, 2004. Although we do not oppose the plaintiff's request for limited relief from the stay of proceedings so that it may file its motion and do not oppose substitution of counsel, we respectfully request that the Court deny that portion of the motion which seeks to substitute R.E. Ginna Nuclear Power Plant, LLC ("Ginna") as the plaintiff in this case, in place of the current plaintiff, Rochester Gas and Electric Corporation ("Rochester").

ISSUES PRESENTED

1. Whether, under the assignment provisions of the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. § 10222(b)(3), and the Standard Contract, Rochester's assignment of its Standard Contract to Ginna is valid, given that the purported assignment does not completely transfer all rights and obligations under the Standard Contract from Rochester to Ginna.

2. Whether the assignment provisions of the NWPA and the Standard Contract permit assignment of pre-existing claims, as opposed to assignment of the contract itself.

3. If not, whether Rochester's assignment of its pre-existing claims complies with the requirements of the Assignment of Claims Act.

4. If not, whether the Government waived the requirements of the Assignment of Claims Act.

5. Whether, even if Rochester were otherwise entitled to assign its claims against the United States Department of Energy ("DOE"), the assignment of claims would be invalid because Rochester has not completely divested itself of control over those claims.

## STATEMENT OF THE CASE

### I. NATURE OF THE CASE

______This case is one of 66 cases that were filed in this Court seeking damages based upon the Department of Energy's delay in beginning spent nuclear fuel ("SNF") acceptance pursuant to the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste" ("Standard Contract") published at 10 C.F.R. § 961.11, 60 of which remain pending. Rochester filed its complaint with this Court on January 29, 2004, but apparently soon thereafter consummated a sale of its nuclear reactor to Ginna. Rochester also executed an assignment document, which purports to assign both its Standard Contract and all of its contractual damages claims, including those that pre-date that contract assignment, to Ginna.[1] Based upon its assignment of Rochester's contract and claims, Ginna now seeks to substitute itself as the plaintiff in this case.

[1] Neither the Department of Justice nor the Department of Energy has been provided with a copy of the actual assignment instrument. Although DOE was provided with a letter notifying it of an assignment from Rochester to Ginna on or about June 24, 2004, the instrument of assignment did not accompany that letter.

II. STATEMENT OF FACTS

In 1983, Congress enacted the Nuclear Waste Policy Act, 42 U.S.C. § 10101 *et seq.* ("NWPA"), establishing the duty of the Federal Government to dispose of spent nuclear fuel ("SNF") and high-level waste ("HLW") from facilities whose owners entered into contracts with the Department of Energy ("DOE"). See 42 U.S.C. §§ 10131(a)(4), (b)(2), 10222. In furtherance of the NWPA, DOE promulgated a "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High Level Radioactive Waste," published at 10 C.F.R. § 961.11, which establishes the terms under which the Government would "accept title to, transport, and dispose of . . . spent fuel and waste . . . [i]n exchange for . . . fees specified in the contract." 10 C.F.R. § 961.2. On June 30, 1983, Rochester entered into a Standard Contract, Contract No. DE-CR01-83NE44419, with DOE for the acceptance and disposal of its SNF and HLW. App. 1.[2]

On January 29, 2004, Rochester filed a complaint against the Government claiming partial breach of contract, partial breach of implied covenants of good faith and fair dealing, and taking of property without just compensation. In its complaint, Rochester stated that it was in the process of selling its nuclear reactor to Ginna, as follows:

> As publically announced in November 2003, Plaintiff has agreed, subject to receipt of satisfactory State and federal regulatory approvals, satisfactory rate treatment, and other conditions, to sell the Ginna Plant, including all SNF together with all obligations to store and dispose of SNF, to a subsidiary of Constellation Energy Group, Inc. ("CEG") in a transaction expected to close on or around June 30, 2004. In accordance with the terms and conditions of the asset purchase agreement between Plaintiff and CEG, the Contract and rights and duties thereunder, including but not limited to the right to pursue and recover damages associated with storage of SNF at the Ginna plant, are expected to be assigned to CEG or one of its affiliates upon the closing of that transaction. In accordance with Article XIV, Assignment, of the Contract, Plaintiff will give DOE notice within ninety days of assignment.

---

[2] "App. __" refers to the appendix to this response. "Compl. ¶ __" refers to the plaintiff's complaint in this action.

Compl. ¶ 11.

The NWPA provides that "[t]he rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level waste involved." 42 U.S.C. § 10222(b)(3) (emphasis added). Implementing this statutory provision, the Standard Contract states that "[t]he rights and duties of the Purchaser may be assignable with transfer of title to the SNF and/or HLW involved; provided, however, that notice of any such transfer shall be made to DOE within ninety (90) days of transfer." App. 2; see 10 C.F.R. § 961.11, Article XIV - Assignment.

By letter dated June 24, 2004, Rochester notified the current DOE contracting officer, David Zabransky, "pursuant to Article XIV of DOE Contract No. DE-CR01-83NE44419 executed between . . . [Rochester] and DOE, that title to all SNF and HLW at or associated with . . . [the nuclear facility] has been transferred to Ginna . . . and that all rights and duties under DOE Contract No. DE-CR01-83NE44419 have been assigned to and assumed by Ginna . . . effective June 10, 2004." App. 3-4. "The Asset Purchase Agreement [between Rochester and Ginna] . . . provided that . . . [Rochester] would remain financially liable for payment of the one-time fee under the Standard Contract when that fee becomes due and owing, and that . . . [Ginna] would make certain payments to . . . [Rochester] in the event a monetary recovery from DOE is secured." Pl. Mot. 3.[3]

## SUMMARY OF ARGUMENT

The Assignment of Contracts Act, 41 U.S.C. § 15, generally governs and limits the ability of Government contractors to assign their contracts without the Government's consent, while the Assignment of Claims Act, 31 U.S.C. § 3727, generally governs and limits the ability of

[3] The total principal and interest owed by Rochester for the one-time fee is $104,579,988.40. App. 5-6.

Government contractors to assign their claims against the Government. The Nuclear Waste Policy Act, 42 U.S.C. § 10222(b)(3), creates an exception to the limitations of the Assignment of Contracts Act, providing that the "rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved," and the Standard Contract at issue in this case incorporates that provision, although the Standard Contract also requires notice within 90 days of the assignment.

In this case, Rochester has purported to assign not only its Standard Contract to a new party, Ginna, but also has purported to assign to Ginna all of its claims for damages based upon events preceding the assignment of the contract and claims. Neither the NWPA nor the Standard Contract contemplates assignments of pre-existing damages claims. To the contrary, although the NWPA's statutory provision relating to the assignment of contracts may limit the prohibitions upon contract assignments identified in the Assignment of Contracts Act, Congress has expressly distinguished assignments of contracts (traditionally governed by the Assignment of Contracts Act) from assignments of damages claims (traditionally governed by the Assignment of Claims Act). Neither the NWPA nor the Standard Contract overrides the statutory provisions of the Assignment of Claims Act, and Rochester, therefore, has no basis upon which it can properly assign its pre-existing damages claims to Ginna. In fact, outside the context of the Assignment of Claims and Assignment of Contracts Acts, assignment of a contract to a third party has not historically encompassed damages claims arising from events occurring prior to the date of the contract assignment. Accordingly, here, particularly in light of the absence of a clear waiver of sovereign immunity permitting assignments of both contracts and pre-existing damages claims, the NWPA provision allowing contract holders to assign their contracts to third parties does not encompass damages claims that pre-date the contract assignment. For these reasons, the Court should not permit Ginna, as the assignee of the damages claims that Rochester identified in its

complaint in this case, to "step into the shoes" of Rochester or to pursue damages claims based upon events or delays that pre-date Rochester's contract assignment to Ginna.[4]

At the same time, Rochester has attempted to assign its Standard Contract to Ginna while retaining an obligation to pay to DOE at some future date a substantial one-time fee that the contract holder is required to pay before DOE begins accepting any SNF from the contract holder. Although private parties that have executed a contract may be able partially to assign their rights under that contract to a third party, they are not permitted to assign their rights while retaining some, but only some, of their obligations under the contract. Further, the NWPA, construed in conjunction with the Assignment of Contracts Act, precludes the "partial assignment" of the Standard Contract that Rochester has made here. In fact, because DOE's obligation to perform the Standard Contract depends upon payment of that one-time fee, Rochester has retained control over the timing of DOE's performance obligations, resulting in a defective contract assignment and failing to create any privity of contract between Ginna and DOE. Because Ginna has no basis upon which to maintain a contract action against the Government, the Court should deny Ginna's request to substitute itself as the plaintiff in this case.

---

[4] In addition, even if Rochester were otherwise entitled to assign its claims to Ginna, Rochester's assignment of claims here is invalid. In its purported assignment, Rochester has reserved rights for itself as well as obligations that it must fulfill. Specifically, Rochester has agreed to pay a one-time fee that is still due and owing under the Standard Contract. Further, Rochester will receive some percentage of any monetary recovery that Ginna receives in this litigation. As discussed below, a contract assignment that is not absolute, failing to transfer all contract responsibilities to the third party, or a claims assignment that is not absolute, failing to eliminate the assignor's full interest in the claims, is invalid.

ARGUMENT

I. STANDARD OF REVIEW

RCFC 25(c) provides that, "[i]n case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." The "rule operates when an interest is transferred during pending litigation." Standard Fed. Bank v. United States, 51 Fed. Cl. 695, 707 (2002). "When a court is asked to substitute a party under Rule 25(c), the court proceeds to determine which entity," if any, "is the successor in interest to the original plaintiff." Standard Fed. Bank v. United States, 51 Fed. Cl. 695, 707 (2002). Whether to grant Rochester's motion is a matter within this Court's discretion. See Luxliner P.L. Export Co. v. RDI/Luxliner, Inc., 13 F.3d 69, 71-72 (3d Cir. 1993); National Indep. Theatre Exhibitors, Inc. v. Buena Vista Distrib. Co., 748 F.2d 602, 610 (11th Cir. 1985). Nonetheless, that discretion is circumscribed by the statute and the Court's Rules.

Rochester is the original holder of the Standard Contract at issue in this case. The basis of the alleged transfer of Rochester's interest in that Standard Contract is an assignment of Rochester's contract, future damages claims, and pre-existing damages claims from Rochester to Ginna. To the extent that the Court permits a new plaintiff to substitute itself for the original contract holder in this case, it must ensure that the new plaintiff has a basis upon which to maintain an action against the Government and that the Court would possess jurisdiction to entertain that action. It is well-established that this Court's jurisdiction is limited. United States v. Testan, 424 U.S. 392, 399 (1976). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. Id.; United States v. Sherwood, 312 U.S. 584, 586 (1941). Congressional consent to suit in this Court, which waives the Government's traditional immunity, must be explicit and strictly construed. United States v.

Mitchell, 445 U.S. 535, 538 (1980); see Testan, 424 U.S. at 399 (waiver of sovereign immunity cannot be implied); United States v. King, 395 U.S. 1, 4 (1969) (same).

## II. ROCHESTER'S ATTEMPT TO ASSIGN ITS STANDARD CONTRACT, BUT TO RETAIN CONTROL OVER THE FUTURE ONE-TIME FEE PAYMENT, INVALIDATES THE CONTRACT ASSIGNMENT

It is a well-established principle that, under the Tucker Act, 28 U.S.C. § 1491, the United States consents to be sued upon contract claims only by those with whom it has privity of contract. See Erickson Air Crane Co. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984); United States v. Johnson Controls, Inc., 713 F.2d 1541, 1557 (Fed. Cir. 1983); Petrin v. United States, 90 Ct. Cl. 670, 672-73 (1940). The only parties, therefore, who may maintain an action in this Court founded upon a contract are those who have entered into a contract with the United States. Merritt v. United States, 267 U.S. 338, 340 (1925); Erickson Air, 731 F.2d at 813; Putnam Mills Corp. v. United States, 479 F.2d 1334, 1337 (Ct. Cl. 1973). Because Rochester entered into the Standard Contract with DOE, the United States has waived its sovereign immunity to be sued by Rochester to the extent that Rochester remains a contract holder. However, Rochester alleges that it has assigned its Standard Contract to Ginna and that Ginna is now the contract holder in privity with the Government under that contract.

Generally, the Assignment of Contracts Act ("Contracts Act"), 41 U.S.C. § 15, bars the assignment of contracts with the Government absent the Government's consent:

> No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned.

41 U.S.C. § 15. Nevertheless, the NWPA creates a potential exception to that statutory prohibition, providing that "[t]he rights and duties of a party to a contract entered into under this

section may be assignable with transfer of title to the spent nuclear fuel and/or high-level radioactive waste." 42 U.S.C. § 10222(b)(3).

However, in making its contract assignment to Ginna, Rochester has not completely divested itself of control over the performance of the Standard Contract or Ginna's right to performance under that contract. Under the Standard Contract, in addition to quarterly fees that each contract holder must pay, each contract holder is responsible for paying a one-time fee for the disposal of the SNF and/or HLW that it had generated prior to April 7, 1983: "For SNF, or solidified high-level radioactive waste derived from SNF, which fuel was used to generate electricity in a civilian nuclear power prior to April 7, 1983, a one-time fee will be assessed." 10 C.F.R. § 961.11, Art. VIII.A.2 (emphasis added). The contract holder is required to pay the entirety of its one-time fee before DOE begins acceptance of that contract holder's SNF and/or HLW. See id., Art. VIII.B. In fact, section 302(a) of the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. § 10222(a)(5), expressly indicates that DOE's obligation to dispose of any utility's SNF is "in return for the payment of fees established by this section," conditioning DOE's acceptance obligation upon that payment. To the present day, Rochester has not paid that one-time fee.

The Asset Purchase Agreement that Rochester and Ginna executed requires Rochester to remain financially liable for the payment of the one-time fee under the Standard Contract that must be paid before DOE removes Rochester's waste. App. 3-4. Until Rochester pays that fee, DOE will not have to accept any SNF and HLW under the Standard Contract at issue in this case. See 42 U.S.C. § 10222(a)(5); 10 C.F.R. § 961.11, Arts. V.A.2 & V.B (requiring contract holder to pay one-time fee before DOE begins taking SNF and/or HLW). Accordingly, Rochester retains control over whether and when Ginna is entitled to performance from DOE under the Standard Contract. Further, because some of the contract holder's obligations under the Standard

Contract have been retained by Rochester while others have been "assigned" to Ginna, it is clear that the contract "assignment" is only a partial one.

Although the Restatement (Second) of Contracts indicates that, outside the context of the NWPA and the Contracts Act, "an assignment of a part of a right . . . is operative as to that part to the same extent and in the same manner as if the part had been a separate right," Restatement (Second) of Contracts § 326(1) (1981), that rule does not encompass the limitations imposed by the Contracts Act. Under that Act, assignments of contracts are specifically prohibited, absent permission of the Government. Although the NWPA creates a limited exception to that rule, providing that the "rights and duties of a party to a contract . . . may be assignable . . .," 42 U.S.C. § 10222(b)(3) (emphasis added), the statutory language does not permit only "part of the rights and duties" to be assigned to a third party. Waivers of sovereign immunity must "be strictly construed" in their scope in favor of the sovereign and "unequivocally expressed" in statutory text. Department of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999). Based upon the statutory language of the NWPA and that provision's exception to the general prohibition of any contractual assignments, Rochester's assignment of only a part of its contract and its retention of some of the duties of the Standard Contract do not constitute a valid contract assignment under the NWPA.

Further, even outside the context of the NWPA, the Restatement (Second) of Contracts provides that, generally, a contract holder is entitled to assign "a part of a right." Here, because Rochester has assigned to Ginna all remaining performance rights, Rochester has not assigned only "part" of its "right" under the Standard Contract to Ginna. Nevertheless, it has assigned only part of its contractual obligations to Ginna, a situation that the Restatement does not address. Rochester would require DOE to deal with two entities in the future: DOE would be required to deal with Rochester to attempt to recover the one-time fee payment, but will be required to deal

with Ginna on all quarterly fee payment issues and on SNF acceptance issues. Rochester has no basis for attempting to split its contract obligations in this manner and to force DOE to deal with two entities, rather than one contract holder, in the future to obtain all future fee payments.

In addition, "[t]o be an effective assignment, the assignor must divest itself of all right, interest, and control in the property assigned." In re Computer Engineering Associates v. John Desmond, 337 F.3d 38, 46 (1st Cir. 2003); see Miller v. Wells Fargo Bank Int'l Corp., 540 F.2d 548, 557-58 (2nd Cir. 1976). "[R]etention of control precludes the perfection of an assignment." Computer, 337 F.3d at 46. The responsibility for paying the one-time fee remains with Rochester. If Rochester does not pay the fee, DOE is not obligated to begin removing the SNF under the Standard Contract at issue in this case. Rochester is maintaining complete control over whether and when DOE obtains rights to accept the SNF covered by the Standard Contract at issue in this case. Accordingly, aside from the issues of sovereign immunity implicated by the NWPA and the Assignment of Contracts Act, Rochester's retention of control over Ginna's future performance rights and DOE's future obligations precludes enforcement of the contract assignment. For these reasons, the Court should find that the contract assignment to Ginna is not effective and that, because Ginna is not a proper assignee of the Standard Contract, Ginna lacks privity with the Government that would permit it to maintain this suit.

Finally, even where an assignment of part of a contract is permitted, "'[i]f the obligor has not contracted to perform separately the assigned part of a right, no legal proceeding can be maintained by the assignor or assignee against the obligor over his objection, unless all the persons entitled to the promised performance are joined in the proceeding, or unless joinder is not feasible and it is equitable to proceed with joinder." Restatement (Second) of Contracts § 326(2) (1981). To the extent that the Court finds Rochester's contract assignment to Ginna valid, the Court should not allow Rochester to withdraw from this case while Ginna substitutes

as the new plaintiff. We anticipate raising the failure of any entity, whether it be Rochester or Ginna, to pay the one-time fee under the Standard Contract at issue here – a condition precedent to the Government's obligation to begin SNF acceptance – to preclude liability in this case. Further, to the extent that the Court finds that the nonpayment of the one-time fee does not preclude a finding of liability, we will seek an affirmative recovery of that fee as a counterclaim against the contract holder or, in the alternative, will seek to offset the amount of the one-time fee against any recovery in this case. If Ginna is the sole plaintiff, but only Rochester retains an obligation to pay the one-time fee, our ability to recover the one-time fee payment and to tie that fee to any recovery in this case will be severely complicated. For these reasons, Rochester should not be allowed to withdraw from this litigation while it continues to be obligated to pay the one-time fee required under Article V.B of the Standard Contract.

## III. REGARDLESS OF WHETHER ITS CONTRACT ASSIGNMENT IS VALID, ROCHESTER'S ATTEMPT TO ASSIGN DAMAGES CLAIMS THAT PRE-EXISTED THAT CONTRACT ASSIGNMENT IS INVALID

### A. The Standard Contract Does Not Permit Assignment Of Pre-Existing Claims

Rochester asserts that, pursuant to Article XIV of the Standard Contract, it is entitled to assign "title to all SNF" and "all of the rights and obligations under the DOE Standard Contract for the R.E. Ginna Nuclear Power Plant, '**including but not limited to the right to pursue and recover damages**,'" to Ginna. Plaintiff's Motion to Substitute Plaintiff And Amend Caption, For Substitution of Counsel, And For Limited Relief From Stay ("Pl. Mot.") page 3 (emphasis added). It appears that Rochester is alleging that it may assign all of the "rights and obligations" that arise after the Standard Contract is assigned **and** also assign any pre-existing claims that arose before the assignment of the Standard Contract. See id.

However, the Standard Contract does not permit the assignment of pre-existing "claims." The contract states that "[t]he rights and duties of the Purchaser may be assignable with transfer of title to the SNF and/or HLW involved . . . ." App. 2; 10 C.F.R. § 961.11, Article XIV ("Assignment"). The meaning of the Standard Contract language is found within the NWPA, which authorizes DOE "to enter into contracts with any person who generates or holds title to high-level radioactive waste ['HLW'], or spent nuclear fuel, of domestic origin for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel" in exchange for the payment of fees. 42 U.S.C. § 10222(a)(1); see Roedler v. DOE, 255 F.3d 1347, 1352 (Fed. Cir. 2001) (construing the Standard Contract and instructing that, "[for] determination of contractual and beneficial intent when, as here, the contract implements a statutory enactment, it is appropriate to inquire into the governing statute and its purpose"). As previously discussed, the NWPA provides that "[t]he rights and duties of a party to a **contract** entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level waste involved." 42 U.S.C. § 10222(b)(3) (emphasis added). This statutory language makes it clear that the language in the Standard Contract **solely** refers to assignment of the contract, meaning the assignment of "rights and duties" that begin upon assignment. The Standard Contract language permitting assignment, in Article XIV, does not refer to the assignment of claims – that is, pre-existing claims that arose from the contract prior to the contract assignment.

This distinction in the meaning between the assignment of a contract and an assignment of a claim is seen in comparing the Contracts Act, 41 U.S.C. § 15, with the Assignment of Claims Act ("Claims Act"), 31 U.S.C. § 3727. The fact that Congress passed one statute regarding the assignment of contracts and another statute regarding the assignment of claims is deliberate and reveals that such assignments are to be viewed and treated differently. As

previously discussed, the Contracts Act establishes that no contract with the United States may be transferred to a third party:

> No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned.

41 U.S.C. § 15. The pertinent provisions of the Claims Act place separate limitations upon an entity's ability to assign its damages claims against the Government to a third party, as follows:

> (a) In this section, "assignment" means (1) a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or (2) the authorization to receive payment for any part of the claim.
>
> (b) An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses. The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment. The certificate shall state that the official completely explained the assignment when it was acknowledged. An assignment under this subsection is valid for any purpose.

31 U.S.C. § 3727 (formerly 31 U.S.C. § 203). Because Congress enacted two separate statutes pertaining to assignment, using one for "contracts" and one for "claims," the distinction demonstrates congressional intent to have the statutes play different roles in achieving a broad, common goal.

The permissibility of, restrictions upon, and effect of an assignment differ depending upon which Act is applied. Assignments of claims found to violate the Assignment of Claims Act, 31 U.S.C. § 3727, are invalid, returning the parties to the <u>status quo ante</u>. <u>Colonial Navigation Company v. United States</u>, 149 Ct. Cl. 242, 245, 181 F. Supp. 237, 240 (1960); <u>see</u> <u>Fireman's Fund Ins. Co. v. England</u>, 313 F.3d 1344, 1349 (Fed. Cir. 2002). Under the

Assignment of Contracts Act, 41 U.S.C. § 15, wrongful assignments of contracts are not only invalid, but may result in annulment of the contract by the Government. Tuftco Corp. v. United States, 222 Ct. Cl. 277, 284 n.5, 614 F.2d 740, 744 n.5 (1980). Another important conceptual difference between these two statutes is that 31 U.S.C. § 3727, which expressly concerns claims, "pertains to claims for work already done," whereas 41 U.S.C. § 15, which pertains to "executory contracts, is more concerned with continuing obligations." Tuftco Corp., 222 Ct. Cl. at 284 n.4, 614 F.2d at 744 n.4 (emphasis added). Therefore, the Court should interpret the Standard Contract's assignment language based upon the NWPA's exclusive use of the word "contract" because the term draws a distinction between the assignment of a contract and the assignment of pre-existing claims.

The Federal Circuit seems to draw the same distinction. In Ginsberg v. Austin, 968 F.2d 1198 (Fed. Cir. 1992), the Federal Circuit determined that pre-existing claims are not automatically transferred with the assignment of an executory continuing contract. The case involved the issue of whether the right to back rent (a pre-existing claim) was presumed transferred, if not expressly reserved, when a lease contract was assigned. Ginsberg v. Austin, 968 F.2d 1198, 1200 (Fed. Cir. 1992). Because the Federal Circuit could not find any Federal law dispositive of the issue, the Court analyzed "general property and contract law principles as they . . . [were] embodied in state law pronouncements." Id. (citations omitted). As a matter of property law, the state courts uniformly have held that rents when due and owing become personal property and that the "transfer of . . . real estate subject to the lease does not carry with it any right to accrued rents then unpaid. These belong to the person who was the landlord at the time of their accrual and not to the grantee, unless assigned to him." Id. at 1201 (citations omitted). The Federal Circuit determined that, on the subject of assignments, the law of contracts was consistent with property law. Id. Various authorities agree that "the assignment of

rights under a continuing contract does not imply an assignment of rights of action for previous breaches of the contract . . . ." Id. (citations omitted). Consequently, the Court held that, in light of the uniform and longstanding legal authority, as a matter of Federal law, a back rent claim (that is, a pre-existing claim) was not transferred with the assignment of the continuing contract and that pre-existing claims were separate from the assignment of the contract itself.

The case here is on point with Ginsberg v. Austin because, even though Rochester has purported to assign a claim for a previous breach, assignments of claims were not expressly included within the assignment provision of the Standard Contract, as evidenced by the assignment language in the NWPA. The Government has waived sovereign immunity, through the NWPA and Article XIV of the Standard Contract, against assignees for claims that arise **after** assignment of the Standard Contract, but not for claims that pre-existed the contract assignment. Rochester's broad interpretation of the Standard Contract's assignment language does not take into consideration the assignment provision of the NWPA, congressional enactment of separate assignment acts, and the Federal Circuit's ruling that claims that pre-date a contract assignment are distinct from the rights that accompany an assignment of the contract. A waiver of sovereign immunity must not be implicitly enlarged or extended to include causes of action not within the terms of the NWPA or the Standard Contract. See Klamath and Moadac Tribes v. United States, 296 U.S. 244, 250 (1935) and United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992) (waivers of sovereign immunity must be "unequivocally expressed"). Therefore, Rochester's assignment of "the right to pursue and recover damages," to the extent that they include damages that pre-date the contract assignment, is invalid.

There are also strong policy reasons that the Court should interpret the assignment language of the Standard Contract as only permitting transfer of the contract and not pre-existing claims. They are the same policy reasons underlying the enactment of the Claims Act. One of

the main purposes of the Claims Act is to allow the Government to deal solely with the original contractor and to protect the Government's ability to defend itself against contract claims. See George Hyman Construction Co. v. United States, 30 Fed. Cl. 170, 173, aff'd, 39 F.3d 1197 (Fed. Cir. 1993); American National Bank & Trust Co. v. United States, 22 Cl. Ct. 7, 14 (1990). The Claims Act protects the Government's ability to defend itself by ensuring availability of information concerning a claim at issue. For example, the Claims Act aids the Government in defending itself by preventing claims from being assigned several different times, protecting against plaintiffs who may have no documents or information relevant to the dispute. The purpose of the Claims Act is three-fold:

> first, to prevent persons of influence from buying up claims which might then be improperly urged upon Government officials; second, to prevent possible multiple payment of claims and avoid the necessity of the investigation of alleged assignments by permitting the Government to deal only with the original claimant; and third, to preserve for the Government defenses and counterclaims which might not be available against an assignee.

Kingsbury v. United States, 215 Ct. Cl. 136, 141, 563 F.2d 1019, 1024 (1977); see Patterson v. United States, 173 Ct. Cl. 819, 823, 354 F.2d 327, 329 (1965). Therefore, based also upon prevailing policy considerations, the Court should strictly construe the Standard Contract's assignment language.

B. Because The Standard Contract Does Not Permit Assignment Of Pre-Existing Damages Claims, Rochester's Assignment Is Invalid Because It Does Not Satisfy The Requirements Of The Assignment Of Claims Act

Because the Standard Contract does not permit assignment of claims, Rochester must comply with the strict requirements of the Claims Act to have a valid assignment. See American Financial Assocs., Ltd. v. United States, 5 Cl. Ct. 761, 768, 771 (1984), aff'd, 755 F.2d 912 (Fed. Cir. 1985). Rochester's assignment of pre-existing claims to Ginna is invalid because it does not

meet the requirements of the Assignment of Claims Act. Under the express terms of the Claims Act, an assignment may only be made after the claim is decided and upon issuance of a warrant for payment. See 31 U.S.C. § 3727 ("An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued."). Thus, there is no provision which allows an assignee simply to pursue undecided/unresolved claims directly against the United States.

The Claims Act includes a "financing institution exception" to the bar on assignments, which permits, in limited circumstances, Government contractors to assign their rights to payment in connection with Government contracts to specified "financing institutions" in exchange for business financing. United California Discount Corp. v. United States, 19 Cl. Ct. 504, 507 (1990). However, it is obvious that Ginna does not qualify for such an exception. As the complaint clearly states, Ginna is a "subsidiary of Constellation Energy Group, Inc.," not a financing institution. Compl. ¶ 11; Pl. Mot. 2-3 (Ginna is a "indirect wholly-owned subsidiary of Constellation."). In addition, Rochester and Ginna have failed to comply with the notification procedure of the Claims Act, which requires financial institutions to provide a true copy of the instrument of assignment to the contracting officer. United California, 19 Cl. Ct. at 507; 31 U.S.C. § 3727(c)(3). Neither Rochester or Ginna have alleged that they provided a copy of the instrument of assignment to the contracting officer as required under the Claims Act. Rochester only states that "[t]he required notice of assignment of the Standard Contract to Ginna . . . under Article XIV of the Standard Contract was transmitted to DOE by letter dated June 24, 2004." Pl. Mot. 3. The "notice" to which Rochester refers, which accompanies this response, see App. 3-4, does not include the instrument of assignment and does not equate to a proper assignment pursuant to the Claims Act. The financing institution exception is strictly construed, and a contractor must meet **all** of the requirements contained within the statute to gain the benefit of

the exception. United California, 19 Cl. Ct. at 507-08; American Financial, 5 Cl. Ct. at 768. Failure of the contractor to abide by any of the Act's provisions will invalidate an attempted assignment. Uniroyal, Inc. v. United States, 197 Ct. Cl. 258, 260, 454 F.2d 1394, 1396 (1972). Because this Court strictly construes the Claims Act notice requirements, Ginna does not hold a valid assignment pursuant to the Act.

C. The Government Did Not Waive The Requirements Of The Claims Act

______The "Government may elect to recognize an assignment despite the bar of the Act." American Nat'l Bank & Trust Co. v. United States, 23 Cl. Ct. 542, 546 (1991) (citations omitted). An assignment is valid if the Government waives the effect of the statute by recognizing the validity of the contract and the assignment after the fact. Id. In determining waiver, the Court looks at the totality of circumstances, considering "knowledge, assent, and any actions consistent with the terms of the assignment." Id. The Government was informed of Rochester's intent to assign the pre-existing claims arising from the Standard Contract to Ginna when Rochester filed its complaint. Compl. ¶ 11. DOE was informed of the actual assignment in a letter dated June 24, 2004, addressed to the contracting officer. App. 3-4. However, DOE never assented or took any actions consistent with the assignment. Rochester does not allege any "intervening course of dealing between plaintiff and the Government" that would evidence waiver. See Manufacturers Hanover Trust Co. v. United States, 218 Ct. Cl. 563, 590 F.2d 893, 898 (1978). The evidence of the record shows only that DOE knew of the assignment. The Government's knowledge of an assignment, without more, is not enough to prove assent. United California, 19 Cl. Ct. at 509. Therefore, the Government did not waive its defenses under the Assignment of Claims Act.

D. In Any Event, Because Rochester Has Not Divested Itself Of Control Or Interest In The Pre-Existing Claims Assigned To Ginna, The Assignment Of Claims Is Invalid

Even if Rochester were somehow entitled to assign its damages claims, the actual assignment of claims at issue here would be defective. Rochester claims that "Ginna . . . is now the single party with authority to pursue any and all claims against DOE in connection with DOE's failure to commence accepting SNF from the R.E. Ginna Nuclear Power Plant." Pl. Mot. 3. However, the agreement requires that Constellation Energy Group, Inc., make certain payments to Rochester in the event that a monetary recovery from DOE is secured. Id. As previously discussed, "[t]o be an effective assignment, the assignor must divest itself of all right, interest, and control in the property assigned." Computer Engineering, 337 F.3d at 46. Rochester is retaining an interest in any monetary recovery that Ginna receives from DOE. Therefore, even if Rochester were otherwise entitled to assign its damages claims to a third party, the assignment at issue here would be invalid.

CONCLUSION

For the reasons set forth above, defendant respectfully requests that this Court deny the plaintiff's motion and that the stay of this action entered by the Court on May 21, 2004, remain in place.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Elizabeth Thomas
ELIZABETH THOMAS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 353-4175
Fax: (202) 307-2503

September 22, 2004

Attorneys for Defendant

# INDEX TO APPENDIX

Standard Contract, no. DE-CR01-83NE44419 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Notification Letter from Rochester Gas & Electric Corporation. . . . . . . . . . . . . . . . . . . . . . . . . . 3

Rochester Gas and Electric Corporation's Fee Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**CERTIFICATE OF FILING**

I hereby certify that on this 22nd day of September 2004, a copy of foregoing "DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO SUBSTITUTE PLAINTIFF AND AMEND CAPTION, FOR SUBSTITUTION OF COUNSEL, AND FOR LIMITED RELIEF FROM STAY" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Elizabeth Thomas

U. S. DEPARTMENT OF ENERGY CONTRACT NO. DE-CR01-83NE44419

CONTRACT FOR DISPOSAL OF SPENT NUCLEAR FUEL AND/OR HIGH-LEVEL

RADIOACTIVE WASTE.

THIS CONTRACT, entered into this 30th day of June 1983, by and between the UNITED STATES OF AMERICA (hereinafter referred to as the "Government"), represented by the UNITED STATES DEPARTMENT OF ENERGY (hereafter referred to as "DOE") and Rochester Gas and Electric Corporation (hereinafter referred to as the "Purchaser"), a corporation organized and existing under the laws of the State of New York

WITNESSETH THAT:

WHEREAS, the DOE has the responsibility for the disposal of spent nuclear fuel and high-level radioactive waste of domestic origin from civilian nuclear power reactors in order to protect the public health and safety, and the environment; and

WHEREAS, the DOE has the responsibility, following commencement of operation of a repository, to take title to the spent nuclear fuel or high-level radioactive waste involved as expeditiously as practicable upon the request of the generator or owner of such waste or spent nuclear fuel; and

WHEREAS, all costs associated with the preparation, transportation, and the disposal of spent nuclear fuel and high-level radioactive waste from civilian nuclear power reactors shall be borne by the owners and generators of such fuel and waste; and

ARTICLE XIII - REPRESENTATION CONCERNING NUCLEAR HAZARDS INDEMNITY

A. DOE represents that it will include in its contract(s) for the operation of any DOE facility an indemnity agreement based upon Section 170(d) of the Atomic Energy Act of 1954, as amended, a copy of which agreement shall be furnished to the Purchaser; that under said agreement, DOE shall have agreed to indemnify the contractor and other persons indemnified against claims for public liability (as defined in said Act) arising out of or in connection with contractual activities; that the indemnity shall apply to covered nuclear incidents which (1) take place at a contract location; or (2) arise out of or in the course of transportation of source, special nuclear or by-product material to or from a contract location. The obligation of DOE to indemnify shall be subject to the conditions stated in the indemnity agreement.

B. The provisions of this Article XIII shall continue beyond the term of this contract.

ARTICLE XIV - ASSIGNMENT

The rights and duties of the Purchaser may be assignable with transfer of title to the SNF and/or HLW involved; provided, however, that notice of any such transfer shall be made to DOE within ninety (90) days of transfer.

RG&E

Constellation Energy
R.E. Ginna Nuclear Power Plant

June 24, 2004

RECEIVED
JUL 8 2004

United States Department of Energy
Attn: David Zabransky
Office of Civilian Radioactive Waste Management
RW-20E
1000 Independence Avenue, S.W.
Washington, D.C. 20585

Re: Notice of Transfer of Title to Spent Nuclear Fuel and High-Level Radioactive Waste and Assignment of U.S. Department of Energy Contract No. DE-CR01-83NE44419 For Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste

Dear Mr. Zabransky:

By letter dated May 25, 2004, Rochester Gas and Electric Corporation ("RG&E") and R.E. Ginna Nuclear Power Plant, LLC ("Ginna LLC"), an indirect wholly owned subsidiary of Constellation Energy Group, Inc., provided preliminary notice to the Department of Energy of the proposed sale of the R.E. Ginna Nuclear Power Plant ("Ginna") from RG&E to Ginna LLC, together with transfer of title to all Spent Nuclear Fuel ("SNF") and High-Level Radioactive Waste ("HLW") at or associated with Ginna and the assignment of all rights and duties under DOE Contract No. DE-CR01-83NE44419 to Ginna LLC. This is to advise DOE that the closing of that transaction was completed on June 10, 2004.

Accordingly, notice is hereby given on behalf of RG&E and Ginna LLC, pursuant to Article XIV of DOE Contract No. DE-CR01-83NE44419 executed between RG&E and DOE, that title to all SNF and HLW at or associated with Ginna has been transferred to Ginna LLC and that all rights and duties under DOE Contract No. DE-CR01-83NE44419 have been assigned to and assumed by Ginna LLC, effective June 10, 2004.

Mr. David Zabransky
U.S. Department of Energy
June 24, 2004
Page 2 of 2

The Notice Address for Ginna LLC is:

Robert H. Beall
Constellation Energy
1650 Calvert Cliffs Parkway
Nuclear Fuel Management
Lusby, Maryland 20657
Tel: 410-495-4018
Fax: 410-495-4498

With copy to:

Steven L. Miller
Secretary and Managing Attorney
Constellation Generation Group, LLC
750 E. Pratt Street, 17th Floor
Baltimore, Maryland 21202

Should you have any questions or concerns regarding this Notice, please contact the undersigned.

Very truly yours,

Joseph J. Syta
Controller and Treasurer
Rochester Gas and Electric Corporation

Michael J. Wallace
President
Constellation Generation Group, LLC

**APPENDIX 41**





Consolidated Accounting and Investment System
Nuclear Waste Fund
Quarterly Statement of Payments
(NE44419) Rochester Gas and Electric Corporation
Fiscal Quarter: 04/01/2004 thru 06/30/2004

| | Ginna (4401) | Contract Total |
|---|---|---|
| Net KWH Payments thru Prior Quarter: | 68,157,921.00 | 68,157,921.00 |
| KWH Payments to DOE this Quarter: | | |
| KWH Fees | 1,013,249.00 | 1,013,249.00 |
| Adjustments | 0.00 | 0.00 |
| Less KWH Fee Credits/Refunds this Quarter: | | |
| KWH Fee Credits | 0.00 | 0.00 |
| KWH Fee Refunds | 0.00 | 0.00 |
| Adjustments | 0.00 | 0.00 |
| Net KWH Payments to Date | 69,171,170.00 | 69,171,170.00 |
| KWH Interest Credits/Refunds thru Prior Quarter: | 1,193,564.53 | 1,193,564.53 |
| KWH Interest Credits/Refunds this Quarter: | | |
| KWH Interest Credits | 0.00 | 0.00 |
| KWH Interest Refunds | 0.00 | 0.00 |
| Adjustments | 0.00 | 0.00 |
| KWH Interest Credits/Refunds to Date | 1,193,564.53 | 1,193,564.53 |
| KWH Penalties Assessed thru Prior Quarter: | 821.00 | 821.00 |
| KWH Penalties Assessed this Quarter | 0.00 | 0.00 |
| Adjustments this Quarter | 0.00 | 0.00 |
| Total KWH Penalties Assessed | 821.00 | 821.00 |
| KWH Penalties Paid thru Prior Quarter: | 821.00 | 821.00 |
| KWH Penalties Paid this Quarter | 0.00 | 0.00 |
| Adjustments this Quarter | 0.00 | 0.00 |
| Total KWH Penalties Paid to Date | 821.00 | 821.00 |
| BALANCE of KWH Penalties DUE | 0.00 | 0.00 |

APPENDIX 42

07/09/2004 08:51 Page: 166

Consolidated Accounting and Investment System
Nuclear Waste Fund
Quarterly Statement of Payments
(NE44419) Rochester Gas and Electric Corporation (continued)
Fiscal Quarter: 04/01/2004 thru 06/30/2004

| | Ginna (4401) | Contract Total |
|---|---|---|
| SNF Penalties Assessed thru Prior Quarter: | 0.00 | 0.00 |
| SNF Penalties Assessed this Quarter | 0.00 | 0.00 |
| Adjustments this Quarter | 0.00 | 0.00 |
| Total SNF Penalties Assessed | 0.00 | 0.00 |
| SNF Penalties Paid thru Prior Quarter: | 0.00 | 0.00 |
| SNF Penalties Paid this Quarter | 0.00 | 0.00 |
| Adjustments this Quarter | 0.00 | 0.00 |
| Total SNF Penalties Paid to Date | 0.00 | 0.00 |
| BALANCE of SNF Penalties DUE | 0.00 | 0.00 |
| SNF Principal Due thru Prior Quarter: | 33,134,126.60 | 33,134,126.60 |
| SNF Principal Due this Quarter | 0.00 | 0.00 |
| Adjustments this Quarter | 0.00 | 0.00 |
| Total SNF Principal Due | 33,134,126.60 | 33,134,126.60 |
| SNF Interest Accrued thru Prior Quarter: | 71,195,700.23 | 71,195,700.23 |
| SNF Interest Accrued this Quarter | 250,651.23 | 250,651.23 |
| Adjustments this Quarter | 0.00 | 0.00 |
| Total SNF Interest Accrued | 71,446,351.46 | 71,446,351.46 |
| Total SNF Principal & Interest Due | 104,580,478.06 | 104,580,478.06 |
| SNF Principal Paid thru Prior Quarter: | 343.71 | 343.71 |
| SNF Principal Paid this Quarter | 0.00 | 0.00 |
| Adjustments this Quarter | 0.00 | 0.00 |
| Total SNF Principal Paid to Date | 343.71 | 343.71 |
| SNF Interest Paid thru Prior Quarter: | 145.95 | 145.95 |
| SNF Interest Paid this Quarter | 0.00 | 0.00 |
| Adjustments this Quarter | 0.00 | 0.00 |
| Total SNF Interest Paid to Date | 145.95 | 145.95 |
| Total SNF Principal & Interest Paid to Date | 489.66 | 489.66 |
| BALANCE of SNF Principal & Interest Due | 104,579,988.40 | 104,579,988.40 |



Aug 10 2004 9:32 OCRWM DOE 2025869608 P.3